IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 2 7 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, FERNANDO DE PEÑA, VALENTIN PAZ and ANDRUS & PAZ, *a partnership* | § § § § | |
| VS. | § § | CIVIL ACTION NO. <br><br> B - 02 - 143 |
| BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, NOE SAUCEDA and EDDIE ERRISURIZ, JR. | § § § | (JURY REQUESTED) |

## PLAINTIFFS' RESPONSE TO DEFENDANT BISD'S MOTION TO DISMISS

TO THE HONORABLE U.S. DISTRICT COURT:

COME NOW **STEPHEN M. ANDRUS, FERNANDO DE PEÑA, VALENTIN PAZ** and **ANDRUS & PAZ**, *a partnership*, Plaintiffs herein, and file this their Response to Defendant Brownsville Independent School District's Motion to Dismiss, and for such response would respectfully show unto the Court the following:

## I.

## SUMMARY OF RESPONSE

Plaintiffs have alleged causes of action against Defendant Brownsville Independent School District (hereinafter BISD) for deprivation of their rights to due process, to property, to liberty,

and to the equal protection of the laws, protected by the Fourteenth Amendment to the U.S. Constitution, pursuant to 42 U.S.C. §1983. Although Defendant alleges it does not know who the partnership of Andrus & Paz is, it does not deny it is familiar with Andrus, De Peña and Paz separately. Plaintiffs allege simply that Andrus & Paz were injured in the same manner that Andrus and Paz individually were injured. Defendant also alleges that Plaintiffs do not have a property or liberty interest, and that they therefore have no due process claim under the Fourteenth Amendment. The interests alleged by Plaintiffs were established by existing rules and understandings stemming from independent state sources, including BISD's own Vendor Rules & Regulations for the Tax-Sheltered Annuity Program and Article 6228a-5. Defendants removal of Plaintiffs from the program, in violation of the Vendor Rules and Article 6228a-5, in order to funnel business and profits to a particular agent, violated Plaintiffs' due process rights.

Defendants also challenge Plaintiffs' equal protection claims, alleging that Plaintiffs have failed to establish how BISD classified them, how they were members of a protected class, or how purposeful discrimination motivated Defendant's actions. *Pehnke v. City of Galveston*, 977 F. Supp. 827, 829 (S.D.Tex. 1997). As set out in Plaintiffs' First Amended Original Complaint, Plaintiffs challenge the classification made by Defendants between those agents they could control for their illegitimate purposes, and those they could not. Defendants found the agent they could control was David Soliz. All other agents fell into the alternative classification. Plaintiffs' equal protection claim challenges both the manner in which Plaintiffs were classified by Defendants, i.e., interpretation and application of the Vendor Rules and Article 6228a-5, as well the discriminatory classification that was uniformly applied. *See Mahone v. Addicks Utility Dist. of*

*Harris County,* 836 F.2d 921 (5th Cir. 1988). Although Defendant makes reference to Plaintiffs' failure "to allege they were members of a protected class," that distinction is unnecessary in this action. Instead, Plaintiffs have established that Defendants' classification had no rational relationship to any legitimate state interest. It was the unequal application of the Vendor Rules, as well as the creation of the discriminatory rule applied uniformly to those within Plaintiffs' classification, that resulted in the purposeful discrimination that violated Plaintiffs' entitlement to equal protection.

Finally, Defendant alleges immunity based on the individual Defendants' entitlement to immunity. Even if applicable, derivative immunity would only apply to Plaintiffs' state law claims. Liability under 42 U.S.C. §1983 is based on Defendant BISD's customs and policies, not on the doctrine of respondeat superior. Any immunity of Defendants Sauceda and Errisuriz, therefore, is irrelevant to BISD's liability.

# II.

# FACTUAL SUMMARY

The factual allegations alleged by Plaintiffs are set out at Section III, paragraphs 9-13, of Plaintiffs' First Amended Original Complaint. The following is a summary of those allegations.

Plaintiffs STEPHEN M. ANDRUS and VALENTIN PAZ are members of a partnership known as Andrus & Paz, an organization dedicated to retirement planning and the sale of annuities and the sale of health, life and disability insurance. Plaintiffs STEPHEN ANDRUS, FERNANDO DE PEÑA, and agents of Andrus & Paz had been authorized to solicit tax sheltered annuity products to eligible employees of the Brownsville Independent School District,

pursuant to the Brownsville Independent School District's Vendor Rules & Regulations for The Tax-Sheltered Annuity Program (hereinafter Vendor Rules) in effect since as early as 1994. Plaintiffs Andrus, de Peña and agents of Andrus & Paz received BISD authorization to solicit employees through May and September 2002.

During September 2001, Plaintiffs began attempts to solicit their products to BISD employees. They were abruptly informed, however, that although their letter of introduction specifically indicated they were allowed to do so through 2002, they were in fact not to be allowed to visit school campuses to attempt to sell their products. This prohibition was contrary to the Vendor Rules, §IV(I)(1), which provides that "BISD may terminate a Vendor's participation in the [Tax-Sheltered Annuity] program by sending a written notice to each participant in the Vendor's program and the primary contact for the vendor at least ninety (90) days in advance of the termination date," because no such notice was ever provided to Plaintiffs herein.

In addition, although Plaintiffs were not being allowed to solicit their products on campus, agent David Soliz was being allowed to solicit his products, including presentations on school campuses, during school working hours, which principals and administrators were required to attend, contrary to Article 6228a-5 and BISD's Vendor Rules Section IV(F)(2). Although Plaintiffs were also authorized to sell the same Commercial Union products being offered by Mr. Soliz, these Plaintiffs and their agents were specifically not allowed to make those same presentations, nor were they allowed to make any presentations or even attempt to sell any products to BISD employees in any other manner whatsoever. Although Plaintiffs specifically

notified Defendants BISD and SAUCEDA, as well as each of the BISD Trustees, of their request to be allowed to solicit products in the same manner as Mr. Soliz was allowed to do, no response to that request was ever provided.

Thereafter, on or about November 14, 2001, Defendant SAUCEDA notified all principals and administrators that "[i]nsurance and/or tax deferred annuity information made available to [them] by vendors, etc., is **not** to be disseminated to anyone **without** your securing **prior approval** from either Mr. Eddie Errisuriz, Assistant Superintendent for Human Resources or [himself]." (Emphasis in original). In addition, although BISD's Vendor Rules provide that "[n]o bulk mailings and/or telephone solicitations are permitted to BISD offices or campus locations," Defendant Errisuriz specifically authorized a bulk mailing/distribution to all BISD employees of a solicitation letter by David Soliz. A copy of that authorization to distribute is attached as Exhibit "A." Once Plaintiffs learned that Mr. Errisuriz had approved CGU as a company allowed to have campus visitations by Mr. Soliz, they again requested a similar letter of introduction and permission to do the same. Like Plaintiffs' prior requests, that request also went unanswered. Believing that perhaps the Board of Trustees were not aware of the actions of Defendants Sauceda and Errisuriz, Plaintiff Andrus addressed the Board regarding his request for authorization to solicit his products on November 13, 2001. Although he specifically requested the same privileges that were provided to Mr. Soliz, no response or action was ever taken on his request. As a result, Plaintiffs were denied the opportunity to solicit their products as they had been doing for the prior 32 years.

# III.

## ARGUMENT AND AUTHORITIES

### A.    Fourteenth Amendment Due Process

Defendant BISD asserts that Plaintiffs have no property or liberty interest in this matter sufficient to establish a claim to due process.  As set out in Plaintiffs' First Amended Original Complaint, however, Plaintiffs Andrus, De Peña, Paz and Andrus & Paz specifically allege that their property and liberty interests were established through applicable state law and the guidelines established by BISD itself.  As set out in Exhibit "B," Stephen Andrus had been provided authorization to solicit tax-sheltered annuity products to eligible employees of BISD through May 7, 2002.  Exhibit "B."  Fernando De Peña was authorized to solicit the same products through September 23, 2002.  Exhibit "C."  Samuel Sauceda, an employee of Andrus & Paz, was authorized to solicit through  September 23, 2002.  Exhibit "D."  Sylvia Petrarca, an employee of Andrus & Paz, was authorized to solicit through December 10, 2001.  Exhibit "E."  Andrus & Paz relied on the authorizations of Stephen Andrus, Valentin Paz and Fernando De Peña, along with the BISD Vendor Rules to solicit those same products.  Exhibit "F" (Affidavit of Stephen Andrus).  It is the business of Plaintiffs to solicit tax-sheltered annuity products to BISD employees and others, and Plaintiffs relied on BISD's Vendor Rules and Regulations to do so in making their livelihoods.  Plaintiffs' damages stem from Defendants' actions in removing them from the tax-sheltered annuity program without notice or an opportunity to be heard, while allowing only a single agent to participate in the Program, requiring employees' attendance at

meetings at which that agent was speaking, marketing and providing information for his products and taking other similar actions, in violation of BISD's Vendor Rules and applicable state laws.

> It is a purpose of the ancient institution of property to protect those claims upon which people rely on their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims. **Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.**

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (emphasis added).

same products.

The Supreme Court has already established that in order to determine whether Plaintiffs have a property or liberty interest protected by the Fourteenth Amendment, the Court should look to state law to determine their creation and dimensions as "defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Those rules and state law are set out in BISD's Vendor Rules, Article 6228a-5, and other applicable laws. Plaintiffs had a reasonable expectation that Defendant BISD would follow its own Rules and applicable state law in making their financial and professional decisions. As the Fifth Circuit has explained,

> [i]n many respects, the position of [plaintiffs] is also similar to that of a government employee. The interest of [plaintiffs] in the...Project is both a financial interest and an interest in [their] professional reputation[s], much like an employee's interest in continued employment. When [Plaintiffs' authorization to solicit

> their products] was disqualified, [Plaintiffs] lost a source of income as well the benefits to [their] reputation from completing a successful project. When an employee is terminated, the employee loses a source of income plus the experience gained from working. It is well-settled that, before termination, government employees are entitled to notice and a hearing.

*Systems Contractors Corp. v. Orleans Parish School Board*, 148 F.3d 571, 576 (5th Cir. 1998). Like BISD's employees, Plaintiffs also had a reasonable expectation that BISD's Vendor Rules and applicable state law would be followed in the granting or withholding of authorizations to solicit their products.

Defendant BISD established its Vendors Rules & Regulations in accordance with its own rules and state law, on which Plaintiffs relied in requesting authorization to solicit tax-sheltered annuity products. *See* Exhibits "F" & "G," Brownsville Independent School District Vendor Rules & Regulations for the Tax-Sheltered Annuity Program (July 1994). Those rules provide the regulations governing the Tax-Sheltered Annuity Program at BISD. Relying on those rules and applicable state law, Plaintiffs applied for and received authorizations to solicit their products through December 2001 and May and September 2002. Exhibits "B" and "C." Plaintiffs had a reasonable expectation that Defendant BISD would follow its own existing Vendor Rules and applicable state law, thereby creating a property right requiring them to do so. The existing rules and understandings, established by BISD and the state legislature, secured Plaintiffs' entitlement to reliance on those Rules and statutes, thus establishing a property right to their enforcement. As set out above, however, Plaintiffs were abruptly informed in September 2001 that in spite of the prior authorizations, they were not to be allowed to solicit their products to BISD employees, effectively terminating their authorizations until further notice, and that revocation extended

through May 2002. This directive was contrary to the BISD Vendor Rules, §IV(I)(1), which provide that "BISD may terminate a vendor's participation in the TSA program by sending a written notice to each participant in the vendor's program and the primary contact for the vendor at least 90 days in advance of the termination date." Exhibit "G." No such written notice was ever provided to Plaintiffs prior to Defendant's termination of their participation in the program for the 2001-2002 school year.

The BISD Vendor Rules also provided that "[r]epresentatives are allowed to make sales presentations on BISD premises only at the request of the employee," "[n]o bulk mailings...are permitted to BISD offices or campus locations," and "BISD employees are not allowed to provide copying...assistance,...or other clerical services to representatives conducting business in BISD buildings." Exhibit "G," Vendor Rules §IV(F)(2), (3), & (6). In addition, Texas law provided that BISD could not "require or coerce an employee's attendance at any meeting at which qualified investment products are marketed," "grant exclusive access to an employee by discriminating against or imposing barriers to any agent, broker or company that provides qualified investment products," or "use public funds to recommend a qualified investment product offered by a company or an agent of a company that offers a qualified investment product." TEXAS CIVIL STATUTES Art. 6228a-5, §9(2), (4), and (7) (Vernon 1970). Defendant violated the Vendor Rules and Article 6228a-5 by terminating Plaintiffs' authorizations to solicit tax-sheltered annuity products immediately, rather than with 90 days notice, by allowing exclusive access to BISD employees only to agent David Soliz, by promoting his products through dissemination of his literature, and by requiring employees to attend meetings at which

he was promoting his products. Defendant BISD's violation of its Vendor Rules and applicable state laws, without providing these Plaintiffs with notice or an opportunity to be heard, deprived Plaintiffs of their rights to property and liberty to contract in accordance with BISD's rules and regulations and the applicable state laws. Once BISD established its Vendor Rules limiting the manner in which Plaintiffs authorization to solicit their products could be withdrawn, it could not violate Plaintiffs' due process rights in the process of modifying those procedures. Similarly, these Defendants could not violate state law by granting exclusive access to a single agent and otherwise imposing barriers to Plaintiffs to solicit those same products.

As the Supreme Court has explained, "`[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. at 334, 96 S.Ct. at 902, *quoting Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id., quoting Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). At no time were Plaintiffs provided even the minimum requirements of notice and a hearing before they were deprived of their rights to participate in the Tax-Sheltered Program..

To determine how much process is actually due in any particular situation, courts have been directed to balance

(1)    the private interest that will be affected by the official's actions,

(2)    the risk of an erroneous deprivation of that private interest and the probable value, if any, that additional procedural protections would provide, and,

(3)   the interest that the government seeks to achieve.

*Systems Contractors Corp. v. Orleans Parish School Board*, 148 F.3d at 575, *citing Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 893.  Much like the BISD Vendor Rules, the Fifth Circuit explained that the State of Louisiana has similar requirements before a person could be disqualified from bidding on a project.

> [B]efore a bidder could be disqualified as `irresponsible'..., four procedural steps must be followed: (1) the bidder must be given formal written notice that the School Board is considering disqualifying the bidder; (2) the bidder must be given an opportunity to respond to the charges in writing, and, where feasible, an opportunity to meet with the Board to discuss the charges; (3) the bidder must be given formal written notice that he has been disqualified before the project is awarded; and, (4) the records of the disqualification hearing must be preserved so that the bidder can receive an appropriate judicial review of that decision if so desired.

*Id.*, *citing Haughton Elevator Div. v. State*, 367 So.2d 1161, 1166 (La. 1979).  At no time were Plaintiffs provided even the first element of written notice of Defendants' intent to disqualify them, much less any of the other procedural protections described in *Systems Contractors* before they were disqualified from participating in the BISD Tax-Sheltered Annuity Program.

"At a minimum, notice and a hearing are required before an individual may be deprived of his property or liberty interests."  *Systems Contractors Corp. v. Orleans Parish School Board,* 148 F.3d 571, 575 (5th Cir. 1998), *citing Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

> The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principal basic to our society.'  *Joint Anti-fascist Comm'n v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed.2d 817 (1951) (Frankfurter J.,

concurring).  The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

*Mathews v. Eldridge*, 424 U.S. at 333, 96 S.Ct. at 902.  At the very least, "notice and an opportunity to be heard were required before the School Board could disqualify [Plaintiffs from participation in the Program] and bar [Plaintiffs] from [participating in] future projects." *Systems Contractors Corp. v. Orleans Parish School Board*, 148 F.3d at 575.  Unlike the Plaintiff in *Systems Contractors*, no such notice or opportunity to be heard were provided to Plaintiffs before their authorizations were summarily removed.  Because Plaintiffs were entitled to rely on the BISD Vendor Rules, Article 6228a-5 and other applicable state laws to participate in the Tax-Sheltered Annuity Program, Plaintiffs had property and liberty interests for which they were entitled to due process.  That right to due process was denied by Defendants when Plaintiffs authorizations to solicit Tax-Sheltered Annuity Products were summarily removed, when another agent was given preferential treatment, in violation of the BISD Vendor Rules and state law, and when Defendant BISD provided Plaintiffs with no notice or opportunity to be heard on their disqualification and on Defendants' actions in assisting Mr. Soliz.

## B. Fourteenth Amendment Equal Protection

As set out in Plaintiffs' First Amended Original Complaint, Plaintiffs had received authority to solicit BISD employees for the sale of tax-sheltered annuities through May and September 2002, through the BISD Vendor Rules.  Thereafter, Defendant BISD, through Defendants Sauceda and Errisuriz, established a new and separate classification of Plaintiffs and

all others who they could not control for their illegitimate purposes, and did not authorize any of those vendors in this new classification to solicit their products at any BISD campus. Although Plaintiffs met all the requirements of the Vendor Rules, they were treated differently from David Soliz, who Defendants could control. Defendant BISD had no legitimate state interest in making this classification. Because Defendant Sauceda was the policymaker for Defendant BISD in this matter, his actions are attributable to BISD.

"The equal protection clause essentially requires that all persons similarly situated be treated alike." *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 931 (5th Cir. 1988), *citing City of Cleburne, Texas v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Plaintiffs do not challenge the constitutionality of the Vendor Rules themselves. Rather, Plaintiffs challenge Defendants' interpretation and application of those Vendor Rules in establishing a classification that discriminated against Plaintiffs. As in *Mahone*, "the District, in carrying out its statutorily prescribed...duties, applied a non-statutory requirement to [Plaintiffs] differently than it applied the requirement to other similarly situated [vendors,]" i.e., David Soliz. *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d at 932. By establishing a separate category of vendors Defendant could control for its own improper purposes, Defendant established an improper classification, in violation of Plaintiffs' equal protection rights. "As the Supreme Court explained long ago, equal protection of the law requires not only that laws be equal on their face, but also that they be executed so as not to deny equality." *Id. citing Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, (1886).

In addition, even if Defendants assert that Plaintiffs do not have an equal protection claim because they were treated the same as all others within their classification, i.e., agents Defendants could not control for their improper purposes, Plaintiffs were still denied the equal protection of the laws because the very classification itself is discriminatory, even if it was uniformly applied.

> A State cannot deflect an equal protection challenge by observing that in light of the statutory classification all those within the burdened class are similarly situated. The classification must reflect pre-existing differences; it cannot create new ones that are supported only by their own boot straps. `The Equal Protection Clause requires more of a state law than non-discriminatory application within the class it establishes.'

*Williams v. Vermont*, 472 U.S. 14 27, 105 S.Ct. 2465, 2474, 86 L.Ed.2d 11 (1985), *quoting Rinaldi v. Yeager*, 384 U.S. 305, 308, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966). If Defendant BISD had a legitimate reason for classifying Mr. Soliz different from all other agents, rationally related to this classification, then he and all other agents would not be similarly situated and there would be no equal protection violation. "If, however, the classification is not rationally related to a legitimate state interest, [Mr. Soliz and the other agents] are similarly situated and by refusing to [authorize all agents who they could not control for their improper purposes to solicit their products similarly], the District has violated the equal protection clause." *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d at 933, n.11.

"[T]he Supreme Court has developed a general rule for testing official action which is challenged on equal protection grounds: The challenge action is presumed to be valid and must be sustained if the classification drawn by the action is rationally related to a legitimate state

interest." *Id.* at 933.[1]    There are 3 elements to evaluate in determining the rationality of a classification. "First, the classification. Second, the purpose which the classification is designed to serve. And third, the 'fit' between the classification and the purpose; that is, whether the state could rationally determine that by distinguishing among persons as it has, the state could accomplish its legitimate purpose." *Id.*

Plaintiffs have identified the classification into which they were placed, and they complain of Defendants' interpretation of the Vendor Rules to establish that classification, as well as the very classification itself. Defendants, on the other hand, contend only that it was their "common practice...to limit access to their campuses," although they have identified no legitimate state purpose which this particular classification was designed to serve, nor have they identified any rational basis that would "fit" this particular classification to any allegedly legitimate state purpose. "[E]qual protection...requires a state actor to justify the classification made." *Id.* at 937. Defendants have made no attempt to do so, however.  As set out in Plaintiffs' First Amended Original Complaint, the actions taken by Defendants were undertaken with a conscious or deliberate indifference to Plaintiffs' known constitutional rights. Defendant BISD is liable for

---

[1] Defendants' reference to Plaintiffs' failure to allege they were members of a protected class, while relevant to some equal protection claims, does not apply in the present action. If Plaintiffs were to allege that they were part of a protected class, i.e, race, alienage or national origin, or that the classification affected rights specifically implicating the Constitution, the challenge state action would be subjected to a strict scrutiny analysis, and could be upheld only if the classification served a compelling state interest. *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. at 440, 105 S.Ct. at 3255. Similarly, classifications based on gender or legitimacy are subjected to a heightened review, and can be upheld only if the classification is "substantially related to a legitimate state interest." *Id.*  Because Plaintiffs do not allege they were members of a protected class requiring heightened scrutiny for their classification, the Court need only review whether Defendants' classification has a rational relationship to a legitimate state interest.

the actions of Defendant Sauceda as its policymaker, or the official with final policymaking authority in the area of what agents were allowed to solicit on BISD campuses. In addition, Defendant BISD's Board of Trustees was notified and given an opportunity to take action to avoid the purposeful discrimination, had it chosen to do so. Having refused that opportunity, Plaintiffs have established that Defendants purposeful discrimination motivated the deprivation of Plaintiffs' equal protection rights.

## C. Derivative Immunity

Defendant BISD alleges that individual Defendants Sauceda and Errisuriz are entitled to governmental immunity, and that Defendant BISD is therefore entitled to sovereign immunity through the immunity of the individuals. Defendant submits nothing more than its postulation.

Initially, in order for the individual Defendants to establish their entitlement to governmental, or qualified, immunity, they must establish that their conduct did not violate "clearly established...constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), *quoted in Izen v. Catalina*, 256 F.3d 324, 330 (5th Cir. 2001). No such allegation has even been made thus far. To establish liability against Defendant BISD, on the other hand, Plaintiffs must establish a policy of the District's final policymaker that caused the Plaintiffs to be subjected to a deprivation of their constitutional rights. *See Grandstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir. 1985), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). Whether the individual Defendants violated clearly established constitutional rights of which a reasonable

person would have known is separate and apart from the issue of whether Defendant BISD's custom or policy violated Plaintiffs' constitutional rights. Defendant is perhaps mixing liability under the Texas Tort Claims Act, which provides that a governmental entity is liable *only* under the doctrine of respondeat superior. TEX.CIV.PRAC. & REM. CODE, §101.021 (Vernon 1997); *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995). Such an application and interpretation does not apply in the federal context, however. Any immunity of Sauceda and Errisuriz, therefore, is irrelevant to the liability of Defendant BISD.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs **STEPHEN M. ANDRUS, FERNANDO DE PENA, VALENTIN PAZ** and **ANDRUS & PAZ**, *a partnership*, would respectfully request that upon consideration of Defendant Brownsville Independent School District's Motion to Dismiss, that such Motion be DENIED in its entirety, that these Plaintiffs be allowed to proceed to trial in this action, and that Plaintiffs be granted such other and further relief to which they may show themselves to be justly entitled, whether general or special, at law and in equity.

Signed on this the 26th day of November, 2002.

Respectfully submitted,

**LAW OFFICE**
**J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas  78520
Telephone    :  (956) 504-1100
Facsimile    :  (956) 504-1408

By: _____
J. Arnold Aguilar
State Bar No. 00936270
Federal Adm. No. 6822

Attorney for Plaintiffs,
STEPHEN M. ANDRUS, FERNANDO
DE PEÑA, VALENTIN PAZ and
ANDRUS & PAZ, *a partnership*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **PLAINTIFFS' RESPONSE TO DEFENDANT BISD'S MOTION TO DISMISS** has on this the 26th day of November, 2002, been forwarded via certified mail, return receipt requested to:

Ms. Elizabeth G. Neally
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Rd., Suite 9
Brownsville, TX 78520


Mr. Charles V. Willette, Jr.
Ms. Eileen M. Leeds
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, TX 78521


J. Arnold Aguilar

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, FERNANDO | § | |
| DE PEÑA, VALENTIN PAZ and | § | |
| ANDRUS & PAZ, *a partnership* | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | |
| | § | B - 02 - 143 |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA | § | |
| and EDDIE ERRISURIZ, JR. | § | **(JURY REQUESTED)** |

# ORDER

On the _____ day of _____, 2002, this cause came for hearing on

**Defendant Brownsville Independent School District's Motion to Dismiss.**

After hearing the argument of counsel thereon, the Court is of the opinion that Defendant

BISD's  Motion to Dismiss should be DENIED;

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Defendant BISD's

Motion to Dismiss is DENIED.

SIGNED on this the _____ day of _____, 2002.

_____
U.S. DISTRICT JUDGE

# EXHIBIT "A"

Phone # 956.548.2332

# PRO
# Financial Group
*Preferred Retirement Options*

## Attention to All Brownsville I.S.D. Faculty and Staff:

The TARDEE Tax and Financial Seminar is being presented weekly at your local PRO Financial office at 2035 Price Rd., Suite A. This seminar is specifically designed for school district employees and has been presented in over 350 districts statewide. *Come and find out for yourself why some individuals are afraid that you will learn this information and why they are trying to keep this presentation from coming to your campus. Find out why they would prefer that you remain "in the dark."*

One of the main reasons for the seminar's popularity is because it does not promote a company or product ... it is strictly **EDUCATIONAL** and **INFORMATIONAL**. Those who attend usually decide to immediately implement our powerful concepts and strategies. The financial plan may be based on the purchase of various financial products, including annuities and/or mutual funds. All who attend this seminar will find tremendous value in the information that is presented. These are a few typical responses from attendees:

> **"Why haven't I ever heard about this before?"**
> **"This sounds too good to be true!"**
> **"I wish I had been informed of this during my first year as an educator!"**
> **"Why has my current agent or my school district never informed me of all my benefits?"**

The seminar covers the following **key points:**
- Learn how to **accumulate Tax Deferred Dollars to supplement retirement income.**
- Learn how to determine whether you need mutual funds or an annuity.
- Learn how to compare annuities based on their features. Can you do better? **You be the judge.**
- Learn how to **immediately** increase your monthly cash flow and lower your taxable income.
- Learn how and why you should "become your own banker" by utilizing the **tax-free loan provision of the 403b Tax Shelter Annuity Program.** Use this system to:
  - ➢ **Eliminate existing debts** with *pre-tax dollars.*
  - ➢ Buy back **Years of Service** with *pre-tax dollars.*
  - ➢ **Fund College Education** with *pre-tax dollars.*
- Learn **Five** important facts about the Texas **Teacher Retirement System (TRS):**
  - ➢ How the **Partial Lump Sum** and **DROP** programs work. Determine which option is best for you.
  - ➢ How TRS affects your **ability to draw full Social Security**
  - ➢ How **retirement benefits are taxed**
  - ➢ Cost of **health insurance / Joint Survivor benefits** at retirement
  - ➢ How the **"Retire-Rehire" Program** works and why it is the greatest financial opportunity ever offered to educators in the state of Texas. *Learn how some employees are taking advantage of this program your district right now!*

The seminar will be followed by a question and answer session. Light refreshments will be provided. Please call our toll free number in advance to reserve a space. Seating is limited. Seminar **Dates and Times:**

Tuesday, November 13th, 6 p.m.   and   Wednesday, November 14th, 7 p.m.
Tuesday, November 20th, 6 p.m.   and   Wednesday, November 21st, 7 p.m.
Tuesday, November 27th, 6 p.m.   and   Wednesday, November 28th, 7 p.m.

*Securities offered through:*
*PlanMember Securities Corporation., 1160 Eugenia Place, Carpinteria, CA 93013 800.874.6910*
*Registered broker/dealer, investment advisor and member NASD/SPIC*

# EXHIBIT "B"



# Brownsville Independent School District

## Insurance Department Rm. #103
### (956) 548-8061    Fax (956) 548-7978

**To:**   All School Principals and Administrators

**From:**   Kenneth J. Lieck
Purchasing Administrator

**Date:**   April 11, 2001

**Re:**   Authorization to Solicit Tax-Sheltered Annuity Products (403(b))

---

This is to advise all Brownsville ISD School Principals and Administrators that Stephen Andrus, Registered Representative with Teachers Agency is hereby authorized to solicit tax-sheltered annuity products to eligible employees of the Brownsville Independent School District. He will be allowed to make individual sales presentations only at the request of the employee and consent from the school principal and/or administrator. Campus visitation date is from May 09, 2001 through May 07, 2002. Additionally, representative of listed company will abide by all solicitation polices in effect at each campus location.

BISD reserves the right to revoke or limit this privilege if any representative is not properly serving the best interests of the employees, or is disruptive to employees and BISD business.

For inquires with respect to this authorization, please contact Kenneth J. Lieck at (956) 548-8061.

# EXHIBIT "C"



# Brownsville Independent School District

1900 Price R   , Suite 307   Brownsville, Texas 78521-24   (956) 548-8000   Fax: (956) 548-8010

*Dr. Noe Sauceda*
*Superintendent of Schools*

TO:    PRINCIPALS/PROGRAM ADMINISTRATORS

FROM:   Kenneth J. Lieck
          Administrator/Purchasing

DATE:   September 24, 2001

RE:     CAMPUS VISITATION September 24, 2001
           through      September 23, 2002

        Name:         **FERNANDO DE PEÑA**
        Representing:  **TEACHERS AGENCY**

This letter will introduce **FERNANDO DE PEÑA** from **TEACHERS AGENCY.**

He/She has registered in the office of the Administrator of Purchasing and has received permission to call on the principals of the school in the district on behalf of his/her organization.

The principals have the authority to accept or deny the vendor access to the campus. Campus visitation should not interfere with the instruction program.

## THIS DOES NOT CONSTITUTE AN ENDORSEMENT OF ANY PROPOSAL OR OF ANY MATERIALS.

*BISD does not discriminate on basis of race, color, national origin, sex, religion, age or disability in employment or provision of services, programs or activities.*

# EXHIBIT "D"

Case 1:02-cv-10140 Document 16 Filed on DATE in TXSD Page 28 of 42

# Brownsville Independent School District

1900 Price R     , Suite 307   Brownsville, Texas 78521-24     (956) 548-8000   Fax: (956) 548-8010

*Dr. Noe Sauceda*
*Superintendent of Schools*

TO:   PRINCIPALS/PROGRAM ADMINISTRATORS

FROM:   Kenneth J. Lieck
          Administrator/Purchasing

DATE:   September 24, 2001

RE:   CAMPUS VISITATION September 24, 2001
          through          September 23, 2002

Name:            **SAM SAUCEDA**
Representing :   **TEACHERS AGENCY**

This letter will introduce **SAM SAUCEDA** from **TEACHERS AGENCY.**

He/She has registered in the office of the Administrator of Purchasing and has received permission to call on the principals of the school in the district on behalf of his/her organization.

The principals have the authority to accept or deny the vendor access to the campus. Campus visitation should not interfere with the instruction program.

**THIS DOES NOT CONSTITUTE AN ENDORSEMENT OF ANY PROPOSAL OR OF ANY MATERIALS.**

*BISD does not discriminate on basis of race, color, national origin, sex, religion, age or disability in employment or provision of services, programs or activities.*

# EXHIBIT "E"



# Brownsville Independent School District

## Insurance Department Rm. #103
### (956) 548-8061   Fax (956) 548-7978

**To:**   All School Principals and Administrators

**From:**   Kenneth J. Lieck
        Purchasing Administrator

**Date:**   December 11, 2000

**Re:**   Authorization to Solicit Tax-Sheltered Annuity Products (403(b))

---

This is to advise all Brownsville ISD School Principals and Administrators that Sylvia Petrarca, Raul Viada and Shirely Gilles Registered Representatives with Steven Andrus and Teachers Agency are hereby authorized to solicit tax-sheltered annuity products to eligible employees of the Brownsville Independent School District. They will be allowed to make individual sales presentations only at the request of the employee and consent from the school principal and/or administrator.   Campus visitation date is from December 11, 2000 through December 10, 2001.  Additionally, representatives of listed company will abide by all solicitation polices in effect at each campus location.

BISD reserves the right to revoke or limit this privilege if any representative is not properly serving the best interests of the employees, or is disruptive to employees and BISD business.

For inquires with respect to this authorization, please contact Kenneth J. Lieck at (956) 548-8061.

# EXHIBIT "F"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

STEPHEN M. ANDRUS, FERNANDO      §
DE PEÑA, VALENTIN PAZ and        §
ANDRUS & PAZ, *a partnership*    §
                                 §        CIVIL ACTION NO. .
VS.                              §
                                 §        B - 02 - 143
                                 §
BROWNSVILLE INDEPENDENT          §
SCHOOL DISTRICT, NOE SAUCEDA     §
and EDDIE ERRISURIZ, JR.         §        **(JURY REQUESTED)**

---

### AFFIDAVIT OF STEPHEN M. ANDRUS

---

STATE OF TEXAS           §
                         §
COUNTY OF CAMERON        §

BEFORE ME, the undersigned official, on this day appeared **STEPHEN M. ANDRUS**, who is personally known to me, and first being duly sworn according to law upon his oath deposes and says:

1.    My name is Stephen M. Andrus, over 18 years of age and am fully competent to make this affidavit.

2.    I am a principal in the partnership of Andrus & Paz, which has been together since April 1, 2001.  Andrus & Paz is a partnership organized to provide financial and retirement planning, including the sale of tax-sheltered annuities as defined by I.R.C. §403b.  Prior to and during 2001 and 2002, Andrus & Paz relied on the authorizations of Stephen Andrus, Fernando De Peña, Samuel Sauceda and Sylvia Petrarca to solicit tax-sheltered annuity products protected by §403b to BISD employees.  It is the business of Plaintiffs STEPHEN ANDRUS,

**EXHIBIT "F"**                                                    PAGE 1 OF 2

FERNANDO DE PEÑA, VALENTIN PAZ and ANDRUS & PAZ to solicit tax-sheltered annuity products to BISD employees and others, and Plaintiffs STEPHEN ANDRUS, FERNANDO DE PEÑA, VALENTIN PAZ and ANDRUS & PAZ relied on BISD's Vendor Rules & Regulations and applicable state laws to do so in making our livelihoods.

Further affiant sayeth naught.

_____
-STEPHEN M. ANDRUS

SUBSCRIBED AND SWORN TO BEFORE ME on the 22nd day of November, 2002, to certify which witness my hand and official seal.



_____
Notary Public, State of Texas

My Commission Expires:

03-27-03

**EXHIBIT "F"**                                                    PAGE 2 OF 2

# EXHIBIT "G"

# BROWNSVILLE INDEPENDENT SCHOOL DISTRICT

### VENDOR RULES & REGULATIONS
### FOR
### THE TAX-SHELTERED ANNUITY PROGRAM

### JULY 1994

### Table of Contents

I.   Introduction ................................................................................. 1

II.  General Instructions ..................................................................... 1

III. Vendor Application & Certification ................................................ 1

IV.  Vendor Administrative Procedures & Signature ............................ 3

Enclosures:
Certification Statement
Payroll  Reduction Agreement Form

I.    INTRODUCTION

The Tax-Sheltered Annuity (TSA) Program is authorized under section 403(b) of the Internal Revenue Code. The goal of the TSA Program is to provide eligible employees with a high-quality, supplemental retirement program.  The Brownsville Independent School District (BISD) allows certain vendors, including life insurance companies, mutual fund companies, administrators of custodial accounts, financial and investment companies qualified to conduct business in Texas, the opportunity to offer TSA contracts to eligible employees.  This document is intended to provide vendors and prospective vendors with the regulations governing the TSA Program within the School District.

II.   GENERAL INSTRUCTIONS

Vendors may apply for the privilege of marketing TSA contracts to employees of the BISD by responding to each item included under Section III of this document.  The response should include the following

A.   Certification Statement

B.   An original copy of this document signed by an officer of the company.

The response should be mailed to:

        Administrator, Tax-Sheltered Annuity Programs
        Insurance Office
        Brwonsville Independent School District
        1900 Price Road
        Brownsville, Texas  78521

Inquires may be directed to the Administrator at (210) 548-8061

It is the vendor's responsibility to ensure that each and every person representing the vendor to employees of BISD follow these regulations. Failure to follow these regulations may result in the loss of solicitation privileges.

III.  VENDOR APPLICATION

A.   Certification For All Vendors

An officer of the vendor with the authority to legally bind the company must certify to the following:

1.   Each and every TSA contract issued to employees of the BISD satisfies all requirements for income tax deferment under all applicable sections of the Internal Revenue Code.

2.   BISD has the right to disapprove any TSA contracts it deems not to be in the best interest of the employees.

3.   All tax-sheltered annuity contracts will comply in a timely manner with any state or federal mandates, IRS rulings, or opinions by the Texas Attorney General.

4.   Accurate records will be maintained on each participant in the TSA Program reflecting contributions received on a tax-deferred basis and identifying the account as a 403(b).

1

III.   VENDOR APPLICATION CONT'D

A.   Certification For All Vendors

5.   BISD's remittances and reports, submitted by the Payroll Office, will be accepted.

6.   Remittance to the participant's account(s) will be credited within one working day of receipt of the remittance. Remittance acknowledgements are to be sent directly to the participant.

7.   Each vendor agrees to accept fund transfers from other active vendors and to make transfers to other vendors. All transfers will be direct transfers in accordance with IRS Revenue Ruling 90-24 and the Vendor Administrative Procedures, Section IV, Item E.

8.   Requests for distribution, including hardship withdrawals, Domestic Relations Orders, and requests for loans will be administered in compliance with provisions of the applicable section (s) of the IRS code. Proper administration of these requests is the vendor's responsibility.

9.   A complete listing of all representatives assigned by the vendor to work with BISD employees must be filed with the BISD TSA Program Administrator. The procedures outlined under Section IV,G: Vendor Administrative Changes, will be followed when appointing additional representatives.

10.  Each representative involved in the sale and service of contracts will be provided with a copy of this document and will comply with the conditions as outlined in this document and all applicable state and federal laws.

11.  A Maximum Exclusion Allowance (MEA) calculation worksheet will be completed and submitted to the Payroll Office with each TSA Payroll Reduction Agreement.

12.  Each vendor may terminate participation with the TSA Program by providing written notice to each participant and the TSA Administrator at least 90 days in advance of the termination date.

B.  Other Documents And Information Required For Vendor Application Approval

The following information must be included with your certification package.

1.   Provide a specimen contract.

2.   Provide your Texas vendor identification number.

3.   Attach a sample of your monthly or quarterly statement to participants.

4.   Provide the name, title, address, telephone number and FAX number of the following individuals:

a.   Primary Contact:  The individual with primary responsibility for overseeing compliance with these Vendor Regulations.

b.   Representative Designator:  The individual responsible for adding or deleting representatives who are assigned to work with BISD.

c.   Remittance Contact:  The individual who should be contacted if questions arise concerning fund transfers or monthly remittances.

2

III.    VENDOR APPLICATION    CONT'D

B.    Other Documents And Information

d.    Customer Service Representative:  The individual who can provide general information to current or prospective participants concerning your company and contracts.  This individual should be located at either your headquarters or a regional office.  A toll-free telephone number is recommended.

5.    Provide mailing address to which the monthly remittance should be sent.

IV.    VENDOR ADMINISTRATIVE PROCEDURES

All TSA vendors must adhere to the following procedures. Failure to follow these procedures may result in the loss of the privilege to market TSA contracts to BISD employees.

A.    Eligibility For TSA Participation

All budgeted employees of the BISD are eligible to participate in a TSA Program.  The Payroll Office will determine if the employee is in a budgeted position.

B.    Enrollment Procedures

In order to participate in the TSA program, the following forms must be completed and submitted to the Payroll Office by either the employee or the vendor representative.

1.    BISD Payroll Reduction Agreement.

2.    A copy of the vendor enrollment application signed by employee.

3.    The proper Maximum Exclusion Allowance (MEA) worksheet for employees in the Teacher Retirement System of Texas.

C.    Procedure For MEA Calculations

1.    With the assistance and cooperation of the vendor, each participant is responsible to accurately complete the appropriate MEA worksheet and submit it to the Payroll Office.  The participant is solely responsible for the accuracy of the calculation.  The Payroll Office is authorized to accept completed worksheets only.

2.    A new MEA worksheet is required when:

a.    An increase in the monthly salary reduction is requested, or

b.    A TSA is reinstated after being canceled.

3.    A new MEA worksheet is not required when:

a.    A change of vendor is requested,

b.    A decrease in the monthly salary reduction is requested, or

c.    A request is made to cancel a TSA

3

IV    VENDOR ADMINISTRATIVE PROCEDURES CONT'D

    4.  Participants may be required to submit a new MEA calculation worksheet at other times as required by BISD. Failure to submit a new worksheet as requested could result in termination of an existing tax-sheltered annuity contract.

D.  Procedure For Changing Vendor or Reduction Amount

    1.  A request to change the monthly dollar amount will require a new Payroll Reduction Agreement. Participants are limited to one salary reduction change per calendar year.

    2.  Participants can change vendors by submitting a new Payroll Reduction Agreement to the Payroll Office. The change will be effective the following month after receipt of the completed forms by the Payroll Office.

    3.  Participants can cancel their participation in a TSA at any time during the year. They must submit a new Payroll Reduction Form indicating their option to stop the monthly contribution to their TSA. The cancellation will always be effective the last day of the month. Any changes received after the 15th day of the month will take effect the following month.

E.  Transfer Of Existing TSA Accounts

Total and partial transfers of TSA funds between 403(b) accounts are permitted. Only transfers to vendors authorized to do business with BISD are permitted. The following procedure applies to partial as well as total account transfers.

    1.  Receiving Vendor Responsibilities:

The receiving vendor will complete the direct-transfer form, including name of participant, account number, name of receiving and surrendering carrier, signature of employer, and other information. Requests For Transfer of Funds from unauthorized vendors are not permitted and will not be signed by the employer.

    2.  TSA Program Administrator Responsibilities:

If the receiving vendor is not on the BISD list of certified carriers, or the new representative is not registered to do business with BISD employees, the transfer will not be approved.

    3.  Surrendering Vendor's Responsibilities:

The surrendering vendor will transfer the funds directly to the receiving vendor FBO the employee within seven days of receiving the completed transfer form.

If the participant has requested a total transfer of the account and additional funds are subsequently received by the surrendering vendor, the surrendering vendor will be responsible for automatically transferring those additional funds directly to the new carrier.

4

IV    VENDOR ADMINISTRATIVE PROCEDURES CONT'D

F.  Solicitation Procedures

1.  Only TSA representatives certified by BISD are permitted to solicit eligible employees at BISD facilities as guests of the employee and the BISD administration.  They must abide by the rules established by the TSA Program Administrator and the Campus Administrator or individual in charge of each BISD location.  BISD reserves the right to limit or revoke the solicitation privileges of any representative or vendor at its discretion, if that representative or vendor is not properly serving the best interest of BISD employees or is disruptive to employees or BISD business.

2.  Representatives are allowed to make sales presentations on BISD premises only at the request of the employee.

3.  No bulk mailings and/or telephone solicitations are permitted to BISD offices or campus locations.

4.  Providing gifts or monetary rewards in exchange for information on newly hired employees is strictly prohibited.

5.  Representatives must abide by the parking regulations in effect at each BISD location.  Excessive parking violations may result in the loss of solicitation privileges.

6.  BISD employees are not allowed to provide copying or typing assistance, notary or other clerical services to representatives conducting business in BISD buildings.

7.  TSA vendors may supply sales literature for each BISD location. Brochures may be made available for employees at a location designated by the Campus Administrator or individual in charge of each BISD location.

G.  Vendor Administrative Changes

1.  Changes to existing information

Any changes to the individuals listed as Primary Contact, Representative Designator, Remittance Contact or Customer Service Representative must be made in writing to the TSA  Program Administrator.  Failure to keep this information current may result in the loss of solicitation privileges.

2.  Adding representatives

The vendor must notify the TSA Administrator of any additions or deletions to the list of vendor representatives authorized to do business at BISD.  New  representatives may not contact BISD employees until the vendor and its representatives have been approved by BISD.

3.  Notice of change or requests to add representatives must be sent to:

Administrator, Tax-Sheltered Annuity Program
Insurance Office
1900 Price Road
Brownsville, Texas  78521

IV    VENDOR ADMINISTRAT. PROCEDURES CONT'D

H.    Procedure For Obtaining Mailing Labels

Home address labels for BISD employees eligible to participate in the TSA Program may be purchased by contacting the Public Information Office at:

    Brownsville Independent School District
    Public Information Officer
    1900 Price Road, Suite 101
    Brownsville, Texas  78521

I.    Procedure For Termination of Vendor Participation in the TSA Program

1.    BISD may terminate a Vendor's participation in the TSA program by sending a written notice to each participant in the vendor's program and the primary contact for the vendor at least 90 days in advance of the termination date.

2.    A vendor may terminate participation in the TSA program by sending a written notice to each participant in the program and the TSA Administrator at least 90 days in advance of the termination date.



This agreement is signed by:

                        _____
                        Signature (Vendor Authorized Officer)


                        _____
                        Official Title


                        _____
                        Date


                        BROWNSVILLE INDEPENDENT SCHOOL DISTRICT


                        _____
                        Employer Signature


                        _____
                        Date

6

VENDOR CERTIFICATION STATEMENT

The undersigned does hereby declare that they have read the vendor rules and regulations for the Tax-Sheltered Annuity Program of the Brownsville Independent School District, and with full knowledge for the rules and regulations, does hereby agree to furnish annuity contracts and supplemental retirement services to eligible employees of the Brownsville Independent Schoool District in full accordance with Section 403(b) of the Internal Revenue Code.  The vendor also agrees to duplicate this agreement and its conditions, and present a copy to each vendor representative authorized to solicit tax sheltered annuities to BISD.

I certify that _____ and its representatives will

(Name of Vendor)

comply with the rules and regulations as described in the BISD

Tax Shelter Annuity Program document.

_____
Signature

_____
Typed/Print Name

_____
Title

_____
Date