United States District Court
Southern District of Texas
FILED

MAR 0 6 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, FERNANDO DE PEÑA, VALENTIN PAZ AND ANDRUS & PAZ, A PARTNERSHIP | § § § § | |
| VS. | § § | CIVIL ACTION NO. B-02-143 JURY REQUESTED |
| BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, NOE SAUCEDA AND EDDIE ERRISURIZ, JR. | § § § § | |

## DEFENDANTS NOE SAUCEDA AND EDDIE ERRISURIZ'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF TO DEFENDANTS' MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, NOE SAUCEDA and EDDIE ERRISURIZ, JR. named Defendants in the above-styled and numbered cause and files this their Response to Plaintiffs' Supplemental Brief to Defendants' Motion to Dismiss under F.R.C.P. 12 (b) (6) and in support thereof, would respectfully show unto the court as follows:

I.

In Plaintiffs' First Amended Complaint, which is the subject of Defendants' Motions to Dismiss, Plaintiffs complained of a violation of their 14th Amendment rights under 42 U.S.C. §1983 because Defendants allegedly did not allow them to sell their §403(b) (tax-deferred) annuities at BISD. Plaintiffs did not articulate what their property interest was, but argued that they were deprived of the right to sell these annuities without due process. Thus, in Plaintiffs' First Amended Original Complaint, Plaintiffs must be claiming that they had a property interest in being able to sell annuities to BISD employees.

As set forth in Defendants' Motion to Dismiss, the first step in any 14th Amendment analysis is the showing of a property interest created by something other than Supreme Court dicta. The Constitution does not create property interests; rather, they are created by existing rules or understandings that stem from an independent source such as state law. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2101, 33 L.Ed.2d 548 (1972). To determine whether a property right exists, a court must look to the applicable state law, *Bishop vs. Wood*, 426 U.S. 341, 344 (1976); . *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265, 273 (1982). *Wallace v. Shreve Memorial Library*, 97 F.3d 746, 748 (5th Cir.1996), in this case, Texas state law. The U.S. Supreme Court further recognized state law as the initial source of a property interest when it stated "[i]t is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law..." *Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976.)

In Plaintiffs' Response to Defendants' Motion to Dismiss they utterly fails to show any source for their claim of a property interest. Plaintiffs are now supplementing that Response by materially changing the interest they claim was taken from them, using as an excuse for the change that it appeared that Defendants were arguing that Plaintiffs were not BISD employees. That is disingenuous of Plaintiffs' attorney because no such argument was made. The arguments set forth in this Supplemental Brief are the exact same arguments used in a sister case before Judge Tagle.[1] In that case Plaintiff was an independent contractor just as in this one. In fact, the Plaintiffs are

---

[1] The style of that case is *Dino X. Chavez v. BISD and Noe Sauceda*, Cause No. B-02-128, United States District Court for the Southern District of Texas, Brownsville Division. Plaintiff's Motion for Reconsideration is attached as Exhibit "A."

partners. There, however, Plaintiff is trying to introduce these same arguments to try to overcome a dismissal of his due process claim, not because there was an issue as to Plaintiff's employment status.

In this case, Plaintiffs are now attempting to change the "property interest," (most likely because their arguments are so weak they are grasping for straws) to claim their property interest was their ability to participate in their chosen profession. They claim that what Dr. Sauceda and Mr. Errisuriz, and BISD did was to prevent them from selling tax-deferred annuities. They do not actually describe the interest in those words because it would be a misrepresentation to this Court, instead they narrow their interest to be that they were prevented for a few short months from accessing the BISD campuses and being able to set up shop in the teachers' lounges to peddle their wares.

Property interests are not so narrowly defined by any Court. Plaintiffs are suing because they would have had to work for their sales, pound the pavement, instead of sitting in an air-conditioned lounge like wolves in sheep's clothing. Ease of sale is not a constitutional right. Plaintiffs were not prevented in any way from calling teachers, visiting teachers at their homes, contacting other School Districts (which Plaintiffs did do), inviting teachers to their office to make presentations, in effect, any of the "old fashioned" ways of selling one's product.

More to the point, Plaintiffs have completely failed to produce any legal support for the inference that what they claim as a property interest has been so recognized by a Texas Court. Plaintiffs strive to support their position by citing federal cases, going as far back as 1959, yet as the Supreme Court has stated in very clear language, "these interests attain this constitutional status by virtue of the fact that they have been ***initially recognized and protected by state law...***" *Id.*

It is not far-fetched to take this complaint to the realm of the ridiculous. If an insurance salesman has a property interest in selling his products in the teachers' lounges of BISD, then so

does the vacuum cleaner salesman, the car salesman, the auto insurance salesman, *ad infinitum*. This Court does not need a plethora of legal authority to prove what does not exist. It need rely on nothing more than common sense, and the fact that Plaintiffs' First Amended Original Complaint does not set forth a property interest, nor does their Supplemental Brief, which materially alters the claims in their complaint.

## II.

Defendants reiterate that Plaintiffs claims for fraud should be dismissed as they are not actionable as presented in Plaintiffs' First Amended Original Complaint. Additionally, both these Defendants are entitled to immunity under the Texas Education Code §22.051 TEC[2] as well as §101.056 Tex. Civ. Prac. & Rem. Code.

WHEREFORE, PREMISES CONSIDERED, Defendants Dr. Noe Sauceda and Eddie Errisuriz, Jr., pray that this Court find that they are entitled to a dismissal of all claims filed by Plaintiffs, that Plaintiffs have no constitutionally protected property interest, and that Plaintiffs have failed to properly plead any other cause of action for which relief may be granted or for which Defendants to not have immunity, and for all other relief to which Defendants may show themselves to be entitled.

---

[2] "(a) A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students." §22.051 Texas Education Code.

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Ste. 460
3505 Boca Chica Blvd.
Brownsville, Texas 78521
Telephone: (956) 541-1846
Facsimile: (956) 541-1893

By: _____
Eileen M. Leeds
State Bar No. 00791093
USDC Adm. No. 16799

Charles Willette, Jr
State Bar No. 21509700
USDC Adm. No. 1937

**ATTORNEY FOR DEFENDANTS NOE SAUCEDA AND EDDIE ERRISURIZ, JR.**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 6th day of March, 2003, a true and correct copy of the above and foregoing instrument has been forwarded to opposing counsel of record as noted hereunder.

**VIA CM/RRR # 7002 0460 0000 6635 1998**
Mr. J. Arnold Aguilar
Law Offices of J. Arnold Aguilar
Artemis Square, Ste. H-2
1200 Central Blvd.
Brownsville, Texas 78520

**VIA REGULAR MAIL**
Elizabeth G. Neally
Roerig, Oliveira, & Fisher, L.L.P.
855 W. Price Road, Ste. 9
Brownsville, Texas 78520

_____
Eileen M. Leeds

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, FERNANDO DE PEÑA, VALENTIN PAZ AND ANDRUS & PAZ, A PARTNERSHIP | § § § § | |
| VS. | § § | CIVIL ACTION NO.  B-02-143 JURY REQUESTED |
| BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, NOE SAUCEDA AND EDDIE ERRISURIZ, JR. | § § § | |

## ORDER GRANTING DEFENDANTS NOE SAUCEDA AND EDDIE ERRISURIZ'S MOTION TO DISMISS

On this the _____ day of _____, 2003, came on for consideration Defendants Noe Sauceda and Eddie Errisuriz's Motion to Dismiss. Having examined same and considered the arguments of counsel, this Court is of the opinion that said Motion should be GRANTED.

IT IS THEREFORE ORDERED that Defendants Noe Sauceda and Eddie Errisuriz's Motion to Dismiss is GRANTED. It is further ORDERED that all of Plaintiff's claims be and are DISMISSED with prejudice.

SIGNED on this _____ day of _____, 2003.

_____
JUDGE PRESIDING

xc:

Ms. Eileen M. Leeds, Willette & Guerra, L.L.P., 3505 Boca Chica, Ste. 460 , Brownsville, Texas 78521
Mr. J. Arnold Aguilar, Law Offices of J. Arnold Aguilar, Artemis Square, Ste. H-2, 1200 Central Blvd., Brownsville, Texas 78520
Ms. Elizabeth G. Neally, Roerig, Oliveira, & Fisher, L.L.P., 855 W. Price Road, Ste. 9, Brownsville, Texas 78520

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, FERNANDO DE PEÑA, VALENTIN PAZ AND ANDRUS & PAZ, A PARTNERSHIP | § § § § | |
| VS. | § § | CIVIL ACTION NO. B-02-143 JURY REQUESTED |
| BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, NOE SAUCEDA AND EDDIE ERRISURIZ, JR. | § § § § | |

**ORDER SETTING HEARING ON DEFENDANTS NOE SAUCEDA AND EDDIE ERRISURIZ'S MOTION TO DISMISS**

On this the _____ day of _____ 2003, came on to be considered Defendants Noe Sauceda and Eddie Errisuriz's Motion to Dismiss. After considering same, the Court is of the opinion that a hearing should be held.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Defendants Noe Sauceda and Eddie Errisuriz's Motion to Dismiss be and is hereby set for hearing on the _____ day of _____, 2003 at _____ a/p.m. o'clock in this Honorable Court.

SIGNED FOR ENTRY on this the _____ day of _____, 2003.

_____
JUDGE PRESIDING

xc:

Ms. Eileen M. Leeds, Willette & Guerra, L.L.P., 3505 Boca Chica, Ste. 460, Brownsville, Texas 78521
Mr. J. Arnold Aguilar, Law Offices of J. Arnold Aguilar, Artemis Square, Ste. H-2, 1200 Central Blvd., Brownsville, Texas 78520
Ms. Elizabeth G. Neally, Roerig, Oliveira, & Fisher, L.L.P., 855 W. Price Road, Ste. 9, Brownsville, Texas 78520

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DINO X. CHAVEZ | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | B - 02 - 128 |
| and RANDY DUNN, MARILYN DEL | § | |
| BOSQUE-GILBERT and HUGH EMERSON, | § | |
| JR., in their official capacities as Board | § | |
| Members of Brownsville Independent | § | |
| School District | § | |

## MOTION FOR RECONSIDERATION OF DISMISSAL OF PLAINTIFF'S DUE PROCESS CLAIMS

TO THE HONORABLE U. S. DISTRICT COURT:

COMES NOW **DINO X. CHAVEZ**, Plaintiff and files this his Motion for Reconsideration of this Court's Order of January 16, 2003, dismissing his Due Process Claims, pursuant to the Fourteenth Amendment to the U.S. Constitution, and for such motion would respectfully show unto the Court as follows:

### SUMMARY OF MOTION

Pursuant to this Court's Order of January 16, 2003, Plaintiff's claim that Defendant Brownsville Independent School District (hereinafter BISD) violated his rights to due process, protected by the Fourteenth Amendment to the U.S. Constitution, was dismissed. That claim was dismissed after the Court determined "that Plaintiff [had] not demonstrated that a property interest exists for insurance service providers who are neither employed by BISD nor bound by contract to

DEFENDANT'S EXHIBIT "A"

BISD." Plaintiff would respectfully show unto the court, however, that Plaintiff in fact did have a protected property and liberty interest in following his chosen profession and in holding specific private employment, free from unreasonable government interference. Plaintiff was entitled to due process protections when his property or liberty interests are involved, even where the Plaintiff is an independent insurance service provider who is not employed by BISD, nor bound by contract to BISD.

## ARGUMENT AND AUTHORITIES

Plaintiff Chavez does not dispute that he did not have an independent contract with Defendant BISD. Although Plaintiff's prior pleadings may not have identified his role with sufficient clarity, Mr. Chavez was an independent insurance agent, authorized by American Family Life Insurance Company of Columbus (hereinafter AFLAC) to sell its products. Mr. Chavez was also appointed by AFLAC as a Regional Sales Coordinator, supervising other AFLAC appointed agents in the Rio Grande Valley area. At all material times herein, AFLAC did not have any employees in the Rio Grande Valley area; rather all of AFLAC's business in the Rio Grande Valley area was done through independent insurance agents such as Mr. Chavez, who had been similarly appointed, or authorized, to sell AFLAC policies.

Defendant BISD annually appoints a Third Party Administrator (hereinafter TPA) for its Cafeteria Insurance Plan. During the years 1999, 2000, and 2001, Plaintiff Chavez's proposal to have AFLAC appointed as Third Party Administrator was awarded the contract for those services. That agreement provided that Mr. Chavez and AFLAC would provide Third Party Administrator services for Defendant BISD at no charge, in exchange for the opportunity to solicit ancillary insurance products to BISD employees. The ancillary products Mr. Chavez and his associates

would solicit included accidental injury and death, heart and stroke, and a hospital supplement, in addition to the health, dental and cancer policies previously available on the Cafeteria Plan. The insurance forms were accordingly modified to include options for employees to purchase those ancillary products and have the premiums deducted from the employees' paychecks

In exchange, the Third Party Administrator services Mr. Chavez provided included coordinating the scheduling and meeting with all BISD employees who wished to meet to discuss their §125 Cafeteria Plan elections for the coming year, discussing the technical details of the cafeteria plan with each employee, answering all questions they might have and completing all paperwork (salary redirection agreements), through independent sales associates directly under his control. Once the enrollment was completed, Plaintiff Chavez and his staff would compile all the information collected in the salary redirection agreements, review it for accuracy, and organize it to conform to BISD's requirements, requiring hundreds of man-hours. In addition, throughout the year Plaintiff Chavez personally would process practically all claims for benefits submitted by all BISD employees, evaluate and resolve all concerns relating to policies and their terms, respond to all employee requests for policy changes, whether on AFLAC's policies or on other companies' policies, collect, record and submit all AFLAC policy payments to AFLAC, and provide numerous other services relating to the Cafeteria Plan. All told, Plaintiff Chavez's services required thousands of man-hours per year. During 1999, 2000, and 2001, Plaintiff Chavez and AFLAC provided all appropriate Third Party Administrator services to BISD. There should be no question, therefore, that a significant part of Plaintiff Chavez's chosen profession involved selling ancillary insurance products to BISD employees and providing Third Party Administrator services to BISD. The facts described above are set out in **Exhibit "A,"** attached.

Although Plaintiff Chavez was not an employee of Defendant BISD, there should be no question that Defendant BISD understood Plaintiff Chavez to be its Third Party Administrator. *See* **Exhibit "B"** (Defendant Sauceda's letter of November 29, 2001, addressed to Plaintiff Chavez, notifying him of Defendants' "intent to non-renew [his] services as [Defendants'] Third Party Administrator for [Defendants'] Cafeteria Plan" and "directing [Plaintiff] to cease and desist all contact with school personnel during school business hours.") Through this letter, Plaintiff Chavez was effectively dismissed as BISD's Third Party Administrator. Through this letter, Defendants Sauceda and BISD took from Mr. Chavez his ability to continue providing Third Party Administrator services. In addition, that letter also notified Plaintiff that Defendants were rejecting his proposal for renewal of the Third Party Administrator contract. In order words, Defendants would not consider his proposal for the following year's services, through which he would have been entitled to sell AFLAC's ancillary products. Although the BISD Insurance Committee ultimately approved the proposal submitted by Plaintiff Chavez to have AFLAC appointed as the Third Party Administrator, Sauceda's letter prohibited Plaintiff Chavez from having any contact with school personnel during school business hours, providing further that security services would be contacted if he was found on school district property. **Exhibit "B."** As a result, Plaintiff Chavez was dismissed from his existing position, and he was prevented from engaging any further in his chosen profession selling AFLAC ancillary products, without any notice or opportunity to be heard.

The particular timing of Defendant Sauceda's and BISD's order to "cease and desist" all contact with school personnel was designed to prevent Plaintiff Chavez from being able to engage in his chosen profession. As Defendants were aware, the entire enrollment process was designed, and required, to be conducted after the contract was awarded on or about November 29, 2001, and it had to be completed before all BISD employees were released for the Christmas break, on or about

December 20, 2001 since any new contracts, or renewals, went into effect on January 1. **Exhibits "A" and "C."** As a result, practically all sales of AFLAC ancillary products had to be made during that two-week time period, and the profits made during that time period were what was necessary to sustain Plaintiff Chavez throughout the year in providing his Third Party Administrator services. Although Plaintiff's prior counsel petitioned Defendants Sauceda and BISD's Board of Trustees to allow Mr. Chavez back on BISD's campuses, and to allow him to continue his prior work through AFLAC on December 4, 2001, no action was ever taken on that request. **Exhibit "D."** Rather, by December 7, 2001, Plaintiff was notified that because of Defendant Sauceda's letter of November 29, Mr. Chavez was removed as the servicing agent to BISD, and he was directed to refrain from any further contact with BISD. **Exhibit "E."**

As the U.S. Supreme Court has previously explained, work opportunities may not be "severely limited on the basis of a fact determination rendered after a hearing which failed to comport with out traditional ideas of fair procedure," even where the complaining party is not an employee of the governmental entity, but is instead privately employed. *Green v. McElroy*, 360 U.S. 474, 508, 79 S. Ct. 1400, 1419, 3 L. Ed. 2d 1377 (1959). It is undisputed that Plaintiff Chavez's proposal on behalf of AFLAC was ultimately awarded the Third Party Administrator contract. Plaintiff Chavez was prevented, however, from participating in his chosen profession after AFLAC was awarded the Third Party Administrator contract. Sales of ancillary products are almost exclusively made during the enrollment procedure, which occurred between approximately December 5 and December 20, 2001, and at no other time during the year. It was during this two-week period that over 95% of all sales of AFLAC ancillary products was made, through which Plaintiff Chavez was to be able to earn enough commissions to justify providing the Third Party

Administrator services he had previously provided throughout the year. By failing to allow Mr. Chavez on school district property during this time period, however, he was prevented from following his chosen profession or making any sales of AFLAC ancillary products.

Just as a federal agency "cannot arbitrarily interfere with [a private employee's] continuing employment relationship with [his employer]" without depriving the employee of a property interest, so too BISD could not interfere with Plaintiff Chavez's employment relationship with AFLAC without affecting a deprivation of his property interests. *See Fed. Deposit INS. Corp. v. Mallen*, 486 U.S. 230, 240, 108 S. Ct. 780, 1787, 100 L. Ed. 2d 265 (1988). Plaintiff's "interest in continued employment is without doubt an important interest that ought not be interrupted without substantial justification." *Id.* 1789.

The Fifth Circuit has similarly acknowledged the existence of a property right in private employment, with which the government cannot interfere. "It has been stated that an individual's right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the "liberty" and "property" concepts of the Fifth Amendment." *VanderZee v. Reno*, 73 F.3d 1365, 1370 (5th Cir. 1996). *Vander Zee* involved a Texas bank executive who was complaining of action taken by the FDIC following his indictment, which precluded his future employment. The Fifth Circuit explained that had the Plaintiff alleged the Defendant coerced or caused his termination from his private employer, that claim would have been allowed to stand. *Id.* at 1370-71.

There should be no question that Plaintiff Chavez had a property right to continued employment without unreasonable governmental interference. "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth]

Amendment to secure." *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915). Indeed, the Supreme Court has repeatedly held that individuals enjoy due process and equal protection rights to engage in private employment. *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923) ("Without doubt, ['liberty' in the Fourteenth Amendment] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life . . . ."); *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238-39, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957) ("A state cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment."); *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959) ("[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment . . . .").

The Fifth Circuit has similarly acknowledged these rights. *San Jacinto Savings & Loan v. Kocal*, 928 F.2d 697, 704 (5th Cir. 1991) (Plaintiff's "property interest in the profits of her business and her liberty interest in operating her business do rise to the level of protectible interests."); *Phillips v. Vandygriff*, 711 F.2d 1217, 1222-23 (5th Cir. 1983), cert. denied, *Vandygriff v. Phillips*, 469 U.S. 821, 105 S.Ct. 94, 83 L.Ed.2d 40 (1989) ("The freedom to pursue any of the 'common occupations' has long been held to be a liberty interest."). *See also, Shaw v. Hospital Authority*, 507 F.2d 625, 628 (5th Cir. 1975); *Ferrell v. Dallas Independent School District*, 392 F.2d 697, 704 (5th Cir. 1968). Although Plaintiff Chavez did not have an employment contract with Defendant BISD, he still maintained property and liberty interests in being able to continue his private employment and to follow his chosen profession free from unreasonable governmental interference by Defendants.

"'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 1748, 6 L. Ed. 2d 1230 (1961); *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 162-63, 71 S. Ct. 624, 643, 95 L. Ed. 817 (1951)(concurring opinion). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrisey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972). Whether the procedures actually applied were "constitutionally sufficient requires analysis of the governmental and private interests that are affected." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976). As the Supreme Court has explained, its

> prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* 424, U.S. at 334-35, 96 S. Ct. at 903.

Plaintiff has established that the actions of Defendants affected his significant private interest, in that he was prevented from engaging in his chosen profession because of Defendants' actions. Defendants, on the hand, have provided no evidence of any significant interest in immediately suspending him from engaging in his chosen profession and from participating in the enrollment process and the anticipated sales of ancillary products. In addition, Defendant's unilateral termination of Plaintiff Chavez, without any timely opportunity to be heard, carried with it a significant risk that Mr. Chavez would be deprived of his ability to effectively engage in his chosen profession within that two-week time period when over 95% of all sales were made. Rather

than the draconian measure of immediate expulsion from all BISD campuses, Defendants could have employed an alternative or substitute procedure to assess the merits of Defendant Sauceda's allegations. Defendants could have simply notified Mr. Chavez of the allegations and set the matter for consideration at a time when it would not interfere with Mr. Chavez's ability to engage in his chosen profession, such as after the enrollment period, and the issues could have been effectively addressed at that time. In fact, four of the BISD Trustees ultimately notified AFLAC's Vice President that they disagreed with Defendant Sauceda's allegations, although those notices were not submitted until after the expiration of the enrollment period, and after AFLAC removed Mr. Chavez from the BISD account and ordered him to refrain from any further contact with BISD. **Exhibit "F."** In addition, Defendant Sauceda's directives in his November 29, 2001 letter have not been withdrawn, and Plaintiff Chavez is presumably still barred from all BISD campuses.

As for the third factor, BISD's interest in removing Mr. Chavez immediately, without any notice or opportunity to be heard, Defendants have not identified any interest that would justify the immediate exclusion of Mr. Chavez from any contact with all school personnel. Nor have Defendants identified any burden or harm they would have suffered by allowing the matter to be set for consideration after the enrollment period, at a time that would not affect Mr. Chavez's ability to carry on his livelihood. Such an alternative procedure would have resulted in minimal delay and inconvenience to Defendants. Defendants have identified no reason why Plaintiff Chavez's exclusion from BISD campuses required *immediate* attention, however. Providing Mr. Chavez with a hearing and appropriate due process after the enrollment period would have imposed only a *de minimus* burden on Defendants Sauceda and BISD. In contrast, Defendants' unilateral action in excluding Mr. Chavez from contacting school personnel during the crucial two-week enrollment period had a debilitating effect on his ability to engage in his chosen profession. Because this was

the only time during the entire year that he would have to make sufficient sales and to earn sufficient commissions to sustain him throughout the year, Defendants expulsion of Plaintiff had a severe and debilitating effect on his ability to engage in his chosen profession, and its ramifications continue.

For the reasons set out above, Plaintiff Dino Chavez would respectfully request that the Court reconsider its Order dismissing Plaintiff's due process claims, and allow Plaintiff to proceed with those claims in the prosecution of this action.

WHEREFORE, PREMISES CONSIDERED, Plaintiff **DINO X. CHAVEZ** respectfully requests that upon consideration of this Motion for Reconsideration of Dismissal of Plaintiff's Due Process Claims that the Court set this matter for hearing at its earliest convenience, and upon conclusion of such hearing that the Court reinstate Plaintiff 's due process claims and allow this matter to proceed accordingly, and that Plaintiff be granted such other and further relief to which he may show himself to be justly entitled, whether general or special, at law and in equity.

Signed on this the 19th day of February, 2003.

                                    Respectfully submitted,

                                    **LAW OFFICE**
                                    **J. ARNOLD AGUILAR**
                                    Artemis Square, Suite H-2
                                    1200 Central Boulevard
                                    Brownsville, Texas  78520
                                    Telephone     : (956) 504-1100
                                    Facsimile      : (956) 504-1408

By: _____
         J. Arnold Aguilar
         State Bar No. 00936270
         Federal Adm. No. 6822

Attorney for Plaintiff,
DINO X. CHAVEZ


### CERTIFICATE OF CONFERENCE

      I, J. Arnold Aguilar, hereby certify that I have conferred with Defendants' counselors with regard to the Motion for Reconsideration of Dismissal of Plaintiff's Due Process Claims, and they responded as follows:

Elizabeth Neally        __X__          _____          _____
                           opposed          unopposed        unavailable


Eileen Leeds.          __X__          _____          _____
                           opposed          unopposed        unavailable

                                                           _____
                                                           J. Arnold Aguilar

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **MOTION FOR RECONSIDERATION OF DISMISSAL OF PLAINTIFF'S DUE PROCESS CLAIMS** has on this the _20th_ day of February, 2003, been forwarded via certified mail, return receipt requested to:

Ms. Elizabeth G. Neally
Mr. Ricardo Morado
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Rd., Suite 9
Brownsville, TX 78520

Mr. Charles V. Willette, Jr.
Ms. Eileen Leeds
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, TX 78521

_____
J. Arnold Aguilar