24

IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 1 1 2003

Michael N. Milby
Clerk of Court

| | § | |
|---|---|---|
| STEPHEN M. ANDRUS, | § | |
| FERNANDO DE PENA, | § | |
| VALENTIN PAZ and | § | |
| ANDRUS & PAZ, a Partnership | § | |
| | § | |
| vs. | § | B-02-143 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | |
| and EDDIE ERRISURIZ, JR. | § | |
| | § | |

**DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT'S
REPLY TO PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

     **COMES NOW, BROWNSVILLE INDEPENDENT SCHOOL DISTRICT,** one of the Defendants in the above-styled and numbered cause and files and serves this its Reply to Plaintiffs' Supplemental Brief in Response to Defendant's Motion to Dismiss, and would respectfully show the court the following.

**I.**

    1.    Plaintiffs cite supplemental argument and authorities for the proposition that Plaintiffs are entitled to due process protection under the Fifth and Fourteenth Amendment to protect their chosen profession. Plaintiffs' reliance on **Vander Zee v. Reno** only partially states the holding of the court. First of all, the Fifth Amendment applies to claims concerning federal

DEFENDANT BROWNSVILLE IS'S REPLY TO PLAINTIFFS' SUPPLEMENT BRIEF IN RESPONSE TO MOTION TO DISMISS
23164 - Mtn Rspns to Rply Mtn Dismiss wpd

Page 1

governmental actions.  There is no dispute that there are no federal actor in this lawsuit.  Second, **Vander Zee**, specifically stated: *"Section 1983 does not, however, provide a right to be free of injury whenever a government actor may be characterized as a tort feasor."* **Vander Zee vs. Reno**

2.      Vander Zee was a bank executive who reported large deposits from persons indicted for drug trafficking.  A federal agency settled money laundering violations with the employer and plaintiff sued the agency for violations of the United States Constitution,  Amendment V, due process, claiming that his rights had been violated.  The court concluded that plaintiff did not allege facts sufficient to show deprivation of liberty interest under stigma plus infringement test or defacto licensing which was required for him to proceed.  Regardless of that, plaintiff's claims were properly dismissed because he did not allege deprivation of an interest.

3.      In this case, Plaintiffs admitted that they were never employees of the Brownsville Independent School District.  They never received any funds directly from the Brownsville Independent School District, instead, their sole basis for their claim is that they were denied the right to solicit employees on Brownsville Independent School District property.  Instead, Plaintiff's sole claim to a property right is that they were prohibited from soliciting their product on BISD property.  Were the Court to allow Plaintiff to proceed would encourage any person who has ever been denied the right to solicit sales of its product on the School District property.

4.      This hardly rises to a termination of employment and there is no way that this can be construed as either a property or liberty interest to which Plaintiffs were deprived by the Brownsville Independent School District.  Plaintiffs' attempt to confuse the court with claims of termination of employment as was stated in paragraph 3, page 3, *"there should be no question that*

DEFENDANT BROWNSVILLE IS'S REPLY TO PLAINTIFFS' SUPPLEMENT BRIEF IN RESPONSE TO  MOTION TO DISMISS
23164 - Mtn Rspns to Rply Mtn Dismiss wpd

**Page 2**

*plaintiffs had a property right to continued employment with unreasonable governmental inference"* is a mis-statement of the facts of this case as asserted in Plaintiffs' First Amended Original Complaint.

5.    The court in **Vander Zee** concluded as should this court that the loss of the freedom of choice in the job market is not a protected constitutional right *"neither harm to reputation nor the consequent impairment of future employment opportunities are constitutionally cognizable injuries."* **Vander Zee**, *73 F.3d at 1369 citing* **Siegert v. Gilley**, *500 U.S. 226, 233-35, 111 S.Ct. 1789, 1794 (1999), and* **State of Texas v. Thompson**, *70 F.3d 390, 392 (5ᵗʰ Cir. 1995).*

6.    Defendant Brownsville Independent School District continues to urge its motion for summary judgment and request that Plaintiff's claims, in all things, be dismissed in their entirety.

**WHEREFORE, PREMISES CONSIDERED,** Defendant **BROWNSVILLE INDEPENDENT SCHOOL DISTRICT** prays that Plaintiffs' suit be dismissed at Plaintiffs' cost, and for such other and further relief to which Defendant may be entitled, either at law or in equity.

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER, L.L.P.**
855 W. Price Road, Suite 9
Brownsville, Texas 78520
Telephone: (956) 542-5666
Facsimile: (956) 542-0016

Attorneys for Petitioner

By_____
ELIZABETH G. NEALLY
Texas Bar No. 14840400
Federal Bar No. 8044

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing **DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT'S REPLY TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS** has been mailed, Certified, Return Receipt Requested vis U.S. Postal Service to counsel of record, to wit:

J. Arnold Aguilar
**Law Offices of J. Arnold Aguilar**
Artemis Square, Suite H-2,
1200 Central Boulevard
Brownsville, Texas 78520
[CM/RRR 7160 3901 9844 1943 1567]

Eileen Leeds
**Willette & Guerra**
3505 Boca Chica Boulevard, Suite 460
Brownsville, Texas 78521
[CM/RRR 7160 3901 9844 1943 1574]

on this ___/___ day of March, 2003.

Elizabeth G. Neally

IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS,<br>FERNANDO DE PENA,<br>VALENTIN PAZ and<br>ANDRUS & PAZ, a Partnership | §<br>§<br>§<br>§<br>§<br>§ | |
| vs. | §<br>§ | B-02-143 |
| BROWNSVILLE INDEPENDENT<br>SCHOOL DISTRICT, NOE SAUCEDA,<br>and EDDIE ERRISURIZ, JR. | §<br>§<br>§<br>§<br>§ | |

**ORDER**

On this day came on to be considered Defendant Brownsville Independent School District's Motion to Dismiss, and the Court, after reviewing the file and the responsive pleadings filed by the parties, and hearing the argument of counsel, is of the opinion that said Defendant's Motion to Dismiss should be GRANTED.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff's claims against the Defendant BROWNSVILLE INDEPENDENT SCHOOL DISTRICT be dismissed with court costs to be borne by the party incurring same.

SIGNED FOR ENTRY this _____ day of _____, 2002.

_____
PRESIDING JUDGE

cc:    Arnold Aguilar
       Elizabeth G. Neally
       Eileen Leeds

Service: **Get by LEXSEE®**
Citation: **111 Sct 1789**

*500 U.S. 226, *; 111 S. Ct. 1789, **;*
*114 L. Ed. 2d 277, ***; 1991 U.S. LEXIS 2909*

FREDERICK A. SIEGERT, PETITIONER v. H. MELVIN GILLEY

No. 90-96

SUPREME COURT OF THE UNITED STATES

500 U.S. 226; 111 S. Ct. 1789; 114 L. Ed. 2d 277; 1991 U.S. LEXIS 2909; 59 U.S.L.W. 4465;
6 BNA IER CAS 705; 91 Cal. Daily Op. Service 3724; 91 Daily Journal DAR 6023

February 19, 1991, Argued
May 23, 1991, Decided

**PRIOR HISTORY:**

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA
CIRCUIT.

**DISPOSITION:** 282 U. S. App. D. C. 392, 895 F. 2d 797, affirmed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Petitioner federal employee sought review of an order of the
United States Court of Appeals for the District of Columbia Circuit, which directed
dismissal of his claim that respondent supervisor infringed on his liberty interests, in
violation of the Due Process Clause, by maliciously and in bad faith publishing a
defamatory per se statement, which the supervisor knew to be untrue or published with
reckless disregard as to its truth.

**OVERVIEW:** The employee learned that his failure to secure employment in his chosen
field was due in large part to a reference letter written by his supervisor. The employee
claimed that the supervisor's letter, containing derogatory statements regarding the
employee's work history, was a malicious and bad faith publishing of a defamatory per se
statement, which the supervisor knew to be untrue or which he wrote with reckless
disregard as to whether it was true or not. The employee contended that this was an
infringement of his liberty interest, in violation of the protections afforded by the Due
Process Clause of U.S. Const. amend. V. The lower court dismissed the claim on the
basis of the employee's failure to overcome the defense of qualified immunity. The court
upheld the decision on other grounds. The court held that, prior to reaching the issue of
qualified immunity, the employee failed to state a claim for violation of any rights
secured to him under the U.S. Constitution. Defamation was a tort action, not a
constitutional deprivation.

**OUTCOME:** The dismissal of the employee's suit for a violation of his due process rights
was affirmed, because he failed to state a claim for violation of any rights secured to him
under the U.S. Constitution. Although the result was affirmed, the lower court's
reasoning that the employee had not overcome the defense of qualified immunity was
not reached.

**CORE TERMS:** qualified immunity, constitutional right, malice, discovery, liberty interest,

reputation, court of appeals, credential, heightened, deprived, summary judgment, defamation, immunity, credentialed, deprivation, granted certiorari, supervisor, protected liberty interest, employment opportunities, job performance, stigmatizing, deprive, clinical psychologist, injury to reputation, question presented, entitlement, foreclosure, motivation, unethical, suffice

**LexisNexis(TM) HEADNOTES – Core Concepts – ◆ Hide Concepts**

Constitutional Law > Civil Rights Enforcement > Immunity > Public Officials
**HN1** Qualified immunity is a defense that must be pleaded by a defendant official. Once a defendant pleads a defense of qualified immunity, on summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. Until this threshold immunity question is resolved, discovery should not be allowed.

Constitutional Law > Civil Rights Enforcement > Immunity > Public Officials
**HN2** With regard to the issue of qualified immunity, a necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is clearly established at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.

Torts > Defamation & Invasion of Privacy > Defamation Actions
**HN3** Defamation, by itself, is a tort actionable under the laws of most states, but not a constitutional deprivation.

Governments > Federal Government > Employees & Officials
Torts > Defamation & Invasion of Privacy > Defamation Actions
**HN4** So long as damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a Bivens action.

◆ Show Lawyers' Edition Display

**SYLLABUS:** In seeking to become "credentialed" in his new job at an Army hospital, petitioner Siegert, a clinical psychologist, asked his former employer, a federal hospital, to provide job performance and other information to his new employer. Respondent Gilley, Siegert's supervisor at his former job, responded with a letter declaring that he could not recommend Siegert because he was inept, unethical, and untrustworthy. After he was denied credentials and his federal service employment was terminated, Siegert filed a damages action against Gilley in the District Court, alleging, *inter alia*, that, under *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999, Gilley had caused an infringement of his "liberty interests" in violation of the Due Process Clause of the Fifth Amendment "by maliciously and in bad faith publishing a defamatory *per se* statement . . . which [he] knew to be untrue." Gilley filed a motion to dismiss or for summary judgment, asserting, among other things, the defense of qualified immunity under *Harlow* v. *Fitzgerald*, 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727, and contending that Siegert's factual allegations did not state the violation of any constitutional right "clearly established" at the time of the complained-of actions, see *id.*, at 818. The court ultimately found Siegert's allegations to be sufficient, but the Court of Appeals reversed and remanded with instructions that the case be dismissed. Although assuming that bad-faith motivation would suffice to make Gilley's actions in writing the letter a violation of Siegert's clearly established constitutional rights, the court held that Siegert's particular allegations were insufficient under its "heightened pleading standard" to overcome Gilley's qualified immunity claim.

*Held:* The Court of Appeals properly concluded that the District Court should have dismissed Siegert's suit because he had not overcome Gilley's qualified immunity defense. Siegert failed to allege the violation of a clearly established constitutional right -- indeed, of any constitutional right at all -- since, under *Paul* v. *Davis*, 424 U.S. 693, 708-709, 47 L. Ed. 2d 405, 96 S. Ct. 1155, injury to reputation by itself is not a protected "liberty" interest. He therefore failed to satisfy the necessary threshold inquiry in the determination of a qualified immunity claim. See, *e. g., Harlow, supra,* at 818. Thus, although the Court of Appeals reached the correct result, it should not have assumed without deciding the necessary preliminary issue and then proceeded to examine the sufficiency of Siegert's allegations. Siegert's claim failed at an analytically earlier stage of the inquiry. Pp. 231-235.

**COUNSEL:** Nina Kraut argued the cause and filed briefs for petitioner.

Michael R. Lazerwitz argued the cause for respondent. With him on the brief were Acting Solicitor General Roberts, Assistant Attorney General Gerson, Deputy Solicitor General Shapiro, and Barbara L. Herwig. *

* Darid H. Remes, David Rudovsky, Steven R. Shapiro, and Arthur B. Spitzer filed a brief for the American Civil Liberties Union et al. as amici curiae urging reversal.

**JUDGES:** REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, O'CONNOR, SCALIA, and SOUTER, JJ., joined. KENNEDY, J., filed an opinion concurring in the judgment, post, p. 235. MARSHALL, J., filed a dissenting opinion, in which BLACKMUN, J., joined, and in Parts II and III of which STEVENS, J., joined, post, p. 236.

**OPINIONBY:** REHNQUIST

**OPINION: [*227]  [***284]  [**1791]** CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

  **[***HR1A]** [1A]
  **[***HR2A]** [2A]
We granted certiorari in this case to determine whether the United States Court of Appeals for the District of Columbia Circuit properly directed dismissal of petitioner's *Bivens* claim on the grounds that he had not overcome respondent's claim of qualified immunity. The Court of Appeals relied on its "heightened pleading standard," but we hold that petitioner's claim failed at an analytically earlier stage of the inquiry into qualified immunity: His allegations, even if accepted as true, did not state a claim for violation of any rights secured to him under the United States Constitution.

Petitioner Frederick A. Siegert, a clinical psychologist, was employed at St. Elizabeths Hospital, a Federal Government facility in Washington, D. C., from November 1979 to October 1985. He was a behavior therapy coordinator specializing in work with mentally retarded children and, to a lesser extent, with adults. In January 1985, respondent H. **[*228]** Melvyn Gilley became head of the division for which Siegert worked.

In August 1985, St. Elizabeths notified Siegert that it was preparing to terminate his employment. Siegert was informed that his "proposed removal was based upon his inability to report for duty in a dependable and reliable manner, his failure to comply with supervisory directives, and cumulative charges of absence without approved leave." App. 15, 21. After meeting with hospital officials, Siegert agreed to resign from the hospital and thereby avoid a termination that might damage his reputation. *Id.*, at 21.

Following his resignation from St. Elizabeths, Siegert began working as a clinical psychologist at a United States Army Hospital in Bremerhaven, West Germany. Because of the requirement that he be "credentialed" to work in hospitals operated by the Army, Siegert signed a

"Credential Information Request Form" asking that St. Elizabeths Hospital provide to his prospective supervisor, Colonel William Smith, "all information on job performance and the privileges" he had enjoyed while a member of its staff. App. to Pet. for Cert. 55a. Siegert's request was referred to Gilley because he had been Siegert's supervisor at St. Elizabeths.

In response to Siegert's request, Gilley notified the Army by letter that "he could not recommend [Siegert] for privileges as a psychologist." App. 6. In that letter, Gilley wrote that he "considered Dr. Siegert to be both inept and unethical, perhaps the least trustworthy individual I have supervised in my thirteen years at [St. Elizabeths]." *Ibid.* After receiving this letter, the Army Credentials Committee told Siegert that since "reports about him were 'extremely unfavorable' . . . the committee was . . . recommending that [Siegert] not be credentialed." *Id.*, at 7.

   **[\*\*\*285]** After being denied credentials by the committee, Siegert was turned down for a position he sought with an Army hospital in Stuttgart. Siegert then returned to Bremerhaven where he was given provisional credentials, limited to his **[\*229]** work with adults. Siegert filed administrative appeals with the Office of the Surgeon General to obtain full credentials. In December 1987, the Surgeon General denied Siegert's claims. Soon thereafter, his "federal service employment [was] terminated." *Id.*, at 23.

Upon learning of Gilley's letter in November 1986, Siegert filed suit in the United States District Court for the District of Columbia, alleging that Gilley's letter had **[\*\*1792]** caused him to lose his post as a psychologist at the Bremerhaven Army Hospital, and had rendered him unable to obtain other appropriate employment in the field. Relying on *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971), Siegert sought $ 4 million in damages against Gilley, contending that -- "by maliciously and in bad faith publishing a defamatory *per se* statement . . . which [he] knew to be untrue, or with reckless disregard as to whether it was true or not" -- Gilley had caused an infringement of his "liberty interests" in violation of the protections afforded by the Due Process Clause of the Fifth Amendment. App. 9. Siegert also asserted pendent state-law claims of defamation, intentional infliction of emotional distress, and interference with contractual relations.

Gilley filed a motion to dismiss or in the alternative for summary judgment. He contended that Siegert's factual allegations, even if true, did not make out a violation of any constitutional right. Gilley also asserted the defense of qualified immunity under *Harlow* v. *Fitzgerald*, 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982), contending that Siegert's allegations did not state the violation of any "clearly established" constitutional right. App. to Pet. for Cert. 30a-31a, 36a. Siegert submitted opposing affidavits stating facts supporting his allegations of malice.

In December 1987, the District Court issued an order "[declining] to decide this matter on a Summary Judgment motion at this time." *Id.*, at 54a. Instead, the court determined that "[it] would like to see a more developed record," **[\*230]** and therefore ordered "a limited amount of discovery." *Ibid.* In particular, the court directed the taking of the depositions of the parties and Colonel Smith.

Gilley filed a motion for reconsideration, asking the court to stay further discovery pending disposition of his qualified immunity claim. In June 1988, the District Court denied the motion, and in a written opinion found that Siegert's factual allegations were sufficient to state violations of a clearly established constitutional right. It analyzed our decision in *Paul* v. *Davis*, 424 U.S. 693, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976), but found this case closer on its facts to two decisions of the Court of Appeals for the District of Columbia Circuit, *Doe* v. *United States Department of Justice*, 243 U.S. App. D.C. 354, 753 F.2d 1092 (1985), and *Bartel* v. *FAA*, 223 U.S. App. D.C. 297, 725 F.2d 1403 (1985). The court directed the parties to proceed with the previously ordered limited discovery. Gilley appealed the denial of his qualified **[\*\*\*286]** immunity defense to the Court of Appeals pursuant to *Mitchell* v. *Forsyth*, 472

U.S. 511, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985).

A divided panel of the United States Court of Appeals for the District of Columbia Circuit reversed and remanded with instructions that the case be dismissed. The court first determined that to the extent Siegert's *Bivens* action was premised on allegations of improper conduct irrespective of subjective intent, the allegations did not state a claim for violation of any clearly established constitutional right. In the course of that analysis, it concluded that the District Court had mistakenly relied on its decisions in *Doe, supra*, and *Bartel, supra*.

The Court of Appeals then turned to Siegert's allegation that Gilley wrote the letter with bad faith and malice. Assuming "that such bad faith motivation would suffice to make Gilley's actions in writing the letter a violation of Siegert's [clearly established] constitutional rights," 282 U.S. App. D.C. 392, 398, 895 F.2d 797, 803 (1990), the court held that Siegert's allegations of improper motivation were insufficient [*231] to overcome Gilley's assertion of qualified immunity. The court explained that where, as here, improper purpose is an essential element of a constitutional tort action, the plaintiff must adequately allege specific, direct evidence of illicit intent -- as opposed to merely circumstantial evidence of bad intent -- in order to defeat the defendant's motion to dismiss or motion for summary judgment asserting qualified immunity. [**1793] *Id.,* at 395-396, 398-399, 895 F.2d at 800-801, 803-804.

The Court of Appeals then determined that Siegert's allegations did not satisfy that "heightened pleading standard." *Id.,* at 400, 895 F.2d at 805. It found that Siegert's complaint "merely asserts (and reasserts) that in making the statement [Gilley] 'knew [it] to be false or [made it] with reckless disregard as to whether it was true,'" *id.,* at 399, 895 F.2d at 804, and that Siegert's affidavits failed to "add anything more tangible to the record . . . ." *Ibid.*

We granted certiorari, 498 U.S. 918 (1990), in order to clarify the analytical structure under which a claim of qualified immunity should be addressed. We hold that the petitioner in this case failed to satisfy the first inquiry in the examination of such a claim; he failed to allege the violation of a clearly established constitutional right.

**[***HR3A] [3A]**
We have on several occasions addressed the proper analytical framework for determining whether a plaintiff's allegations are sufficient to overcome a defendant's defense of qualified immunity asserted in a motion for summary judgment. *HN1* Qualified immunity is a defense that must be pleaded by a defendant official. *Gomez* v. *Toledo*, 446 U.S. 635, 64 L. Ed. 2d 572, 100 S. Ct. 1920 (1980); *Harlow*, 457 U.S. at 815. Once a defendant pleads a defense of qualified immunity, "on summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. . . . Until this threshold immunity question is resolved, discovery should not be allowed." *Id.,* at 818.

**[*232] [***287]**

**[***HR1C] [1C]**
**[***HR2C] [2C]**
In this case, Siegert based his constitutional claim on the theory that Gilley's actions, undertaken with malice, deprived him of a "liberty interest" secured by the Fifth Amendment to the United States Constitution. He contended that the loss of his position at the Bremerhaven Hospital, followed by the refusal of the Army hospital in Stuttgart to consider his application for employment, and his general inability to find comparable work because of Gilley's letter, constituted such a deprivation. The Court of Appeals agreed with respondent that in the absence of an allegation of malice, petitioner had stated no constitutional claim. But it then went on to "assume, without deciding, that [Gilley's] bad faith motivation would suffice to make [his] actions in writing the letter a violation of Siegert's constitutional rights, and that the process given by the credentialing review was not adequate to meet due process

requirements." 282 U.S. App. D.C. at 398, 895 F.2d at 803. We think the Court of Appeals should not have assumed, without deciding, this preliminary issue in this case, nor proceeded to examine the sufficiency of the allegations of malice.

[***HR1D] [1D]
[***HR3B] [3B]
In *Harlow* we said that "until this *threshold* immunity question is resolved, discovery should not be allowed." *Harlow, supra*, at 818 (emphasis added). *HN2* A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits. One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit. In *Mitchell* v. *Forsyth, supra*, we said:

> [*233] "*Harlow* thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether [**1794] the conduct of which the plaintiff complains violated clearly established law. The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." 472 U.S. 511 at 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411.

[***HR1E] [1E]
[***HR2D] [2D]
This case demonstrates the desirability of this approach to a claim of immunity, for Siegert failed not only to allege the violation of a constitutional right that was clearly established at the time of Gilley's actions, but also to establish the violation of any constitutional right at all.

In *Paul* v. *Davis*, 424 U.S. 693, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976), the plaintiff's photograph was included by local police chiefs in a "flyer" of "active shoplifters," after petitioner had been arrested for shoplifting. The shoplifting charge was eventually dismissed, and the plaintiff filed suit under 42 U. S. C. § 1983 against the police chiefs, alleging that the officials' actions inflicted [***288] a stigma to his reputation that would seriously impair his future employment opportunities, and thus deprived him under color of state law of liberty interests protected by the Fourteenth Amendment.

[***HR4A] [4A]
We rejected the plaintiff's claim, holding that injury to reputation by itself was not a "liberty" interest protected under the Fourteenth Amendment. 424 U.S. at 708-709. We pointed out that our reference to a governmental employer stigmatizing an employee in *Board of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972), was made in the context of the employer discharging or failing to rehire a plaintiff who claimed a liberty interest under the Fourteenth Amendment. *HN3* Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation.

[***HR2E] [2E]
[***HR4B] [4B]
[***HR5] [5]

The facts alleged by Siegert cannot, in the light of our decision in *Paul* v. *Davis*, be held to state a claim for denial of a **[\*234]** constitutional right. This is not a suit against the United States under the Federal Tort Claims Act -- such a suit could not be brought, in the light of the exemption in that Act for claims based on defamation, see 28 U. S. C. § 2680(h) -- but a suit against Siegert's superior at St. Elizabeths Hospital. The alleged defamation was not uttered incident to the termination of Siegert's employment by the hospital, since he voluntarily resigned from his position at the hospital, and the letter was written several weeks later. The statements contained in the letter would undoubtedly damage the reputation of one in his position, and impair his future employment prospects. But the plaintiff in *Paul* v. *Davis* similarly alleged serious impairment of his future employment opportunities as well as other harm. Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But **HN4**✦so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens* action. Siegert did assert a claim for defamation in this case, but made no allegations as to diversity of citizenship between himself and respondent.

**[\*\*\*HR2F]** [2F]
The Court of Appeals assumed, without deciding, that if petitioner satisfactorily alleged that respondent's letter was written with malice, a constitutional claim would be stated. Siegert in this Court asserts that this assumption was correct -- that if the defendant acted with malice in defaming him, what he describes as the "stigma plus" test of *Paul* v. *Davis* is met. Our decision in *Paul* v. *Davis* did not turn, however, on the state of mind of the defendant, but on the lack of any constitutional protection for the interest in reputation.

**[\*\*\*HR6]** [6]
The Court of Appeals' majority concluded that the District Court should have dismissed petitioner's suit because he had not overcome the defense of qualified immunity asserted by respondent. By a different line of reasoning, we reach the **[\*235]** same conclusion, and the judgment of the Court of Appeals is therefore

*Affirmed.*

**CONCURBY:** KENNEDY

**CONCUR: [\*\*\*289]  [\*\*1795]** JUSTICE KENNEDY, concurring in the judgment.

I agree with the Court that "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Ante*, at 232. I do not, however, agree that the Court of Appeals "should not have assumed, without deciding," this issue. *Ibid.* The Court of Appeals adopted the altogether normal procedure of deciding the case before it on the ground that appeared to offer the most direct and appropriate resolution, and one argued by the parties. If it is plain that a plaintiff's required malice allegations are insufficient but there is some doubt as to the constitutional right asserted, it seems to reverse the usual ordering of issues to tell the trial and appellate courts that they should resolve the constitutional question first.

As revealed by the differences in our majority and dissenting opinions, the question whether petitioner asserted the deprivation of a liberty interest protected by the Constitution, under the principles explained in *Paul* v. *Davis*, 424 U.S. 693, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976), is itself one of some difficulty. In my view, it is unwise to resolve the point without the benefit of a decision by the Court of Appeals and full briefing and argument here.

I would affirm for the reasons given by the Court of Appeals. Here malice is a requisite showing to avoid the bar of qualified immunity. The heightened pleading standard is a

necessary and appropriate accommodation between the state of mind component of malice and the objective test that prevails in qualified immunity analysis as a general matter. See *Harlow* v. *Fitzgerald*,

[***HR1B] [1B]
[***HR2B] [2B]
457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). There is tension between the rationale of *Harlow* and the requirement [*236] of malice, and it seems to me that the heightened pleading requirement is the most workable means to resolve it. The heightened pleading standard is a departure from the usual pleading requirements of Federal Rules of Civil Procedure 8 and 9(b), and departs also from the normal standard for summary judgment under Rule 56. But avoidance of disruptive discovery is one of the very purposes for the official immunity doctrine, and it is no answer to say that the plaintiff has not yet had the opportunity to engage in discovery. The substantive defense of immunity controls.

Upon the assertion of a qualified immunity defense the plaintiff must put forward specific, nonconclusory factual allegations which establish malice, or face dismissal. I would reject, however, the Court of Appeals' statement that a plaintiff must present direct, as opposed to circumstantial, evidence. 282 U.S. App. D.C. 392, 398-399, 895 F.2d 797, 803-804 (1990). Circumstantial evidence may be as probative as testimonial evidence. See *Holland* v. *United States*, 348 U.S. 121, 140, 99 L. Ed. 150, 75 S. Ct. 127 (1954).

In my view petitioner did not meet the burden of alleging facts from which malice could be inferred by other than the most conclusory allegations. The Court of Appeals sets [***290] forth a detailed analysis which is persuasive on this point.

For these reasons, I concur in the judgment to affirm.

**DISSENTBY:** MARSHALL

**DISSENT:** JUSTICE MARSHALL, with whom JUSTICE BLACKMUN joins, and with whom JUSTICE STEVENS joins as to Parts II and III, dissenting.

The majority today decides a question on which we did not grant certiorari. Moreover, in deciding that petitioner Siegert failed to allege a violation of a clearly established constitutional right, the majority completely mischaracterizes the nature of Siegert's claim. Siegert alleged significantly more than mere "damage [to] reputation" and "future employment prospects." *Ante*, at 234. Because the alleged defamation was "accompan[ied] [by a] loss of *government* employment," *Paul* v. *Davis*, 424 U.S. 693, 706, [**1796] 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976) (emphasis [*237] added), as well as a change in "legal status" occasioned by the effective foreclosure of any opportunity for hospital credentials, see *id.*, at 705, Siegert has alleged the deprivation of a cognizable liberty interest in reputation. Because I view the majority's disposition of this case as both procedurally and substantively unjustified, I dissent.

I

The majority incorrectly claims that we granted certiorari in this case to determine whether the . . . Court of Appeals . . . properly directed dismissal of petitioner's *Bivens* claim on the grounds that he had not overcome respondent's claim of qualified immunity." *Ante*, at 227. In fact, the *two* questions on which we granted certiorari were much more specific.

"1. In a claim for damages under *Bivens* v. *Six Unknown Named Agents*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971), in which malice has been alleged and where qualified immunity has been raised as a defense, whether a "heightened pleading" standard which precludes limited discovery prior to

disposition on a summary judgment motion violates applicable law?

"2. In a *Bivens* claim for damages, whether a federal official can be qualifiedly immune from suit without regard to whether the challenged conduct was discretionary in nature?" Pet. for Cert. i.

According to this Court's Rule 14.1(a): "Only the questions set forth in the petition [for writ of certiorari], or fairly included therein, will be considered by the Court." In my view, neither of the questions set forth in the petition is broad enough to subsume the issue that the majority contends is presented in this case. n1

n1 The question on which the majority claims the Court granted certiorari actually was presented in respondent Gilley's brief in opposition to certiorari. See Brief in Opposition I ("Whether the court of appeals correctly dismissed this *Bivens* action on grounds of qualified immunity"). However, our grant of certiorari did not purport to accept respondent's depiction of the question presented. See 498 U.S. 918 (1990). Indeed, in his brief *on the merits* respondent urged that the very issue that the majority today resolves in his favor "is scarcely related to the questions on which the Court granted certiorari [and] is not properly before the Court." Brief for Respondent 26, n.16.

 **[*238]   [***291]** One would have thought from the questioning during oral argument that the Court was well aware that it was at least debatable whether the issue the majority now decides was within the grant of review. When counsel for Siegert addressed the question whether Siegert had stated a compensable injury to a protected liberty interest she was admonished:

"The first question presented in your petition for certiorari is the extent of discovery which you should be allowed where there's a defensive *[sic]* qualified immunity. That really has nothing to do with the merits of your case I would think." Tr. of Oral Arg. 5.

When counsel raised the issue again she was told: "You really haven't explicitly addressed either of the questions presented in your petition for certiorari. I suggest you do so." *Id.*, at 12. Rather than attempting to explain why the issue the majority today reaches is subsumed by the grant of certiorari, the majority disingenuously recharacterizes the question presented.

"Absent unusual circumstances, we are chary of considering issues not presented in petitions for certiorari." *Berkemer* v. *McCarty*, 468 U.S. 420, 443, n.38, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984) (citation omitted). The majority makes no attempt to show that this case presents "unusual circumstances." Moreover, the significance of the issue the majority decides -- the extent of a government employee's constitutional liberty interest in reputation -- militates even more heavily in favor of restraint. As the author of today's opinion once wrote: "Where difficult issues of great public importance  **[**1797]** are involved, there are strong reasons to adhere scrupulously to the customary limitations on our discretion." *Illinois* v. *Gates*, 462 U.S. 213, 224, 76 L. Ed. 2d 527, 103 S. Ct. 2317 **[*239]** (1983). Adherence to "customary limitations on our discretion" is necessary not only to ensure that parties are not denied their "day in court" but also to ensure that we receive the full benefit of briefing and argument before deciding difficult and important legal issues. The issue that now has become central to the majority's disposition of this case received only scant briefing by the parties. See Brief for Petitioner 17-20; Brief for Respondent 26, n.16. The majority's insistence on reaching this issue in this context disserves our adjudicative process and undermines public respect for our decisions.

## II

I also disagree with the merits of the majority's holding. The majority concludes that Siegert has not alleged the violation of any "right," "clearly established" or otherwise. In my view, there can be no doubt that the conduct alleged deprived Siegert of a protected liberty interest and that this right was clearly established at the time Gilley wrote his letter. Siegert's claim, therefore, should surmount Gilley's assertion of qualified immunity. See *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). n2

n2 The question whether Gilley's alleged conduct in this case was a discretionary function for which he would be entitled to raise the defense of qualified immunity was the second question presented in the petition for certiorari. See *supra*, at 237. The majority does not address this issue. Consequently, I will state only briefly my view that Gilley's function in responding to the credentials request form was inherently discretionary. The form requested that Gilley send "all information" on Siegert's "job performance and [hospital] privileges." App. to Pet. for Cert. 55a. Because the form did not prescribe any specific conduct and Siegert has not identified any other rules or restrictions which mandated a specific mode or manner of response, Gilley was called upon to exercise his judgment as to what information must be sent.

## [***292] A

*Paul* v. *Davis*, 424 U.S. 693, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976), holds that injury to reputation, standing alone, is not enough to demonstrate deprivation of a liberty interest. See *id., at 712. Paul* also **[*240]** establishes, however, that injury to reputation *does* deprive a person of a liberty interest when the injury is combined with the impairment of "some more tangible" government benefit. *Id., at 701.* It is enough, for example, if the plaintiff shows that the reputational injury causes the "loss of government employment," *id., at 706,* or the imposition of a legal disability, such as the loss of "the right to purchase or obtain liquor in common with the rest of the citizenry," *id., at 708* (citing *Wisconsin* v. *Constantineau*, 400 U.S. 433, 27 L. Ed. 2d 515, 91 S. Ct. 507 (1971)).

This standard is met here because the injury to Siegert's reputation caused him to lose the benefit of *eligibility for future government employment*. A condition of Siegert's employment with the Army hospital in Bremerhaven was that he be "credentialed " to treat both children and adults. Siegert alleges (and we must accept as true) that Gilley's letter caused him *not* to be credentialed, and thus effectively foreclosed his eligibility for future Government employment. According to Siegert, after Gilley wrote the letter charging that Siegert was "inept and unethical, perhaps the least trustworthy individual I have supervised in . . . thirteen years," App. 6, Siegert was informed that the Army's credentials committee was recommending that he not be credentialed because reports about him were "extremely unfavorable," *id.*, at 7. As a result, Siegert contends, he lost government employment as a psychologist at the Bremerhaven Army hospital, similar future employment at another Army hospital in Stuttgart, and any legitimate opportunity to be considered for like Government **[**1798]** employment any time in the future. See *id.*, at 6-9, 19-23. n3

n3 Siegert contends that he had a legitimate expectation that he would be credentialed based upon his job performance at St. Elizabeths. For his first five years at St. Elizabeths, Siegert attests that he received exemplary job performance ratings from his supervisors and was rated "outstanding" for his performance in 1984. App. 20. Gilley became Siegert's supervisor in January 1985. According to Siegert, professional and personal differences soon arose between the two because of Siegert's extensive medical leave due to a head injury and Siegert's resistance to Gilley's attempts to modify some aspects of a behavior modification program. *Id.*, at 19-20. After Siegert had obtained his position with Bremerhaven, he was given advanced notice that he was going to be terminated by St. Elizabeths. Siegert then worked out an agreement with St. Elizabeths with the precise understanding that he would

resign and his personnel file would not be tainted. *Id.*, at 21. Approximately three weeks after Siegert resigned, Gilley sent the stigmatizing letter. See *id.*, at 5-6.

**[*241]** We have repeatedly recognized that an individual suffers the loss of **[***293]** a protected liberty interest "'where government action has operated to bestow a badge of disloyalty or infamy, *with an attendant foreclosure from other employment opportunity.*'" *Paul v. Davis, supra*, at 705, quoting *Cafeteria Workers* v. *McElroy*, 367 U.S. 886, 898, 6 L. Ed. 2d 1230, 81 S. Ct. 1743 (1961) (emphasis supplied by *Paul* v. *Davis* Court). Thus, although the at-will government employee in *Board of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972), did not have a *legal* entitlement to retain his job, the Court recognized that a liberty interest would be deprived where "the State . . . imposed on [the plaintiff] a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.*, at 573. Accord, *Paul, supra*, at 709-710 (quoting *Roth*). n4 The same conclusion should apply here.

n4 Notably, the concept of liberty under the Due Process Clause includes "'the right of the individual to contract, to engage in any of the common occupations of life . . . and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.'" *Board of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 572, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972), quoting *Meyer* v. *Nebraska*, 262 U.S. 390, 399, 67 L. Ed. 1042, 43 S. Ct. 625 (1923).

Citing *Paul*, the majority suggests that reputational injury deprives a person of liberty only when combined with loss of *present* employment, not *future* employment. See *ante*, at 234. This suggestion rests on a gross mischaracterization of *Paul*. The *Paul* Court rejected a *private* employee's generalized claim of loss of future employment prospects where the plaintiff made no showing of a loss of government employment or future opportunities for government employment; indeed no governmental benefit or entitlement was at risk in **[*242]** *Paul*. The plaintiff in *Paul*, who had been labeled by the government as a shoplifter, had merely been told by his supervisor that, although he would not be fired, he "'had best not find himself in a similar situation' in the future." *Paul, supra*, at 696. Therefore, *Paul* truly was a case where the only interest the plaintiff was asserting was injury to his reputation.

Although *Paul* rejected a private employee's claim, it expressly reaffirmed *Roth, McElroy*, and other decisions recognizing that stigmatization deprives a person of liberty when it causes loss of present or future *government* employment. See *Paul, supra*, at 702-710. Indeed, the *Paul* Court explained the decision in *Joint Anti-Fascist Refugee Comm.* v. *McGrath*, 341 U.S. 123, 95 L. Ed. 817, 71 S. Ct. 624 (1951) -- which held that the plaintiffs stated a cognizable claim against the Attorney General's designation of certain organizations as "Communist" on a list furnished to the Civil Service Commission -- primarily in terms of the deprivation this action would work on the present and future government employment opportunities of members of such organizations. See *Paul*, 424 U.S. at 702-705; see also *id.*, at 704 ("'To be **[**1799]** deprived not only of present government employment but of future opportunity for it certainly is no small **[***294]** injury when government employment so dominates the field of opportunity,'" quoting *Joint Anti-Fascist Refugee Comm., supra*, at 185 (Jackson, J., concurring)). Foreclosure of opportunity for future government employment clearly is within the ambit of the "more tangible interests" that, when coupled with reputation, create a protected liberty interest. See *Paul, supra*, at 701-702 (noting the Court's recognition of a liberty interest in *United States* v. *Lovett*, 328 U.S. 303, 90 L. Ed. 1252, 66 S. Ct. 1073 (1946), where congressional action stigmatized three Government employees and "'prohibited their ever holding a government job'").

B

It is also clear that Gilley should have known that his alleged conduct deprived Siegert of a liberty interest. If our **[*243]** case law left any doubt that reputational injury deprives a

person of liberty when it causes loss of future government employment, that doubt was dispelled by the decisions of the Court of Appeals for the District of Columbia Circuit, the jurisdiction where Gilley worked. See, e. g., _Davis_ v. _Scherer_, 468 U.S. 183, 191-192, 82 L. Ed. 2d 139, 104 S. Ct. 3012 (1984) (for purposes of determining whether a constitutional right was clearly established, the Court may look to the law of the relevant circuit at the time of the conduct in question). n5 On numerous occasions prior to Gilley's challenged conduct, the District of Columbia Circuit reiterated the principle that a person is deprived of a protected liberty interest when stigmatizing charges "effectively foreclose [his or her] freedom to take advantage of other Government employment opportunities." _Old Dominion Dairy Products, Inc._ v. _Secretary of Defense_, 203 U.S. App. D.C. 371, 382, 631 F.2d 953, 964 (1980). See also _Conset Corp._ v. _Community Services Administration_, 211 U.S. App. D.C. 61, 67, 655 F.2d 1291, 1297 (1981) (liberty deprived if "memorandum was effectively used to bar Conset from government contract work due to charges calling into question Conset's integrity honesty or business reputation"); _Mosrie_ v. _Barry_, 231 U.S. App. D.C. 113, 123, 718 F.2d 1151, 1161 (1983) (liberty deprived if government-imposed stigma "so severely impaired [the plaintiff's] ability to take advantage of a legal right, such as a right to be considered for government contracts or employment . . . that the government can be said to have 'foreclosed' one's ability to take advantage  [*244]  of it and thus extinguished the right"); _Doe_ v. _United States Department of Justice_, 243 U.S. App. D.C. 354, 373, 753 F.2d 1092, 1111 (1985) (government defamation resulting in a "loss of present or  [***295]  future government employment" implicates a liberty interest).

n5 In _Anderson_ v. _Creighton_, 483 U.S. 635, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987), this Court explained that a right is "clearly established" when its "contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." _Id._, at 640. _Anderson_ stressed that a right may be "clearly established" even though "the very action in question" has not previously been held unlawful. Rather, it is enough "to say that in the light of pre-existing law the unlawfulness [is] apparent." _Ibid._ Accord, _Mitchell_ v. _Forsyth_, 472 U.S. 511, 535, n.12, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985) ("We do not intend to suggest that an official is always immune from liability or suit for a warrantless search merely because the warrant requirement has never explicitly been held to apply to a search conducted in identical circumstances").

This established principle was applied by the District of Columbia Circuit in a case with facts strikingly similar to those that confront us here. In _Bartel_ v. _Federal Aviation Administration_, 223 U.S. App. D.C. 297, 725 F.2d 1403 (1984), the plaintiff, Bartel, had once worked for the Federal Aviation Administration (FAA) as an air safety inspector, left its employ for a job in Canada, and then applied for reemployment with the FAA. An FAA official who  [**1800]  learned that Bartel was seeking reemployment allegedly sent letters to other FAA officials stating his opinion that Bartel had violated the federal Privacy Act of 1974, 5 U. S. C. § 552a, during his previous tenure with the FAA. As a result, Bartel claimed the FAA informed him that he would not be hired for a job for which he had been determined to be "best qualified." Eventually Bartel secured a temporary GS-12 position, although a permanent GS-13 position for which he was qualified was available. See 223 U.S. App. D.C. at 299-300, 725 F.2d at 1405-1406. Bartel brought suit claiming, _inter alia_, a due process violation because he had been branded and denied employment without an opportunity to refute the charges in the letter. The District of Columbia Circuit agreed that _Paul_ v. _Davis_ was controlling and found that Bartel had stated a cognizable liberty interest in reputation sufficient to survive a motion for summary judgment. See

> 223 U.S. App. D.C. at 309, 725 F.2d at 1415. "The complaint states that Bartel was denied a specific government job _because of the [stigmatizing] letter_ . . . . The crux of the complaint, as we read it, is that Bartel was not considered for FAA employment on a basis equal with others of equivalent skill and experience -- _i. e._, that he was wrongfully denied the 'right to  [*245]  be considered for government [employment] in common with all other persons.' For an individual whose entire

career revolved around aviation, this denial may have effectively abridged his freedom to take advantage of public employment." *Ibid.* (Citations omitted; emphasis added.)

See also *Doe* v. *United States Department of Justice, supra,* at 373, n.20, 753 F.2d at 1111 (noting that Bartel had "alleged a protected liberty interest because an FAA letter had accused him of Privacy Act violations and thus hampered his ability to seek government employment on an equal basis with others of similar skill and experience").

After the District of Columbia Circuit's holding in *Bartel* it should have been abundantly clear to any reasonable governmental official that mailing stigmatizing letters in circumstances that would severely impair or effectively foreclose a government employee from obtaining similar government employment in the future would deprive the individual of a constitutionally protected liberty interest. Yet that is precisely what Siegert alleges Gilley did. n6

n6 The "Credential Information Request Form" specifically informed Gilley that Siegert was applying for hospital credentials in order to work as a clinical psychologist at an Army hospital and that information on Siegert's credentials and work history was needed in order to complete the process. See App. to Pet. for Cert. 55a. As an objective matter, in these circumstances Gilley should have known that to send a letter charging that Siegert was "inept and unethical, perhaps the least trustworthy individual I have supervised in . . . thirteen years" would severely hamper if not foreclose Siegert's ability to gain credentials, particularly for working with children. Cf. *Old Dominion Dairy Products, Inc.* v. *Secretary of Defense,* 203 U.S. App. D.C. 371, 381, 631 F.2d 953, 963 (1980) ("A determination was made that Old Dominion 'lacked integrity,' and that determination was communicated through official Government channels and would likely continue to be communicated every time Old Dominion bid for a contract").

**[***296]** C

Finally, there remains the primary question on which we granted certiorari: whether in a *Bivens* action in which malice **[*246]** has been alleged and where qualified immunity has been raised as a defense, a "heightened pleading" standard must be met in order to allow limited discovery prior to disposition on a summary judgment motion. Under my understanding of *Paul,* I do not believe Siegert would have to prove malice in order to establish a constitutional violation. However, I believe the Court of Appeals erred in holding that a district court may not permit limited discovery in a case involving unconstitutional motive unless the plaintiff proffers *direct* evidence of the unconstitutional motive. See 282 U.S. App. D.C. 392, 398-399, 895 F.2d 797, 803-804 (1990). Because evidence **[**1801]** of such intent is peculiarly within the control of the defendant, the "heightened pleading" rule employed by the Court of Appeals effectively precludes any *Bivens* action in which the defendant's state of mind is an element of the underlying claim. I find no warrant for such a rule as a matter of precedent or common sense.

This Court has stated that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow* v. *Fitzgerald,* 457 U.S. at 817-818. Yet it also has recognized that in some instances limited discovery "tailored specifically to the question of . . . qualified immunity" may be necessary. *Anderson* v. *Creighton,* 483 U.S. 635, 646-647, n.6, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987). In my view, a plaintiff pleading a *Bivens* claim that requires proof of the defendant's intent should be afforded such discovery whenever the plaintiff has gone beyond bare, conclusory allegations of unconstitutional purpose. Siegert has offered highly specific circumstantial evidence of unconstitutional motive. For this reason, I believe that the Court of Appeals erred in overturning the District Court's order permitting limited discovery.

III

It is a perverse jurisprudence that recognizes the loss of a "legal" right to buy liquor as a significant deprivation but **[\*247]** fails to accord equal significance to the foreclosure of opportunities for government employment. The loss in Siegert's case is particularly tragic because his professional specialty appears to be one very difficult to practice outside of government institutions. The majority's callous disregard of the real interests at stake in this case is profoundly disturbing. I dissent.

Service: **Get by LEXSEE®**
Citation: **111 Sct 1789**
View: Full
Date/Time: Wednesday, March 5, 2003 - 3:25 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.