

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, FERNANDO DE PEÑA, VALENTIN PAZ AND ANDRUS & PAZ, A PARTNERSHIP | § § § § | |
| VS. | § § | CIVIL ACTION NO. B-02-143 JURY REQUESTED |
| BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, NOE SAUCEDA AND EDDIE ERRISURIZ, JR. | § § § § | |

United States District Court
Southern District of Texas
FILED
MAR 11 2003
Michael N. Milby
Clerk of Court

## DEFENDANTS NOE SAUCEDA AND EDDIE ERRISURIZ'S OBJECTION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE PLAINTIFFS' SECOND AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, NOE SAUCEDA and EDDIE ERRISURIZ, JR. named Defendants in the above-styled and numbered cause and files this their Objection to Plaintiffs' Motion for Leave to File Plaintiffs' Second Amended Original Complaint and in support thereof, would respectfully show unto the court as follows:

There are Motions to Dismiss filed pursuant to F.R.C.P. 12(b)(6), still pending in this Court which are dispositive of the complete causes of action against Defendants. Defendant objects to Plaintiffs' Motion for Leave to File a Second Amended Complaint as it attempts to change the issues before this Court. It is clearly an attempt to echo the practice allowed in State Court, which is when the non-movant is afraid he may be dismissed, add some causes of action, good or bad, to remain in the jurisdiction of the Court.

Plaintiffs are attempting to introduce causes of action under the 1st and 5th Amendments to the U.S. Constitution in addition to the one under the 14th Amendment they have already asserted.

There is no claim under these facts under the 5th Amendment, as there was no federal actor involved in any way. Thus, a claim under the 5th Amendment is completely inappropriate.

Furthermore, Plaintiffs' 1st Amendment claim is allegedly based on a letter Stephen Andrus presumably wrote to someone at BISD. If this Court were to allow this claim, it would enure to Mr. Andrus, individually, not all Plaintiffs. He was the only Plaintiff who spoke at the public audience session of the November 13, 2001 BISD Board meeting. He is also the only Plaintiff who wrote any document purporting to form the basis of this claim. Thus, this new 1st Amendment claim could only be asserted on Mr. Andrus' behalf, not any of the other Plaintiffs.

More importantly, however, the claim attempting to be asserted is for a violation of his rights to free speech. The threshold of any free speech claim is whether the speech was of public concern. ***Pickering v. Board of Education,*** 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811; ***Connick v. Myers,*** 461 U.S. 138, 147, 103 S.Ct.1684, 1690, 75 L.Ed.2d 708. It is clearly not. Even though Mr. Andrus used the word "illegal" in his letter, the content of the letter is one of opposition to BISD's Request for Qualifications (RFQ) for a Third Party Administrator for the §125 Cafeteria Plan and §403(b) tax-deferred annuities. The RFQ is not illegal and his letter doesn't say it is. He merely argues his opposition to the RFQ, obviously because he is a §403(b) salesman and he believed this would work to his personal detriment. There is no issue here that would have been of public concern.

Mr. Andrus referred to three statutes in his letter as the allegedly authority for his position. The pertinent sections of those statutes are attached. Nothing in those statutes even remotely addresses the allegations made by Mr. Andrus. His reference to anti-discrimination laws does not refer to discrimination against vendors. (Please see statutes attached hereto as Exhibit "A").

Likewise, the public comments he made were to complain that he had not been given access to the lounges of the schools whereas he believed one gentleman had. This is not an equal

protection claim. He was complaining that he was not being allowed to sell his wares. He made no comments that had any public impact or were of public import. Thus, as the minimum threshold cannot be met for a 1st Amendment claim, Plaintiffs should not be allowed to amend their complaint just to protect themselves from a complete dismissal should this Court find they do not have a property interest and grant the pending Motion for Dismissal.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that this Court deny Plaintiffs' Motion for Leave to File Plaintiffs' Second Amended Original Compliant and grant Defendants' Motion to Dismiss and for all further relief to which they may show themselves to be entitled.

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Ste. 460
3505 Boca Chica Blvd.
Brownsville, Texas 78521
Telephone: (956) 541-1846
Facsimile: (956) 541-1893


By: *Eileen Leeds*
Eileen M. Leeds
State Bar No. 00791093
USDC Adm. No. 16799


Charles Willette, Jr
State Bar No. 21509700
USDC Adm. No. 1937

**ATTORNEY FOR DEFENDANTS NOE SAUCEDA AND EDDIE ERRISURIZ, JR.**

## CERTIFICATE OF SERVICE

      I hereby certify that on this the 10th day of March, 2003, a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record as noted hereunder.

**VIA CM/RRR # 7002 0460 0000 6635 2100**
Mr. J. Arnold Aguilar
Law Offices of J. Arnold Aguilar
Artemis Square, Ste. H-2
1200 Central Blvd.
Brownsville, Texas 78520

**VIA REGULAR MAIL**
Elizabeth G. Neally
Roerig, Oliveira, & Fisher, L.L.P.
855 W. Price Road, Ste. 9
Brownsville, Texas 78520

_/s/ Eileen Leeds_
Eileen M. Leeds

**UNITED STATES CODE ANNOTATED**
**TITLE 26. INTERNAL REVENUE CODE**
**SUBTITLE A--INCOME TAXES**
**CHAPTER 1--NORMAL TAXES AND SURTAXES**
**SUBCHAPTER D--DEFERRED COMPENSATION, ETC.**
**PART I--PENSION, PROFIT-SHARING, STOCK BONUS PLANS, ETC.**
**SUBPART A--GENERAL RULE**

Copr. © West Group 2003. No claim to Orig. U.S. Govt. Works.

Current through P.L. 108-6, approved 02-13-03

§ 401. Qualified pension, profit-sharing, and stock bonus plans

(a) **Requirements for qualification.**--A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section--

(4) if the contributions or benefits provided under the plan do not discriminate in favor of highly compensated employees (within the meaning of section 414(q)). For purposes of this paragraph, there shall be excluded from consideration employees described in section 410(b)(3)(A) and (C).


DEFENDANT'S EXHIBIT A

**UNITED STATES CODE ANNOTATED**
**TITLE 26. INTERNAL REVENUE CODE**
**SUBTITLE A--INCOME TAXES**
**CHAPTER 1--NORMAL TAXES AND SURTAXES**
**SUBCHAPTER D--DEFERRED COMPENSATION, ETC.**
**PART I--PENSION, PROFIT-SHARING, STOCK BONUS PLANS, ETC.**
**SUBPART A--GENERAL RULE**

Copr. © West Group 2003. No claim to Orig. U.S. Govt. Works.

Current through P.L. 108-6, approved 02-13-03

**§ 401. Qualified pension, profit-sharing, and stock bonus plans**

**(m) Nondiscrimination test for matching contributions and employee contributions.--**

**(1) In general.--**A defined contribution plan shall be treated as meeting the requirements of subsection (a)(4) with respect to the amount of any matching contribution or employee contribution for any plan year only if the contribution percentage requirement of paragraph (2) of this subsection is met for such plan year.

**(2) Requirements.--**

   **(A) Contribution percentage requirement.--**A plan meets the contribution percentage requirement of this paragraph for any plan year only if the contribution percentage for eligible highly compensated employees for such plan year does not exceed the greater of--

      (i) 125 percent of such percentage for all other eligible employees for the preceding plan year, or

      (ii) the lesser of 200 percent of such percentage for all other eligible employees for the preceding plan year, or such percentage for all other eligible employees for the preceding plan year plus 2 percentage points.

   This subparagraph may be applied by using the plan year rather than the preceding plan year if the employer so elects, except that if such an election is made, it may not be changed except as provided by the Secretary.

   **(B) Multiple plans treated as a single plan.--**If two or more plans of an employer to which matching contributions, employee contributions, or elective deferrals are made are treated as one plan for purposes of section 410(b), such plans shall be treated as one plan for purposes of this subsection. If a highly compensated employee participates in two or more plans of an employer to which contributions to which this subsection applies are made, all such contributions shall be aggregated for purposes of this subsection.

   **(3) Contribution percentage.--**For purposes of paragraph (2), the contribution percentage for a specified group of employees for a plan year shall be the average of the ratios (calculated separately for each employee in such group) of--

      **(A)** the sum of the matching contributions and employee contributions paid under the plan on behalf of each such employee for such plan year, to

      **(B)** the employee's compensation (within the meaning of section 414(s)) for such plan year.

Under regulations, an employer may elect to take into account (in computing the contribution percentage) elective deferrals and qualified nonelective contributions under the plan or any other plan of the employer. If matching contributions are taken into account for purposes of subsection (k)(3)(A)(ii) for any plan year, such contributions shall not be taken into account under subparagraph (A) for such year. Rules similar to the rules of subsection (k)(3)(E) shall apply for purposes of this subsection.

**(4) Definitions.**--For purposes of this subsection--

    **(A) Matching contribution.**--The term "matching contribution" means--

        (i) any employer contribution made to a defined contribution plan on behalf of an employee on account of an employee contribution made by such employee, and

        (ii) any employer contribution made to a defined contribution plan on behalf of an employee on account of an employee's elective deferral.

    **(B) Elective deferral.**--The term "elective deferral" means any employer contribution described in section 402(g)(3).

    **(C) Qualified nonelective contributions.**--The term "qualified nonelective contribution" means any employer contribution (other than a matching contribution) with respect to which--

        (i) the employee may not elect to have the contribution paid to the employee in cash instead of being contributed to the plan, and

        (ii) the requirements of subparagraphs (B) and (C) of subsection (k)(2) are met.

**(5) Employees taken into consideration.**--

    **(A) In general.**--Any employee who is eligible to make an employee contribution (or, if the employer takes elective contributions into account, elective contributions) or to receive a matching contribution under the plan being tested under paragraph (1) shall be considered an eligible employee for purposes of this subsection.

    **(B) Certain nonparticipants.**--If an employee contribution is required as a condition of participation in the plan, any employee who would be a participant in the plan if such employee made such a contribution shall be treated as an eligible employee on behalf of whom no employer contributions are made.

    **(C) Special rule for early participation.**--If an employer elects to apply section 410(b)(4)(B) in determining whether a plan meets the requirements of section 410(b), the employer may, in determining whether the plan meets the requirements of paragraph (2), exclude from consideration all eligible employees (other than highly compensated employees) who have not met the minimum age and service requirements of section 410(a)(1)(A).

**(6) Plan not disqualified if excess aggregate contributions distributed before end of following plan year.**--

    **(A) In general.**--A plan shall not be treated as failing to meet the requirements of paragraph (1) for any plan year if, before the close of the following plan year, the amount of the excess aggregate contributions for such plan year (and any income allocable to such contributions) is distributed (or, if forfeitable, is forfeited). Such contributions (and such income) may be distributed without regard to any other provision of law.

    **(B) Excess aggregate contributions.**--For purposes of subparagraph (A), the term "excess aggregate contributions" means, with respect to any plan year, the excess of--

        (i) the aggregate amount of the matching contributions and employee contributions (and any qualified

nonelective contribution or elective contribution taken into account in computing the contribution percentage) actually made on behalf of highly compensated employees for such plan year, over

(ii) the maximum amount of such contributions permitted under the limitations of paragraph (2)(A) (determined by reducing contributions made on behalf of highly compensated employees in order of their contribution percentages beginning with the highest of such percentages).

**(C) Method of distributing excess aggregate contributions.**--Any distribution of the excess aggregate contributions for any plan year shall be made to highly compensated employees on the basis of the amount of contributions on behalf of, or by, each such employee. Forfeitures of excess aggregate contributions may not be allocated to participants whose contributions are reduced under this paragraph.

**(D) Coordination with subsection (k) and 402(g).**--The determination of the amount of excess aggregate contributions with respect to a plan shall be made after--

(i) first determining the excess deferrals (within the meaning of section 402(g)), and

(ii) then determining the excess contributions under subsection (k).

**(7) Treatment of distributions.**--

**(A) Additional tax of section 72(t) not applicable.**--No tax shall be imposed under section 72(t) on any amount required to be distributed under paragraph (6).

**(B) Exclusion of employee contributions.**--Any distribution attributable to employee contributions shall not be included in gross income except to the extent attributable to income on such contributions.

**(8) Highly compensated employee.**--For purposes of this subsection, the term "highly compensated employee" has the meaning given to such term by section 414(q).

**(9) Regulations.**--The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subsection and subsection (k), including regulations permitting appropriate aggregation of plans and contributions.

**(10) Alternative method of satisfying tests.**--A defined contribution plan shall be treated as meeting the requirements of paragraph (2) with respect to matching contributions if the plan--

(A) meets the contribution requirements of subparagraph (B) of subsection (k)(11),

(B) meets the exclusive plan requirements of subsection (k)(11)(C), and

(C) meets the vesting requirements of section 408(p)(3).

**(11) Additional alternative method of satisfying tests.**--

**(A) In general.**--A defined contribution plan shall be treated as meeting the requirements of paragraph (2) with respect to matching contributions if the plan--

(i) meets the contribution requirements of subparagraph (B) or (C) of subsection (k)(12),

(ii) meets the notice requirements of subsection (k)(12)(D), and

(iii) meets the requirements of subparagraph (B).

**(B) Limitation on matching contributions.**--The requirements of this subparagraph are met if--

(i) matching contributions on behalf of any employee may not be made with respect to an employee's contributions or elective deferrals in excess of 6 percent of the employee's compensation,

(ii) the rate of an employer's matching contribution does not increase as the rate of an employee's contributions or elective deferrals increase, and

(iii) the matching contribution with respect to any highly compensated employee at any rate of an employee contribution or rate of elective deferral is not greater than that with respect to an employee who is not a highly compensated employee.

**(12) Cross reference.--**

For excise tax on certain excess contributions, see section 4979.

**UNITED STATES CODE ANNOTATED**
**TITLE 26. INTERNAL REVENUE CODE**
**SUBTITLE A--INCOME TAXES**
**CHAPTER 1--NORMAL TAXES AND SURTAXES**
**SUBCHAPTER D--DEFERRED COMPENSATION, ETC.**
**PART I--PENSION, PROFIT-SHARING, STOCK BONUS PLANS, ETC.**
**SUBPART B--SPECIAL RULES**

Copr. © West Group 2003. No claim to Orig. U.S. Govt. Works.

Current through P.L. 108-6, approved 02-13-03

**§ 410. Minimum participation standards**

**(b) Minimum coverage requirements.--**

(1) **In general.**--A trust shall not constitute a qualified trust under section 401(a) unless such trust is designated by the employer as part of a plan which meets 1 of the following requirements:

(A) The plan benefits at least 70 percent of employees who are not highly compensated employees.

(B) The plan benefits--

(i) a percentage of employees who are not highly compensated employees which is at least 70 percent of

(ii) the percentage of highly compensated employees benefiting under the plan.

(C) The plan meets the requirements of paragraph (2).

(2) **Average benefit percentage test.--**

(A) **In general.**--A plan shall be treated as meeting the requirements of this paragraph if--

(i) the plan benefits such employees as qualify under a classification set up by the employer and found by the Secretary not to be discriminatory in favor of highly compensated employees, and

(ii) the average benefit percentage for employees who are not highly compensated employees is at least 70 percent of the average benefit percentage for highly compensated employees.

(B) **Average benefit percentage.**--For purposes of this paragraph, the term "average benefit percentage" means, with respect to any group, the average of the benefit percentages calculated separately with respect to each employee in such group (whether or not a participant in any plan).

(C) **Benefit percentage.**--For purposes of this paragraph--

(i) **In general.**--The term "benefit percentage" means the employer-provided contribution or benefit of an employee under all qualified plans maintained by the employer, expressed as a percentage of such employee's compensation (within the meaning of section 414(s)).

(ii) **Period for computing percentage.**--At the election of an employer, the benefit percentage for any plan year shall be computed on the basis of contributions or benefits for--

(I) such plan year, or

(II) any consecutive plan year period (not greater than 3 years) which ends with such plan year and which is specified in such election.

An election under this clause, once made, may be revoked or modified only with the consent of the Secretary.

(D) **Employees taken into account.**--For purposes of determining who is an employee for purposes of determining the average benefit percentage under subparagraph (B)--

(i) except as provided in clause (ii), paragraph (4)(A) shall not apply, or

(ii) if the employer elects, paragraph (4)(A) shall be applied by using the lowest age and service requirements of all qualified plans maintained by the employer.

(E) **Qualified plan.**--For purposes of this paragraph, the term "qualified plan" means any plan which (without regard to this subsection) meets the requirements of section 401(a).

(3) **Exclusion of certain employees.**--For purposes of this subsection, there shall be excluded from consideration--

(A) employees who are included in a unit of employees covered by an agreement which the Secretary of Labor finds to be a collective bargaining agreement between employee representatives and one or more employers, if there is evidence that retirement benefits were the subject of good faith bargaining between such employee representatives and such employer or employers,

(B) in the case of a trust established or maintained pursuant to an agreement which the Secretary of Labor finds to be a collective bargaining agreement between air pilots represented in accordance with title II of the Railway Labor Act and one or more employers, all employees not covered by such agreement, and

(C) employees who are nonresident aliens and who receive no earned income (within the meaning of section 911(d)(2)) from the employer which constitutes income from sources within the United States (within the meaning of section 861(a)(3)).

Subparagraph (A) shall not apply with respect to coverage of employees under a plan pursuant to an agreement under such subparagraph. Subparagraph (B) shall not apply in the case of a plan which provides contributions or benefits for employees whose principal duties are not customarily performed aboard aircraft in flight.

(4) **Exclusion of employees not meeting age and service requirements.**--

(A) **In general.**--If a plan--

(i) prescribes minimum age and service requirements as a condition of participation, and

(ii) excludes all employees not meeting such requirements from participation,

then such employees shall be excluded from consideration for purposes of this subsection.

(B) **Requirements may be met separately with respect to excluded group.**--If employees not meeting the minimum age or service requirements of subsection (a)(1) (without regard to subparagraph (B) thereof) are covered

under a plan of the employer which meets the requirements of paragraph (1) separately with respect to such employees, such employees may be excluded from consideration in determining whether any plan of the employer meets the requirements of paragraph (1).

**(C) Requirements not treated as being met before entry date.**--An employee shall not be treated as meeting the age and service requirements described in this paragraph until the first date on which, under the plan, any employee with the same age and service would be eligible to commence participation in the plan.

**(5) Line of business exception.**--

**(A) In general.**--If, under section 414(r), an employer is treated as operating separate lines of business for a year, the employer may apply the requirements of this subsection for such year separately with respect to employees in each separate line of business.

**(B) Plan must be nondiscriminatory.**--Subparagraph (A) shall not apply with respect to any plan maintained by an employer unless such plan benefits such employees as qualify under a classification set up by the employer and found by the Secretary not to be discriminatory in favor of highly compensated employees.

**(6) Definitions and special rules.**--For purposes of this subsection--

**(A) Highly compensated employee.**--The term "highly compensated employee" has the meaning given such term by section 414(q).

**(B) Aggregation rules.**--An employer may elect to designate--

(i) 2 or more trusts,

(ii) 1 or more trusts and 1 or more annuity plans, or

(iii) 2 or more annuity plans,

as part of 1 plan intended to qualify under section 401(a) to determine whether the requirements of this subsection are met with respect to such trusts or annuity plans. If an employer elects to treat any trusts or annuity plans as 1 plan under this subparagraph, such trusts or annuity plans shall be treated as 1 plan for purposes of section 401(a)(4).

**(C) Special rules for certain dispositions or acquisitions.**--

(i) **In general.**--If a person becomes, or ceases to be, a member of a group described in subsection (b), (c), (m), or (o) of section 414, then the requirements of this subsection shall be treated as having been met during the transition period with respect to any plan covering employees of such person or any other member of such group if--

(I) such requirements were met immediately before each such change, and

(II) the coverage under such plan is not significantly changed during the transition period (other than by reason of the change in members of a group) or such plan meets such other requirements as the Secretary may prescribe by regulation.

(ii) **Transition period.**--For purposes of clause (i), the term "transition period" means the period--

(I) beginning on the date of the change in members of a group, and

(II) ending on the last day of the 1st plan year beginning after the date of such change.

(D) **Special rule for certain employee stock ownership plans.**--A trust which is part of a tax credit employee stock ownership plan which is the only plan of an employer intended to qualify under section 401(a) shall not be treated as not a qualified trust under section 401(a) solely because it fails to meet the requirements of this subsection if--

(i) such plan benefits 50 percent or more of all the employees who are eligible under a nondiscriminatory classification under the plan, and

(ii) the sum of the amounts allocated to each participant's account for the year does not exceed 2 percent of the compensation of that participant for the year.

(E) **Eligibility to contribute.**--In the case of contributions which are subject to section 401(k) or 401(m), employees who are eligible to contribute (or elect to have contributions made on their behalf) shall be treated as benefiting under the plan (other than for purposes of paragraph (2)(A)(ii)).

(F) **Employers with only highly compensated employees.**--A plan maintained by an employer which has no employees other than highly compensated employees for any year shall be treated as meeting the requirements of this subsection for such year.

(G) **Regulations.**--The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of this subsection.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STEPHEN M. ANDRUS, FERNANDO DE PEÑA, VALENTIN PAZ AND ANDRUS & PAZ, A PARTNERSHIP<br><br>VS.<br><br>BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, NOE SAUCEDA AND EDDIE ERRISURIZ, JR. | §§§§§§§§§§ <br><br>CIVIL ACTION NO.  B-02-143<br>JURY REQUESTED |

**ORDER SUSTAINING DEFENDANTS NOE SAUCEDA AND EDDIE ERRISURIZ'S OBJECTION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE PLAINTIFFS' SECOND AMENDED ORIGINAL COMPLAINT**

On this the _____ day of _____, 2003, came on for consideration Defendants Noe Sauceda and Eddie Errisuriz's Objection to Plaintiffs' Motion for Leave to File Plaintiffs' Second Amended Original Complaint. Having examined same and considered the arguments of counsel, this Court is of the opinion that said Objection should be sustained and Plaintiffs' Motion for hearing is DENIED.

IT IS THEREFORE ORDERED that Defendants Noe Sauceda and Eddie Errisuriz's Objection to Plaintiffs' Motion for Leave to File Plaintiffs' Second Amended Original Complaint is SUSTAINED and Plaintiffs' Motion for hearing to File Plaintiffs' Second Amended Original Complaint is DENIED.

SIGNED on this _____ day of _____, 2003.

xc:

Ms. Eileen M. Leeds, Willette & Guerra, L.L.P., 3505 Boca Chica, Ste. 460 , Brownsville, Texas 78521
Mr. J. Arnold Aguilar, Law Offices of J. Arnold Aguilar, Artemis Square, Ste. H-2, 1200 Central Blvd., Brownsville, Texas 78520
Ms. Elizabeth G. Neally, Roerig, Oliveira, & Fisher, L.L.P., 855 W. Price Road, Ste. 9, Brownsville, Texas 78520

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, FERNANDO DE PEÑA, VALENTIN PAZ AND ANDRUS & PAZ, A PARTNERSHIP | § § § § | |
| VS. | § § | CIVIL ACTION NO.  B-02-143 JURY REQUESTED |
| BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, NOE SAUCEDA AND EDDIE ERRISURIZ, JR. | § § § § | |

**ORDER SETTING HEARING ON DEFENDANTS NOE SAUCEDA AND EDDIE ERRISURIZ'S OBJECTION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE PLAINTIFFS' SECOND AMENDED ORIGINAL COMPLAINT**

On this the _____ day of _____ 2003, came on to be considered Defendants Noe Sauceda and Eddie Errisuriz's Objection to Plaintiffs' Motion for Leave to File Plaintiffs' Second Amended Original Complaint. After considering same, the Court is of the opinion that a hearing should be held.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Defendants Noe Sauceda and Eddie Errisuriz's Objection to Plaintiffs' Motion for Leave to File Plaintiffs' Second Amended Original Complaint be and is hereby set for hearing on the _____ day of _____ , 2003 at _____ o'clock in this Honorable Court.

SIGNED FOR ENTRY on this the _____ day of _____, 2003.

_____
JUDGE PRESIDING

xc:
Ms. Eileen M. Leeds, Willette & Guerra, L.L.P., 3505 Boca Chica, Ste. 460 , Brownsville, Texas 78521
Mr. J. Arnold Aguilar, Law Offices of J. Arnold Aguilar, Artemis Square, Ste. H-2, 1200 Central Blvd., Brownsville, Texas 78520
Ms. Elizabeth G. Neally, Roerig, Oliveira, & Fisher, L.L.P., 855 W. Price Road, Ste. 9, Brownsville, Texas 78520