IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

APR - 4 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, | § | |
| FERNANDO DE PENA, | § | |
| VALENTIN PAZ and | § | |
| ANDRUS & PAZ, a Partnership | § | |
| | § | |
| VS. | § | CIVIL NO. B-02-143 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | |
| and EDDIE ERRISURIZ, JR. | § | |

**ORDER**

As provided in its March 28 order, this court will hold a hearing on all pending motions at 3:30 p.m. on April 9, 2003. The following is a non-exclusive list of specific issues the court will expect the parties to be ready to discuss at the hearing.

1. Who are the proper plaintiffs in this action?

2. May the court consider the attachments to plaintiffs' responses to defendants' motions to dismiss in ruling on those motions?

3. Do the vendor rules, in combination with the authorization letters, create in plaintiffs a legitimate claim of entitlement to solicit annuity products on BISD campuses? Resolution of this issue may require answers to the following questions:

   a) Do the authorization letters have any legal force under Texas law?

   b) What is the legal significance of the vendor rules and regulations attached to plaintiffs' responses to the defendants' motions to dismiss? Are the rules contractual provisions, and if so, who are the parties to the agreement? Or are the rules binding regulations governing all participants in the TSA program? Or simply non-binding guidelines?

   c) Does regulation IV.F.1. effectively provide that vendor representatives may only be removed "for cause"? *E.g., Henderson v. Sotelo*, 761 F.2d 1093, 1098 (5th Cir. 1985).

5. Should the court consider plaintiffs' February 26, 2002, "supplemental" briefing on the due process issue?

.      How does the Fifth Circuit's decision in *Blackburn v. City of Marshall*, 42 F.3d 925, 940-41 (5th Cir. 1995) affect plaintiffs' "chosen profession" due process claim?

7. Which, if any, of defendants' alleged actions constitute a "classification" for equal protection purposes? Specifically, is there a difference between the defendants' revocations of plaintiffs' solicitation privileges and the alleged violations of state law and vendor rule provisions?

8. Accepting as true plaintiffs' allegations that defendants classified vendor representatives into those they could "control" and those they could not, could this classification be rationally related to any legitimate governmental purpose? Further, may this court conduct a rationality review of this alleged classification at the motion to dismiss stage? *See Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 935-38 (5th Cir. 1988).

9. If this court considers the alleged violations of Texas Civil Statute § 6228a-5, sections 9(2), (4), & (7), as well as the alleged violations of various vendor rules, to constitute part of the alleged "classification" in this case, could it hold that school officials may rationally violate such rules in pursuit of any legitimate purpose?

10. Do plaintiffs' allegations regarding the BISD board of trustees state a claim that a BISD custom or policy was the "moving force" behind the alleged constitutional violation in this case? *See Doe v. Dallas Indep. School Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).

11. Which, if any, of the individual defendants' alleged actions should be considered "ministerial" rather than "discretionary" functions? *See Davis v. Scherer*, 468 U.S. 183, 196 n.14 (1984).

12. Can plaintiffs' successfully rebut the individual defendants' claim of qualified immunity by demonstrating that any of the defendants' alleged actions in this case violated "clearly established" federal rights?

13. Should plaintiffs be granted leave to file their proposed second amended complaint? *See, e.g., Lewis v. Fresne*, 252 F.3d 352, 360 (5th Cir. 2001). Does Federal Rule 16(b)'s "good cause" standard for modification of scheduling orders have any application to this case? *See S&W Enterprises, L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003).

14. If leave is granted, should the court dismiss plaintiffs' First Amendment claims? Specifically,

    a)    should the *Pickering* balancing test apply even though plaintiffs are not public employees, *see O'Hare Truck Serv. v. City of Northlake*, 518 U.S. 712, 714-15

(1996); *Blackburn*, 42 F.3d at 932-33, or is the *Perry v. Sinderman* sovereign-citizen first amendment inquiry more appropriate?

b) If the *Pickering/ Connick* line of cases applies, is this a "mixed speech" case, and if so, were plaintiff Andrus's letter to the BISD insurance department and comments to the board made primarily in his role as a citizen or as an independent contractor? *See Teague v. City of Flower Mound*, 179 F.3d 377, 380 (5th Cir. 1999).

c) If the *Pickering/ Connick* line of cases applies, and this court holds that Andrus's letter and comments involved matters of "public concern," did BISD's interest in the efficient operation of its TSA program nonetheless override Andrus's interest in speaking out?

d) Finally, may the other plaintiffs state a claim against the defendants for violation of their associational rights? *See Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).

15. If leave to amend is granted, do plaintiffs' new allegations affect the standard of review applicable to their equal protection claim by effectively alleging that defendants classified them according to their exercise of fundamental rights?

16. If this court dismisses all of plaintiffs' federal claims, should it retain jurisdiction over their pendent state law claims? *See, e.g., Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (1999).

17. If this court considers the merits of plaintiffs' state law claims, may plaintiffs state a successful claims for fraud or tortious interference with prospective business relationships?

18. Are one or both of the individual defendants immune under Texas Education Code § 22.051, the common-law doctrine of official immunity, or any other source of immunity for state law liability, arising from some or all of their alleged actions in this case? To answer these questions, it may be necessary to consider what specific actions plaintiffs allege were taken by each individual defendant towards the plaintiffs, and under whose authority.

Signed this 3rd day of April, 2003.

_____
Honorable Andrew S. Hanen
United States District Judge