IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 0 9 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, FERNANDO DE PEÑA, VALENTIN PAZ and ANDRUS & PAZ, *a partnership* | § § § § | |
| VS. | § § § | CIVIL ACTION NO.<br><br>B - 02 - 143 |
| BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, NOE SAUCEDA and EDDIE ERRISURIZ, JR. | § § § | (JURY REQUESTED) |

## PLAINTIFFS' RESPONSES TO COURT'S ORDER

TO THE HONORABLE U.S. DISTRICT COURT:

COMES NOW Plaintiffs **STEPHEN M. ANDRUS, FERNANDO DE PEÑA, VALENTIN PAZ** and **ANDRUS & PAZ**, *a partnership*, and for the Court's reference would hereby provide the Court with their preliminary written responses to the Court's list of issues of the Order dated April 4, 2003:

Initially, Plaintiffs would submit to the Court that Defendants' Motion[s] to Dismiss under Rule 12(b)(6) test only the formal sufficiency of the statements of the claims for relief. It is not a procedure for resolving contests about the facts or merits of the case. *Askanase v. Fatjo*, 828 F. Supp. 465, 469 (S.D. Tex. 1993). "The motion[s] must be denied unless it appears to a certainty that Plaintiffs can prove no set of facts that would entitle them to relief." *Id.*, citing **Hishon v. King & Spalding**, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), *et al.* "As stated, restated, iterated, and reiterated, in reviewing the dismissals of

complaints under F.R.Civ.P. 12(b)(6), we are not concerned with the truth of Plaintiffs' allegations." *Voter Information Project, Inc. v. City of Baton Rauge*, 612 F.2d 208, 212 (5th Cir. 1980). "Because of these principles, 'dismissal of a claim...on the basis of the barebone pleadings is a precarious one with a high mortality rate.'" *Id.* at 210, *quoting Barber v. M/V "Blue Cat,"* 372 F.2d 626, 627 (5th Cir. 1967). Even if the Court does not believe the Plaintiffs are likely to prevail on the merits or that the facts cannot be proved, Plaintiffs' claims should not be dismissed so long as their complaint states a claim. *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Motions under Rule 12(b)(6) are therefore disfavored and are rarely granted. *Id.* With that preliminary statement, Plaintiffs would submit the following.

1. **Who are the proper plaintiffs in this action?**

RESPONSE: The proper Plaintiffs in this action are (1) Stephen M. Andrus, (2) Fernando De Peña, (3) Valentin Paz, and (4) Andrus & Paz, a partnership. Each of these parties or entities depended on the leadership and actions of Stephen M. Andrus for the conduct of their business, either individually or through the trade name "The Teachers' Agency." When actions were taken against Plaintiffs, it was based on the understanding that Mr. Andrus' actions, either negative or positive, reflected on all members of the Agency, including Andrus & Paz, a partnership, which is an independent legal entity. When Defendants prevented Andrus from making any sales, for example, Andrus & Paz was similarly prevented from making any sales through Mr. Andrus. When Defendant Errisuriz stated "I'm going to get that Teachers' Agency," for example, the intent was clearly not only to "get" Mr. Andrus, but all those others associated with "The Teachers' Agency."

2.  **May the court consider the attachments to plaintiffs' responses to defendants' motions to dismiss in ruling on those motions?**

RESPONSE:   The attachments to Plaintiffs' Responses to Defendants' Motions to Dismiss were referenced in Paragraph 9 of Plaintiffs' Original Complaint, as well in Paragraph 9 of Plaintiffs' First Amended Original Complaint, or as an attachment to those Complaints. Because all of Plaintiffs' factual allegations must be taken as true, viewed in the light most favorable to Plaintiffs, and with all inferences drawn in favor of the Plaintiffs, the Court should consider those attachments. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *quoted in, Askanase v. Fatjo*, 828 F. Supp. at 468. Just as "[d]ocuments that a Defendant attaches to a motion to dismiss are considered part of the pleading if they are referred in the Plaintiffs' complaint and are central to [their] claim," so to should these documents be considered. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

3.  **Do the vendor rules, in combination with the authorization letters, create in plaintiffs a legitimate claim of entitlement to solicit annuity products on BISD campuses? Resolution of this issue may require answers to the following questions:**

"Property interests...are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The vendor rules were presumably drafted to comply with Texas Civil Statutes Article 6228a-5, through which the state regulates the sales of annuities to employees of educational institutions, and provides for salary reduction agreements to purchase those annuities, in order that those purchasers can receive benefits provided by Internal Revenue Code §403(b). The introduction to the vendor rules appears to say as much. That introduction describes those vendor rules as being "the regulations governing the TSA Program within the School District." So long as Plaintiffs complied with those vendor rules, they were provided with authorization letters, creating their legitimate claim of entitlement to solicit their products pursuant to the "existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

a) **Do the authorization letters have any legal force under Texas law?**

RESPONSE: This is ultimately the due process issue before the Court. The authorization letters were provided to Plaintiffs only after the District was able to confirm that Plaintiffs were in compliance with applicable state laws and the District's vendor rules. Those letters provided that Plaintiffs had been authorized to solicit their annuity products, reserving the right to revoke or limit that privilege "if any representative is not properly serving the best interests of the employees, or is disruptive to employees and BISD business." That language is similarly included in the vendor rules, §4.F.1. Having established certain rules or understandings that secured benefits to allow Plaintiffs to solicit their products, and which support claims of entitlement to those benefits, Defendants established a property right in Plaintiffs to sell their products in accordance with those rules. The authorization letters simply reflected state law set out in Article 6228a-5, which provides that "[a]n educational institution may not grant exclusive access to an employee by discriminating against or imposing barriers to any agent, broker, or company that provides qualified investment products under this Act...." Tex.Civ.St.Art. 6228a-5, §9(4). The authorization letters reflected that Plaintiffs qualified to sell their products, and Article 6228a-5 provided that Defendant could not grant Mr. Soliz exclusive access to employees by discriminating against or erecting barriers to Plaintiffs. The legal force of the authorization letters is to reflect that Plaintiffs qualified to sell their products on BISD campuses, for which the District could not discriminate against them pursuant to Article 6228a-5.

b) **What is the legal significance of the vendor rules and regulations attached to plaintiffs' responses to defendants' motions to dismiss? Are the rules contractual provisions, and if so, who are the parties to the agreement? Or are the rules binding regulations governing all participants in the TSA program? Or simply non-binding guidelines?**

RESPONSE: The vendor rules and regulations are binding regulations governing all participants in the TSA program, in the nature of a binding agreement. They could not be considered non-binding guidelines, as Section III specifically required all vendors to certify they were in compliance with state and federal regulations, and Section IV provided specific procedures with which all vendors had to comply. Failure to comply with those regulations could constitute cause for withdrawal of an agent's authorization letter. Although the vendor rules may originally have been signed by the vendors where indicated on page 6, Plaintiffs were not required to sign this document. Accordingly, the rules would be

considered binding regulations in the nature of a contractual agreement, since the District and all agents and vendors were required to comply with the vendor rules.

c) Does regulation IV.F.1. effectively provide that vendor representatives may only be removed "for cause?" *E.g., Henderson v. Sotelo*, 761 F.2d 1093 (5th Cir. 1985).

RESPONSE: Yes. As *Henderson* and *Perry* pointed out, Plaintiffs do not need a formalized contract or statutory guarantee that they are entitled to continued employment in order to establish the existence of a property interest. *Henderson v. Sotelo*, 761 F.2d 1093, 1096 (5th Cir. 1985); *Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2696, 2698, 33 L.Ed.2d 570 (1972). As the Supreme Court and the Fifth Circuit have held, Plaintiffs "should be allowed to show 'the existence of rules and understandings, promulgated and fostered by [Defendants], that may justify [their] legitimate claim of entitlement to continued employment absent sufficient cause." *Perry v. Sindermann*, 408 U.S. at 602-03, 92 S.Ct. at 2700; *Henderson v. Sotelo*, 761 F.2d at 1096.

The District's language in vendor rule IV.F.1 providing that the District may revoke or limit an agent's solicitation privileges "if that representative or vendor is not properly serving the best interests of BISD employees or is disruptive to employees or BISD business" effectively establishes limitations or terms under which the agent's authorization letter could be revoked, *i.e.*, only for cause. That language, or similar language, is again included in the authorization letters, further emphasizing the rules and understandings promulgated by the District that justified Plaintiffs' "legitimate claim of entitlement to continued employment absent sufficient cause." "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

5. **Should the court consider plaintiffs' February 26, 2002(sic), "supplemental" briefing on the due process issue?**

RESPONSE: Yes. The due process issues before the Court are somewhat unusual and very complex. As reflected by this Court's Order of 18 questions, with sub-parts, requesting additional information, it is clear that even with the parties' supplemental briefing the Court has not received complete arguments from the parties. In addition, because the Court's decision on the motions to dismiss must rely on the Plaintiffs' pleadings, considered in the light most favorable to the Plaintiffs, any further elucidation of the issues and the bases for Plaintiffs' claims should only assist in the resolution of these issues, and the Court should therefore consider that document.

6. **How does the Fifth Circuit's decision in *Blackburn v. City of Marshall*, 42 F.3d 925, 940-41 (5th Cir. 1995) affect plaintiffs' "chosen profession" due process claim?**

RESPONSE: Mr. Blackburn sued the City of Marshall, complaining that his due process rights were violated after he was denied permission to use the police radio frequency and remain on the rotation list in his towing and wrecker service business, allegedly because of his "attitude" in complaining about the bidding procedure for wrecker services. Unfortunately for Mr. Blackburn, however, he could not identify any independent authority that would entitle him to use the police radio frequency. "Because Blackburn [did] not allege that his property interest in remaining on the rotation list stem[med] from a state statute or regulatory scheme, a contract, or any other independence source, [the Fifth Circuit found] that Blackburn ha[d] failed to allege a property interest protected by the Due Process Clause of the Fourteenth Amendment." *Blackburn v. City of Marshall*, 42 F.3d 925, 940 (5th Cir. 1995).

Unlike *Blackburn*, however, Plaintiffs did make specific reference to a state statute, a regulatory scheme, the authorization letters and the vendor rules, all of which are independent sources through which Plaintiffs' property interests were developed. The Court in *Blackburn* cited three (3) other cases previously cited by Plaintiffs involving egregious government conduct in interfering with the Plaintiffs' pursuit of their private careers and business, in distinguishing *Blackburn*. See *Truax v. Raich*, 239 U.S. 33, 39-41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915); *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697 (5th Cir. 1991); and *Phillips v. Vandygriff*, 711 F.2d 1217 (5th Cir. 1983). As the *Blackburn* court held, "[t]he Court in *Phillips* held there was sufficient evidence that the Defendants had established a *de facto state licensing system* under which Phillips was deprived of his constitutionally protected interests in pursuing his occupation." *Blackburn v. City of Marshall*, 42 F.3d at 940, citing *Phillips v. Vandygriff*, 711 F.2d at 1222. Similarly, at the very least, Defendant BISD has

established a *de facto* regulatory scheme relating to its Tax Sheltered Annuity Program.

7. **Which, if any, of defendants' alleged actions constitute a "classification" for equal protection purposes? Specifically, is there a difference between the defendants' revocations of plaintiffs' solicitation privileges and the alleged violations of state law and vendor rule provisions?**

RESPONSE: It may be impractical to expect the parties to distinguish and separate the Defendants' actions in revoking the Plaintiffs' solicitation privileges and their violations of state law, since it was the revocation of those privileges that violated state law and the vendor rules. As the testimony has developed in depositions, evidence will be presented that David Soliz made presentations of his annuity products at meetings at which BISD principals and administrators were required to attend. At least one administrator understood that the purpose of that presentation was for Mr. Soliz to sell his products. Mr. Soliz was the only agent authorized to make those mandatory presentations, however. Although Plaintiff Andrus requested permission to make such presentations, no response was ever provided to that request. On the other hand, Mr. Soliz's supervisor, Tom Miller, told Mr. Andrus that he had been granted the authority to make mandatory presentations, and that Mr. Andrus could participate if he would be willing to contribute 20% of all sales. The purpose of the 20% contribution was to "hire" Defendant Sauceda for this privilege. Mr. Andrus refused this offer, and he was therefore never allowed to make any presentations.

In the event Defendants are claiming that Mr. Soliz's presentations were benign or for "informational purposes only," Plaintiffs will be able to show that such was not the case because Mr. Andrus was denied the opportunity to make those same presentations, and at least one other witness understood that the presentations were for no purpose other than to promote Mr. Soliz's products. The revocation of Plaintiffs' solicitation privileges, combined with the authorization of no one other than Mr. Soliz to make mandatory presentations, was in violation of applicable state law, including Article 6228a-5, §9(2), (4) & (7), as well as BISD's vendor rules §4.F.2 & 3, all of which established the separate "classification" of Plaintiffs for equal protection purposes. Plaintiffs were "classified" as those parties who would not make financial contributions to Defendants and/or as those who challenged Defendants by speaking out about the violations or associating with those who did.

8.  Accepting as true plaintiffs' allegations that defendants classified vendor representatives into those they could "control" and those they could not, could this classification be rationally related to any legitimate governmental purpose? Further, may this court conduct a rationality review of this alleged classification at the motion to dismiss stage? *See Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 935-38 (5th Cir. 1988).

RESPONSE: Although the Court in *Mahone* identified circumstances in which it would take "but momentary reflection" to determine a purpose for the classification that is "legitimate beyond dispute and rationally related to the [Defendant's] classification," this does not appear to be such a case. *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 936 (5th Cir. 1988). It is difficult to imagine what legitimate governmental purpose Defendants could envision for creating such a classification. Because the "rationality analysis requires more than just a determination that a legitimate state purpose exists, it also requires that the classification chosen by the state actors be rationally related to that legitimate purpose," and that the "rational relationship must be real," the likelihood is minimal that such a determination can be made at this time. Plaintiffs can envision no legitimate governmental purpose for a classification as described in the preceding response, and Defendants have provided no evidence of any actual rational relationship of such a classification to any legitimate governmental purpose. Because Defendants are not yet required to provide evidence of a legitimate purpose and a rational relationship at the motion to dismiss stage, such an evaluation at this time may be premature. To date, however, Defendants have described no legitimate governmental purpose for their classification, or for taking the actions they did, nor have they described any rational relationship of that legitimate governmental purpose to the classification or to their actions.

9.  If this court considers the alleged violations of Texas Civil Statute § 6228a-5, sections 9(2), (4), & (7), as well as the alleged violations of various vendor rules, to constitute part of the alleged "classification" in this case, could it hold that school officials may rationally violate such rules in pursuit of any legitimate purpose?

RESPONSE: Plaintiffs are not aware of any circumstances under which an official may "rationally violate" a state statute. Similarly, although Defendants may choose to change their vendor rules, assuming elements of notice and an opportunity to be heard are present, there should be no circumstances under which such rules could be "rationally violated." Although certain emergencies may provide a legitimate purpose for the rational violation of some other type of rules or laws, such as a rational violation of traffic laws by emergency personnel in responding to an emergency, no such situation appears to have presented itself in this case. For that matter, to date Defendants have provided Plaintiffs with no explanation as to why their authorization letters were revoked, why mandatory presentations

were necessary, what circumstances existed that would allow only Mr. Soliz to make those mandatory presentations, or why Plaintiffs were not allowed to make similar presentations.

10. **Do plaintiffs' allegations regarding the BISD board of trustees state a claim that a BISD custom or policy was the "moving force" behind the alleged constitutional violation in this case?** *See Doe v. Dallas Indep. School Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).

RESPONSE: One difference between the present action and *Doe* is that in *Doe* the Plaintiffs were complaining of the actions of a person who was not a policymaker. *Doe v. Dallas Indep. School Dist.*, 153 F.2d 211, 215 (5th Cir. 1998). In the present action, Defendant Sauceda was the Superintendent of Schools for Defendant BISD, and was therefore a final policymaker for certain matters. Whether he was the final policymaker or the Board of Trustees was, however, is irrelevant because Plaintiff Andrus complained to both, and no action was taken to reflect that the actions of Defendant Sauceda were not the official policy of Defendant BISD after those complaints. *Grandstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir. 1985), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). It does not matter whether the BISD custom or policy that was the "moving force" behind the violation of Plaintiffs' constitutional rights is reflected in Defendant Sauceda's initial actions, or in the Board of Trustees' adoption of those actions, because both took the same action to allow the original or continued deprivation of Plaintiffs' rights.

11. **Which, if any, of the individual defendants' alleged actions should be considered "ministerial" rather than "discretionary" functions?** *See Davis v. Scherer*, 468 U.S. 183, 196 n.14 (1984).

RESPONSE: Although some of the individual Defendants' actions can be considered discretionary functions under certain circumstances, they did not have discretion to take action in a manner that would violate the Plaintiffs' rights as alleged. For example, Defendants did not have discretion to violate Article 6228a-5, especially §§ 9(2), (4) or (7). Although Defendants might have discretion to *invite* employees to meetings at which Mr. Soliz was marketing qualified investment products, he did not have discretion to *require* or *coerce* attendance at those meetings, as they did. Their compliance with Article 6228a-5, §9(2), therefore, was merely a ministerial function, since they did not have any discretion to violate that section. Similarly, whereas Defendants may have had discretion under vendor rule IV.F.1. to revoke solicitation privileges of one or more Plaintiffs had they determined that such Plaintiff was disruptive to employees or BISD business, Defendants were at least required to notify Plaintiffs of their

reasons for taking that action, and they were required to provide written notice of such at least ninety (90) days in advance of the termination date, pursuant to Section IV.I.1. Although Defendants had discretion to terminate Plaintiffs' solicitation privileges, as set out in Section IV.F.1., by notifying Plaintiffs that they were doing so within ninety (90) days in advance of the termination date, they did not invoke that discretionary function, and instead violated the simple ministerial function of complying with the vendor rules themselves. Once Plaintiffs met the requirements in the vendor rules to solicit their products, they were entitled to do so, and Defendants could do no more than the ministerial function of providing the authorization letters and assuring compliance with those vendor rules. Defendants did not have discretion to remove Plaintiffs from the TSA Program in a manner, or for reasons, not described in the vendor rules.

12. **Can plaintiffs' successfully rebut the individual defendants' claim of qualified immunity by demonstrating that any of the defendants' alleged actions in this case violated "clearly established" federal rights?**

RESPONSE: The federal rights about which Plaintiffs complain include the rights to due process, to property, to liberty, and to the equal protection of the laws in the pursuit of the common occupations of life, including the right to pursue one's chosen profession without unreasonable governmental interference. These rights have been set out in the Fourteenth Amendment to the U.S. Constitution, as well as in the "*core and penumbra*" of the Constitution, including through the Ninth and Tenth Amendments and the extensive case law protecting individuals from unreasonable governmental interference. As the Supreme Court has held, "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment...." *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959). Those same Fifth Amendment rights were subsequently applied to the states through the Fourteenth Amendment. *Dolan v. Tigard*, 512 U.S. 374, 383-84, 114 S.Ct. 2309, 2316, 129 L.Ed.2d 304 (1994), *et al*.

The law was clearly established at the time of Defendants' actions alleged herein that the individual Defendants could not restrict Plaintiffs' ability to follow their chosen profession by requiring them to contribute 20% of their earnings in order to participate in the Tax Sheltered Annuities Program, that Defendants could not take from Plaintiffs their right to participate in the TSA Program in a manner not set out in the vendor rules, and that Defendants could not violate state laws in an attempt to direct all business to a single agent. At the time of Defendants' actions, the law was clearly established that doing so, and in the process preventing Plaintiffs' pursuit of their chosen professions, violated Plaintiffs' clearly established rights, as further set out in the case law cited in

Plaintiffs' Supplemental Brief in Response to Defendants BISD's, Sauceda's and Errisuriz's Motions to Dismiss.

13. **Should plaintiffs be granted leave to file their proposed second amended complaint?** *See, e.g., Lewis v. Fresne*, 252 F.3d 352, 360 (5th Cir. 2001). **Does Federal Rule 16(b)'s "good cause" standard for modification of scheduling orders have any application to this case?** *See S&W Enterprises, L.L.C. v. South Trust Bank of Alabama*, 315 F.2d 533, 536 (5th Cir. 2003).

RESPONSE: At this point, there should be no question that this a complicated case, both factually and legally. As the discovery and investigation has progressed, additional facts and bases for liability have been discovered. For that reason, it was incumbent on Plaintiffs to seek leave of the Court to clarify their pleadings and submit their Second Amended Original Complaint in order to conform the facts to the pleadings. This action was filed eight (8) months ago, and discovery is progressing. In addition, the parties have filed a Joint Motion to Extend Deadlines, in order to allow all the parties additional time to prepare this case for trial. As a result, there has been no undue delay in Plaintiffs' filing their motion for leave, and Defendants would not be prejudiced procedurally in granting that motion. The factors affecting the denial of the motion for leave in *Lewis*, therefore, do not apply in the present action. *Lewis v. Fresne*, 252 F.3d 352, 360 (5th Cir. 2001).

Similarly, *S&W Enterprises* also does not apply because that case involved a request to amend pleadings after the expiration of the deadline set by the Court in a scheduling order. *S&W Enterprises, LLC v. South Trust Bank of Alabama*, 315 F.2d 533, 535-36 (5th Cir. 2003). In the present action, however, the Court's scheduling order did not provide a deadline by which Plaintiffs were required to amend their pleadings. The *S&W Enterprises* court relied on Rule 16(b), which provides for a deadline for the parties to amend pleadings, because the Plaintiff in that case did not seek leave to amend until after the expiration of that deadline, and because amendment would have unduly prejudiced the Defendant, would have required more discovery, or would have unnecessarily delayed the trial. As explained, the parties have filed a Joint Motion to Extend Deadlines, and Defendants have identified no basis on which they would be prejudiced, on which more discovery would be required, or on which trial would be delayed in the granting of that motion. *S&W Enterprises* therefore should not apply, and Plaintiffs should be granted leave to file their Second Amended Original Complaint.

Alternatively, because the statute of limitations has not yet expired, Plaintiffs could even raise those new claims in an entirely new lawsuit, which would only result in a denial of judicial economy and increase the costs of litigation. Plaintiffs would prefer, therefore, that their motion be granted.

**14.   If leave is granted, should the court dismiss plaintiffs' First Amendment claims?**

"A motion to dismiss under Rule 12(b)(6) tests only the formal sufficiency of the statements of the claims for relief. It is not a procedure for resolving contests about the facts or merits of the case. In ruling on a motion to dismiss, the Court must take the Plaintiffs' allegations as true, view them in a light most favorable to Plaintiffs, and draw all inferences in favor of the Plaintiffs." *Askanase v. Fatjo*, 828 F. Supp. 465, 469 (S.D. Tex. 1993), *citing Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The question at this stage is not whether Plaintiffs will prevail before a jury, but rather whether they should be allowed to present their evidence at all. As a result, Plaintiffs' First Amendment claims should not be dismissed.

**Specifically,**

a)   should the *Pickering* balancing test apply even though plaintiffs are not public employees, *see O'Hare Truck Serv. v. City of Northlake*, 518 U.S. 712, 714-15 (1996); *Blackburn*, 42 F.3d at 932-33, or is the *Perry v. Sinderman* sovereign citizen first amendment inquiry more appropriate?

RESPONSE:   As the Supreme Court has held, even where a public citizen has no "right" to a valuable government benefit, and though the government may have a number of valid reasons for denying him that benefit, the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests--especially, his interests in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which [it] could not command directly.'" *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972), *quoting Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958).

There has been no allegation made by either Plaintiffs or any Defendant that any of the Plaintiffs were public employees. To the contrary, Defendants appear to contend that Plaintiffs have no due process rights because they were not public employees. As the courts set out in *Pickering* and in *Blackburn*, "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *Blackburn v. City of Marshall*, 42 F.3d 925, 931-32 (5th Cir. 1995). It was for that reason that those courts confirmed that the *Pickering* balancing test should apply only to public employees. The test developed in *Pickering* was designed to apply to a public employee, a teacher, who was commenting on matters of public concern relating to the State, her employer, and required the balancing of her right to speak on matters of public interests with the State's need to promote the efficiency of the services it performs through its employees. *Pickering v. Board of Education*, 391 U.S. at 568-69, 88 S.Ct. 1734-35. That court acknowledged, however, that the same test would not apply "were [Plaintiff] a member of the general public...."

On the other hand, the Supreme Court in *Perry* and the Fifth Circuit in *Blackburn* both concluded that the First Amendment analysis applicable to an independent contractor, such as the Plaintiffs herein, is the more generalized question of whether Defendants acted or denied a benefit to Plaintiffs because of their "constitutionally protected speech or associations...." *Perry v. Sindermann*, 408 U.S. at 597, 92 S.Ct. at 2697 (untenured teacher); *Blackburn v. City of Marshall*, 42 F.3d at 933 (independent owner of towing and wrecker service business alleging facts similar to Plaintiffs herein) ("we conclude that the relationship between [Plaintiff] and Defendants does not rise to the level of even a quasi-employment relationship like that in the medical staff privileges cases. Accordingly, we hold that the facts of this case are not sufficiently analogous to the employment cases to warrant the direct and full application of *Pickering* and *Connick*.") Accordingly, the *Perry* standard should apply, rather than the *Pickering* balancing test.

b)  If the *Pickering/Connick* line of cases applies, is this a "mixed speech" case, and if so, were plaintiff Andrus's letter to the BISD insurance department and comments to the board made primarily in his role as a citizen or as an independent contractor? *See Teague v. City of Flower Mound*, 179 F.3d 377, 380 (5th Cir. 1999).

RESPONSE:  As set out in the response to the prior inquiry, the *Pickering/Connick* analysis should not apply to this action because Plaintiffs were not employees of the District. Even the *Teague* case cited by the court involved a direct employer-employee relationship. *Teague v. City of Flower Mound*, 179 F.3d 377 (5th Cir. 1999). If this Court is to consider the *Pickering/Connick* line of cases applicable, however, at the very least the speech made by Plaintiff Andrus would be considered "mixed speech." Andrus' letter to Defendant BISD complained of criminal wrongdoing, as in *Teague*, so he was clearly speaking upon matters of public concern. The fact that he had a private interest in these matters as well does not detract from the public nature of those concerns, and he certainly was not speaking only "as an employee upon matters only of personal interest...." *Id.* at 380. Because the complaints and criminal wrongdoing by Defendants would clearly be matters of public concern, at the very least this would be a "mixed speech" case.

c)  If the *Pickering/Connick* line of cases applies, and this court holds that Andrus's letter and comments involved matters of "public concern," did BISD's interest in the efficient operations of its TSA program nonetheless override Andrus's interest in speaking out?

RESPONSE:  As set out in the responses to the Court's two prior inquiries, Plaintiffs believe the *Pickering/Connick* analysis should not apply. Should this Court hold otherwise, however, Plaintiffs are stymied in their ability to respond to this inquiry because Defendants have not identified how or why BISD's interest in the efficient operations of its TSA Program required the termination of Plaintiffs' authorizations to solicit their products, required only agent Soliz to promote his products, or did not allow them to make the same presentations being made by their competitor, David Soliz. Because any such alleged interest has not even been identified, Plaintiffs cannot evaluate any manner or reason why that interest would have overridden Andrus' interest in speaking out.

> d) Finally, may the other plaintiffs state a claim against the defendants for violation of their associational rights? *See Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).

RESPONSE: As the Court in *Hitt* explained, "the First Amendment is violated by state action whose purpose is either to intimidate public employees from joining a union or taking an active part in its affairs or to retaliate against those who do." *Hitt v. Connell*, 301 F.3d 240, 245 (5th Cir. 2002). There should be no question that the First Amendment protection of associational rights applies no less than its protections of speech rights. *Hitt* involved a claim by a public employee, however, interested in joining a union, all of which affected the direct employer-employee relationship. Just as in speech cases in which the *Perry* standard should apply, rather than the *Pickering* balancing test, because the Plaintiffs in the present action were not District employees, perhaps the most appropriate standard to apply would be that set out in *O'Hare*. *O'Hare Truck Service, Inc. v. City of North Lake*, 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996).

As in the present action and *Blackburn*, *O'Hare* involved an independent contractor prejudiced by the actions of a governmental entity. The *O'Hare* Plaintiffs complained that they were removed from a City's tow truck operator rotation list in retaliation for their support of the mayor's opponent, effectively complaining that they were retaliated against because of their association with the opponent. *Id.* 518 U.S. at 718, 116 S.Ct. at 2357. *See also Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Just as "[g]overnment officials may not discharge public employees for refusing to support a political party or its candidates, unless political affiliation is a reasonably appropriate requirement for the job in question," so to may Defendants not retaliate against Plaintiffs for refusing to support the illegal actions of the Defendants, or for supporting the actions of someone else making a direct complaint of those actions. *Id.* 518 U.S. at 714, 116 S.Ct. at 2355.

In evaluating these association claims, the Supreme Court approved the prior holdings in "*Elrod* and *Branti* [which] involved instances where the raw test of political affiliation sufficed to show a constitutional violation, without the necessity of an inquiry more detailed than asking whether the requirement was appropriate for the employment in question. There is an advantage in so confining the inquiry where political affiliation alone is concerned, for one's beliefs and allegiances ought not to be subject to probing or testing by the government." *Id.*, 518 U.S. at 719, 116 S.Ct. at 2358. The court explained, however, that some Pickering balancing might be required in instances in which political affiliation is

actually a requirement, in order to determine whether that requirement is reasonable. Defendants have not identified how any political affiliation would be a requirement to solicit or market tax sheltered annuity products, and Plaintiffs are aware of no basis for which political affiliation should be a requirement. *Id.*, 518 U.S. at 719, 116 S.Ct. at 2358. Without any such political affiliation requirement, any *Pickering* analysis should not be necessary, and "the raw test of political affiliation" previously established in *Elrod* and *Branti* should suffice to show a constitutional violation.

15. **If leave to amend is granted, do plaintiffs' new allegations affect the standard of review applicable to their equal protection claim by effectively alleging that defendants classified them according to their exercise of fundamental rights?**

RESPONSE: While the standard of review applicable to Plaintiffs' equal protection claim would remain the same if leave to amend the Complaint is granted, Defendants' classification of Plaintiffs for purposes of that claim would be modified to allow for the additional classification of Plaintiffs. Because Defendants' classification of Plaintiffs was never submitted in writing, and because Defendants have not identified any basis for that classification, Plaintiffs were left with the task of defining that classification based on Defendants' actions. Based on those actions, therefore, Defendants classified Plaintiffs *either* as those they could not control for their illegitimate purposes *and/or* as those who complained about Defendants' illegal conduct, and those who associated with them, *i.e.,* those who exercised their fundamental rights.

16. **If this court dismisses all of plaintiffs' federal claims, should it retain jurisdiction over their pendent state law claims?** *See, e.g., Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (1999).

RESPONSE: Should this Court dismiss Plaintiffs' federal claims, jurisdiction should be retained over the pendent state law claims under *Batiste* only if there remain no "novel or complex" state law issues, and "judicial economy, convenience, and fairness to the parties weigh heavily towards" retaining jurisdiction. *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227-28 (5th Cir. 1999). As with the remainder of this case, Plaintiffs' state law claims of tortious interference with prospective business relationships, fraud and malice involve complex factual and legal determinations. Because this case has been pending only eight (8) months, discovery is still ongoing, and the issues are still being developed. Under these circumstances, the Court should follow the "general rule" in declining to exercise jurisdiction over the remaining pendent state law claims. *Id.* at 227.

17. **If this court considers the merits of plaintiffs' state law claims, may plaintiffs state a successful claim for fraud or tortious interference with prospective business relationships?**

RESPONSE: Plaintiffs have already established the bases for their fraud and tortious inference with prospective business relationship claims in their pleadings. Rule 12(b)(6) "is not a procedure for resolving contests about the facts or merits of the case." **Askanase v. Fatjo**, 828 F. Supp. at 469. Plaintiffs have set out the factual elements necessary to establish a claim of fraud in their First and Second Amended Original Complaints, and no party has challenged Plaintiffs' tortious interference with prospective business relationships claims. As a result, consideration of dismissal of these claims at this time would be premature.

18. **Are one or both of the individual defendants immune under Texas Education Code § 22.051, the common-law doctrine of official immunity, or any other source of immunity for state law liability, arising from some or all of their alleged actions in this case? To answer these questions, it may be necessary to consider what specific actions plaintiffs allege were taken by each individual defendant towards the plaintiffs, and under whose authority.**

RESPONSE: Consideration of immunity of either of the individual Defendants at this time is likely also premature. In order to properly and fully respond to this inquiry, Plaintiffs would require considerable time in order to gather the testimony and evidence to defeat this summary judgment-type concern. Because the factual elements have been set out in Plaintiffs' Complaint, and the legal bases to establish that the individual Defendants are not immune under Texas Education Code §22.051 or under the common law doctrine of official immunity, as set out in response to inquiry nos. 11 and 12 above, consideration of these issues under Rule 12(b)(6) at this time would be premature. In short, however, individual Defendants Sauceda and Errisuriz misrepresented to Plaintiffs and others that they had legitimate reasons for excluding all agents other than David Soliz from participation in the TSA Program under the guise of reviewing the program, in order to directly violate the vendor rules, Article 6228a-5 and other BISD policies, which they had no discretion to do, and which they did with the specific intent to violate Plaintiffs' rights alleged, or with a conscious or deliberate disregard of those rights, which rights were clearly established at the time of Defendants' actions. As a result, Defendants would not be entitled to immunity herein.

Signed on this the 8th day of April, 2003.

        Respectfully submitted,

        **LAW OFFICE**
        **J. ARNOLD AGUILAR**
        Artemis Square, Suite H-2
        1200 Central Boulevard
        Brownsville, Texas 78520
        Telephone   : (956) 504-1100
        Facsimile    : (956) 504-1408

By: _____
        J. Arnold Aguilar
        State Bar No. 00936270
        Federal Adm. No. 6822

Attorney for Plaintiffs,
STEPHEN M. ANDRUS, FERNANDO
DE PEÑA, VALENTIN PAZ and
ANDRUS & PAZ, *a partnership*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **PLAINTIFFS' RESPONSES TO COURT'S ORDER** has on this the 9th day of April, 2003, been hand delivered to:

Ms. Elizabeth G. Neally
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Rd., Suite 9
Brownsville, TX 78520

Ms. Eileen M. Leeds
WILLETTE & GUERRA, L.L.P.
3505 Boca Chica Blvd., Suite 460
Brownsville, TX 78521

_____
J. Arnold Aguilar