United States District Court
Southern District of Texas
FILED

**DEC 0 1 2003**

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, | § | |
| FERNANDO DE PENA, | § | |
| VALENTIN PAZ and | § | |
| ANDRUS & PAZ, a Partnership | § | |
| | § | |
| vs. | § | B-02-143 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | |
| and EDDIE ERRISURIZ, JR. | § | |
| | § | |

**DEFENDANTS' REPLY AND OBJECTION TO
PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT MOTION TO EXCLUDE
PLAINTIFFS' EXPERT**

**NOW COME,** The BROWNSVILLE INDEPENDENT SCHOOL DISTRICT (BISD), NOE

SAUCEDA AND EDDIE ERRISURIZ, JR., Defendants herein, and respectfully file their Reply and

Objection to Plaintiffs' Response to Defendants' Joint Motion to Exclude Plaintiffs' Expert and

would show the Court the following:

**I.**

Plaintiffs indicate in Section II of their Response that Defendants' basis for the challenge to

Dr. Horner's opinions in this case stem from Dr. Horner's reliance for some of his opinions on

certain information obtained through his discussions with, and documents obtained from, Mr.

Andrus. Defendants would show that should the Court examine the documents upon which Dr.

Horner based his opinions they would find that there are no supporting documents regarding Mr.

Andrus' estimate of what his lost profits would be and that all of Dr. Horner's opinions are based

on baseless information provided by one of the four Plaintiffs in this case. Dr. Horner did not examine income tax records of Plaintiffs. Dr. Horner did not examine the actual commission statements of Mr. Andrus or any of the other Plaintiffs. He simply took the word of Mr. Andrus as well as what the other three Plaintiffs as to what his lost commissions would be and then re-calculated the figures. Plaintiffs' summary for the basis of Defendants' challenge is over simplified and misleading.

Plaintiff cites case law to support his position. Nowhere is the case law does the Fifth Circuit indicate that opinions based on the subjective speculation by Plaintiff is relevant or reliable. It is neither good general business nor good economic principals to reach conclusions based on such flimsy support.

In ***Pipitone v. Biomatrix, Inc.***, *288 F.3d 239, 245-47 (5th Cir. 2002)* relied on by Plaintiff, the expert was providing expert testimony on a scientific issue. Likewise in ***Mathis v. Exxon Corp.***, *302 F.3d 448, 461 (5th Cir. 2002)* relied on by Plaintiff also is a consideration of an expert's ability to testify on scientific matters.

This is not a case where Plaintiffs' pain level is at issue or some other subjective causation matter. This is a case of loss of profits for five months in 2000-2001, which could have easily been supported based on a review of past and future year earnings.

The Court held in **Pipitone** that it was proper to allow admission of expert testimony where it is based on the expert's specialized knowledge, training, experience, and first-hand observation while supported by "solid evidence" in the scientific community. Nowhere does it say it is okay to give opinions based on unsupported facts.

## II.

Plaintiffs indicate that Dr. Horner's opinions are reliable because Dr. Horner holds a doctoral degree in economics from the University of Michigan. He also indicates that he has a considerable experience in the field of economics. However, he does not have any opinions at to whether or not Dr. Horner's reliance on the opinions of Mr. Andrus was supported by any reliable information or supporting documentation. In fact on page 3 of the Response Plaintiffs indicate that "Dr. Horner utilized the growth rates and attrition rates provided by Mr. Andrus." Yet these growth rates and attrition rates are not supported by any documentation other than Mr. Andrus' claims.

Plaintiffs indicate on page 3, paragraph 1, that Defendants have confused "the difference between an expert relying on other witnesses' testimony for his analysis and conclusions, and an expert who testifies about information on which he is not an expert or relying on improper methodology." Plaintiffs indicate that Dr. Horner is allowed to rely on Stephen Andrus' computations of commissions paid to him and his analysis and evaluation of income streams because Mr. Andrus has specific knowledge of what he was paid, based on his insurance business records. Yet, there is nothing to indicate that Mr. Andrus' basis on his based of this information on his insurance business records, since none of the insurance records were provided by Stephen Andrus to Dr. Horner. In fact, Dr. Horner in his deposition indicated that he did not know what Mr. Andrus had based his growth and attrition rates on for what his commission losses would be. Dr. Horner in his conversations with Andrus did not find out how Stephen Andrus arrived at these arbitrary figures. Plaintiffs indicate on page 4, continuation of prior paragraph, that "the growth and attrition rates are based, therefore, on objectively verifiable data and information, and not on the subjective belief of Mr. Andrus." Yet, Plaintiffs fail to indicate what the information was based on. With no foundation

being laid, the opinions of Dr. Horner as to the possible damages of the Plaintiffs based on Mr. Andrus' unverified, unsupported statements are therefore unreliable. See paragraph 4 to Defendants' Joint Motion to Exclude Plaintiffs' Expert.

Plaintiffs correctly indicate that Defendants also challenge Dr. Horner's opinions on a mitigation of Plaintiffs' damages. Dr. Horner as stated in his affidavit indicated that "because of the nature of Plaintiffs' insurance business, the losses of revenue due to their being excluded from BISD campuses cannot be mitigated by subsequent revenue streams." Yet Dr. Horner is not qualified to render such an opinion since he has no information regarding insurance businesses except for that information that is provided to him by the Plaintiffs. He admits in his deposition that he is not an expert on the insurance industry. His opinion that Plaintiffs cannot make up for the loss of revenue due to the exclusion from BISD campuses is not supported by any evidence or supported by Dr. Horner's experience in the insurance business; but is again only supported on statements given to him by the Plaintiffs. In his affidavit he states on page 4 with regard to mitigation that: "There does not appear to be any reason why the Plaintiffs would not have been able to earn both the commissions they lost and their current income." Yet this argument defies simple logic that you can not be in two places at once and also renders opinions regarding the insurance industries that Dr. Horner simply does not have. Plaintiffs have ignored Defendants' arguments that Dr. Horner's testimony is not credible because it is based solely on the unsupported subjective opinions of Plaintiffs. And yet, that is the crux of the Defendants' Motion to Exclude.

### III.

Defendants further object to the affidavit supplied by Stephen Horner as self serving and contradicting prior deposition testimony. Stephen Horner in his affidavit indicates on paragraph 3

that he has taught Economics as Adjunct Professor of Economics at Texas A & M and as an Assistant Professor of Economics at Wellsly College in Massachusetts. In fact, his curriculum vitae correctly indicates that in 1999 was the one and only year that he taught as an Adjunct Professor at Texas A & M University, Corpus Christi, Texas. Prior to that he taught from 1976 to 1977 at Wellsly College in Massachusetts. However, like his affidavit this paragraph is misleading the Court that he has extensive experience as a teacher in economics.

Further, his paragraph 3 indicates that he was involved in industrial sales. He sold oil products, which has nothing to do with the subject matter of Mr. Andrus' lawsuit.

Plaintiffs list on page 2, paragraph 4 the information that he looked at in order to render opinions regarding this case. Nowhere in this information is there any supporting documents for the opinions he renders regarding the "economic value of Plaintiffs' lost opportunities as a result of not being allowed to sell insurance products to staff members of Brownsville Independent School District through the usual sales meetings at Brownsville Independent School District campuses." In fact when rendering his opinions he indicated that he did not know whether or not Stephen Andrus had given these figures based on the five month period when all vendors were not allowed to go on to School District campuses. He also stated he did not know whether or not Stephen Andrus took into account any additional sales that they were able to make during that time. See Horner deposition, Exhibit to Defendants' Joint Motion to Exclude Plaintiffs' Expert, P. 154, L. 2-19, P. 30, L. 1 - P. 32, L. 18.

Deposition of Dr. Horner: Page 30, Line 23 - Page 31, Line 2:

> Q    Did you do anything to verify that the figures that you were
>      provided by Mr. Andrus represented the exact time period
>      when they were prevented from being able to sell on BISD

property?
A      No.

He indicates on page 2, paragraph 6 of his affidavit that he recalculated the results after reviewing the documents provided by Stephen Andrus and discussing those documents with him. As previously indicated these documents consisted of three pages of hand-written and typed-written notes by Stephen Andrus. There was no supporting documents to support them. See Defendants' Joint Motion to Exclude Plaintiffs' Expert, Exhibit "F" and deposition of Horner, Exhibit "A", P. 75, L. 8; P. 18, L. 12; P. 129, L. 12 - P. 130, L. 14.

On page 3 of 5 of his affidavit, he indicates his reply to the "three substantive objections to my analysis" that Defendants raised. He admits that his assignment was to "review information and calculations provided by Stephen Andrus. He was to provide alternate calculations to conform the general acceptic economic practices. Yet, in his original report he could not even add the information that was provided to him by Stephen Andrus. His skills and experience, training and education are all called into questions by his failure to prepare an accurate report and his reliance upon Mr. Andrus' fact assumptions concerning insurance sales. He indicates in his opinion that it was reasonable for him as an economist to render opinions in this case based on Andrus' determination of growth rates and attrition rates. As was pointed out by Dr. House in his review of Horner's report such reliance is unfounded when it is not supported by any supporting documentation. See Exhibit to Defendants' Joint Motion to Exclude Plaintiffs' Expert.

Had Mr. Andrus provided him with commission statements that would have reflected the amount of lost sales for 2001 and 2002 during the five month period when all vendors were refused permission to go on BISD campuses to sell product, then he would have had a basis for this

information. Or, in the alternative, had he looked at the income tax records provided by the four Plaintiffs and compared 2001 and 2002 tax records to 1999 or 2000 tax records this again would have been an alternate way for him to be able to make this determination. However, he did nothing of this kind and merely relied on statements by Mr. Andrus as to what the four Plaintiffs lost. Also, the fact that Mr. Andrus rendered opinions as to Mr. Paz' losses, and Andrus & Paz calls into question the validity and verocity of Mr. Andrus' claims.

Defendants therefore object to Horner's affidavit as incompetent evidence based on unfounded allegations unsubstantiated and improbable speculation and inferences. See ***Marshall v. East Carroll Parish Hosp. Serv. Dist.***, *134 F.3d 319, 324 (5ᵗʰ Cir. 1998).* Further, to the extent Horner's statements in Section 3, page 4 contradict his deposition testimony, this section should be stricken from his affidavit. ***Buttrey v. General Signal Corp.***, *68 F.3d 1488, (1493 (2ⁿᵈ Cir. 1995).*

Wherefore, Defendants request that Dr. Horner be excluded from testifying as to the damages of the Plaintiffs in this case and that Defendants' Motion be granted.

**WHEREFORE, PREMISES CONSIDERED,** Defendants BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, NOE SAUCEDA and EDDIE ERRISURIZ, JR. pray that Defendants' Joint Motion to Exclude Plaintiffs' Expert be Granted and for such other and further relief to which Defendants may be entitled, either at law or in equity.

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER, LLP**
855 West Price Road, Suite 9
Brownsville, Texas 78550
Telephone: (956) 542-5666
Facsimile: (956) 542-0016

Counsel for Defendant Brownsville Independent School District

By:_____
    Elizabeth G. Nealy
    State Bar No. 14840400
    Federal Bar No. 8044
    Ricardo Morado
    State Bar No. 14417250
    Federal ID No. 1213


**WILLETTE & GUERRA, L.L.P.**
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, Texas 78521
Telephone: (956) 541-1846
Facsimile: (956) 541-1893

Counsel for Defendants Noe Sauceda and Eddie Errisuriz, Jr.

By:_____
    Eileen M. Leeds
    State Bar No.  00791093
    Federal Bar No. 16799
    Charles Willette, Jr.
    State Bar No. 21509700
    Federal Bar No. 1937

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing ***Defendants' Reply to Plaintiffs' Response to Defendants' Joint Motion to Exclude Plaintiffs' Expert*** has been served upon counsel of record via Certified Mail, Return Receipt Requested, on this __1st__ day of December, 2003, to wit:

| | |
|---|---|
| Mr. J. Arnold Aguilar | Ms. Eileen Leeds |
| **Law Offices of J. Arnold Aguilar** | Mr. Charles V. Willette, Jr. |
| Artemis Square, Suite H-2, | **Willette & Guerra** |
| 1200 Central Boulevard | 3505 Boca Chica Boulevard, Suite 460 |
| Brownsville, Texas 78520 | Brownsville, Texas 78521 |
| <u>Via CMRRR: 7160 3901 9848 1267 9726</u> | <u>Via CMRRR: 7160 3901 9848 1267 9733</u> |

Elizabeth G. Neally
Ricardo Morado