IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

|  |  |  |  |
|---|---|---|---|
| STEPHEN M. ANDRUS, | § | | |
| FERNANDO DE PENA, | § | | |
| VALENTIN PAZ and | § | | United States District Court |
| ANDRUS & PAZ, a Partnership | § | | Southern District of Texas |
| | § | | FILED |
| vs. | § | B-02-143 | FEB 0 2 2004 |
| | § | | |
| BROWNSVILLE INDEPENDENT | § | | Michael N. Milby |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | | Clerk of Court |
| and EDDIE ERRISURIZ, JR. | § | | |
| | § | | |

## DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY FOR MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

**COME NOW BROWNSVILLE INDEPENDENT SCHOOL DISTRICT**, one of the

Defendants in the above-styled and numbered cause, and files this its Motion for Leave to File

Supplemental Authority for Summary Judgment, pursuant to Federal Rules of Civil Procedure,

Rule 15(d) and 56(c) and would show the Court the following:

### I.

### MOTION FOR SUMMARY JUDGEMENT

1.     Defendants, Brownsville Independent School District filed it's Motion for Summary

Judgment against Plaintiffs, Stephen M. Andrus, Fernando De Pena, Valentin Paz and Andrus &

Paz, a Partnership on or about August 25, 2004.  Plaintiffs' business partner, Dino X. Chavez

Defendant BISD's Motion for Leave to File additional authority
Page 1
23164 - Motion for Leave to file Addtl Authority MSJ.wpd

filed a similar case against the same Defendants in cause number B-02-128, *Dino X. Chavez v. Brownsville Independent School District and Noe Sauceda,* pending in the United States District Court for the Southern District of Texas, Brownsville District before the Honorable Judge Hilda Tagle. This case also involved an independent contractor/insurance adjuster who brought causes of action under the Fourteenth and First Amendments of the United States Constitution for events occurring during the same time period in question, the fall semester of 2001, claiming damages for loss of revenue when not allowed to conduct sales of supplemental insurance on B.I.S.D. campuses. While, the facts at issue in both cases differ somewhat, the causes of action asserted and law underlying them do not.

On or about January 16, 2003, Judge Tagle dismissed the Plaintiff's causes of action under the Fourteenth Amendment. See Order partially granting Defendant's 12(b)(6) Motion to Dismiss, attached as Ex. "A". Additionally, on or about September 30, 2003, Judge Tagle dismissed Plaintiff's attempt to re-instate his due process claim and to bring an additional cause of action under an equal protection of law theory, see order attached as Ex. "B".

Judge Tagle recently dismissed Plaintiff, Dino X. Chavez's remaining cause of action under the First Amendment in the attached Order, Exhibit "C". Just like the Plaintiffs in the instant case, Dino Chavez had claimed a breach of his First Amendment Rights after he wrote letters to trustees and employees of B.I.S.D. and spoke at public audiences of the Brownsville Independent School District.

In fact, during one of the public audiences that he claims was protected by the First Amendment and allegedly resulted in retaliation, his speech was based on the same attorney general opinion and claim of illegality as Stephen Andrus' correspondence dated August 10, 2001.

Defendant BISD's Motion for Leave to File additional authority
Page 2
23164 - Motion for Leave to file Addtl Authority MSJ.wpd

## II.

Defendant requests that the Court grant leave to file this additional authority and to consider these orders when rendering it's rulings on Defendant's Motion for Summary Judgment.

**WHEREFORE, PREMISES CONSIDERED**, Defendant BROWNSVILLE INDEPENDENT SCHOOL DISTRICT prays that Leave be granted by the Court for the filing of this additional authority and that Plaintiff's suit be dismissed at Plaintiffs' cost, with Plaintiff recovering costs of Court, and such other and further relief to which Defendant may be entitled, either at law or in equity.

Respectfully submitted,

**ROERIG, OLIVEIRA, & FISHER, L.L.P.**
855 W. Price Road, Suite 9
Brownsville, Texas 78520
Telephone: (956) 542-5666
Facsimile: (956) 542-0016

**Counsel For Brownsville Independent School District,**

By:_____

Elizabeth G. Neally
State of Texas Bar No. 14840400
Federal Bar No. 8044

## CERTIFICATE OF CONSULTATION

I, the undersigned, hereby certify that I have spoken with Arnold Aguilar's office on January 29, 2004, and he is opposed to this motion.

_____
Elizabeth G. Neally

**Defendant BISD's Motion for Leave to File additional authority**
**Page 3**
23164 - Motion for Leave to file Addtl Authority MSJ.wpd

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing Defendant Brownsville Independent School District's Motion for Leave to File Supplemental Authority, to counsel of record,

J. Arnold Aguilar
**Law Offices of J. Arnold Aguilar**
Artemis Square, Suite H-2,
1200 Central Boulevard
Brownsville, Texas 78520
[CM/RRR 7160 3901 9844 7054 6781]

Eileen Leeds
**Willette & Guerra**
3505 Boca Chica Boulevard, Suite 460
Brownsville, Texas 78521
[CM/RRR 7160 3901 9844 7054 6798]

via U.S. Postal Service, Certified, Return Receipt Requested on this _2_ day of February, 2004.

_____
Elizabeth G. Neally

**Defendant BISD's Motion for Leave to File additional authority**
**Page 4**
23164 - Motion for Leave to file Addtl Authority MSJ.wpd



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION





JAN 1 6 2003

|  |  |  |
|---|---|---|
| DINO CHAVEZ, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. B-02-128 |
| BROWNSVILLE INDEPENDENT SCHOOL DISTRICT AND NOE SAUCEDA, | § § § § | |
| Defendants. | § § | |

## ORDER

BE IT REMEMBERED, that on January 16, 2003, the Court considered the Defendants' Motions to Dismiss For Failure to State a Claim [Dkt. Nos. 15 & 18] and the response thereto [Dkt. No. 21].    The Court **GRANTS** in part and **DENIES** in part Defendants' Motions.

### Factual Background

Plaintiff, Dino Chavez, was an insurance sales agent representing American Family Life Assurance Company of Columbus ("AFLAC"). Plaintiff submitted an AFLAC proposal to the Brownsville Independent School District's ("BISD") Insurance Committee for an optional section 125 Cafeteria Plan Services Contract.  It is undisputed that Plaintiff was employed by AFLAC and was not an employee or independent contractor of BISD. Plaintiff claims that his bid was, in essence, a bid to provide enrollment services to BISD's employees and to provide administrative services for the processing of the employees' insurance policies.  Plaintiff would earn commission from the AFLAC insurance policies he sold directly to the employees.

The present dispute arose when, after coordinating the employees' cafeteria plan enrollment from 1998 through 2001, Plaintiff and his employer were notified by Noe

1                    **EXHIBIT "A"**

Sauceda, the superintendent of BISD, that Plaintiff would no longer be allowed to present AFLAC's bid to the Insurance Committee. Mr. Sauceda sent a letter to Plaintiff in which he explained that unless another representative agent from AFLAC replaced Plaintiff, AFLAC's proposal would not be reviewed by the Insurance Committee. Mr. Sauceda cited unprofessional and unethical conduct and "continuous inappropriate correspondence" as the reason for such removal. See Plaintiff's First Amended Complaint, at ¶ 12 [Dkt. No. 14]. This action, plaintiff alleges, occurred after Mr. Sauceda attempted to award the contract to another bidder, and submitted false information, such as misquotes, to the Insurance Committee in an effort to sabotage AFLAC's bid. In particular, Plaintiff accused BISD of attempting to appoint an "agent of record to provide all ancillary available insurance policies and products for BISD employees," and opined "it [was] illegal to appoint an agent of record according to information located on the Texas Attorney General's website." Plaintiff spoke about this issue at several BISD Board Committee meetings.

Along with other proposals, AFLAC's bid for insurance services was placed on the Insurance Committee's agenda for the November 29, 2001, meeting. During this Insurance Committee meeting, AFLAC's proposal was accepted by a vote of the Committee. Plaintiff alleges that despite the fact that he had written the proposal and had conducted previous insurance enrollment services for BISD employees, he was deprived of the opportunity to actually present the proposal at the meeting and was not allowed to begin enrollment after its acceptance. Plaintiff argues his constitutional right to Free Speech under the First Amendment was violated when he was refused the opportunity to present the proposal in retaliation for publicly admonishing BISD for what he believed to be the illegal use of an agent of record. In addition, Plaintiff argues his due process rights under the Fourteenth Amendment were violated when he was deprived of the opportunity to fully participate in the bidding process.

### BIDS's and Noe Sauceda's Motion to Dismiss

Plaintiff has brought a claim against BISD under 42 U.S.C. § 1983 for the deprivation of his due process rights under the Fourteenth Amendment and his First Amendment rights under the United States Constitution. BISD argues Plaintiff has failed

to demonstrate that a recognized property right arose from the award of the contract. See BISD's Motion to Dismiss, at p. 2 [Dkt. No. 15]. BISD asserts that because Plaintiff was allowed to participate in all BISD bidding procedures, his procedural due process rights were not violated and no such property right exists under Texas law. See id. at 3.

BISD further argues Plaintiff's right to Free Speech was not violated because his speech is not protected by the Constitution for several reasons. First, Plaintiff's speech regarding the alleged illegality of appointing an agent of record represented Plaintiff's private interests as an insurance agent and not those of a concerned citizen. See id. at 5-6. Second, Plaintiff was not a public employee because it is undisputed that he was employed by AFLAC and had no employment contract with BISD. See id. As such, BISD, argues Plaintiff's speech amounts to nothing more than a public citizen speaking out during the public audience sessions of the BISD Board of Trustees Open Meetings. See id.

Noe Sauceda's motion to dismiss presents the same legal arguments. Additionally, however, he asserts that all of the intentional torts Plaintiff alleges against him are barred by section 101.021 of the Texas Civil Practice and Remedies Code and section 22.051 of the Texas Education Code. BISD, conversely, does not base any portion of its motion to dismiss on grounds of governmental immunity. Rather, BISD requests the Court order Plaintiff to submit a tailored reply, pursuant to Federal Rule of Civil Procedure 7(a), responding to the affirmative governmental immunity defenses raised in BISD's Answer to Plaintiff's First Amended Complaint.

### Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted." Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359, 365 (5th Cir. 2000); Lowrey v. Texas A & M University System, 117 F.3d 242, 247(5th Cir. 1997), quoting Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982). Fifth Circuit law dictates that a district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. See Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). See also Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000). A complaint will not be dismissed "unless it appears beyond doubt

3

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc., 804 F.2d 879, 881 (5th Cir. 1986). The Fifth Circuit has held, however, that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted).

### Due Process Claim

When a plaintiff asserts a section 1983 claim alleging a due process violation, he "must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that interest." Blackburn, 42 F.3d at 935 (citations omitted). See also American Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999). Property interests entitled to constitutional protection are defined by sources beyond the Constitution such as state law. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972); Perry v. Sindermann, 408 U.S. 593, 601 (1972) (quoting Roth, 408 U.S. at 577). Chavez alleges in his complaint that he was deprived of his property interests without due process of law when he was refused the opportunity to present the final proposal to the Insurance Committee and to begin the enrollment of employees following the awarding of AFLAC's proposal. See Plaintiff's First Amended Complaint, at ¶¶ 11-12 [Dkt. No. 14].

"[P]roperty interests," the Supreme Court has said, "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Perry, 408 U.S. at 602, n. 7. (internal quotation marks and citation omitted). Plaintiff does not cite to any Texas cases,[1] nor has the Court unearthed any, in which the courts recognized a

---

[1]Plaintiff cites to Systems Contractors Corp. v. Orleans Parish School Bd., 148 F.3d 571 (5th Cir. 1998). This case can be distinguished from the present case. Systems Contractors was a case under Louisiana's bidding laws, and the Louisiana Supreme Court found explicitly that a bidder for a government contract has a protected property interest under the Due Process Clause. See id. at 574 n. 16. Indeed, the Court stated in Systems Contractors that "unlike Louisiana, many states do not recognize a protected property

property interest in the award of a government contract. To the contrary, case law indicates that in light of the fact that a governmental entity may reject any and all bids, a rejected bidder has no property right in the award of the contract. <u>See</u> § 271.027(a) Tx. Loc. Gov't Code Ann. (Vernon's 1999 & Supp. 2003). <u>See also, e.g.,</u> <u>Spawglass Constr. Corp. v. City of Houston</u>, 974 S.W.2d 876, 880 (Tex. App.–Houston [14th Dist.] 1998, pet. denied); <u>DRT Mechanical Corp. et al. v. Collin County, Texas</u>, 845 F. Supp. 1159, 1162-63 (E.D. Tex. 1994); <u>Assoc. General Contractors v. Corpus Chrisiti</u>, 694 S.W.2d 581, 583 (Tex. App.–Corpus Christi 1985, no writ); <u>A & A Const. Co. v. City of Corpus Christi</u>, 527 S.W.2d 833 (Tex. Civ. App. –Corpus Christi 1975, no writ). Generally, courts have found that a property interest is present in a government contract when the contract confers a



<u>Maintenance Co. v. Goldin</u>, 844 F.2d 962, 965-69 (2d Cir. 1988); <u>San Bernardino Physicians' Services Med. Group v. County of San Bernardino</u>, 824 F.2d 1404, 1407-10 (9th Cir. 1987).

Plaintiff cannot establish a property interest because his interest in the proposal itself is simply too attenuated. Plaintiff was an employee of AFLAC. He was not an independent contractor and received no direct payment or formal benefits from BISD because he was not employed by the school district. Plaintiff was denied the opportunity to present AFLAC's proposal at the final Insurance Committee meeting, but he had participated in prior meetings leading up to the vote on the proposal. Although Plaintiff was

serve BISD employees. See Roth, 408 U.S. at 577. See also Blackburn, 42 F.3d at 936-37 (holding that owner of wrecker service failed to allege a property interest in remaining on city's and county's rotating on-call list for accident wrecker service). Plaintiff explains that he derives commission from his position as the insurance service provider when he sells insurance plans to BISD employees. This fact alone, however, does not alter the Court's determination that Plaintiff has not demonstrated that a property interest exists for insurance service providers who are neither employed by BISD nor bound by contract to BISD.

Plaintiff, therefore, has failed to state a due process claim and Defendants' Motions to Dismiss this portion of the Complaint are **GRANTED**.


### First Amendment Free Speech Claim

The fact that Plaintiff does not have a property interest or entitlement to personally continue with the bidding process does not also mean Plaintiff has failed to state a claim for a First Amendment constitutional violation. In Board of County Commissioners v. Umbehr, the Supreme Court made clear that even when an independent contractor has no property interest in his contract with the government, the government may not fail to renew the contract in retaliation for the exercise of the contractor's First Amendment rights. 518 U.S. 668, 673 (1996).

BISD argues that because Plaintiff was not employed by BISD and was not an independent contractor for the government, his speech was conveyed as a citizen and thus he is not entitled to any First Amendment protection. See BISD's Motion to Dismiss, at pp. 4-5 [Dkt. No. 15]. Alternatively, Mr. Sauceda argues the Court should employ the balancing test announced in Pickering v. Board of Ed., 391 U.S. 563 (1968) to determine whether Plaintiff's First Amendment rights have been violated. See Noe Sauceda's Motion to Dismiss, at p. 3 [Dkt. No. 18]. The Court is not convinced that Plaintiff has failed to state a First Amendment claim.

6

In general, when reviewing a First Amendment claim of this kind, the Court must first analyze the content, context, and form of the speech and determine whether it is protected by the Constitution. See Konigsberg v. State Bar of Cal., 366 U.S. 36, 49-51 (1961). Second, the Court must determine which First Amendment standard to apply because certain governmental limitations on protected speech are constitutionally permissible. See id.

### Is Plaintiff's speech protected by the First Amendment?

The mere fact that a plaintiff is not a public employee does not form proper grounds for ruling he is not entitled to protection against retaliation for speaking out on a matter of public concern. See Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995). Indeed, "even though a person as no 'right' to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, . . . the government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests –especially, his interest in freedom of speech." Perry v. Sindermann, 408 U.S. 593, 597 (1972). In Board of County Commissioners v. Umbehr, the Supreme Court explained that at one end of a continuum are "government employees, whose close relationship with the government requires a balancing of important free speech and government interests," and on the other side are cases involving "ordinary citizens whose viewpoints on matters of public concern the government has no legitimate interest in repressing." 518 U.S. 668, 680 (1996). The First Amendment's protections from retaliatory discharge extends to independent contractors. See id. See also O'Hare Truck Service, Inc. v. City of Northlake, 518 U.S. 712, 719-21 (1996).

In the public employment context, the government has an interest in effectively and efficiently running the government, and because of this interest, the Supreme Court carved out a test for balancing the interest of the public employee and the government. See Pickering v. Board of Ed., 391 U.S. 563, 569 (1968). When an employer-employee relationship exists between the claimant and the government, the Court engages a two prong test. First, the Court determines whether the speech concerns a matter of public concern. See Connick v. Myers, 461 U.S. 138, 147 (1983). The Supreme Court has long

held that "speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values.'" Connick, 461 U.S. at 145. "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." Id. at 145. Second, the Court determines whether the employees' interests outweigh the government's interest in "promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568. Further, Connick held "only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." 461 U.S. at 147.

Plaintiff alleges that he submitted letters to BISD's Insurance Committee Campus Representatives and spoke during the public input section of the BISD Board meetings regarding the "apparent illegal[ity]" of appointing an agent of record. See Plaintiff's First Amended Complaint, at ¶ 9 [Dkt. No. 14]. Whether speech concerns a matter of public concern is related to its context and subject matter. See Branton v. City of Dallas, 272 F.3d 730, 740 (5th Cir. 2001). Plaintiff's complaint characterizes the designation of an agent of record as a misinterpretation or circumvention of the law, and as such could be construed as a matter of public concern. See First Nat'l Bank v. Bellotti, 435 U.S. 765, 776 (1978) (expressing the importance of bringing official misconduct to the public's attention). Plaintiff's speech, therefore, is protected under the Constitution.

### What is the applicable First Amendment standard?

Applying the correct First Amendment standard requires the Court to determine whether Plaintiff's relationship to BISD was more akin to that of a public employee, independent contractor, or private citizen. Plaintiff acknowledges he was not an employee of BISD and did not have a contract with BISD to provide insurance policy services. Nonetheless, BISD's alleged conduct and communications with AFLAC had an impact on

Plaintiff's employment because he was removed from the bidding process and AFLAC assigned a new representative agent to present the proposal and enrol employees. As a result, the Court cannot now decide Plaintiff has not presented a First Amendment claim simply because Plaintiff was not directly employed by BISD. See Kinney v. Weaver, 301 F.3d 253, 270 (5th Cir. 2002) ("to hold that [a governmental entity's] conduct cannot constitute a First Amendment violation because they did not directly deny [the plaintiff] the benefit of employment, but instead used governmental power to exert economic pressure on [the plaintiff's] employer in order to achieve that same result, 'would allow the government to produce a result which [it] could not command directly.'") (citing Perry v. Sindermann, 408 U.S. 593, 597 (1972). Indeed, the Fifth Circuit has applied a Pickering balancing test in First Amendment retaliation cases that arose outside of the public employment context. See Kinney, 301 F.3d at 272 (listing cases applying this test).

Without assessing the merits of Plaintiff's claim, it is apparent that he has alleged facts that present a First Amendment claim upon which relief could be granted. Defendants' Motions to Dismiss this portion of the complaint are **DENIED.**

### Official Immunity

State employees are entitled to official immunity when they are sued in their individual capacities for official acts under the Texas Tort Claims Act. See Medina County Com'rs Court v. Integrity Group, 944 S.W.2d 6, 9 (Tex.App. – San Antonio 1996, no pet.). Official immunity is an affirmative defense and places the burden of establishing all its elements on the defendant. City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994). "Governmental officials are entitled to immunity from suit arising from performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." Chambers, S.W. 2d at 653. An act is discretionary if it requires personal deliberation, decision, and judgment. Harris County v. Ochoa, 881 S.W.2d 884, 887 (Tex.-App.-Houston [14th Dist.] 1994, writ denied). "Ministerial acts are those '[w]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment . . . ." Chambers, 883 S.W.2d

9

at 654. *Good faith is apparent if any reasonably prudent official would have believed that his conduct was consistent with the plaintiff's rights.* Chambers, at 656-57. *An official acts within the scope of his duties when he discharges duties generally assigned to him.* Id. at 658.

Because official immunity is an affirmative defense, the burden rests on the defendant to establish all the elements of the defense. Id. at 653. In this case, Plaintiff has alleged that Noe Sauceda acted "on a matter on which he did not have discretion, in such a manner as to constitute fraud on Plaintiff Chavez and BISD employees, as well as malice." Plaintiff's First Amended Complaint, at ¶15 [Dkt. No. 14]. For the purpose of a motion to dismiss, therefore, Plaintiff's allegations counter Sauceda's assertion that his duties were within the scope and discretion of a Superintendent's duties and were conducted with in good faith. See Noe Sauceda's Motion to Dismiss, at p. 4 [Dkt. No. 18]. See also Hutchison v. Brookshire Brothers, Ltd., 205 F. Supp.2d 629, 646 (E.D. Tex. 2002). To the extent that Sauceda's Motion to Dismiss for failure to state a claim is based on the assertion of official immunity, the motion is **DENIED.**

### BISD's Federal Rule of Civil Procedure 7(a) Request

BISD requests the Court order Plaintiff to respond to the affirmative defenses raised in their Answer to the First Amended Complaint. Additionally, Defendant Noe Sauceda has raised qualified immunity as an affirmative defense. Even absent a *per se* heightened pleading requirement, previously established in Elliot v. Perez, 751 F.2d 1472, 1473 (5th Cir. 1985), *Plaintiff first must file a short and plain statement in his complaint, "that rests on more than conclusions alone."* Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995). See also Brown v. Valmet-Appleton, 77 F.3d 860, 863 n.11 (5th Cir. 1996) (calling into question the heightened pleading requirement for officials sued in their individual capacities). *The Court may then, in its discretion, insist that the Plaintiff file a reply tailored to the defense of qualified immunity.* Id. *"Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist."* Id. at 1433-34. *The reply must be tailored to the assertion of*

10

qualified immunity and fairly engage its allegations. Id. at 1433. See also Todd v. Hawk, 72 F.3d 443, 446 (5th Cir. 1995). A Federal Rule of Civil Procedure 7(a) reply is the preferred procedure prior to consideration of a motion to dismiss on grounds of qualified immunity. The Court **ORDERS** Plaintiff to submit to the Court a Rule 7(a) reply tailored to BISD's defense of qualified immunity no later than 3:00 p.m. on Monday, February 10, 2003.

DONE at Brownsville, Texas, this 14th day of January, 2003.

Hilda G. Tagle
United States District Judge

11



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

OCT 0 1 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| DINO CHAVEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-128 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT AND NOE | § | |
| SAUCEDA, | § | |
| | § | |
| Defendants. | § | |

## ORDER

BE IT REMEMBERED, that on September 30, 2003, the Court **DENIED AS MOOT** Plaintiff's Motion for Leave to File Second Amended Complaint [Dkt. No. 25]; **DENIED AS MOOT** Defendant Brownsville Independent School District's Objections to Plaintiff's Motion for Leave to File Amended Petition and Motion to Dismiss Leave to File Amended Petition [Dkt. No. 26]; **GRANTED in part and DENIED in part** Plaintiff's Amended Motion for Leave to File Second Amended Original Complaint to Include Additional Defendants and to Provide Rule 7(a) Reply [Dkt. No. 30]; and **DENIED** Plaintiff's Motion for Reconsideration of Dismissal of Plaintiff's Due Process Claim [Dkt. No. 33].

## I. Factual and Procedural Background

Plaintiff, Dino Chavez, brought a claim against the Brownsville Independent School District ("BISD") and Noe Sauceda, the Superintendent of BISD, under 42 U.S.C. § 1983 for the deprivation of his due process rights under the Fourteenth Amendment and his free speech rights under the First Amendment of the United States Constitution. Plaintiff alleged in his first amended original complaint that he was an insurance sales agent representing American Family Life Assurance Company of Columbus ("AFLAC"). Plaintiff submitted an AFLAC proposal to BISD's Insurance

**EXHIBIT "B"**

1

Committee for an optional section 125 Cafeteria Plan Services Contract. It was undisputed that Plaintiff was not an employee or independent contractor of BISD. Plaintiff claimed in his complaint that his bid was, in essence, a bid to provide enrollment services to BISD employees and to provide administrative services for the processing of the employees' insurance policies. Plaintiff would earn commission from the AFLAC insurance policies he sold directly to the employees.

The present dispute arose when, after coordinating the employees' cafeteria plan enrollment from 1998 through 2001, Plaintiff and his employer were notified by Noe Sauceda that Plaintiff would no longer be allowed to present AFLAC's bid to the Insurance Committee. Mr. Sauceda sent a letter to AFLAC in which he explained that unless another representative agent from AFLAC replaced Plaintiff, AFLAC's proposal would not be reviewed by the Insurance Committee. Mr. Sauceda cited unprofessional and unethical conduct and "continuous inappropriate correspondence" as the reason for such removal. See Plaintiff's First Amended Complaint, at ¶ 12 [Dkt. No. 14]. Plaintiff alleged this action occurred after Mr. Sauceda attempted to award the contract to another bidder, and submitted false information, such as misquotes, to the Insurance Committee in an effort to sabotage AFLAC's bid. In particular, Plaintiff accused BISD of attempting to appoint an "agent of record to provide all ancillary available insurance policies and products for BISD employees," and opined "it [was] illegal to appoint an agent of record according to information located on the Texas Attorney General's website." Plaintiff spoke about this issue at several BISD Board Committee meetings.

Along with other proposals, AFLAC's bid for insurance services was placed on the Insurance Committee's agenda for the November 29, 2001, meeting. During this Insurance Committee meeting, AFLAC's proposal was accepted by a vote of the Committee. Plaintiff alleged that despite the fact that he had written the proposal and had conducted previous insurance enrollment services for BISD employees, he was deprived of the opportunity to actually present the proposal at the meeting and was not allowed to begin enrollment after its acceptance. Plaintiff argued his due process rights under the Fourteenth Amendment were violated when he was deprived of the opportunity to fully participate in the bidding process. In addition, Plaintiff argued his

2

constitutional right to Free Speech under the First Amendment was violated when he was refused the opportunity to present the proposal in retaliation for publicly admonishing BISD for what he believed to be the illegal use of an agent of record.

BISD argued in its motion to dismiss that Plaintiff failed to demonstrate that a recognized property right arose from the award of a bidding contract. See BISD's Motion to Dismiss, at p. 2 [Dkt. No. 15]. BISD asserted that because Plaintiff was allowed to participate in all BISD bidding procedures, his procedural due process rights were not violated and no such property right exists under Texas law. See id. at 3.

On January 14, 2003, the Court dismissed Plaintiff's due process claim against Defendants Brownsville Independent School District ("BISD") and Noe Sauceda. The Court's order was based on a finding "that Plaintiff [had] not demonstrated that a property interest exists for insurance service providers who are neither employed by BISD nor bound by contract to BISD." Court's Jan. 14, 2003, Order, at p. 6.

Soon thereafter, Plaintiff filed a motion for reconsideration of the Court's dismissal of his due process claims [Dkt. No. 33]. Plaintiff now argues in his motion for reconsideration "that Plaintiff in fact did have a protected property and liberty interest in following his chosen profession and in holding specific private employment." Pl's Motion for Reconsideration, at p. 2.

## II. Reconsideration Standard of Review

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration per se. See Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990), abrogated on other grounds by, Little v. Liquid Air Corp., 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc). Pursuant to Federal Rule of Civil Procedure 6(a), a motion for reconsideration filed within ten days of the Court's judgment or order is considered a motion to "alter or amend the judgment" under Federal Rule of Civil Procedure 59(e). See id. See also Fletcher v. Appel, 210 F.3d 510, 511-12 (5th Cir. 2000). Motions, filed beyond the ten days, as this motion was, are considered to be motions seeking relief from judgment under Federal Rule of Civil Procedure 60(b). See, e.g., Lavespere, 910 F.2d at 173; United States v. Emmons, 107 F.3d 762, 764 (10th Cir. 1997). Motions for reconsideration are generally disfavored

3

and are not proper tools "to introduce evidence that was available at [the time the original motion was filed] but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1219 (5th Cir. 1986).

Plaintiff has not even argued to the Court under which provision of the Federal Rules of Civil Procedure he files his motion for reconsideration. Based on the time limitations, the Court can only review the motion under Rule 60(b). Furthermore, because Plaintiff has now provided new legal citation, all of which were already decided at the time he filed his original response, the Court presumes that only Rule 60(b)(1) (an omission attributable to "mistake, inadvertence, surprise, or excusable neglect") or Rule 60(b)(6) (manifest injustice or "any other reason justifying relief") could apply to this motion. See Lavespere, 910 F.2d at 173 (citation omitted). Plaintiff's failure to assert his arguments and legal theories earlier appears to the Court to be simple negligence or carelessness.[1] Mere negligence, however, does not justify a motion for reconsideration. In addition, relief under Rule 60(b)(6) requires a showing of "extraordinary circumstances." American Totalisator Co. v. Fair Grounds Corp., 3 F.3d 810, 815 (5th Cir. 1993) (citations omitted). Indeed, although the Court may exercise its discretion to entertain the motion, this discretion is "not boundless," and the movant must make a showing under Rule 60(b) that the case or order should be reopened. See Lavespere, 910 F.2d at 173. Stated differently, a motion for reconsideration is not an opportunity to have the court review the merits of Plaintiff's claim simply because the party did not like the first ruling of the Court.

Despite the fact that Plaintiff has not properly argued his motion for reconsideration, the Court briefly analyzes the motion and denies it on the merits.

---

[1] Even plaintiff states, "[a]lthough Plaintiff's prior pleadings may not have identified his role with sufficient clarity, Mr. Chavez was an independent Insurance agent, authorized by American Family Life Insurance Company of Columbus . . . to sell its products." Pl's Motion for Reconsideration, at p. 2. Based on Plaintiff's First Amended Complaint and his response to Defendants' motions to dismiss, the Court understood Mr. Chavez to be an employee of AFLAC. Indeed, the complaint references AFLAC as the employer.

### III. **Plaintiff's Old and New Due Process Claims**

Plaintiff argued in his first amended original complaint that his due process rights were violated when Defendants' actions deprived him of his property interests without due process of law when he was refused the opportunity to present the final proposal to the Insurance Committee and to begin the enrollment of employees following the awarding of AFLAC's proposal. See Plaintiff's First Amended Complaint, at ¶¶ 11-12. In his response to Defendants' motions to dismiss, Plaintiff similarly argued his due process rights were violated when "Defendant . . . remov[ed] Plaintiff from the bidding process and allow[ed] Plaintiff's *employer* to continue with its bid only if Plaintiff was excluded from participation." Pl's Response to Defendants' motions to dismiss, at p. 2 (emphasis added). Now, however, in his Motion for Reconsideration, Plaintiff alters and broadens his due process claim, asserting a property and liberty interest "in following his chosen profession and in holding specific private employment." Pl's Motion for Reconsideration, at p. 2.

Not surprisingly, Plaintiff's redirected focus on a more general property interest, that is pursuing a chosen profession, leads him to support his new theory of recovery with a slew of cases never cited in his original response to Defendants' motions to dismiss. The new cases Plaintiff cites are, however, distinguishable from the case at hand, and the Court will discuss these in turn. Had Plaintiff cited them in his original response, the Court could have granted Defendants' Motions to Dismiss after addressing Plaintiff's new theory of recovery - i.e. that he "has a protected property and liberty interest in pursuing his chosen profession and in holding specific private employment." This tactic, a better option than now asserting arguments that should have been raised earlier, could have avoided this motion for reconsideration altogether, thus saving the Court and the parties time and expense.

### IV. **The Court's Original Due Process Analysis: Alleged Property Interest in Participating in the Bidding Process**

When a plaintiff asserts a section 1983 claim alleging a due process violation, he "must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that

5

interest." Blackburn, 42 F.3d at 935 (citations omitted). See also American Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999). "[P]roperty interests," the Supreme Court has said, "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Perry v. Sindermann, 408 U.S. 593, 602, n.7 (1972) (internal quotation marks and citation omitted). See also Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

Plaintiff does not cite to any Texas cases,[2] nor has the Court unearthed any, in which the courts recognized a property interest in the award of a government contract. To the contrary, case law indicates that in light of the fact that a governmental entity may reject any and all bids, a rejected bidder has no property right in the award of the contract. See § 271.027(a) Tx. Loc. Gov't Code Ann. (Vernon's 1999 & Supp. 2003). See also, e.g., Spawglass Constr. Corp. v. City of Houston, 974 S.W.2d 876, 880 (Tex. App.–Houston [14th Dist.] 1998, pet. denied); DRT Mechanical Corp. et al. v. Collin County, Texas, 845 F. Supp. 1159, 1162-63 (E.D. Tex. 1994); Assoc. General Contractors v. Corpus Chrisiti, 694 S.W.2d 581, 583 (Tex. App.–Corpus Christi 1985, no writ); A & A Const. Co. v. City of Corpus Christi, 527 S.W.2d 833 (Tex. Civ. App. –Corpus Christi 1975, no writ). Generally, courts have found that a property interest is present in a government contract when the contract confers a special status such as employment or entitlement to a social benefit. See, e.g., S & D Maintenance Co. v. Goldin, 844 F.2d 962, 965-69 (2d Cir. 1988); San Bernardino Physicians' Services Med. Group v. County of San Bernardino, 824 F.2d 1404, 1407-10 (9th Cir. 1987).

Plaintiff cannot establish a property interest because his interest in the proposal itself is simply too attenuated. Plaintiff was an employee of AFLAC. He was not an

---

[2]Plaintiff cites to Systems Contractors Corp. v. Orleans Parish School Bd., 148 F.3d 571 (5th Cir. 1998). This case can be distinguished from the present case. Systems Contractors was a case under Louisiana's bidding laws, and the Louisiana Supreme Court found explicitly that a bidder for a government contract has a protected property interest under the Due Process Clause. See id. at 574 n. 16. Indeed, the Court stated in Systems Contractors that "unlike Louisiana, many states do not recognize a protected property interest in government contracts until those contracts are actually awarded." id. at 575.

independent contractor and received no direct payment or formal benefits from BISD because he was not employed by the school district.  Plaintiff was denied the opportunity to present AFLAC's proposal at the final Insurance Committee meeting, but he had participated in prior meetings leading up to the vote on the proposal.  Although Plaintiff was not allowed to present the proposal himself, an alternate AFLAC representative did, and the Insurance Committee accepted it and allowed employee enrollment to begin with the new representative.

In essence, Plaintiff was denied the privilege of continuing his relationship with BISD and of forging business relationships with the employees by his administration of their insurance policy plans.  Plaintiff was not, however, denied a property interest nor were his due process rights violated.  Despite the fact that Plaintiff had previously administered the insurance policy plans for BISD employees, he had no more than a "unilateral expectation" that he could continue to submit proposals and serve BISD employees.  See Roth, 408 U.S. at 577.  See also Blackburn, 42 F.3d at 936-37 (holding that owner of wrecker service failed to allege a property interest in remaining on city's and county's rotating on-call list for accident wrecker service).  Plaintiff explains that he derives commission from his position as the insurance service provider when he sells insurance plans to BISD employees.  This fact alone, however, does not alter the Court's determination that Plaintiff has not demonstrated that a property interest exists for insurance service providers who are neither employed by BISD nor bound by contract to BISD.

## V. The Court's Due Process Analysis on Reconsideration; Alleged Property Interest in Following Chosen Profession and Holding Specific Private Employment

The Supreme Court has held that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment."  Green v. McElroy, 360 U.S. 474, 492 (1959).  Similarly, "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner and for reasons that

7

contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 238-39 (1957). See also Phillips v. Vandygriff, 711 F.2d 1217, 1222 (5th Cir. 1983) (citing Ferrel v. Dallas Independent School Dist., 392 F.2d 697, 707 (5th Cir. 1968); Shaw v. Hospital Authority, 507 F.2d 625, 628 (5th Cir. 1975); Daly v. Sprtrague, 675 F.2d 716, 727 (5th Cir. 1982)).

Although individuals do have a liberty interest in pursuing an occupation, this interest is not endless. Indeed, in cases in which the Fifth Circuit and Supreme Court have determined such a liberty or property interest exists, the State actor has curtailed this freedom in a manner that prevented the individual from either seeking employment at all, or limiting it to a far more severe degree than in the present case. For example, in Phillips, the plaintiff worked in the savings and loan industry and alleged a due process violation when he was precluded from working within Texas as a bank manager because of a de facto licensing scheme implemented by the Commissioner of the Texas Savings and Loan Department. See Phillips, 711 F.2d at 1223. The Fifth Circuit determined that certain due process protections must be afforded before depriving the individual of the ability to work within an industry in general. See id. (holding also that the difference between de facto licensing and formal licensing is not important in determining whether there is a liberty interest). See also Schware, 353 U.S. at 247 (denying petitioner the opportunity to qualify for legal practice implicates the Due Process Clause); Greene, 360 U.S. at 491 (denying security clearance without due process protections is actionable when the security clearance is a de facto necessity for employment in the field of aeronautics).

Plaintiff cites additional Fifth Circuit cases in which the Court determined that a property interest existed in the profits of a business. See San Jacinto Savings & Loan v. Kacal, 928 F.2d 697, 703-04 (5th Cir. 1991). In San Jacinto, "there [was] evidence that the comprehensive, concerted actions of the police caused Kacal to lose so much of her business that she had to close her doors and default on her lease." Id. at 703. In addition, the location and premises were unique to the business and access to it was

extremely important. Id. The Court explicitly found that Kacal's protected property interest stemmed not from an interest in continued future employment, which the Court did not make a determination on, but rather from lost profits to her business. Id. at 704 n.7. Cf. Vander Zee v. Reno, 73 F.3d 1365, 1371 (5th Cir. 1996) (holding that Vander Zee's "complain[t] that the [agreement] prevented his rehiring[, which] interfered with his property interest in an alleged oral agreement to rehire him at some specified time in the future" did not state a claim concerning a property interest); Muniz v. City of Harlingen, 247 F.3d 607, 608-09 (5th Cir. 2001) (holding no property interest exists in future employment).

In San Jacinto and other cases, such as Cowan v. Corley, 814 F.2d 223, 227 (5th Cir. 1987), the plaintiffs claimed property and liberty interest violations because they were allegedly "denied the opportunity to pursue a livelihood." 814 F.2d at 228. Plaintiff does not contend that BISD's refusal to consider bids advanced by Plaintiff as the representative of AFLAC completely prevented him from seeking employment as an independent insurance agent. Instead, Plaintiff argues his "chosen profession included selling AFLAC products to BISD employees." Pl's Reply to Defendants' Response, at p. 4 [Dkt. No. 44]. BISD does not license insurance agents, nor does it perform a gatekeeping role in the insurance industry. BISD has not prevented Plaintiff from working as an insurance agent, but only from selling AFLAC's products to BISD employees.

In fact, Plaintiff's first amended complaint, the live complaint at the time Defendants filed their motions to dismiss, did not even allege that defendants deprived him of his property and liberty interests *because* he was later terminated from his regional sales coordinator position with AFLAC. Now, in his Motion for Reconsideration, Plaintiff includes an affidavit in which he acknowledges that he is still authorized to sell AFLAC's insurance products, and "[a]t all material times . . . AFLAC did not have any employees in the Rio Grande Valley area; rather all of AFLAC's business in the Rio Grande Valley area was done through independent insurance

9

agents such as [himself]." Pl's Motion for Reconsideration, Ex. A, ¶ 2 [Dkt. No. 33].[3] Plaintiff's affidavit does not advance his cause because it demonstrates that Plaintiff was not even considered an employee of AFLAC. Rather, on reconsideration, Plaintiff confirms that any actions taken by BISD did not cause him to be "terminated" as an independent insurance agent authorized to sell AFLAC's products to prospective customers other than BISD employees.

Finally, the right to hold specific private employment is not limitless. Cases in which a state or federal actor has interfered with private employment in such a way that implicates due process protections, the interference has been far more direct than in the case presently before this Court. See, e.g., Federal Deposit Insurance Corp. v. Mallen, 486 U.S. 230, 240 (1988) (holding that where FDIC directly invoked its statutory "authority to suspend the president of an Illinois bank," arbitrary interference with appellee's continuing employment with the bank gave rise to a due process claim). In this case, the Court views Plaintiff's due process claim as pled in the first amended complaint—that is that Defendants' actions deprived him of his property interests without due process of law when he was refused the opportunity to present the final proposal to the Insurance Committee and to begin the enrollment of employees following the awarding of AFLAC's proposal—as too tenuous. In the Court's opinion, this case is more akin to the circumstances in the line of cases concerning wrecker services. As in Blackburn, Plaintiff has not alleged that BISD has interfered with his right as an independent insurance agent to conduct business or sell AFLAC products to other prospective customers. See Blackburn, 42 F. 3d at 938 (distinguishing Cowan v. Corley, 814 F.2d 223 (5th Cir. 1987) from Blackburn because in Cowan the Plaintiff alleged the sheriff and the county wrecker association prevented him from doing business with private individuals). In light of these differences, the Court stands by its original decision in granting Defendants' motions to dismiss on the due process claims, and **DENIES** Plaintiff's Motion for Reconsideration [Dkt. No. 33].

---

[3]The Court acknowledges that any evidence considered in a motion to dismiss beyond the pleadings transforms the motion to dismiss into a motion for summary judgment. See Fed. R. Civ. P. 12(b).

10

## VI. Plaintiff's Motion for Leave to File Second Amended Complaint [Dkt. No. 25]

Plaintiff sought leave to amend his complaint for a second time in order to clarify his pleadings and add Defendants Marilyn Del Bosque-Gilbert and Randall Dunn. Thereafter, Plaintiff withdrew his request to add these defendants [Dkt. No. 48]. Additionally, Plaintiff filed a second "second amended complaint" incorporating his Rule 7(a) reply. As a result, the first Motion for Leave to File Second Amended Complaint is **DENIED AS MOOT**.

## VII. Defendant Brownsville Independent School District's Objections to Plaintiff's Motion for Leave to File Amended Petition and Motion to Dismiss Leave to File Amended Petition [Dkt. No. 26]

This motion is **DENIED AS MOOT**.

## VIII. Plaintiff's Amended Motion for Leave to File Second Amended Original Complaint to Include Additional Defendants and to Provide Rule 7(a) Reply [Dkt. No. 30]

Plaintiff has withdrawn his request to add additional parties. See Dkt. No. 48. Defendant Brownsville Independent School District objects to Plaintiff's motion, arguing it was unnecessary to file a motion requesting leave to file a Rule 7(a) reply when this filing was in response to this Court's ordering of such reply. Additionally, Defendant objects to the filing of another motion to amend his complaint in which Plaintiff seeks to add a cause of action under the Fifth Amendment. See Pl's Second Amended Cmplt., ¶ 22 [Dkt. No. 30]. Finally, Defendant notes that Plaintiff continues to include a claim under the Fourteenth Amendment, which was previously dismissed by this Court. In his reply, Plaintiff asserts that he is not adding a new claim under the Fifth Amendment, but rather is expounding on his previously pled Fourteenth Amendment claim. Furthermore, Plaintiff argues his amended complaint is sufficient for a Rule 7(a) reply.

As the Court noted in its earlier order dismissing Plaintiff's due process claims, when Defendants assert qualified immunity as an affirmative defense, this court *must* give the Plaintiff an opportunity to file a Rule 7(a) reply. See Reyes v. Sazan, 168 F.3d

11

158, 161 (5ᵗʰ Cir. 1999) (holding district court's failure to require a Rule 7(a) reply to the defense of qualified immunity was an abuse of discretion). In order to survive the defense of qualified immunity, the Plaintiff must allege particularized facts that support the allegations. See Baker v. Putnal, 75 F.3d 190, 195 (5ᵗʰ Cir. 1996) (holding that in the face of a qualified immunity assertion, Plaintiff must plead "specific conduct and action giving rise to a constitutional violation").

The Court is aware of no authority, and Defendants cite to none, that requires Plaintiff to fulfil the Court's order to file a Rule 7(a) reply in the form of a brief, as opposed to an amended complaint. The Court, therefore, will not strike Plaintiff's reply. Having said this, the Court does not comment on the adequacy of Plaintiff's Rule 7(a) reply to overcome the defense of qualified immunity. In fact, the Court would not characterize Plaintiff's amended complaint as containing "detailed" allegations overcoming the assertion of qualified immunity. Be that as it may, the Court has given Plaintiff the opportunity to respond to Defendants' assertions of qualified immunity, as it is required to do, and thus the Court can now make the appropriate rulings on qualified immunity. Additionally, Defendant Noe Sauceda has very recently filed a motion for summary judgment again asserting qualified immunity. Because the motion for summary judgment has already been filed, Plaintiff will have the opportunity to respond to this affirmative defense in his response to the summary judgment motion.

Finally, Plaintiff has withdrawn his request to add additional parties, and Plaintiff, in his reply to Defendants' objections, asserts that he does not seek to add a new claim under the Fifth Amendment. To the extent that Plaintiff clarifies his factual allegations or otherwise incorporates his Rule 7(a) reply into an amended complaint, the Court **GRANTS** Plaintiff's motion to amend his complaint. See Fed. R. Civ. P. 15(a) ("leave shall be freely given when justice so requires"). For the sake of clarity the Court will state the obvious: Plaintiff's continued inclusion of any claims already dismissed has no effect and these claims remain dismissed. Defendants will be granted leave to amend or supplement their current motions for summary judgement if they feel such action is necessary.

12

## IX. **Conclusion**

The Court **DENIED AS MOOT** Plaintiff's Motion for Leave to File Second

Amended Complaint [Dkt. No. 25]; **DENIED AS MOOT** Defendant Brownsville

Independent School District's Objections to Plaintiff's Motion for Leave to File Amended

Petition and Motion to Dismiss Leave to File Amended Petition [Dkt. No. 26];

**GRANTED in part and DENIED in part** Plaintiff's Amended Motion for Leave to File

Second Amended Original Complaint to Include Additional Defendants and to Provide

Rule 7(a) Reply [Dkt. No. 30]; and **DENIED** Plaintiff's Motion for Reconsideration of

Dismissal of Plaintiff's Due Process Claim [Dkt. No. 33].


DONE at Brownsville, Texas, this 30th day of September, 2003.


Hilda G. Tagle

United States District Judge

13

United States District Court
Southern District of Texas
ENTERED

JAN 0 7 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| DINO CHAVEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-128 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT AND NOE | § | |
| SAUCEDA, | § | |
| | § | |
| Defendants. | § | |

## ORDER

BE IT REMEMBERED that on January 7, 2004, the Court **GRANTED** Defendant Noe Sauceda's Motion for Summary Judgment [Dkt. No. 68]; **GRANTED** Defendant Brownsville Independent School District's ("BISD") Motion for Summary Judgment [Dkt. No. 69]; and **DENIED as moot** all remaining motions: Defendant Sauceda's Motion to Exclude Plaintiff's Expert, Plaintiff Chavez's Motion to Exclude Testimony of Donald R. House, Third Party Defendant AFLAC's Motion In Limine, Defendant BISD's Motion to Exclude Plaintiff's Evidence and Motion In Limine [Dkt. No. 75, 76, 86, 87, & 90].

The parties are not required to appear for final pretrial/docket call scheduled for January 8, 2004. The Court will issue a memorandum opinion for the above summary judgment rulings.

DONE at Brownsville, Texas, this 7th day of January, 2004.

Hilda G. Tagle
United States District Judge

**EXHIBIT "C"**