United States District Court
Southern District of Texas
FILED

FEB 1 7 2004

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, | § | |
| FERNANDO DE PENA, | § | |
| VALENTIN PAZ and | § | |
| ANDRUS & PAZ, a Partnership | § | **CIVIL ACTION NO.** |
| | § | |
| vs. | § | **B – 02 - 143** |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | |
| and EDDIE ERRISURIZ, JR. | § | |
| | § | |

**JOINT PRETRIAL ORDER**

---

COME NOW **STEPHEN M. ANDRUS, FERNANDO DE PENA, VALENTIN PAZ** and

**ANDRUS & PAZ,** *a partnership,* Plaintiffs herein, and the Brownsville Independent School

District (BISD), **NOE SAUCEDA AND EDDIE ERRISURIZ, JR.**, Defendants herein, and

respectfully file this their Joint Pretrial Order.

## I. APPEARANCE OF COUNSEL

**A. Attorney for Plaintiffs STEPHEN M. ANDRUS, FERNANDO DE PENA, VALENTIN
PAZ and ANDRUS & PAZ,** *a Partnership*
J. Arnold Aguilar
State Bar No. 00936270
Federal Adm. No. 6822
**LAW OFFICE  J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas 78520
Telephone: (956) 504-1100
Facsimile: (956) 504-1408

**B.  Attorneys for Defendant Brownsville Independent School District**

Elizabeth G. Neally
State Bar No. 14840400
Fed ID #8044
**ROERIG, OLIVEIRA & FISHER, LLP**
855 West Price Road, Suite 9
Brownsville, Texas 78550
Telephone: (956) 542-5666
Facsimile: (956) 542-9916

**C.  Attorneys for Defendants Noe Sauceda and Eddie Errisuriz, Jr.**

Eileen M. Leeds
State Bar No. 00791093
USDC Adm. No. 16799
Mr. Charles Willette, Jr.
State Bar No. 21509700
USDC Adm. No. 1937
**WILLETTE & GUERRA, L.L.P.**
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, Texas 78521
Telephone: (956) 541-1846
Facsimile:  (956) 541-1893

## II.    STATEMENT OF THE CASE

Plaintiffs are suing the BISD, Dr. Noe Sauceda and Eddie Errisuriz under 42 U.S.C. §1983 claiming violations of their First and Fourteenth Amendment rights.  Plaintiffs claim that their rights to free speech and association were violated when Defendants responded to a letter written by Mr. Andrus dated August 10, 2001, by barring all tax deferred annuity salespersons from entering onto BISD campuses.  Plaintiffs further claim that their rights to due process, liberty, property and equal protection of the laws were violated when Defendants allowed only a single agent named David Soliz to make presentations to BISD employees, while not making

similar allowances for Plaintiffs and not allowing Plaintiffs to make presentations such as those being made by Mr. Soliz. Plaintiffs also complain that Defendants Sauceda and Errisurriz tortiously interfered with their prospective business relationships and that their actions constituted fraud and malice. Defendants deny that Mr. Andrus engaged in protected speech by his letter of August 10, 2001. Defendants deny that the ban was issued in retaliation of said letter. Defendants deny that Plaintiffs made a request to make the same type of presentations to BISD employees, as those made by Mr. Soliz. Defendants also deny Plaintiffs have a property interest in entering onto BISD property to sell insurance products, and that, therefore, Plaintiffs were not entitled to any due process.

## III.   JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this case is a civil action arising under the Constitution and laws of the United States. This Court has pendent jurisdiction over all claims under the laws of the State of Texas.

## IV.   MOTIONS

The motions pending before this Court are: Defendant Brownsville Independent School District's Motion for Summary Judgment; Defendants Noe Sauceda and Eddie Errisuriz, Jr.'s Amended Motion for Summary Judgment; Joint Motion of Defendants, Brownsville Independent School District and Noe Sauceda, to Exclude Plaintiffs' Expert; and Plaintiffs' Motion to Exclude Testimony of Donald R. House.

## V.   CONTENTIONS OF THE PARTIES

**A.   Plaintiffs' Contentions**

Plaintiffs STEPHEN M. ANDRUS and VALENTIN PAZ are members of a partnership known as Andrus & Paz, an organization dedicated to retirement planning and the sale of annuities and the sale of health, life and disability insurance.  Plaintiffs STEPHEN ANDRUS, FERNANDO DE PEÑA, and agents of ANDRUS & PAZ had been authorized to solicit tax-sheltered annuity products to eligible employees of the Brownsville Independent School District, pursuant to the Brownsville Independent School District's Vendor Rules & Regulations for The Tax-Sheltered Annuity Program in effect since as early as 1994, and Internal Revenue Service Guidelines.   Under existing IRS Rules, school districts could elect to have their employees receive the benefits of tax deferred purchases of annuity contracts either through the form of an "arrangement" or a formalized "summary plan description" (SPD).  Therefore, either the BISD Vendor Rules constituted Defendant BISD's SPD, by which they were bound for participation in their employees' purchase of §403(b) annuities or Defendant BISD had no SPD and BISD's "involvement in the Plan was strictly limited to providing a list of insurance carriers to employees and executing salary reduction agreements.

Prior to the time Defendants Sauceda and Errisuriz began working at BISD as its Superintendent and Assistant Superintendent for Human Resources, respectively, the Tax-Sheltered Annuity Program was administered through the Director of Purchasing, Kenneth Lieck.  TSA vendors would talk to Mr. Lieck about the policies they were proposing to sell, fill out an application, and Mr. Lieck would determine whether they would be authorized to sell their policies on campus or not.  This is essentially the same procedure that is currently being used after the departure of Defendants Sauceda and Errisuriz, the only difference being that a

statute subsequently passed somewhat limits the type of policies that can be sold, and the current Administrator for Insurance can now determine what products are eligible to be sold by looking at the Teachers Retirement System website. Prior to Defendant Sauceda's entry, agents were not allowed to present seminars in the auditorium, and they were not allowed to use the BISD mail system to distribute their flyers.

Having followed the established BISD customs, policies and practices and received BISD authorization to solicit employees through May and September 2002, Plaintiffs Andrus, de Peña and agents of Andrus & Paz began to make arrangements to solicit their products to BISD employees in August 2001. In early August 2001, BISD issued its Request for Qualifications (RFQ's) for TPA to Administer BISD's Cafeteria Plan (§125) and Tax Deferred Annuities (hereinafter RFQ Request). The decision to select a Third Party Administrator (TPA) to administer the Tax Deferred Annuities Program was apparently made by BISD's Superintendent, Defendant Sauceda. Because of numerous concerns, including the possible illegality of this proposal, on or about August 10, 2001, Plaintiff Andrus submitted a letter to Defendant BISD's Insurance Department, to at least one (1) BISD Board Trustee, and to Defendant Sauceda, notifying Defendants of the apparent illegality of their actions in attempting to retain a TPA to administer the Section 125 and Section 403(b) accounts, with specific reference to nondiscrimination rules and IRS limitations on the selection of carriers, as well as of his opinions as to why retention of a TPA for the §403(b) Program was not in the best interests of BISD employees.

As Plaintiff pointed out, BISD's role in administering §403(b) accounts was limited by state law, and a TPA could not be used to solicit and present products to the insurance committee

for selection of carriers, where the carriers not selected would otherwise still be authorized under state law to solicit their products. BISD's Director of Insurance, Dr. Leonel Lopez, also agreed the appointment of a TPA to oversee a 403(b) program, as in this instance, would provide a conflict of interest if they were also selling 403(b) products. Plaintiff explained and provided authority to establish that Defendants could restrict the sale of 403(b) annuities no more than the state already did. Defendants responded by summarily withdrawing Plaintiff Andrus' and his associates' authorizations to solicit their 403(b) products. Defendants thereafter allowed only a single agent David Soliz to promote his products throughout BISD, under the guise of "informational" seminars, to the extent of allowing that person unique and sole access to BISD employees and resources.

During September 2001, Plaintiffs began attempts to solicit their products to BISD employees when they discovered they would no longer to be allowed to visit school campuses to attempt to sell their products, in violation of BISD's Vendor Rules & Regulations and applicable IRS Regulations. This action was taken in retaliation for Plaintiff Andrus' protected speech and because of Plaintiffs de Peña's, Paz's and Andrus & Paz's protected association with Plaintiff Andrus and because Defendants were looking for a way to direct annuity business to a particular associate, David Soliz, which would have ultimately led to remuneration for Defendants Sauceda and Errisuriz. Anticipating their failure to direct all annuity business to Mr. Soliz's company through his appointment as TPA, Defendants instead excluded all other agents from selling products while allowing Soliz to make mandatory presentations to BISD staff, *i.e.*, presentations on school campuses, during school working hours, which principals and administrators were required to attend, during which Mr. Soliz would make sales promotions to his captive audience.

Although Plaintiffs sought permission to make similar mandatory presentations, complaining that they were being discriminated against because only one agent was being granted access to BISD employees, that request was denied, though Dr. Lopez agreed that mandatory meetings were not appropriate.

During October 2001, BISD Board Trustee Otis Powers also inquired into the authorization of Mr. Soliz to make his mandatory presentations, while no other agent was allowed to solicit 403(b) products within BISD's campuses. No adequate explanation was ever provided by Defendants, however, and Plaintiffs were still not allowed on campus to make presentations or sell their products. On November 13, 2001, Plaintiff Andrus addressed the Board of Trustees during the Public Comment Section of their regularly scheduled Board Meeting, at which time he notified the BISD Board of its apparently illegal actions, the mandatory meetings, and his exclusion from BISD. In spite of his complaint, however, no response was provided to Mr. Andrus, and no further action was taken to prohibit the mandatory meetings or to allow Plaintiffs to continue sales as before.

In spite of Plaintiffs' numerous requests to be given the same privileges applied to Mr. Soliz, neither Defendant Sauceda, Defendant Errisuriz, the BISD Board of Trustees nor any other BISD entity allowed Plaintiffs to come on to BISD campuses to present their products as Mr. Soliz had been doing, or to attempt sales of their products in any other manner before the end of 2001. Although authorizations were eventually issued for Plaintiffs Fernando de Peña and "Representatives with The Teacher Agency" to solicit their products on campuses, Defendants had no knowledge of any information after they were issued that they did not already have prior to September 2001. No further inquiry was made to Plaintiffs about whether only a

particular type of policy would be sold, and no documentation was ever provided to Plaintiffs to indicate Defendants could, or did, restrict sales of other policies at that time. By this time, however, Plaintiffs had already lost one agent, Sam Sauceda, who chose to get out of the TSA business because of the risk that a company like Pro Financial would be allowed to do mandatory presentations again, thereby restricting his ability to make a living. In addition, potential purchasers lost trust in, and got scared away from, the purchase of tax-sheltered annuities, and as a result Plaintiffs' ability to carry on their business has been affected and Plaintiffs have suffered damages as a result.

## B.    Defendant Brownsville Independent School District's Contentions

Defendant BISD contends the evidence will show that the temporary revocation of annuity salesperson's letters of authorization resulted from a legitimate concern for the well being of BISD employees and that the ban was applied uniformly to all annuity salesperson. Defendant BISD contends that the District was justified to make this revocation and none of Plaintiffs' constitutional rights were violated. Further, Defendant BISD contends that Plaintiffs are unable to show that a letter written by Plaintiff Andrus on August 10, 2001 was of public concern nor will Plaintiffs be able to show that it subsequently motivated the decision to revoke letters of authorization to over 30 annuity vendors.

The three Plaintiffs, Valentin Paz, Stephen Andrus and Fernando de Pena were all issued letters of introduction directed to Principals at BISD campuses during 2001. The letters varied in content. However, none of the letters guaranteed a right to make sales on BISD campuses. The letters merely allowed the salesmen to introduce themselves to the principals so see if they could visit the campus to attempt to makes sales. The letter to Andrus specifically stated: "BISD

reserves the right to revoke or limit this privilege if any representative is not properly serving the best interests of the employees or is disruptive to employees and BISD businesses."

It also stated that Andrus could make individual sales presentations with the consent of the principal.

The letter introducing De Pena stated that the principal had the authority to accept vendor access to the campuses and that: "THIS DOES NOT CONSTITUTE AN ENDORSEMENT OF ANY PROPOSAL OR OF ANY MATERIALS."

The expected testimony of Ken Leick, who was in charge of the Insurance Department at BISD prior to the 2000-2001 school year is that the Vendor Rules and Regulations relied on by Plaintiffs, were not in effect for that school year and there is no evidence that these Rules and Regulations were ever adopted by the Board of Trustees.

Mr. Leick also is expected to testify that when he was in charge of insurance vendors only had to present a business card showing they were affiliated with an annuity company to be provided with a letter of introduction or authorization. When Dr. Sauceda and Mr. Errisurez came on board at BISD, there was a consensus of the administrators that there should be more checks and balances before allowing annuity vendors to solicit their companies to employees. At this time the Texas legislature along with the Texas Education Agency was adopting more stringent guidelines relating to annuity sales to school district employees. After 2001, school districts could look on the Teachers Retirement System website to determine what products met the criteria. Prior to this time, only through interviews of the agents, could it be determined what type of products they were offering.

In August, 2001 it was determined by Administration that it would be beneficial to have someone to make this determination. Therefore, the school district solicited bids by a RFQ (Request for Qualifications) from vendors for a Third Party Administrator for §125 and §403(b) products. It was then determined that to the extent this would limit the number of vendors bidding, that the RFQ should be amended. It was amended twice and the final RFQ dated August 15, 2001, was worded: Request for Qualifications (RFQ'S) for TPA to administer BISD's Cafeteria Plan (Section 125) and/or Tax Deferred Annuties and all other alternatives will be considered.

Sometime in September, 2001, a decision was made to stop all tax-deferred annuity salespersons from visiting teachers' lounges on BISD campuses to sell their products until some type of guidelines were in place. This decision effected more than 80 companies or agents, none of whom were allowed to makes sales on campuses until they interviewed with Mr. Errisuriz and received clearance. The Plaintiffs were only three of the more than 80 companies or agents who were affected by this decision.

Plaintiff's correspondence in August 2001 concerned whether there was a TPA appointed for §125 Cafeteria Plan sales. Andrus incorrectly stated the law as it applied to the annuity vendors during the time period in question. Plaintiff Andrus was aware that other school districts, including San Benito CISD were using TPAs to admisiter the §403(b) products sold on their campuses.

David Soliz had approached Dr. Sauceda to make informational presentations to BISD administrators. He, too, was prevented from going on to campuses to make sales and was only authorized by the Superintendent to make informational presentations of §403(b) products. As a

result, he made four presentations to administrators and principals. As far as Dr. Sauceda was aware none of these presentations involved sales of his products or mention of the company he represented. The Board of Trustees at no time prior to these presentations were aware that Soliz was making these presentations.

BISD additionally contends that the damages sought are over-reaching and far exceed what these plaintiffs would have earned for the five month period when they were not allowed to enter onto BISD property to make sales and that these plaintiffs failed to mitigate their damages by making sales at other school districts or in other locations.

Defendant would further show that the acts alleged are discretionary acts of individuals, performed in their capacity as governmental employees or officials in the good faith belief that the acts were legal and appropriate. As this would be a defense to the individuals, it is also a defense to the BISD.

The conduct alleged by Plaintiffs is intentional conduct for which Defendant BISD would be immune under the Texas Tort Claims Act. Defendant BISD is entitled to all defenses and immunities pursuant to the Texas Tort Claims Act and/or the Texas Education Code.

Defendant BISD further asserts that Plaintiffs have failed to identify a custom or policy violated by BISD employees under 42 USC §1983 and further Plaintiffs have failed to show that a violation of custom or policy resulted in a deprivation of their constitutional rights.

Defendant BISD asserts that Plaintiffs, Stephen M. Andrus, Valentin Paz, Fernando de Pena and Andrus & Paz, have no standing to assert a violation of their First Amendment rights, as none of them exercised their right to free speech under this lawsuit.



Defendant BISD asserts that Plaintiff Stephen M. Andrus did not make a speech of public concern and that the August 10, 2000 letter written by him contained falsehoods. Further, Defendant BISD asserts that Plaintiff cannot show that said letter was a motivating factor in the decision to revoke over 80 letters of introduction for annuity salespersons.

**C.    Defendants' Noe Sauceda and Eddie Errisuriz, Jr., Contentions**

1.    Defendants Sauceda and Errisuriz contend that Andrus did not exercise his right to freedom of speech when he wrote the August 10, 2001 letter in that it was not protected speech. It was not public speech that dealt with an issue of public concern.

2.    Defendants Sauceda and Errisuriz contend that the August 10, 2001 letter on which Plaintiffs base their First Amendment claim was never seen by them prior to making the decision to temporarily preclude all §403(b) vendors from entering onto school campuses.

3.    Defendants Sauceda and Errisuriz contend that the contents of the letter cannot form the basis of a First Amendment claim in that it intentionally misquotes the RFQ for the purpose of misleading the reader into believing BISD was considering improper conduct.

4.    Defendants Sauceda and Errisuriz contend that given the contents, form and context of the letter, it is clear that it was concerned with purely personal concerns; that of retaining Andrus' ability and that of his agents to solicit products, rather than speaking to any matter of public concern.

5.    Defendants Sauceda and Errisuriz contend that they are endowed with qualified, official and professional immunity for the decision to temporarily suspend all §403(b) salesmen from entering onto BISD school property for the purpose of selling their tax-deferred annuity products, because of the complaints they had received regarding high surrender charges,

churning of policies, and other questionable practices by §403(b) salespersons. Prior to Defendants arrival at BISD, there was no oversight of the vendors which gained access to enter onto school property by doing no more than presenting a business card. The decision to issue the temporary ban was a discretionary act within the scope of their employment and made with good faith given the complaints they had received.

6.    Defendants Sauceda and Errisuriz contend that no person was given authority to enter BISD campus lounges to solicit §403(b) products during the temporary ban. This includes David Soliz, whom Plaintiffs continue to insist was permitted access despite all evidence to the contrary.

7.    Defendants Sauceda and Errisuriz contend that Plaintiffs were treated differently from other §403(b) salespersons. All vendors were temporarily banned. Plaintiffs have no evidence that they were treated differently. Instead they argue that David Soliz was treated differently from Plaintiffs. Defendants contend that this is an improper focus and order of proof necessary for an Equal Protection claim. In that regard, David Soliz was not treated differently, because they are not similarly situated. Soliz requested and received permission to make a presentation to central and campus administration. He made no presentation to campus teachers. Plaintiffs did not request authority to make a presentation to any group. When they made a demand, it mischaracterized the presentations being made by Soliz.

8.    Defendants Sauceda and Errisuriz contend that Plaintiffs have no property interest in being able to enter onto BISD property for the purpose of selling their insurance products. Defendants Sauceda and Errisuriz contend that they knew and still know of no such right.

9.      Defendants Sauceda and Errisuriz contend that they did not act with deliberate indifference as to the rights of the Plaintiffs. They contend that there is no constitutional right which was clearly known to them under the facts of this case, and their conduct was made with the purpose of protecting BISD employees from unscrupulous vendors, not necessarily from Plaintiffs, unless they were among the unidentified group of vendors that were taking advantage of BISD employees..

10.     Defendants Sauceda and Errisuriz contend that they did not interfere whatsoever with Plaintiffs ability to solicit their products to anyone, employed by BISD or not. They merely prevented their entry onto property for a period of approximately five months.

11.     Defendants Sauceda and Errisuriz contend that the BISD Vendor Rules on which Plaintiffs rely as a source for their property interest is not BISD policy and has no legal weight. Furthermore, the Rules lack the necessary language required by Texas state law to create a property interest in an employment context. Additionally, the Rules discuss termination of a relationship, whereas in the case at bar, there was no termination, but rather a temporary suspension. Finally, they purport to provide procedural guidelines. The provision of procedure, by itself, does not create a property interest where one does not otherwise exist.

12.     Defendants Sauceda and Errisuriz contend that Plaintiffs were free to solicit their products to any and everyone qualified during the subject period of time. Any damages allegedly suffered by Plaintiffs is due to their own indolence and antipathy. They had a legal duty to mitigate their damages and made no such attempt. Their animus towards the BISD administration should not be rewarded.

## VI.    ADMISSIONS OF FACT

1.    Plaintiffs, Stephen M. Andrus and Fernando de Pena were independent agents with various insurance annuity companies.  Neither of these men worked for BISD at the time of the incidents the subject of this lawsuit.

2.    Plaintiff Valentin Paz was a Brownsville Independent School District teacher employed under a term contract and also an independent agent with various insurance annuity companies during the time period the subject of this lawsuit.

3.    None of the four Plaintiffs had any type of contract with Brownsville Independent School District to sell insurance to Brownsville Independent School District employees.

4.    On November 14, 2001, Defendant Sauceda notified all principals and administrators that "[i]nsurance and/or tax deferred annuity information made available to [them] by vendors, etc., is not to be disseminated to anyone without your securing prior approval from either Mr. Eddie Errisuriz, Assistant Superintendent for Human Resources or [himself]."

5.    Plaintiffs were aware prior to October 18, 2001 that annuity vendors had been temporarily suspended from visiting school district campuses.

6.    In February 2002 Plaintiffs received correspondence dated February 19, 2002 from Eddie Errisuriz, Jr. advising them that agents with the Teacher's Agency were once again permitted to request access to Brownsville Independent School District employees through campus administration.

7.    On November 13, 2003, Stephen Andrus spoke to a public audience at a regularly scheduled Brownsville Independent School District Board of Trustees meeting.

8.    Stephen Andrus wrote three letters that he claims were sent to persons at Brownsville Independent School District concerning his claims involved in this lawsuit. The first was dated August 10, 2001 and sent to unspecified persons at BISD and addressed "To All it may Concern". The second was dated October 18, 2001 and sent to Mr. Joe Colunga. The third was dated November 7, 2001 and sent to Dr. Leonel Lopez.

9.    The correspondence dated August 10, 2001, addressed the Request for Qualifications that had been generated in August. The Request for Qualifications for TPA's for §125 and §403(b) products was revised two additional times finally making the Request for a TPA for §403b products optional. The language was revised on August 15, 2001 to state "Request for Qualifications (RFQ's) for TPA to administer Brownsville Independent School District's Cafeteria Plan (Section 125) and/or Tax Deferred Annuities and all other alternatives will be considered."

10.    Neither Mr. de Pena nor Mr. Paz wrote anyone affiliated with Brownsville Independent School District or gave any public speeches relating to the issues raised in this lawsuit

11.    Dr. Sauceda and Mr. Errisuriz began working at BISD in the summer of 2001.

12.    Dr. Sauceda was the Superintendent of the BISD at all times relevant to this lawsuit.

13.    After the ban was lifted, authorization letters, as they had in the past, merely grant the salesperson access to request visitation rights from the campus principal. They do not insure access to the lounges.

## VII. CONTESTED ISSUES OF FACT

1.     Whether Plaintiffs STEPHEN M. ANDRUS and VALENTIN PAZ are members of a partnership known as Andrus & Paz, an organization dedicated to retirement planning, the sale of annuities and the sale of health, life and disability insurance.

2.     Whether for 1998, 1999 and 2000, prior to the time Defendants Sauceda and Errisuriz began working at BISD as its Superintendent and Assistant Superintendent for Human Resources, respectively, the Tax- Sheltered Annuity Program was administered through the Director of Purchasing, Kenneth Lieck.

3.     Whether after Plaintiffs began attempts to solicit their products to BISD employees in September 2001, they were informed that although their letters of introduction specifically indicated they were allowed to do so through 2002, they were in fact no longer to be allowed to visit school campuses to attempt to sell their products.

4.     Whether David Soliz is a §403(b) salesman specializing in the sales of annuities to educators.   The company for which Mr. Soliz made most of his sales was known as Commercial Union or CGU.   The organization with which he, Tom Miller and Dal Sharp were affiliated, and through which they made their sales, was the Pro Financial Group.

5.     Whether after Mr. Soliz was no longer allowed to make mandatory presentations, he simply left town at the end of December 2001, and he has not requested or been provided with a letter authorizing him to sell annuity products at BISD campuses.

6.     Whether the temporary ban on selling § 403(b) products prevented §403(b) salespersons from requesting that the campus principal grant them access to teachers' lounges during working hours.

7.  Whether prior to August 2001, TSA vendors would talk to Mr. Lieck about the policies they were proposing selling, fill out an application, and Mr. Lieck would determine whether they would be authorized to sell their policies on campus or not., which is essentially the same procedure that is now being used after the departure of Defendants Sauceda and Errisuriz, the only difference being that the current Administrator for Insurance can determine what products can be sold by looking at the Teachers Retirement System website.

8.  Whether prior to Defendant Sauceda's entry, agents were not allowed to present seminars in the auditorium, and they were not allowed to use the BISD mail system to distribute their flyers.

9.  Whether Andrus had an Authorization to Solicit Tax-Sheltered Annuities at BISD valid from 5/9/01-5/7/02.

10. Whether Fernando de Peña had an Authorization to Solicit Tax- Sheltered Annuities at BISD valid from 9/24/01 - 9/23/02.

11. Whether Sam Sauceda had an Authorization to Solicit Tax-Sheltered Annuities at BISD valid from 9/11/00 - 9/12/01 and 9/24/01 -9/23/02.

12. Whether Sylvia Petrarca, Raul Viada and Shirley Gilles had Authorizations to Solicit Tax-Sheltered Annuities at BISD valid from 12/11/00 - 12/10/01.

13. Whether in early August 2001, BISD issued its Request for Qualifications (RFQ's) for TPA to Administer BISD's Cafeteria Plan (§125) and Tax Deferred Annuities (hereinafter RFQ Request).



14.    Whether the decision to select a Third Party Administrator (TPA) to administer the Tax Deferred Annuities Program was made by Defendant Sauceda.

15.    Whether the appointment of a TPA to oversee a §403(b) program would provide a conflict of interest if they were also selling §403(b) products.

16.    Whether Plaintiffs STEPHEN ANDRUS, FERNANDO DE PEÑA, and agents of ANDRUS & PAZ had been authorized to solicit tax-sheltered annuity products to eligible employees of the Brownsville Independent School District, pursuant to the Brownsville Independent School District's Vendor Rules & Regulations for The Tax-Sheltered Annuity Program in effect since as early as 1994?

17.    Whether Plaintiff Andrus submitted a letter to Defendant BISD's Insurance Department, to at least one (1) BISD Board Trustee, and to Defendant Sauceda because of numerous concerns, including the possible illegality of this proposal, on or about August 10, 2001?

18.    Whether Plaintiff Andrus notified Defendants of the apparent illegality of their actions in attempting to retain a TPA to administer the Section 125 and Section 403(b) accounts, as well as of his opinions as to why retention of a TPA for the §403(b) Program was not in the best interests of BISD employees?

19.    Whether although Vendor Rules §IV(I)(1) specifically provides that "BISD may terminate a Vendor's participation in the [Tax-Sheltered Annuity] program by sending a written notice to each participant in the Vendor's program and the primary contact for the vendor at least ninety (90) days in advance of the termination date," and Plaintiffs signed an agreement to abide by those Rules, no such notice was ever provided to Plaintiffs herein before Defendants summarily and immediately withdrew Plaintiffs' authorizations to solicit any of

their products, without explanation?

20.   Whether Plaintiffs' authorizations to solicit their products were withdrawn in retaliation for Plaintiff Andrus' protected speech and because of Plaintiffs de Peña's, Paz's and Andrus & Paz's protected association with Plaintiff Andrus?

21.   Whether Plaintiffs' authorizations to solicit their products were withdrawn because Defendants were looking for a way to direct annuity business to a particular associate, David Soliz, which would have ultimately led to remuneration for Defendants Sauceda and Errisuriz?

22.   Whether Mr. Soliz and his company would work with Defendant Sauceda to have district employees attend "mandatory meetings in order to get the appearance of school district sponsorship?"

23.   Whether mandatory attendance at the Soliz meetings was contrary to Defendant BISD's policies, including its Vendor Rules Section IV(F)(2), which provides that "[r]epresentatives are allowed to make sales presentations on BISD premises only at the request of the employee?"

24.   Whether mandatory meetings included an hour-long sales presentation by Mr. Soliz on tax annuities, presented to all area superintendents and Defendant Sauceda, at which he was trying to sell his particular product at a time that the audience was captive?

25.   Whether the mandatory presentations were appropriate superintendent business?

26.   Whether after a mandatory presentation Defendant Sauceda instructed each of the area superintendents to set up a similar meeting with each of their principals?

27.    Whether mandatory meetings were appropriate or authorized by BISD policies or procedures?

28.    Whether mandatory meetings were ever allowed for Plaintiffs?

29.    Whether Mr. Soliz was allowed by Defendants Sauceda and Errisuriz to distribute flyers promoting his company through the District's mail system, either by placing the flyers in the teachers' mailboxes or asking a receptionist to do so, and by faxing these flyers to the schools' administrative offices.

30.    Whether although BISD's Vendor Rules provided that "[n]o bulk mailings and/or telephone solicitations are permitted to BISD offices or campus locations," Defendant Errisuriz specifically authorized a bulk mailing/distribution to BISD employees of a solicitation letter by David Soliz, and no such authorization was ever provided to Plaintiffs.

31.    Whether Defendants Sauceda, Errisuriz, the BISD Board of Trustees or any other BISD authority allowed Plaintiffs to come on to BISD campuses to present their products as Mr. Soliz had been doing, or to attempt sales of their products in any other manner before the end of 2001, in spite of Plaintiffs' requests to do so?

32.    Whether by February 2002, BISD employees lost trust in, and got scared away from, the purchase of tax-sheltered annuities?

33.    Whether as a result of Defendants' and Mr. Soliz' actions, BISD employees were scared away from ever purchasing annuities.

34.    Whether is was the actions of Plaintiffs and other tax-deferred annuity salespersons in conspiracy with Plaintiffs who mounted a personal and professional attack on David Soliz which created doubt in BISD employees' mind as to the sale of §403(b) products.

35.    Whether the only person who requested permission to make presentations to the administration was David Soliz.  He presented only to the central and campus administrations.  He made no presentations to campus teachers.

36.    Whether any of the correspondence sent by Stephen Andrus refers to either Mr. de Pena or Mr. Paz.  Nowhere during the public audience on November 13, 2001, does Mr. Andrus refer to the other Plaintiffs or claims he is speaking on their behalf.

37.    Whether other districts in the Valley have TPA's for §125 products.

38.    Whether any money was exchanged for services between Brownsville Independent School District and Plaintiffs.  However, Plaintiffs were vendors who were gratuitously allowed access to Brownsville Independent School District employees to sell their products.

39.    Whether there is any evidence to establish that the vendors' rules and regulations relied on by Plaintiffs were in effect during the school year 2001-2002 or ever adopted by the Brownsville Independent School District Board of Trustees.

40.    Whether David Soliz, was allowed to make informational presentations to Brownsville Independent School District administrators, but prohibited from selling on campuses.

41.    Whether there were any mandatory meetings where sales of annuities took place.

42.    Whether David Soliz, who allegedly received sole access to Brownsville Independent School District employees, was also prohibited from making sales and as a result of the temporary ban lost money, closed his office and left town in December 2001.

43.    Whether the Plaintiffs were ever prevented from exercising their chosen profession of selling annuities.  Plaintiffs were never prevented from selling to Brownsville Independent School District employees.



44.     Whether the District had legitimate reasons to halt insurance annuity vendors from soliciting sales on campus.

45.     Whether the district's interest in the efficient operation of ensuring that employees were presented with reputable annuities, that churning did not occur, and that the campuses were not inundated with vendors outweighed the vendors wish to go onto campuses to sell their products.

46.     Whether Eddie Errisuriz made any decision and engaged in any conduct made the basis of this lawsuit.

47.     Whether Dr. Sauceda and Mr. Errisuriz received complaints regarding the sales of §403(b) products, but not as to any salespersons in particular.

48.     Whether any one of the Plaintiffs requested permission to make an informational presentation to the administration.

49.     Whether anyone with a business card was provided a letter of authorization to visit campus lounges prior to the temporary ban imposed when Dr. Sauceda took office.

50.     Whether at the time the temporary ban was imposed, there were over 80 "approved" §403(b) salespersons.

51.     Whether Plaintiffs were prevented from selling their products during the temporary ban on visiting campus lounges.

52.     Whether Defendants classified Plaintiffs either as those they could not control for their illegitimate purposes or as those who complained about Defendants' illegal conduct, and those who associated with them, *i.e,*, those who exercised their fundamental rights?



53. Whether Defendants deprived Plaintiffs of their authorizations to solicit their products without notice or a hearing?

54. Whether Plaintiffs were ever provided even the minimum requirements of notice and a hearing before they were deprived of their rights to participate in BISD's Tax-Sheltered Annuities Program?

55. Whether Defendants violated Plaintiff Andrus' First Amendment right to freedom of speech?

56. Whether Defendants violated Plaintiffs de Pena's, Paz's and Andrus & Paz's First Amendment rights to freedom of association?

57. Whether Defendants violated Plaintiffs' Fourteenth Amendment rights to due process, property or to liberty?

58. Whether Defendants Sauceda or Errisurriz tortiously interfered with Plaintiffs' prospective business relationships?

59. Whether Defendants Sauceda or Errisurriz defrauded Plaintiffs?

60. Whether Defendants Sauceda's or Errisurriz's actions constituted fraud or malice?

61. Whether Plaintiffs are entitled to actual and compensatory damages, and if so, the amount.

62. Whether Plaintiffs are entitled to punitive or exemplary damages for which Defendant Sauceda is liable.

63. Whether Mr. Soliz made presentations to Defendant Sauceda while he was Superintendent of the Edgewood Independent School District, as well as to all administrators and campuses to which he had been invited. During those presentations, as in all his presentations, Mr. Soliz talked about using the 403(b) tax provision, which applies only to annuities.

64.    Whether Mr. Soliz's obvious purpose of promoting knowledge of annuities is so that teachers would ultimately purchase one from him or one of his agents.

65.    Whether The rationale behind presenting "informational seminars," is "all about access. Whoever can get access to the teachers has the most success...."

66.    Whether in order to get access to the teachers, Mr. Soliz and his company would offer promotional presentations as "informational seminars," for no reason other than to try to sell their products.

67.    Whether the "informational seminars" presented at BISD were "presentations in a mandatory sense in that the administrators have requested the attendance of teachers in a meeting at which [CGU] may have been -- which ... would have been featured in some way. ... It may have been a meeting and most likely would have been a meeting that would have been a multifaceted meeting, some meeting that [BISD was] already calling but that [CGU was] introduced as an item on the agenda.

68.    Whether "mandatory presentations" were part of Pro Financial's "modus operandi," having previously made such presentations at 400 other school districts.

69.    Whether the obvious purpose of the presentations was to sell annuity products.

70.    Whether by early October 2001, Plaintiffs were not being allowed to solicit their products on campus, while agent David Soliz was being allowed to promote his products, and Defendant BISD, through Defendants Sauceda and Errisuriz, authorized "mandatory meetings," *i.e.*, presentations on school campuses, during school working hours, which principals and administrators were required to attend.



71.  Whether in these mandatory meetings, David Soliz was allowed to make presentations to principals and administrators during school hours and on school campuses, promoting the benefits of products sold by Commercial Union Insurance Company, and either not mentioning other companies products or denigrating those other products.

72.  Whether Mr. Soliz was listed on an agenda to speak to at least one of these mandatory meetings, the Peña Cluster Meeting on 9/26/01.

73.  Whether the Plaintiffs engaged in the bombardment of Berta Pena's cluster defaming Mr. Soliz and attacking his company and person.

74.  Whether on or about October 18, 2001, Plaintiff Stephen Andrus submitted a letter to BISD Board President Joe Colunga explaining that he had requested permission to make the same sort of mandatory presentations being made by Mr. Soliz, but the Administrator for Insurance, Dr. Leo Lopez, had notified him that this would not be possible.  Mr. Andrus never received any response to that letter, however, either from Board President Colunga or any one else at BISD.

75.  Whether although Dr. Leonel Lopez was in charge of the insurance department, he had no involvement in meetings regarding annuities.

76.  Whether between September and December 2001, Defendants Sauceda and Errisuriz were making all the decisions on the §403(b) program.

77.  Whether although Plaintiff Andrus submitted a letter to Dr. Lopez on November 7, again complaining that he was being discriminated against because only one agent was being granted access to BISD, Dr. Lopez explained that Defendant Errisuriz was making all the decisions on who was allowed to solicit any products at BISD and although he likely



mentioned Mr. Andrus' request to Defendant Errisuriz, no action was ever taken on that request.

78.  Whether Board Trustee Otis Powers was aware by October 2001 that no other agent was allowed to solicit 403(b) products within BISD's campuses, and he contacted Defendant Sauceda's office regarding complaints he had received.  Although he requested information on the mandatory presentations being made by Mr. Soliz through October, he did not get any response from either Defendant Sauceda or Defendant Errisuriz.  As a result, Powers sent a third request to Defendant Sauceda requesting an answer to why CGU was allowed to make mandatory presentations on campuses.  In response to that third request, however, Defendant Sauceda provided nothing more than an authorization letter that had previously been provided to a different Commercial Union agent, Sylvia Cano.  In spite of these additional efforts, Plaintiffs were still not allowed on campus to make presentations or sell their products.

79.  Whether the authorization letter provided to Board Trustee Powers was no different from the authorizations that had been previously provided to Plaintiffs, yet Plaintiffs were still restricted from appearing on any campuses.

80.  Whether on November 13, 2001, Plaintiff Andrus addressed the Board of Trustees during the Public Comment Section of their regularly scheduled Board Meeting, at which time he specifically requested permission to continue to solicit his products, as he had done for the prior 5 years, and he *facetiously* requested permission to make mandatory presentations.  No response was provided to Mr. Andrus' comments during that meeting, however, and no further action was taken to prohibit the mandatory meetings or to allow



Plaintiffs to continue sales as before.

81.    Whether after Mr. Errisuriz had approved CGU as a company allowed to have campus visitations by Mr. Soliz, Plaintiffs requested a similar letter of introduction and permission to do the same, since they were also licensed to solicit CGU products, but that request also went unanswered by Defendants and nothing else was done in response to that request.

82.    Whether Defendants Sauceda and Errisuriz issued authorizations for Plaintiffs Fernando de Peña and "Representatives with The Teacher Agency" to solicit their products on campuses on or about February 19, 2002.

83.    Whether Defendant Errisuriz had any information to issue Plaintiffs' authorizations in February 2002 that he did not already have previously in September 2001.

84.    Whether by February 2002, Plaintiffs had already lost one agent, Sam Sauceda, who chose to get out of the TSA business because of the risk that a company like Pro Financial would be allowed to do mandatory presentations again, thereby restricting his ability to make a living.

85.    Whether after Mr. Errisuriz had approved CGU as a company allowed to have campus visitations by Mr. Soliz, Plaintiffs requested a similar letter of introduction and permission to do the same, since they were also licensed to solicit CGU products, but that request also went unanswered by Defendants and nothing else was done in response to that request.



86.  Whether Defendants Sauceda and Errisuriz issued authorizations for Plaintiffs Fernando de Peña and "Representatives with The Teacher Agency" to solicit their products on campuses on or about February 19, 2002.

87.  Whether Defendant Errisurriz is liable for exemplary or punitive damages, and if so, how much.

## VIII.   AGREED PROPOSITIONS OF LAW

1.  Plaintiff's lawsuit is premised on allegations of violation of the Reconstruction Era Civil Rights Act (42 U.S.C. §1983).

2.  BISD can not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by its employees or agents.  Only when the execution of BISD's policy or custom inflicts the injury complained of can BISD be sued under this statute.  *Monell v. Dept. of Soc. Services, 436 US 658, 694 S. Ct. 2018, 2037(1977)*.

3.  Whether a particular official has "final policymaking authority" is a question of state law."  *City of St. Louis v. Praprotnik, 485 US 112, 123, 99 L. Ed. 2d 107, 108 S.Ct. 915 (1988)*.

4.  Under §1983, BISD cannot be held liable soley because it employs a tortfeasor or under a respondeat superior theory.  *Doe v. Dallas ISD, 153 F3d 211, 216 (5th Cir 1998)*.

5.  Whether speech is entitled to First Amendment protection is a question of law.  *Wheeler v. Mental Health & Mental Retardation, 752 F.2d 1063, 1069 (5th Cir. Tex. 1985)*.

6.  "[T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."  *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct.

1731, 1734, 20 L.Ed.2d 811 (1968); *Blackburn v. City of Marshall*, 42 F.3d 925, 931-32 (5th Cir. 1995).

7.    To prove a retaliation claim, recognized under the First Amendment, the Plaintiffs must show that their speech was constitutionally protected and that it was a "substantial" or "motivating" factor in the Defendants' decisions.  *Kelleher v. Flawn, 761 F.2d 1079, 1083 (5th Cir. 1985) citing Mt. Healthy City Board of Education v. Dayle, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977).*  Once this burden is discharged, the burden of proof shifts to Defendants to show the same decision would have been made even in the absence of the protected speech."

8.    Whether Andrus' speech addressed a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record.  *Rankin v. McPherson, 483 U.S. 378, 385, 107 S.Ct. 2891 (1987).*

9.    Even where a public citizen has no "right" to a valuable government benefit, and though the government may have a number of valid reasons for denying him that benefit, the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests--especially, his interests in freedom of speech.  For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited.  This would allow the government to 'produce a result which [it] could not command directly.'"  *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972), *quoting Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958).

10. The First Amendment protects speech "not only [from] direct limitations … but also [from] adverse government action against individual[s] because of [their] speech]," which would include denying public benefits to Plaintiffs or punishing them because of their speech. *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999).

11. "[T]he First Amendment is violated by state action whose purpose is either to intimidate public employees from [associating by] joining a union or taking an active part in its affairs or to retaliate against those who do." *Hitt v. Connell*, 301 F.3d 240, 245 (5th Cir. 2002).

12. In order to proceed on a claim for violation of due process of the Fourteenth Amendment of the United States Constitution, Plaintiffs must first show loss of a property right or liberty interest. Without establishing a property right or liberty interest, there is no due process claim under the Fourteenth Amendment.

13. "'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. at 334, 96 S.Ct. at 902, *quoting Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id., quoting Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

14. Property rights are created by existing rules or understandings that stem from an independent source such as state statute, local ordinance, written contract, or mutually explicit understanding enforceable under state law as express or implied contract. *Pehnke v. City of Galveston, 977 F.Supp. 827, 830 (S.D. Texas 1997) citing Johnson v.*



*Southwest Miss. Regional Med. Ctr, 878 F.3d 856, 858 (5th Cir. 1989); Perry v. Sindermann, 408 U.S. 593, 601-02, 92 S.Ct. 2694, 2699-2700, 33 L.Ed. 2d 570 (1972).*

15.   It is a purpose of the ancient institution of property to protect those claims upon which people rely on their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims. Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

16.   "At a minimum, notice and a hearing are required before an individual may be deprived of his property or liberty interests." *Systems Contractors Corp. v. Orleans Parish School Board,* 148 F.3d 571, 575 (5th Cir. 1998), *citing Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

17.   "A person's interest in a benefit is a `property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

18.   "A state cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238-

39, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957).

19.  "[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment . . . ." *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959); *VanderZee v. Reno*, 73 F.3d 1365, 1370 (5th Cir. 1996).

20.  "The equal protection clause essentially requires that all persons similarly situated be treated alike." *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 931 (5th Cir. 1988), *citing City of Cleburne, Texas v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).

21.  The proper inquiry as to an Equal Protection Claim involves three elements:  a classification, the purpose of the classification; and the fit between the classification and purpose; that is, whether the state could rationally determine that by distinguishing among persons as it has, the state could accomplish its legitimate purpose.  See Johnson v. Rodriguez, 110 F. 3d 299, 306 (5th Cir. 1997), pet. for cert. denied 552 U.S. 995, 139 L. Ed. 2d 400, 118 S. Ct. 559 (U. S. 1997), Brennan v. Stewart, 834 F. 2d 1248, 1257 (5th Cir. 1988); *Mahone v. Addicks Utility Dist. of Harris County,*  836 F.2d 921, 933 (5th Cir. 1988).

22.  "A violation of the Equal Protection Clause occurs only when...the governmental action in question classifies between two or more relevant persons or governmental action in question classifies between two or more relevant persons or groups." *Bishop v. Wood,*

426 U.S. 341, 349, 96 S. Ct. 2074, 2079, 48 L. Ed. 2d 684 (1976).

23.    "In addition to demonstrating a classification, it is well established that a party who wishes to make out an equal protection claim must also prove the existence of purposeful discrimination motivating the alleged state action. *Pehnke*, 977 F. Supp. at 829 citing *Washington* 426 U.S. at 246-50, 96 S. Ct. at 2051-52.

24.    "As the Supreme Court explained long ago, equal protection of the law requires not only that laws be equal on their face, but also that they be executed so as not to deny equality." *Id.* citing *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, (1886).

25.    "A [defendant] cannot deflect an equal protection challenge by observing that in light of the statutory classification all those within the burdened class are similarly situated.  The classification must reflect pre-existing differences; it cannot create new ones that are supported only by their own boot straps. 'The Equal Protection Clause requires more of a state law than non-discriminatory application within the class it establishes.'" *Williams v. Vermont*, 472 U.S. 14·27, 105 S.Ct. 2465, 2474, 86 L.Ed.2d 11 (1985), *quoting Rinaldi v. Yeager*, 384 U.S. 305, 308, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966).

26.    Plaintiffs have not alleged any state law causes of action against Defendant BISD.

27.    Under 42 U.S.C. §1988, in any action asserting claims pursuant to §§ 1981,1983 and 1985, the Court, in its discretion, may allow the prevailing party a reasonable attorney's fees as part of the costs and may include expert fees as part of the attorney's fees.  Should the Court grant this motion and deny Plaintiffs' claims under §§ 1981, 1983 and 1985, then the Court may further deny the Plaintiffs' claim for attorney's fees pursuant to 42 U.S.C. §1988.



28.    A property interest may arise from a legitimate claim of entitlement to continued employment in a given position.   It may be derived from a mutually explicit understanding, a statute or an express contract.  See *Perry v. Sindermann,* 408 U.S. 593, 601-02 (1972) *(overruled in part on other grounds by Rust v. Sullivan,* 500 U.S. 173 (1991));   *Conley v. Board of Trustees of Grenada County Hospital,* 707 F.2d 175, 179 (5th Cir.1983).   To determine whether a property right exists, a court must look to the applicable state law, *Bishop vs. Wood,* 426 U.S. 341, 344 (1976); *Wallace v. Shreve Memorial Library,* 97 F.3d 746, 748 (5th Cir.1996), in this case, Texas state law.

29.    Intentional or reckless misrepresentations are not protected by the First Amendment. *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir. 1999.)

30.    The Plaintiffs burden is to show that the Defendants' conduct rose to the level of deliberate indifference as to the rights of Plaintiffs. *Doe v. Dallas Independent School District,* 220 F.3d 380, 382 (5th Cir. 2000);   *Alton v. Texas A&M University,* 168 F.3d 196, 200 (5th Cir.  1999); *Doe v. Taylor Independent School District,* 15 F.3d 443, 452 (5th Cir. 1994); *Hinshaw v. Doffer,* 785 F2d 1260, 1262 (5th Cir. 1986).  "The standard of deliberate indifference is high.  *See Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 218 (5th Cir.1998).   Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. *Alton,* 168 F.3d at 200.

## IX.    CONTESTED PROPOSITIONS OF LAW

1.    The test developed in *Pickering* was designed to apply to a public employee, a teacher, who was commenting on matters of public concern relating to the State, her employer, and required the balancing of her right to speak on matters of public interests with the State's need to promote the efficiency of the services it performs through its employees; however, that the same test would not apply "were [Plaintiff] a member of the general public...." *Pickering v. Board of Education*, 391 U.S. at 568-69, 88 S.Ct. 1734-35.

2.    Just as "[g]overnment officials may not discharge public employees for refusing to support a political party or its candidates, unless political affiliation is a reasonably appropriate requirement for the job in question," so too may Defendants not retaliate against Plaintiffs for refusing to support the illegal actions of the Defendants, or for supporting the actions of someone else making a direct complaint of those actions. *O'Hare Truck Service, Inc. v. City of North Lake*, 518 U.S. 712, 714, 116 S.Ct. 2353, 2355 135 L.Ed.2d 874 (1996).

3.    A violation may be established as in "*Elrod* and *Branti* [which] involved instances where the raw test of political affiliation sufficed to show a constitutional violation, without the necessity of an inquiry more detailed than asking whether the requirement was appropriate for the employment in question.  There is an advantage in so confining the inquiry where political affiliation alone is concerned, for one's beliefs and allegiances ought not to be subject to probing or testing by the government." *O'Hare Truck Service, Inc. v. City of North Lake*, 518 U.S. 712, 719, 116 S.Ct. 2355, 2358 135 L.Ed.2d 874 (1996).



4.      To determine how much process is actually due in any particular situation, courts have been directed to balance "(1) the private interest that will be affected by the official's actions, (2) the risk of an erroneous deprivation of that private interest and the probable value, if any, that additional procedural protections would provide, and, (3) the interest that the government seeks to achieve." *Systems Contractors Corp. v. Orleans Parish School Board*, 148 F.3d at 575, *citing Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 893.

5.      The Supreme Court in *Perry* and the Fifth Circuit in *Blackburn* both concluded that the First Amendment analysis applicable to an independent contractor, such as the Plaintiffs herein, is the more generalized question of whether Defendants acted or denied a benefit to Plaintiffs because of their "constitutionally protected speech or associations...." *Perry v. Sindermann*, 408 U.S. at 597, 92 S.Ct. at 2697 (untenured teacher); *Blackburn v. City of Marshall*, 42 F.3d at 933 (independent owner of towing and wrecker service business alleging facts similar to Plaintiffs herein) ("we conclude that the relationship between [Plaintiff] and Defendants does not rise to the level of even a quasi-employment relationship like that in the medical staff privileges cases. Accordingly, we hold that the facts of this case are not sufficiently analogous to the employment cases to warrant the direct and full application of *Pickering* and *Connick*.") Accordingly, the *Perry* standard should apply, rather than the *Pickering* balancing test.

6.      Plaintiffs do not need a formalized contract or statutory guarantee that they are entitled to continued employment in order to establish the existence of a property interest. *Henderson v. Sotelo*, 761 F.2d 1093, 1096 (5th Cir. 1985); *Perry v. Sindermann*, 408 U.S.

593, 599, 92 S.Ct. 2696, 2698, 33 L.Ed.2d 570 (1972).

7. As the Supreme Court and the Fifth Circuit have held, Plaintiffs "should be allowed to show `the existence of rules and understandings, promulgated and fostered by [Defendants], that may justify [their] legitimate claim of entitlement to continued employment absent sufficient cause." *Perry v. Sindermann*, 408 U.S. at 602-03, 92 S.Ct. at 2700; *Henderson v. Sotelo*, 761 F.2d at 1096.

8. The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principal basic to our society.' *Joint Anti-fascist Comm'n v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed.2d 817 (1951) (Frankfurter J., concurring).

9. Whether Plaintiffs STEPHEN ANDRUS, FERNANDO DE PEÑA, and agents of ANDRUS & PAZ were authorized to solicit tax-sheltered annuity products to eligible employees of the Brownsville Independent School District, pursuant to Internal Revenue Service Guidelines. *See* Plan Examination Guidelines Handbook No. 7.7.1, (hereinafter IRS Handbook No. 7.7.1) §403(b) Plans, §13.1.1.1.

10. The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); *Mathews v. Eldridge*, 424 U.S. at 333, 96 S.Ct. at 902.

11. At the very least, "notice and an opportunity to be heard were required before the School Board could disqualify [Plaintiffs from participation in the TSA Program] and bar [Plaintiffs] from [participating in] future projects." *Systems Contractors Corp. v.*

*Orleans Parish School Board,* 148 F.3d at 575.

12.    "[W]ork opportunities may not be "severely limited on the basis of a fact determination rendered after a hearing which failed to comport with our traditional ideas of fair procedure," even where the complaining party is not an employee of the governmental entity, but is instead privately employed.  *Green v. McElroy*, 360 U.S. 474, 508, 79 S. Ct. 1400, 1419, 3 L. Ed. 2d 1377 (1959).

13.    Whether under existing IRS Rules, school districts could elect to have their employees receive the benefits of tax deferred purchases of annuity contracts either through the form of an "arrangement" or a formalized "summary plan description" (SPD).  IRS Handbook No. 7.7.1, §13.1.1.1.

14.    Just as a federal agency "cannot arbitrarily interfere with [a private employee's] continuing employment relationship with [his employer]" without depriving the employee of a property interest, so too Defendants could not interfere with Plaintiffs attempts to solicit their products without affecting a deprivation of their property interests.  *See Fed. Deposit INS. Corp. v. Mallen*, 486 U.S. 230, 240, 108 S. Ct. 780, 1787, 100 L. Ed. 2d 265 (1988).  Plaintiff's "interest in continued employment is without doubt an important interest that ought not be interrupted without substantial justification."  *Id.* 1789.

15.    "Without doubt, ['liberty' in the Fourteenth Amendment] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life . . . ."  *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923).

16.    "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915).

17.    Whether either the BISD Vendor Rules constituted Defendant BISD's SPD, by which they were bound for participation in their employees purchase of §403(b) annuities or Defendant BISD had no SPD and BISD's "involvement in the Plan is strictly limited to providing a list of insurance carriers to employees and executing salary reduction agreements. IRS Handbook No. 7.7.1, §13.1.1.1(2).

18.    Whether the nondiscrimination requirements of I.R.C. §403(b) provide that a tax-deferred annuity "plan meets the nondiscrimination requirements of this paragraph if (i) with respect to contributions not made pursuant to a salary reduction agreement, such plan meets the requirements of paragraphs (4)…of section 401(a), section 401(m), and section 410(b) in the same manner as if such plan were described in section 401(a)…." 26 U.S.C. §403(b)(12)(2002).

19.    Defendants are liable for violating Plaintiffs' equal protection rights if, "in carrying out its statutorily prescribed…duties, [they] applied a non-statutory requirement to [Plaintiffs] differently than [they] applied the requirement to other similarly situated [vendors,]" *i.e.,* David Soliz. *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d at 932.

20.    Whether "school districts are required to comply with 401(a)(4), 401(m) and 410(b), nondiscrimination rules?" Defendants did not have an "absolute right to enforce a

patronage scheme,...as a means of retaining control over independent contractors,...and satisfying governmental officials' concerns about reliability...." *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712, 726, 116 S.Ct. 2353, 2361, 135 L.Ed.2d 874 (1996).

21. Whether an apparent conflict existed between the I.R.S. Handbook and BISD's proposal to retain a TPA to aid in the "selection of carriers?" IRS Handbook No. 7.7.1., §13.1.1.1.

22. "If, however, the classification is not rationally related to a legitimate state interest, [Mr. Soliz and the other agents] are similarly situated and by refusing to [authorize all agents who they could not control for their improper purposes to solicit their products similarly, the Defendants have] violated the equal protection clause." *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d at 933, n.11.

23. Whether BISD's role in administering §403(b) accounts was limited by state law, and a TPA may not be used to solicit and present products to the insurance committee for selection of carriers, where the carriers not selected would otherwise still be authorized under state law to solicit their products.

24. Whether Defendants could restrict the sale of 403(b) annuities any more than the state already did.

25. Whether BISD's Vendor Rules, the Authorization Letters provided to Plaintiffs, BISD's established procedures and applicable IRS Regulations constituted rules or understandings that secured certain benefits and that support claims of entitlement to those benefits. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

26.    Whether Plaintiffs' "property interest in [their] business is essentially [their] interest in the lost profits, which are sought merely as the measure of damages in this action. [Plaintiffs'] property interest in the profits of [their] business and [their] liberty interest in operating [their] business do rise to the level of protectible interests. *San Jacinto Savings and Loan v. Kacal*, 928 F.2d 697, 704 (5th Cir. 1991).

27.    Whether the concept of a TPA for Section 125 products is not illegal and was used by other school districts, including San Benito Independent School District.

28.    Plaintiffs have the burden of prove to establish that: (1) BISD promulgated a policy; (2) a decision was made that displayed "deliberate indifference" and proved BISD's culpability; and (3) the decision led to the particular injury. *Foust v. Thigpen, 317 F3d 849, 861 (5th Cir 2002).*

29.    A formal policy is a statement, ordinance, regulation or decision that is officially adopted and promulgated by the BISD Board of Trustee. *Foust v. Thigpen, 317 F3d 849, 861 (5th Cir 2002).*

30.    In Texas it is clear that final policymaking authority in an independent school district, such as BISD, rests with the District's board of trustees.  Texas Education Code Sect. 23.01, Sect. 23.36(b) and (d). *Jett v. Dallas Ind. School Dist. 7 F3d 1241, 1245 (5th Cir. Tex 1993).*

31.    For Plaintiffs to establish a custom was violated, Plaintiffs must show a persistent, wide spread practice of school district officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents school district policy. *Piotrosky v. City of*

Houston, 237 F.3d 567, 579 (5ᵗʰ Cir. 2001) cert. den. 534 U.S. 820, 122 S. Ct. 53 (2001).

32.    "A plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered." *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5ᵗʰ Cir. 2002), citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25, 108 S.Ct. 915, 924-25, 99 L.Ed.2d 107 (1988).

33.    "[A] final decision maker's adoption of a course of action `tailored to a particular situation and not intended to control decisions in later situations' may, in some circumstances, give rise to ... liability under §1983." *Foust v. Thigpen*, 310 F.3d at 862, *quoting Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 406, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) *quoting Pembaur v. Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986).

34.    "[G]overnmental entities ... often spread policymaking authority among various officers and official bodies.  As a result, particular officers may have authority to establish binding ... policy respecting particular matters and to adjust that policy for the [entity] in changing circumstances.  To hold [an entity] liable for actions ordered by such officers exercising their policymaking authority is no more an application of the theory of *respondent superior* than was holding the municipalities liable for the decisions of the City Councils in *Owens* and *Newport*. In each case, municipal liability attached to a single decision to take unlawful action made by [the entity's] policymakers." *Pembaur v. Cincinnati*, 475 U.S. at 483, 106 S.Ct. at 1300.

35.    Liability may attach to Defendant BISD for the actions of its Board or the actions of the person to whom it had delegated policymaking authority relating to the establishment and enforcement of its Tax Sheltered Annuities Program, Defendant Noe Sauceda.

36.    There are three ways in which a policymaker's acts can create governmental liability. First, the policy requirement "is certainly met when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy," which policy is found to be unconstitutional. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. at 417 (Souter, J., dissenting). Second, although no official policy may be promulgated, federal law can be violated by an act of a policymaker himself. "[T]he choice of [the] policy and its implementation are one, and the first or only action will suffice to ground municipal liability simply because it is the very policymaker who is acting." *Brown*, 520 U.S. at 417 (Souter, J., dissenting). The third manner in which the Supreme Court concluded a municipal policy can be established is where the policymaker has consciously omitted to act. *Brown*, 520 U.S. at 418 (Souter, J., dissenting). The most obvious example of this situation is where a policymaker sits on his hands after repeated, unlawful acts of subordinate officers and that failure "evidences a 'deliberate indifference' to the rights of [the municipality's] inhabitants," [because] the policymaker's toleration of the subordinates' behavior establishes a policy-in-practice just as readily attributable to the municipality as the one-act policy-in-practice described [in *Monell* and *Pembaur*]." *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 389-90 (1989)).



37.   "Deliberate indifference is thus treated, as it is elsewhere in the law, as tantamount to intent, so that the inaction of a policymaker deliberately indifferent to a substantial risk of harm is equivalent to the intentional action that setting a policy presupposes." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. at 419 (Souter, J., dissenting).

38.   "[P]roof that [an entity's] legislative body *or authorized decision maker* had intentionally deprived a Plaintiff of a federally protected right necessarily establishes that the [entity] acted culpably. Similarly, the conclusion that the action taken or directed by the [entity] *or its authorized decision maker* itself violates federal law will also determine that the [entity's] action was the moving force behind the injury of which the Plaintiff complains." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 1389, 137 L.Ed.2d 626 (1997) (emphasis added).

39.   "If a program does not prevent constitutional violations, municipal decision makers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action - the `deliberate indifference' - necessary to trigger municipal liability." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. at 407, 117 S.Ct. at 1390. *See also, Grandstaff v. City of Borger*, 767 F.2d 161, 171-72 (5th Cir. 1985), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987).

40.   Neither Eddie Errisuriz, Jr., as Assistant Superintendent, nor Dr. Sauceda, as the Superintendent, as a matter of law, were not a final policymaker when the determination was

made to ban annuity salespersons from making sales on BISD campuses. *Jett 7 F3d 1245, Pena v. Rio Grande City Consolidated Independent School District, 616 S.W. 2d 658 (Tex. Civ. App -Eastland, 1981); Hinojosa v. State, 648 S.W.2d 380 (Tex. App., Austin, 1983, discretionary review refused).*

41.    When David Soliz was allowed to make presentations to Administration Cluster Meetings, neither Eddie Errisuriz, Jr., as Assistant Superintendent, nor Dr. Sauceda, as the Superintendent, as a matter of law, were not a final policymaker when the determination was made to ban annuity salespersons from making sales on BISD campuses. *Jett 7 F3d 1245, Pena v. Rio Grande City Consolidated Independent School District, 616 S.W. 2d 658 (Tex. Civ. App -Eastland, 1981); Hinojosa v. State, 648 S.W.2d 380 (Tex. App., Austin, 1983, discretionary review refused).*

42.    Speech involves a matter of public concern when it is made primarily in the speaker's role as a citizen then as an employee addressing matters of public concern. *Bitsoff v. City of Dallas, 199 F3d 438, (N.D. Tex 1999).*

43.    The U.S. Constitution does not establish absolute rights to free expression of ideas. The free exercise of speech under the Constitution may be infringed on by the State if there are compelling reasons to so. *Ferrell v. Dallas Independent School District, 392 F.2d 697(5th Cir. Tex. 1968).*

44.    Liability may attach to Defendant BISD for the actions of its Board or the actions of the person to whom it had delegated policymaking authority relating to who can sell annuities on BISD property.



45.   BISD Policy CH (Legal) and Texas Education Code 44.031 provides that only contracts over $10,000 are subject to the Open Bidding Laws in the State of Texas.

46.   There is no authority that Op. Tex. Att'y Gen. No. JC-0205, (200), applies to the appointment of the selection of annuity salespersons under Section 125 or 403b products.

47.   The attorney general opinion relied on by Plaintiff does not apply to the RFQ at issue because BISD was not "purchasing insurance contracts with premiums of $25,000 or more in the aggregate for each twelve-month period" as referenced in the opinion.

48.   Because there is no value or cost to the district, it is legal to appoint a Third Party Administer to administer Section 125 or 403b services for a school district.

49.   "[T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Board of Education, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734, 20 L. ED. 2d 811 (1968); Blackburn v. City of Marshall, 42 F.3d 925, 931-32 (5th Cir. 1995).*

50.   The Supreme Court in *Perry* and the Fifth Circuit in *Blackburn* both concluded that the First Amendment analysis applicable to an independent contractor, such as the Plaintiff herein, is the more generalized question of whether Defendants acted or denied a benefit to Plaintiff because of his "constitutionally protected speech or associations...." *Perry v. Sindermann, 408 U.S. at 597, 92 S. Ct. At 2697* (untenured teacher); *Blackburn v. City of Marshall, 42 F.3d at 933* (independent owner of towing and wrecker service business between [Plaintiff] and Defendants does not rise to the level of even a quasi-employment relationship like that in the medical staff privileges cases. Accordingly, we hold that the facts of this case are not

sufficiently analogous to the employment cases to warrant the direct and full application of *Pickering* and *Connick*.") Accordingly, the *Perry* standard should apply, rather than the *Pickering* balancing test.

51.  It is a defense if BISD can persuade the District Court that [BISD's] legitimate interests as contractor, deferentially viewed, outweighed the free speech interests at stake." *Mt. Healthy City Bd. Of Ed v. Doyle, 429 U.S.274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)*.

52.  BISD Policy BED (Local) provides that the Board shall allot no more than 30 minutes for the public audience portion of a public speech.  The practice of the Board of Trustees is when there are more than six persons signed up for public audience, than the amount of time shall be reduced accordingly.

53.  The Plaintiffs were vendors and independent contractors for The Teacher's Agency who were seeking to make sales to BISD employees and therefore their claims under the First Amendment should be considered under the balancing test set out in *Pickering v. Board of Education, 391 U.S. 563, 570-72, 20 L. Ed. 2d 811, 88 S. Ct. 1731, 1735-37 (1968)*.

54.  The balancing test set out in Pickering requires the following factors are to be considered in striking a balance between the interests of the employer and the employee/independent contractor's right of free speech:

   a.      the parties' working relationship;

   b.      the detrimental effect of the speech on the employer; and

   c.      the nature of the speech, the person's relationship to the speech, and the value of the speech to the public. *Pickering, 391 U.S. at 570-72*.

55.    In performing the *Pickering* Balancing test, pertinent considerations are whether the statement impairs discipline by superiors or harmony among co-workers, have a detrimental impact on close relationships from which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise. *Pickering, 88 S. Ct. 1731; Braxton v. City of Dallas, 272 F.3d 730 (5th Cir. Tex. 2001).*

56.    Charges of illegal conduct that are made with knowledge of their falsehood or with reckless disregard of whether they are false or not, are not constitutionally protected. *Colson v. Grohman, 174 F.3d 498, 507 (5th Cir. 1999) citing Monitor Patriot Co. v. Roy, 401 U.S. 265, 277, 28 L. Ed. 2d 35, 91 S. Ct. 612 (1971).*

57.    Brownsville Independent School District board policy provides for complaint procedures for members of the public.  See Exhibit "K" Brownsville Independent School District Policy - GF [local].  This policy provides that members of the public having complaints about District policies, procedures or operations may present their complaints to the board after going through a three level grievance procedure.

58.    Here, none of the Plaintiffs availed themselves of these procedures and wholly failed to exhaust their administrative remedies.

59.    "The failure of a state agency to comply with its internal regulations is insufficient as a matter of law to establish a violation of Due Process, because Constitutional minimum nevertheless may have been met." *Rogan v. Royal Independent School District, 975 F. Supp. 956, 964 (S.D. Texas 1997) citing Franceski v. Plaquemines Parish School Board, 772, F.2d 197, 199-200 (5th Cir. 1985).*

60.   In order to make out an equal protection claim, Plaintiffs must also prove the existence of purposeful discrimination motivating the alleged state action.  See *Pehnke*  977 F.Supp. at 829 citing *Washington v. Davis*, 426 U.S. 229, 246-50, 96 S.Ct. 2040, 2051-52, 48 L.Ed 597 (1976).

61.   Internal rules cannot create a property interest barring some other source of the property interest.  "A state agency's failure to follow it own procedural rules governing employment will not create a property interest which otherwise does not exist" *Stratton* 8 S.W.3d at 30; *Christian v. City of Dallas*, 64 F.Supp.2d 617, 624 (1999); *Alford*  738 S.W.2d at 316.  A Plaintiff does not have a property interest in the rules themselves and must establish a protectable property interest separate and apart from the rules.  *Id.*

62.   In *Texas State Teachers Association v. Garland Independent School District*, 777 F.2d 1946, 1051 (5ᵗʰ Cir 1985) (*aff'd TSTA v. Garland Independent School District*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 2866, 1989.) the Court, applying the reasoning of *Perry Education Assn. v. Perry Local Educators Assn.*, 103 S.Ct. 948, 460 U.S. 37, 74 L.Ed2d 794, 1983) held that because a school is not a public forum, outsiders have no constitutional right of access.

63.   Whether Andrus & Paz is an improper party to claim equal protection.

64.   Whether partnerships are entitled to protection under the U.S. Constitution.  *Liverpool Ins. Co. v. Massachusetts*, 77 U.S. 566, 19 L.Ed.2d 1029, 10 Wall. 566 (1870).

65.   Whether Plaintiff fails to show discrimination due to his membership within a class, or that the similarly situated vendors were treated differently.

66.     Whether there is no entitlement to a letter of authorization.  In fact Brownsville Independent School District policies allow campus principals and central administrators to regulate who may visit a campus.  See Exhibit "K-2", GKA (local) and "K-3" GKC (local).

67.     The amount of attorney's fees to which Plaintiffs is entitled, pursuant to the Reconstruction Era Civil Rights Act (42 U.S.C. §1988).

68.     Whether Plaintiffs' inability to prove such a property or liberty interest based on current state or federal law is grounds for dismissal of this lawsuit under F.R.C.P. 12(b)(6) for failure to state a cause of action.

## X.     EXHIBITS

A.  Plaintiffs' Exhibit List is attached as "Exhibit P-A."

B.  Defendant BISD Exhibit List is attached as "Exhibit D1-A."

C.  Defendants NOE SAUCEDA and EDDIE ERRISURIZ, JR. Exhibit List is attached as "Exhibit D2-A."

## XI.     WITNESSES

A.      Plaintiffs' Witnesses - Attached as "Exhibit P-B"

B.      Defendant BISD Witnesses - Attached as "Exhibit D1-B"

C.      Defendants NOE SAUCEDA and EDDIE ERRISURIZ, JR. Witnesses - Attached as "Exhibit D2-B."

## XII.    SETTLEMENTS

A settlement demand and offer has been made and rejected.  The parties agree that mediation would be futile.

## XIII.  TRIAL

The Parties anticipate that the case will take approximately 36 hours, exclusive of jury selection.

## XIV.  ATTACHMENTS

(A)    Plaintiffs' Proposed Questions for Voir Dire examination are attached as Exhibit "P-C."

(B)    Defendant BISD's Proposed Questions for Voir Dire examination are attached as Exhibit "D1-C."

(C)    Defendants NOE SAUCEDA and EDDIE ERRISURIZ, JR. Proposed Questions for Voir Dire examination are attached as Exhibit "D2-C."

(D)    Plaintiffs' Proposed Charge, including instructions, definitions and special interrogatories, with authorities are attached as Exhibit "P-D"

(E)    Defendant BISD's Proposed Charge, including instructions, definitions and special interrogatories, with authorities are attached as Exhibit "D1-D"

(F)    Defendants NOE SAUCEDA and EDDIE ERRISURIZ, JR. Proposed Charge, including instructions, definitions and special interrogatories, with authorities are attached as Exhibit "D2-D"

(G)    Plaintiffs' Proposed Jury Panel Questionnaire, attached as Exhibit "P-E."

(H)    Defendants BISD's, SAUCEDA'S and ERRISURIZ'S Joint Proposed Jury Panel Questionnaire, attached as Exhibit "D-E."

_____          _____
United States District Judge                              Date

_____          2/13/04
Mr. J. Arnold Aguilar                                     _____
Attorney for Plaintiffs                                   Date

_____          2/17/04
Ms. Eileen M. Leeds                                       _____
Mr. Charles Willette, Jr.                                 Date
Attorneys for Defendants Noe Sauceda
    and Eddie Errisuriz, Jr.

_____          2/17/04
Ms. Elizabeth G. Neally                                   _____
Attorney for Defendant BISD                               Date

# EXHIBIT P-A

| UNITED STATES DISTRICT COURT | ✳ | SOUTHERN DISTRICT OF TEXAS |
| --- | --- | --- |

| Stephen M. Andrus, Fernando de Peña, Valentin Paz and Andrus & Paz, *a partnership* Plaintiffs<br><br>*Versus*<br><br>Brownsville Independent School District, Noe Sauceda and Eddie Errisuriz, Jr. Defendants | CASE NO.   B – 02 – 143 |
| --- | --- |
| | **EXHIBIT LIST** |
| | Case Manager: Irma Soto<br>Court Reporter: Barbara Barnard |
| Judge Andrew S. Hanen<br><br>**List for Plaintiffs** | Proceeding                    Date |

| No. | Description | Adm | Exd |
| --- | --- | --- | --- |
| 1. | BISD Vendor Rules & Regulations | | |
| 2. | BISD Policy CRG (LOCAL) | | |
| 3. | BISD Policy CRG (LEGAL) | | |
| 4. | IRS Guidelines 7.7.1, Chapter 13, §1.1.1 | | |
| 5. | Andrus Authorization Letter 4/11/01 | | |
| 6. | Sam Sauceda Authorization Letter 9/24/01 | | |
| 7. | Sam Sauceda Authorization Letter 9/11/00 | | |
| 8. | Petrarca, Viada & Gilles Authorization Letter 12/11/00 | | |
| 9. | De Peña Authorization Letter 9/24/01 | | |
| 10. | Vendor (Agent) List 8/23/01 | | |
| 11. | BISD Vendor List | | |
| 12. | BISD 2001 RFQ for TPA to Administer Cafeteria Plan & Tax Deferred Annuities | | |
| 13. | BISD RFQ change 8/14/01 | | |
| 14. | BISD RFQ change 8/15/01 | | |
| 15. | Andrus Letter of 8/10/01 | | |
| 16. | De Peña Cluster Meeting Agenda 9/26/01 | | |
| 17. | Andrus Letter of 10/18/01 | | |
| 18. | Powers Memo to Sauceda of 10/23/01 | | |
| 19. | Errisuriz Memo to Sauceda of 10/24/01, with copies re: Powers' concerns | | |
| 20. | Pro Financial Flyer (approved) | | |
| 21. | Pro Financial Flyer (o.k. to distribute) | | |
| 22. | Andrus Letter of 11/7/01 | | |

| 23. | De Peña Cluster Agenda 11/7/01 | | |
|---|---|---|---|
| 24. | Errisuriz draft document 1/17/02 | | |
| 25. | Errisuriz draft document 2/16 | | |
| 26. | Taylor Letter to Lopez of 11/2/01 | | |
| 27. | Errisuriz Memo of 11/8/01 | | |
| 28. | Errisuriz Memo to Aetna of 11/12/01 | | |
| 29. | BISD Board Meeting Public Audience Excerpts 11/13/01 | | |
| 30. | David Soliz red notebook | | |
| 31. | Soliz Depo Exhibit 2 | | |
| 32. | Soliz Depo Exhibit 3 | | |
| 33. | Soliz Depo Exhibit 4 | | |
| 34. | Soliz Depo Exhibit 5 | | |
| 35. | Soliz Depo Exhibit 6 | | |
| 36. | Soliz Depo Exhibit 7 | | |
| 37. | Soliz Depo Exhibit 8 | | |
| 38. | Soliz Depo Exhibit 9 | | |
| 39. | Soliz Depo Exhibit 10 | | |
| 40. | Soliz Depo Exhibit 11 | | |
| 41. | Soliz Depo Exhibit 13 | | |
| 42. | Soliz Depo Exhibit 14 | | |
| 43. | Soliz Depo Exhibit 15 | | |
| 44. | Soliz Depo Exhibit 16 | | |
| 45. | Soliz Depo Exhibit 18 | | |
| 46. | Soliz Depo Exhibit 19 | | |
| 47. | Soliz Depo Exhibit 20 | | |
| 48. | Soliz Depo Exhibit 21 | | |
| 49. | Soliz Depo Exhibit 22 | | |
| 50. | Soliz Depo Exhibit 23 | | |
| 51. | Soliz Depo Exhibit 24 | | |
| 52. | Soliz Depo Exhibit 25 | | |
| 53. | Vasquez v. Commercial Union Order Granting Permanent Injunction | | |
| 54. | TEA Memo to Superintendent of 11/15/85 | | |
| 55. | Lopez Memo to Campus Principals of 8/19/02 | | |
| 56. | List of Companies Offering Annuity Contracts as of 3/14/03 | | |
| 57. | | | |
| 58. | | | |
| 59. | | | |
| 60. | | | |
| 61. | | | |
| 62. | | | |

# EXHIBIT D1-A



IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| STEPHEN M. ANDRUS,<br>FERNANDO DE PENA,<br>VALENTIN PAZ and<br>ANDRUS & PAZ, a Partnership<br><br>v.<br><br>BROWNSVILLE INDEPENDENT<br>SCHOOL DISTRICT, NOE SAUCEDA,<br>and EDDIE ERRISURIZ, JR. | C.A. NO. B-02-143<br><br><br><br>EXHIBIT LIST |
|---|---|
| Judge Andrew S. Hannen | Case Manager: Irma Soto<br>Court Reporter: Barbara Barnard |
| List of Defendant Brownsville Independent<br>School District | Proceeding Date: March 2, 2004 |

| No. | Description | Adm | Exd |
|---|---|---|---|
| 1 | Correspondence to Whom It May Concern from Stephen M. Andrus dated August 10, 2001 | | |
| 2 | Correspondence to Joe Colunga from Stephen M Andrus dated October 18, 2001 | | |
| 3 | Correspondence to Mr. L. Lopez from Stephen M. Andrus dated November 7, 2001 | | |
| 4 | Letter dated February 19, 2002 from Eddie Errisuriz, Jr. to Campus Principals/Administrators<br>regarding Authorized Vendor List - 403(b) Annuities 2001/02 School Year | | |
| 5 | Correspondence by Eddie Errisuriz, Jr. to the Teacher's Agency dated February 19, 2002<br>regarding Authorization to Solicit Tax-Sheltered Annuity Products 403(b) | | |
| 6 | Questionnaire from Eddie Errisuriz, Jr. dated 11/08/01 regarding RFP | | |

| No. | Description | Adm | Exd |
|-----|-------------|-----|-----|
| 7 | Affidavit of Kenneth Lieck | | |
| 8 | Request for Qualifications (RFQ's) for TPA to Administer BISD's Cafeteria Plan (Section 125) and Tax Deferred Annuities | | |
| 9 | Addendum #1 for RFQ #012-02, Request for Qualification (RFQ's) for TPA to Administer BISD's Cafeteria Plan (Section 125) and Tax Deferred Annuities | | |
| 10 | Addendum #2 for RFQ #012-02, Request for Qualification (RFQ's) for TPA to Administer BISD's Cafeteria Plan (Section 125) and Tax Deferred Annuities | | |
| 11 | Affidavit of Norma Ortiz - Brownsville I.S.D. Policies | | |
| 12 | GF [LOCAL] | | |
| 13 | GKA [LOCAL] | | |
| 14 | GKC [LOCAL] | | |
| 15 | Minutes of Insurance Committee of October 30, 2001 | | |
| 16 | November 13, 2001 Plaintiff Andrus Public Audience Address and CD | | |
| 17 | Public Audience Sign-in Sheet | | |
| 18 | Memo from Kenneth J. Lieck to All School Principals and Administrators, dated April 11, 2001 re: Authorization to Solicit Tax-Sheltered Annuity Products (403{b}) | | |
| 19 | Memo from Kenneth J. Lieck to All School Principals and Administrators, dated September 24, 2001 re: Campus Visitation | | |
| 20 | Memo from Kenneth J. Lieck to All School Principals and Administrators, dated September 11, 2000 re: Campus Visitation | | |
| 21 | Memo from Kenneth J. Lieck to All School Principals and Administrators, dated December 11, 2000 re: Authorization to Solicit Tax-Sheltered Annuity Products (403{b}) | | |

| No. | Description | Adm | Exd |
|---|---|---|---|
| 22 | Agenda for Faulk Middle School dated September 26, 2001 @ 2:00 p.m. Cluster Meeting | | |
| 23 | Agenda of November 7, 2001 | | |
| 24 | Notes by German Castillo - Undated | | |
| 25 | Letter to Berta A Pena, Area Superintendent from Dona Alcala, Principal dated November 12, 2001 | | |
| 26 | Memo to Sauceda, Board President Joe Colunga & Board Members from Otis Powers, dated October 23, 2001 | | |
| 27 | Memo from Noe Sauceda to Principals and Administrators regarding Insurance and Tax Deferred Annuity Information, dated November 14, 2001 | | |
| 28 | Correspondence from Stephen M. Andrus to Leonel Lopez dated November 28, 2001 | | |
| 29 | Correspondence by Eddie Errisuriz, Jr. To Dr. Noe Sauceda, dated October 24, 2001 | | |
| 30 | Stephen M. Andrus:  Tax Returns Years: 1998;  1999;  2000;  2001 | | |
| 31 | Valentin Paz: Tax Returns Years: 1999;  2000;  2001;  2002 | | |
| 32 | Fernando de Pena: Tax Returns Years: 1998;  1999;  2000 | | |
| 33 | Curriculum Vitae of Dr. Stephen M. Horner | | |
| 34 | Curriculum Vitae of Dr. Donald R. House | | |
| 35 | Plaintiffs' Expert Report of June 30, 2003 | | |
| 36 | Defendants Expert's Response to Plaintiffs' Expert Report of June 30, 2003 & Attachments | | |
| 37 | Plaintiffs' Expert Report of September 14, 2003 & Attachments | | |
| 38 | Hand-written and typed calculations report supplied to Plaintiffs' Expert, by Plaintiff Andrus | | |
| 39 | Correspondence relating to WMA Securities, Inc. - various dates | | |

| No. | Description | Adm | Exd |
|-----|-------------|-----|-----|
| 40 | Correspondence from Sergio Zamora to Stephen Andrus dated November 14, 2001 | | |
| 41 | Various Correspondence to Annuity Companies & Agents dated November 12, 2001 from Eddie Errisuriz, Jr. | | . |
| 42 | Correspondence regarding List of Scheduled Meetings with Annuity Vendors dated January 17, 2002 | | |
| 43 | Vendor List and Notes to and from Kenneth Lieck | | |
| 44 | Various Telephone Messages for Appointments with Annuity Vendors for Eddie Errisuriz, Jr. | | |
| 45 | Correspondence from Eddie Errisuriz, Jr. To Dr. Sauceda regarding Vendor Lists dated November 12, 2001 | | |
| 46 | Various Fax Confirmations for November 12, 2001 Letters to Annuity Companies & Agencies from Eddie Errisuriz, Jr. | | |
| 47 | Tickets to Campaign Fundraisers purchased by Plaintiffs | | |
| 48 | Vendor ID Applications for 02/21/02 and 02/22/02 for Plaintiffs Andrus and de Pena | | |
| 49 | Correspondence to Principals, Administrators & Supervisors from Lorenzo Sanchez dated September 13, 2000 | | |
| 50 | Correspondence to Lorenzo Sanchez, CFO from Stephen Andrus dated January 27, 2003 | | |
| 51 | Correspondence to Lorenzo Sanchez, CFO from Stephen Andrus dated February 5, 2003 | | |
| 52 | Correspondence to Lorenzo Sanchez, CFO from Stephen Andrus dated February 17, 2003 | | |
| 53 | Correspondence to The Teachers' Agency from Lorenzo Sanchez dated February 20, 2003 | | |
| 54 | Partnership Agreement of Andrus & Paz | | |
| 55 | Correspondence to Campus Principals/Administrators from Leonel Lopez dated August 19, 2002 regarding Authorization to Solicit TRS Certified Tax-Sheltered Annuity Products (403(b)) | | |

| No. | Description | Adm | Exd |
|---|---|---|---|
| 56 | Documents produced by Stephen Andrus regarding his commission statements from companies he represented | | |
| 57 | Deposition of Valentin Paz | | |
| 58 | Deposition of Stephen M. Andrus Volume I and II | | |
| 59 | Deposition of Eddie Errisuriz, Jr. | | |
| 60 | Deposition of Samuel Sauceda | | |
| 61 | Deposition of Johnny Pineda | | |
| 62 | Deposition of Fernando de Pena | | |
| 63 | Deposition of Joe Colunga | | |
| 64 | Deposition of Hector Gonzalez | | |
| 65 | Deposition of Berta Pena | | |
| 66 | Deposition of David Soliz | | |
| 67 | Deposition of Noe Sauceda Volume I and II | | |
| 68 | Deposition of German Castillo | | |
| 69 | Deposition of Leonel Lopez | | |
| 70 | Deposition of Kenneth Lieck | | |
| 71 | Deposition of Tom Miller | | |
| 72 | Deposition of Rachel Ayala | | |
| 73 | Deposition of Herman Otis Powers, Jr. | | |
| 74 | Deposition of Donald R. House | | |
| 75 | Deposition of Stephen M. Horner | | |
| 76 | Deposition of Sylvia Petraca | | |

# EXHIBIT D2-A



| UNITED STATES DISTRICT COURT | ☆ | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| | |
|---|---|
| STEPHEN M. ANDRUS, FERNANDO DE PENA, VALENTIN PAZ AND ANDRUS & PAZ, A PARTNERHIP | CASE NO.    B-02-143 |
| V.<br><br>BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, NOE SAUCEDA AND EDDIE ERRISURIZ, JR. | EXHIBIT LIST |
| JUDGE ANDRW S. HANNEN | CASE MANAGER: IRMA SOTO<br>COURT REPORTER: BARBARA BARNARD |
| LIST OF DEFENDANTS<br>NOE SAUCEDA AND EDDIE ERRISURIZ, JR. | PROCEEDING DATE:<br>MARCH 2, 2004 |

| No. | DESCRIPTION | ADM | EXD |
|---|---|---|---|
| 1 | Correspondence "To Whom It May Concern" from Stephen M. Andrus dated August 10, 2001 | | |
| 2 | Correspondence to Joe Colunga from Stephen M Andrus dated October 18, 2001 | | |
| 3 | Correspondence to Mr. L. Lopez from Stephen M. Andrus dated November 7, 2001 | | |
| 4 | Letter dated February 19, 2002 from Eddie Errisuriz, Jr. to Campus Principals/Administrators regarding Authorized Vendor List - 403(b) Annuities 2001/02 School Year | | |
| 5 | Correspondence by Eddie Errisuriz, Jr. to the Teacher's Agency dated February 19, 2002 regarding Authorization to Solicit Tax-Sheltered Annuity Products 403(b) | | |

02-177 ANDRUS:   Exhibit List
PAGE 1



| 6 | Questionnaire from Eddie Errisuriz, Jr. dated 11/08/01 regarding RFP | | |
|---|---|---|---|
| 7 | Affidavit of Kenneth Lieck | | |
| 8 | Request for Qualifications (RFQ's) for TPA to Administer BISD's Cafeteria Plan (Section 125) and Tax Deferred Annuities | | |
| 9 | Addendum #1 for RFQ #012-02, Request for Qualification (RFQ's) for TPA to Administer BISD's Cafeteria Plan (Section 125) and Tax Deferred Annuities | | |
| 10 | Addendum #2 for RFQ #012-02, Request for Qualification (RFQ's) for TPA to Administer BISD's Cafeteria Plan (Section 125) and Tax Deferred Annuities | | |
| 11 | Affidavit of Norma Ortiz - Brownsville I.S.D. Policies | | |
| 12 | GF [LOCAL] | | |
| 13 | GKA [LOCAL] | | |
| 14 | GKC [LOCAL] | | |
| 15 | Minutes of Insurance Committee of October 30, 2001 | | |
| 16 | November 13, 2001 Plaintiff Andrus Public Audience Address and CD | | |
| 17 | Public Audience Sign-in Sheet | | |
| 18 | Memo from Kenneth J. Lieck to All School Principals and Administrators, dated April 11, 2001 re: Authorization to Solicit Tax-Sheltered Annuity Products (403{b}) | | |
| 19 | Memo from Kenneth J. Lieck to All School Principals and Administrators, dated September 24, 2001 re: Campus Visitation | | |
| 20 | Memo from Kenneth J. Lieck to All School Principals and Administrators, dated September 11, 2000 re: Campus Visitation | | |

| 21 | Memo from Kenneth J. Lieck to All School Principals and Administrators, dated December 11, 2000 re: Authorization to Solicit Tax-Sheltered Annuity Products (403{b}) | | |
|----|---|---|---|
| 22 | Agenda for Faulk Middle School dated September 26, 2001 @ 2:00 p.m. Cluster Meeting | | |
| 23 | Agenda of November 7, 2001 | | |
| 24 | Notes by German Castillo - Undated | | |
| 25 | Letter to Berta A Pena, Area Superintendent from Dona Alcala, Principal dated November 12, 2001 | | |
| 26 | Memo to Sauceda, Board President Joe Colunga & Board Members from Otis Powers, dated October 23, 2001 | | |
| 27 | Memo from Noe Sauceda to Principals and Administrators regarding Insurance and Tax Deferred Annuity Information, dated November 14, 2001 | | |
| 28 | Correspondence from Stephen M. Andrus to Leonel Lopez dated November 28, 2001 | | |
| 29 | Correspondence by Eddie Errisuriz, Jr. To Dr. Noe Sauceda, dated October 24, 2001 | | |
| 30 | Stephen M. Andrus:  Tax Returns Years: 1998;  1999;  2000;  2001 | | |
| 31 | Valentin Paz: Tax Returns Years: 1999;  2000;  2001;  2002 | | |
| 32 | Fernando de Pena: Tax Returns Years: 1998;  1999;  2000 | | |
| 33 | Curriculum Vitae of Dr. Stephen M. Horner | | |
| 34 | Curriculum Vitae of Dr. Donald R. House | | |
| 35 | Plaintiffs' Expert Report of June 30, 2003 & | | |
| 36 | Defendants' Expert Response to Plaintiffs' Expert Report of June 30, 2003 | | |

| 37 | Plaintiffs' Expert Report of September 14, 2003 | | |
|----|-------------------------------------------------|--|--|
| 38 | Hand-written and typed calculations report supplied to Plaintiffs' Expert, by Plaintiff Andrus | | |
| 39 | Correspondence relating to WMA Securities, Inc. - various dates | | |
| 40 | Correspondence from Sergio Zamora to Stephen Andrus dated November 14, 2001 | | |
| 41 | Various Correspondence to Annuity Companies & Agents dated November 12, 2001 from Eddie Errisuriz, Jr. | | |
| 42 | Correspondence regarding List of Scheduled Meetings with Annuity Vendors dated January 17, 2002 | | |
| 43 | Vendor List and Notes to and from Kenneth Lieck | | |
| 44 | Various Telephone Messages for Appointments with Annuity Vendors for Eddie Errisuriz, Jr. | | |
| 45 | Correspondence from Eddie Errisuriz, Jr. To Dr. Sauceda regarding Vendor Lists dated November 12, 2001 | | |
| 46 | Various Fax Confirmations for November 12, 2001 Letters to Annuity Companies & Agencies from Eddie Errisuriz, Jr. | | |
| 47 | Tickets to Campaign Fundraisers purchased by Plaintiffs | | |
| 48 | Vendor ID Applications for 02/21/02 and 02/22/02 for Plaintiffs Andrus and de Pena | | |
| 49 | Correspondence to Principals, Administrators & Supervisors from Lorenzo Sanchez dated September 13, 2000 | | |
| 50 | Correspondence to Lorenzo Sanchez, CFO from Stephen Andrus dated January 27, 2003 | | |
| 51 | Correspondence to Lorenzo Sanchez, CFO from Stephen Andrus dated February 5, 2003 | | |
| 52 | Correspondence to Lorenzo Sanchez, CFO from Stephen Andrus dated February 17, 2003 | | |
| 53 | Correspondence to The Teachers' Agency from Lorenzo Sanchez dated February 20, 2003 | | |
| 54 | Partnership Agreement of Andrus & Paz | | |

02-177 ANDRUS:   Exhibit List
PAGE 4

| 55 | Correspondence to Campus Principals/Administrators from Leonel Lopez dated August 19, 2002 regarding Authorization to Solicit TRS Certified Tax-Sheltered Annuity Products (403(b)) | | |
|---|---|---|---|
| 56 | Deposition of Valentin Paz | | |
| 57 | Deposition of Stephen M. Andrus Volume I and II | | |
| 58 | Deposition of Eddie Errisuriz, Jr. | | |
| 59 | Deposition of Samuel Sauceda | | |
| 60 | Deposition of Johnny Pineda | | |
| 61 | Deposition of Fernando de Pena | | |
| 62 | Deposition of Joe Colunga | | |
| 63 | Deposition of Hector Gonzalez | | |
| 64 | Deposition of Berta Pena | | |
| 65 | Deposition of David Soliz | | |
| 66 | Deposition of Noe Sauceda Volume I and II | | |
| 67 | Deposition of German Castillo | | |
| 68 | Deposition of Leonel Lopez | | |
| 69 | Deposition of Kenneth Lieck | | |
| 70 | Deposition of Tom Miller | | |
| 71 | Deposition of Rachel Ayala | | |
| 72 | Deposition of Herman Otis Powers, Jr. | | |
| 73 | Deposition of Donald R. House | | |
| 74 | Deposition of Stephen M. Horner | | |
| 75 | Deposition of Sylvia Petraca | | |

# EXHIBIT P-B

UNITED STATES DISTRICT COURT     ✱     SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Stephen M. Andrus, Fernando de Peña, Valentin Paz and Andrus & Paz, *a partnership* Plaintiffs<br><br>*Versus*<br><br>Brownsville Independent School District, Noe Sauceda and Eddie Errisuriz, Jr. Defendants | CASE NO.   B – 02 - 143 |
| | **WITNESS LIST** |
| | Case Manager:  Irma Soto<br>Court Reporter: Barbara Barnard |
| Judge Andrew  S. Hanen | Proceeding                              Date |
| **List for Plaintiffs** | |

1.     Stephen M. Andrus, Plaintiff
       c/o J. Arnold Aguilar
       Law Office J. Arnold Aguilar
       Artemis Square, Suite H-2
       1200 Central Boulevard
       Brownsville, TX 78520
       Mr. Andrus is expected to testify to the facts giving rise to his claims.

2.     Fernando de Peña, Plaintiff
       c/o J. Arnold Aguilar
       Law Office J. Arnold Aguilar
       Artemis Square, Suite H-2
       1200 Central Boulevard
       Brownsville, TX 78520
       Mr. De Peña is expected to testify to the facts giving rise to his claims.

3.     Valentin Paz, Plaintiff
       c/o J. Arnold Aguilar
       Law Office J. Arnold Aguilar
       Artemis Square, Suite H-2
       1200 Central Boulevard
       Brownsville, TX 78520
       Mr. Paz is expected to testify to the facts giving rise to his claims.

4.      Noe Sauceda, Defendant
        c/o Eileen M. Leeds
        Willette & Guerra, L.L.P.
        International Plaza, Suite 460
        3505 Boca Chica Boulevard
        Brownsville, TX  78520
        Mr. Sauceda is expected to testify about his dealings with Plaintiffs and BISD's
        representatives.

5.      Eddie Errisuriz, Jr., Defendant
        c/o Eileen M. Leeds
        Willette & Guerra, L.L.P.
        International Plaza, Suite 460
        3505 Boca Chica Boulevard
        Brownsville, TX  78520
        Mr. Errisuriz is expected to testify about his dealings with Plaintiffs and BISD's
        representatives.

6.      Joe Colunga, III, BISD Trustee
        c/o Elizabeth G. Neally
        Roerig, Oliveira & Fisher, L.L.P.
        855 W. Price Road, Suite 9
        Brownsville, TX  78520
        Mr. Colunga is expected to testify about BISD's dealings with Plaintiffs and Defendants
        Sauceda and Errisuriz and BISD representatives, as well as about BISD's policies and
        practices.

7.      Herman Otis Powers, BISD Trustee
         c/o Elizabeth G. Neally
        Roerig, Oliveira & Fisher, L.L.P.
        855 W. Price Road, Suite 9
        Brownsville, TX  78520
        Mr. Powers is expected to testify about BISD's dealings with Plaintiffs and Defendants
        Sauceda and Errisuriz and BISD representatives, as well as about BISD's policies and
        practices.

8.      Leonel Lopez
        c/o Elizabeth G. Neally
        Roerig, Oliveira & Fisher, L.L.P.
        855 W. Price Road, Suite 9
        Brownsville, TX  78520
        Mr. Lopez is expected to testify about BISD's dealings with Plaintiffs, BISD's insurance
        practices and the insurance industry in general.

9.   Hector Gonzalez
     c/o Ruben Peña
     Law Offices of Ruben R. Peña, P.C.
     222 W. Harrison
     Harlingen, TX 78520
     Mr. Gonzalez is expected to testify about BISD's and Sauceda's dealings with Plaintiff.

10.  Kenneth Lieck
     c/o Mr. Mitchell C. Chaney
     Rodriguez, Colvin & Chaney, L.L.P.
     1201 E. Van Buren
     Brownsville, TX 78522-2155
     Mr. Lieck is expected to testify about his experiences in BISD's Insurance Department,
     facts relating to insurance and bidding at BISD, and his dealings with Plaintiffs.

11.  Marta Barrera
     1900 Price Road
     Brownsville, TX 78520
     Ms. Barrera has knowledge of facts relating to tax sheltered annuities, the TSA Program
     at BISD and the mandatory presentations at BISD.

12.  Berta Peña
     1900 Price Road
     Brownsville, TX 78520
     Ms. Peña has knowledge of facts relating to tax sheltered annuities, the TSA Program at
     BISD and the mandatory presentations at BISD.

13.  Rachel Ayala
     1900 Price Road
     Brownsville, TX 78520
     Ms. Ayala has knowledge of facts relating to tax sheltered annuities, the TSA Program at
     BISD and the mandatory presentations at BISD.

14.  German Castillo
     1900 Price Road
     Brownsville, TX 78520
     Mr. Castillo has knowledge of facts relating to tax sheltered annuities, the TSA Program
     at BISD and the mandatory presentations at BISD.

15.  Samuel Sauceda
     726 Orange Heights
     Harlingen, TX 78550
     Ms. Sauceda has knowledge of facts relating to tax sheltered annuities, the TSA Program
     at BISD and the mandatory presentations at BISD.

16.     Sylvia Petrarca
        15 Hunter Quest
        Brownsville, TX 78520
        Ms. Petrarca has knowledge of facts relating to tax sheltered annuities, the TSA Program
        at BISD and the mandatory presentations at BISD.

17.     David Soliz
        Pro Financial Group
        5113 SW Parkway,#150
        Austin, TX 78735
        Ms. Soliz has knowledge of the mandatory presentations at BISD and in other venues and
        the practices of CGU, Commercial Union and the Pro Financial Group.

18.     Tom Miller
        15405 Grass Cay Court,#701
        Corpus Christi, TX
        Ms. Miller has knowledge of the mandatory presentations at BISD and in other venues
        and the practices of CGU, Commercial Union and the Pro Financial Group.

19.     Dal Sharp
        Sharp Financial Group
        13750 San Pedro, #600
        San Antonio, TX 78232
        Ms. Sharp has knowledge of the mandatory presentations at BISD and in other venues
        and the practices of CGU, Commercial Union and the Pro Financial Group.

20.     Dr. Stephen Horner
        615 N. Upper Broadway, Suite 1600
        Corpus Christ, TX  78477
        Dr. Horner is expected to provide economic testimony relating to Plaintiffs' lost earnings
        and damages.

21.     J. Arnold Aguilar
        Law Office J. Arnold Aguilar
        Artemis Square, Suite H-2
        1200 Central Boulevard
        Brownsville, TX 78520
        Mr. Aguilar is expected to testify post-trial to the reasonableness and amount of
        attorney's fees.

# EXHIBIT D1-B

IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STEPHEN M. ANDRUS,<br>FERNANDO DE PENA,<br>VALENTIN PAZ and<br>ANDRUS & PAZ, a Partnership<br><br>v.<br><br>BROWNSVILLE INDEPENDENT<br>SCHOOL DISTRICT, NOE SAUCEDA,<br>and EDDIE ERRISURIZ, JR. | C.A. NO. B-02-143<br><br><br>WITNESS LIST |
| Judge Andrew S. Hannen | Case Manager: Irma Soto<br>Court Reporter: Barbara Barnard |
| List of Defendant Brownsville Independent<br>School District | Proceeding Date: March 2, 2004 |

1.    Stephen M. Andrus, Plaintiff
     402 West Jefferson Street
     Brownsville, Texas 78520
     Plaintiff is expected to testify regarding his claims and damages.

2.    Fernando de Pena, Plaintiff
     405 West Jefferson Street
     Brownsville, Texas 78520
     Plaintiff is expected to testify regarding his claims and damages.

3.    Valentin Paz, Plaintiff
     405 West Jefferson Street
     Brownsville, Texas 78520
     Plaintiff is expected to testify regarding his claims and damages.

4.    ANDRUS & PAZ, a Partnership, Plaintiff
     405 West Jefferson Street
     Brownsville, Texas 78520
     Plaintiff is expected to testify regarding its claims and damages.

5.     Noe Sauceda, Defendant
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the facts made the subject of Plaintiffs'
       lawsuit.

6.     Eddie Errisuriz, Defendant
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the facts made the subject of Plaintiffs'
       lawsuit.

7.     Dino Chavez
       14 Catherine Lane
       Brownsville, Texas 78520
       This witness is expected to testify in support of Plaintiffs and his involvement with
       Plaintiffs.

8.     Otis Powers, President
       Board of Trustees
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the BISD Board of Trustees' involvement in
       Plaintiffs' claims.

9.     Pat Lehmann, Vice President
       Board of Trustees
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the BISD Board of Trustees' involvement in
       Plaintiffs' claims.

10.    Joe Cadriel, Secretary
       Board of Trustees
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the BISD Board of Trustees' involvement in
       Plaintiffs' claims.

11.    Hugh Emerson, Jr.
       Assistant Secretary
       Board of Trustees
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the BISD Board of Trustees' involvement in
       Plaintiffs' claims.

12.    Marilyn del Bosque Gilbert
       Member — Board of Trustees
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the BISD Board of Trustees' involvement in
       Plaintiffs' claims.

13.    Joe Colunga
       Member — Board of Trustees
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the BISD Board of Trustees' involvement in
       Plaintiffs' claims.

14.    Randy Dunn
       Member — Board of Trustees
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the BISD Board of Trustees' involvement in
       Plaintiffs' claims.

15.    Kenneth Lieck
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding his knowledge of how tax-deferred annuity
       salespersons were authorized to enter BISD in the past and other facts made the basis of
       Plaintiffs' lawsuit.

16.    Marta Barrera
       c/o Central Middle School
       708 Palm Blvd.
       Brownsville, Texas 78520
       (956) 548-8600
       This witness is expected to testify regarding the facts made the subject of Plaintiffs'
       claims.

17.    Daniel Sanchez
       700 Paredes Line Road, Suite 209
       Brownsville, Texas 78521
       (956) 571-5117
       This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

18.    Antonia Davila
       4900 North 23rd Street
       McAllen, Texas 78504
       This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

19.    Linda Salazar
       Former B.I.S.D. Trustee
       4914 Boca Chica Blvd.
       Brownsville, Texas
       (956) 504-0003
       This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

20.   Dr. Leonel Lopez
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

21.   Berta Pena
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

22.   Hector Gonzalez
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

23.   Johnny Pineda
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

24.   Jesus Muniz
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

25.   Norma Lee Ortiz
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

26.   Rachel Ayala
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

27.   German Castillo
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      Andrus' former principal, this witness is expected to testify regarding the facts the subject
      of Plaintiffs' claims.

28.   Elizabeth Parra
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

29.   Deborah Dunn
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

30.   Sam Sauceda
      726 Orange Heights
      Harlingen, Texas 78550
      (956) 412-2675
      Plaintiffs' former agent; this witness is expected to testify regarding the facts the subject
      of Plaintiffs' claims.

31.   Sylvia Petraca
      15 Hunters Quest
      Brownsville, Texas 78520
      Plaintiffs' former agent; this witness is expected to testify regarding the facts the subject
      of Plaintiffs' claims.

32.     Arnulfo Olivarez
        521 South 77 Sunshine Strip
        Harlingen, Texas 78550
        (956) 432-0490
        This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

33.     Dayna Olivarez
        521 South 77 Sunshine Strip
        Harlingen, Texas 78550
        (956) 423-0490
        This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

34.     Joey Lopez
        2 Conquistador Drive
        Brownsville, Texas 78550
        (956) 548-0883
        This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

35.     Janet Baker
        1932 Wynnton Road
        Columbus, GA 31999-0001
        (706) 660-7297
        This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

36.     Dr. Stephen M. Horner, Ph.D
        Economist
        615 North Upper Broadway, Suite 1600
        Corpus Christi, Texas 78477
        (361) 883-1686
        Plaintiffs' Expert and has knowledge regarding Plaintiffs' damages.

37.     Dr. Donald R. House
        RRC, Inc.
        3833 Texas Ave., Ste 285
        Bryan, Texas 77802
        Defendants' Expert
        Defendants' Expert and has knowledge regarding Plaintiffs' damages.

38.     David Soliz
        Pro Financial Group
        5113 Southwest Parkway, #150
        Austin, Texas 78735
        This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

39.   Tom Miller
      15405 Grass Cay Court, No. 701
      Corpus Christi, Texas 78418
      This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

40.   Dal Sharp
      Sharp Financial Group
      13750 San Pedro, Suite 600
      San Antonio, Texas 78232
      This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

41.   Elizabeth G. Neally
      ROERIG, OLIVEIRA & FISHER, L.L.P.
      855 West Price Road, Suite 9
      Brownsville, Texas 78520
      (956) 542-5666
      Ms. Neally is to counter-testify as to Plaintiffs counsel's testimony on post-trial
      reasonableness and amount of attorney's fees

42.   Ricardo Morado
      ROERIG, OLIVEIRA & FISHER, L.L.P.
      855 West Price Road, Suite 9
      Brownsville, Texas 78520
      (956) 542-5666
      Mr. Morado is to counter-testify as to Plaintiffs counsel's testimony on post-trial
      reasonableness and amount of attorney's fees

43.   Eileen Leeds
      WILLETTE & GUERRA, L.L.P.
      International Plaza, Suite 460
      3505 Boca Chica Boulevard
      Brownsville, Texas 78521
      Telephone: (956) 541-1846
      Ms. Leeds is to counter-testify as to Plaintiffs counsel's testimony on post-trial
      reasonableness and amount of attorney's fees

# EXHIBIT D2-B



| UNITED STATES DISTRICT COURT | ☆ | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| STEPHEN M. ANDRUS, FERNANDO DE PENA, VALENTIN PAZ AND ANDRUS & PAZ, A PARTNERHIP<br><br>V.<br><br>BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, NOE SAUCEDA AND EDDIE ERRISURIZ, JR. | CASE NO.    B-02-143 |
|---|---|
| | WITNESS LIST |
| JUDGE ANDRW S. HANNEN | CASE MANAGER: IRMA SOTO<br>COURT REPORTER: BARBARA BARNARD |
| LIST OF DEFENDANTS<br>NOE SAUCEDA AND EDDIE ERRISURIZ, JR. | PROCEEDING DATE:<br>MARCH 2, 2004 |

1.    Stephen M. Andrus, Plaintiff
      402 West Jefferson Street
      Brownsville, Texas 78520
      Plaintiff is expected to testify regarding his claims and damages.

2.    Fernando de Pena, Plaintiff
      405 West Jefferson Street
      Brownsville, Texas 78520
      Plaintiff is expected to testify regarding his claims and damages.

3.    Valentin Paz, Plaintiff
      405 West Jefferson Street
      Brownsville, Texas 78520
      Plaintiff is expected to testify regarding his claims and damages.

4.    ANDRUS & PAZ, a Partnership, Plaintiff
      405 West Jefferson Street
      Brownsville, Texas 78520
      Plaintiff is expected to testify regarding its claims and damages.

5.  Noe Sauceda, Defendant
    Brownsville Independent School District
    1900 Price Road
    Brownsville, Texas 78520
    (956) 548-8000
    This witness is expected to testify regarding the facts made the subject of Plaintiffs' lawsuit.

6.  Eddie Errisuriz, Defendant
    Brownsville Independent School District
    1900 Price Road
    Brownsville, Texas 78520
    (956) 548-8000
    This witness is expected to testify regarding the facts made the subject of Plaintiffs' lawsuit

7.  Dino Chavez
    14 Catherine Lane
    Brownsville, Texas 78520
    This witness is expected to testify regarding the facts made the subject of Plaintiffs' lawsuit
    in support of Plaintiffs and his involvement with Plaintiffs.

8.  Otis Powers, President
    Board of Trustees
    Brownsville Independent School District
    1900 Price Road
    Brownsville, Texas 78520
    (956) 548-8000
    This witness is expected to testify regarding the BISD Board of Trustees involvement in
    Plaintiffs claims.

9.  Pat Lehmann, Vice President
    Board of Trustees
    Brownsville Independent School District
    1900 Price Road
    Brownsville, Texas 78520
    (956) 548-8000
    This witness is expected to testify regarding the BISD Board of Trustees involvement in
    Plaintiffs claims.

10. Joe Cadriel, Secretary
    Board of Trustees
    Brownsville Independent School District
    1900 Price Road
    Brownsville, Texas 78520
    (956) 548-8000
    This witness is expected to testify regarding the BISD Board of Trustees involvement in
    Plaintiffs claims.

11.   Hugh Emerson, Jr.
      Assistant Secretary
      Board of Trustees
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the BISD Board of Trustees involvement in
      Plaintiffs claims.

12.   Marilyn del Bosque Gilbert
      Member — Board of Trustees
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the BISD Board of Trustees involvement in
      Plaintiffs claims.

13.   Joe Colunga
      Member —  Board of Trustees
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the BISD Board of Trustees involvement in
      Plaintiffs claims.

14.   Randy Dunn
      Member — Board of Trustees
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the BISD Board of Trustees involvement in
      Plaintiffs claims.

15.   Kenneth Lieck
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding his knowledge of how tax-deferred annuity
      salespersons were authorized to enter BISD in the past and other facts made the basis of
      Plaintiffs' lawsuit.

16.    Marta Barrera
       c/o Central Middle School
       708 Palm Blvd.
       Brownsville, Texas 78520
       (956) 548-8600
       This witness is expected to testify regarding the facts made the subject of Plaintiffs' claims.

17.    Daniel Sanchez
       700 Paredes Line Road, Suite 209
       Brownsville, Texas 78521
       (956) 571-5117
       This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

18.    Antonia Davila
       4900 North 23rd Street
       McAllen, Texas 78504
       This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

19.    Linda Salazar
       Former B.I.S.D. Trustee
       4914 Boca Chica Blvd.
       Brownsville, Texas
       (956) 504-0003
       This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

20.    Dr. Leonel Lopez
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

21.    Berta Pena
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

22.    Hector Gonzalez
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

36.    Dr. Donald R. House
       RRC, Inc.
       3833 Texas Ave., Ste 285
       Bryan, Texas 77802
       Defendants' Expert
       Defendants' Expert and has knowledge regarding Plaintiffs' damages.

37.    David Soliz
       Pro Financial Group
       5113 Southwest Parkway, #150
       Austin, Texas 78735
       This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

38.    Tom Miller
       15405 Grass Cay Court, No. 701
       Corpus Christi, Texas 78418
       This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

39.    Dal Sharp
       Pro-Financial Group
       13750 San Pedro, Suite 600
       San Antonio, Texas 78232
       This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

40.    Kelly Smith
       (Address unknown)
       This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

41.    Richard H. Elizondo
       Pro Financial Group
       Rt. 10, Box 243
       Harlingen, Texas 78550
       (956) 423-7385
       This witness is expected to testify regarding the facts the subject of Plaintiffs' claims.

# EXHIBIT P-C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

STEPHEN M. ANDRUS, FERNANDO     §
DE PEÑA, VALENTIN PAZ and     §
ANDRUS & PAZ, *a partnership*     §
    §     **CIVIL ACTION NO.**
VS.     §
    §     **B - 02 - 143**
BROWNSVILLE INDEPENDENT     §
SCHOOL DISTRICT, NOE SAUCEDA     §
and EDDIE ERRISURIZ, JR.     §

---

## EXHIBIT P - C
### PLAINTIFFS' REQUESTED JURY VOIR DIRE QUESTIONS

---

TO THE HONORABLE U.S. DISTRICT COURT:

COME NOW **STEPHEN M. ANDRUS, FERNANDO DE PENA, VALENTIN PAZA** and **ANDRUS & PAZ,** *a partnership*, Plaintiffs herein and respectfully requests that the Court submit the following questions to the jury panel during the question and answer portion of jury empanelment.   In that regard, Plaintiffs would respectfully requests that the Court interrogate prospect jurors on the following questions during the voir dire portion of the trial:

(1)    Are any of you employed by, or are you related to or close friends with someone employed by, Brownsville Independent School District?
       - If so, please explain.

(2)    Do any of you have any opinions about BISD?
       - If so, please explain what they are.



(3)     Have any of you ever had any difficulties with BISD?
         - If so, please explain.

(4)     Have any of you ever worked with any BISD Board Trustee, including on any of
         their election campaigns?
         - If so, please explain.

(5)     Have any of you ever had any difficulties with any BISD Board Trustee?
         - If so, please explain.

(6)     Do any of you know, or are you familiar with, Defendant Noe Sauceda?
         - If so, please explain.

(7)     Have any of you ever had any dealings with Noe Sauceda?
         -   If so, please describe those dealings.
         -   As a result of those dealings, what sort of impression were you left with?

(8)     Do any of you know, or are you familiar with, Defendant Eddie Errisuriz, Jr.?
         -   If so, please explain.

(9)     Have any of you ever had any dealings with Eddie Errisuriz, Jr.?
         -   If so, please describe those dealings.
         -   As a result of those dealings, what sort of impression were you left with?

(10)    Do any of you know, or are you familiar with, Defendant BISD's attorneys Elizabeth
         G. Neally or Ricardo Morado? Have any of you been represented by either one of
         them or anyone related to their law firm, Roerig, Oliveira & Fisher, or has anyone
         you know or are familiar with been represented by Ms. Neally, Mr. Morado or their
         firm? If so, please explain.

(11)    Do any of you know, or are you familiar with, Defendants Noe Sauceda and Eddie
         Errisuriz, Jr.'s attorneys Eileen M. Leeds or Charles V. Willette, Jr.? Have any of
         you been represented by either one of them or anyone related to their law firm,
         Willette & Guerra, L.L.P., or has anyone you know or are familiar with been
         represented by Ms. Leeds, Mr. Willette or their firm? If so, please explain.

(12)    Are any of you familiar with Stephen M. Andrus?
         -   If so, how do you know him?
         -   Do you have any opinions of Mr. Andrus?

(13)    Are any of you familiar with Fernando De Peña?
         -   If so, how do you know him?
         -   Do you have any opinions of Mr. De Peña?

(14) Are any of you familiar with Valentin Paz?
- If so, how do you know him?
- Do you have any opinions of Mr. Paz?

(15) Have any of you ever had any negative experience with any insurance agent?
- If so, please explain.

(16) Do any of you know, or are you familiar with, Plaintiffs' attorney J. Arnold Aguilar? Have any of you , or anyone with whom you are familiar, been involved in a case against someone represented by Mr. Aguilar or his law firm? If so, please explain.

(17) Do any of you know, or are you familiar with David Soliz or any representative of Commercial Union, CGU or Pro Financial Group?
- If so, please explain.

(18) Are any of you familiar with what a Tax Sheltered Annuity is?

(19) Have any of you ever purchased any tax sheltered annuity insurance products?

(20) Do any of you have any opinions about tax sheltered annuities?
- Any opinions about tax sheltered annuity insurance salesmen?
- Any opinions about insurance salesmen in general?

(21) Have any of you ever been a Plaintiff or a Defendant in a lawsuit?
- If so, please explain what type of lawsuit it was, whether you were Plaintiff or Defendant, and whether it has been resolved.

(22) Have any of you, or anyone with whom you are familiar, had a lawsuit against the Defendants, Brownsville Independent School District, Noe Sauceda or Eddie Errisuriz, Jr.?

(23) There has been a lot of discussion lately about *tort reform* (limiting the amount of damages that can be awarded in lawsuits). Does anyone feel that people who are injured personally or in their business either should not be allowed to file lawsuits or should be limited as to how much they can recover for those lawsuits?
- If so, please explain.

(24) Is anyone here a member of an organization such as CALA that seeks to limit the amount a plaintiff can recover in a lawsuit?

(25) The Plaintiffs are seeking damages for First and Fourteenth Amendment Constitutional violations. Will any of you have any difficulty in awarding damages for such violations, even if there were no physical injuries?

(26)    Would any of you have any hesitation in returning a verdict against BISD?

(27)    The Plaintiffs are seeking damages for lost income that resulted from their being excluded from making sales at BISD while only one agent, David Soliz, was allowed to make presentations to BISD employees.  We intend to show that the income the Plaintiffs would have earned is considerable, and that therefore the amount of income they lost is also considerable.  If the evidence establishes that the Plaintiffs suffered a considerable amount of lost income, would any of you have any hesitation in returning a significant jury verdict?

(28)    If the evidence justifies it, will any of you have any hesitation in returning a significant jury verdict against BISD, Sauceda or Errisuriz?

(29)    Are any of you familiar with the facts that have been alleged in this case?

(30)    Do any of you know, or are familiar with any of the witnesses listed by Plaintiffs or any of the Defendants?

(31)    This case is presently expected to last  about 6 working days to try, and it should begin on March _____, 2004.  Do any of you have a previously scheduled conflict that you absolutely could not change or reset that would prevent you from being able to be a juror during this time period?
        -    If so, please notify the Court so that Court can ask you some additional questions outside the presence of the other jurors.

# EXHIBIT D1-C

# EXHIBIT D2-C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, FERNANDO | § | |
| DE PEÑA, VALENTIN PAZ AND | § | |
| ANDRUS & PAZ, A PARTNERSHIP | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.  B-02-143 |
| | § | JURY REQUESTED |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA | § | |
| AND EDDIE ERRISURIZ, JR. | § | |

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS AND QUESTIONS

Now Comes Defendants Noe Sauceda and Eddie Errisuriz, Jr., and request that the Court

submit to the jury the instructions attached hereto.

**GENERAL INSTRUCTIONS:**

**Members of the Jury:**

Now that you have heard the evidence, my duty is to give you the instructions of the Court

on the law you should apply to this case.  Your duty as jurors is to follow the law as stated in these

instructions and to apply these rules of law to the facts you find from the evidence in the case.  You

are not to single out on instruction alone as stating the law; rather, you must consider the instructions

as a whole.

Regardless of any opinion you may have as to what the law should be, you would violate your

sworn duty if you based a verdict upon any view of the law other than that given in the instructions

stated by the Court.  Similarly, you would violate your sworn duty as judges of the facts if you based

your verdict upon anything but the evidence in this case. You, the Jury, are the sole and exclusive judges of the facts.

You are to perform this duty without bias or prejudice as to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. Both the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences.

You should consider and decide this case as an action between persons of equal standing in the community, of equal worth, and holding the same or similar situations in life.

You must consider only evidence properly admitted in the case. Unless you are otherwise instructed, the evidence in the case always consists of the sworn testimony of the witnesses, regardless of who may have called them; any deposition testimony of witnesses that was admitted into evidence; all exhibits received in evidence, regardless of who may have produced them; and all facts that have been admitted or stipulated. You must entirely disregard any evidence that a party objected to if I sustained that objection and any evidence that was ordered stricken by the Court.

Statements and arguments of counsel are not evidence; rather they are intended only to assist you in understanding the evidence and the contentions of the parties. During the course of the trial, it often becomes the duty of counsel to make objections and for the Court to rule on them in accordance with the law. You should not consider or be influenced by the fact that such objections have been made, whether they are sustained or overruled.

Similarly, you should not allow your attitude toward either party or the evidence to be affected by how you regard the general conduct or attitude of the attorneys. Each attorney has a solemn duty to defend the client vigorously and with dedication and thus may not please everyone

02-177 ANDRUS :  JI
PAGE 2

all the time. Your decision on the facts of this case should therefore not be affected by your opinion of the attorneys.

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

You, as jurors, are the sole judges of the credibility of the witnesses and weight their testimony deserves. You should carefully scrutinize all the testimony given and, in weighing the testimony of each witness, consider the relationship between the witness and the parties in the case, his or her interest in the outcome of the case, the witness's manner of testifying, candor, fairness, and intelligence, and the extent to which the witness's testimony has been confirmed or contradicted, if at all, by other credible evidence.

You will rely upon your own good judgment, your own common sense, and the experience you have gained as you have gone about your everyday affairs in weighing the evidence and determining the weight to be given to it. You are permitted to accept as true and worthy of belief everything that a particular witness may have said, or you are permitted to reject everything that a particular witness may have said. Of course, you may also accept as true part of what a witness tells you and reject other portions of that witness' testimony.

## WITNESSES

A witness may be discredited or "impeached" by contradictory evidence or by evidence that the witness has at other times made statements that are inconsistent with the witness' present testimony. The earlier contradictory statements are admissible only to impeach the credibility of the witness and not to conclusively establish the truth of the earlier statements. If you believe any witness has been impeached and thus discredited, you are free to give the testimony of that witness such credibility, if any, as you may think it deserves.

02-177 ANDRUS :  JI
PAGE 4



## EVIDENCE

You may, in your determination of the facts of this case, consider both direct and circumstantial evidence. Direct evidence is the testimony of a witness who actually saw an event occur. Circumstantial evidence is proof of a chain of circumstances pointing to the occurrence of a fact or the existence of a fact. Direct evidence includes a witness' testimony as to facts within that person's own personal knowledge, matters that the witness saw and heard, and matters that came to the witness out of that person's own senses or observations. Circumstantial evidence, rather than or in addition to direct evidence, can be used to establish a fact if that fact may be fairly and reasonably inferred from all other facts and circumstances proved in the case. In order to establish a fact or conclusion by circumstantial evidence, the facts that were directly proven in the case must be such as to make the fact or conclusion sought to be shown by circumstantial evidence more reasonably probable to be true than alternative facts or conclusions. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with a preponderance of all the evidence in the case, both direct and circumstantial.

## PREPONDERANCE OF THE EVIDENCE

In this case, the Plaintiff must prove every essential part of his claim by a preponderance of the evidence. A preponderance of the evidence simply means evidence that persuades you that the Plaintiff's claim is more likely true than not true. In deciding whether any fact has been proven by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses regardless of who may have called them and all exhibits received in evidence regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiff's claims, by a preponderance of the evidence, you should find for the Defendant as to that claim.

Modern Federal Jury Instructions 73-2 (5th Pattern Civil Jury Inst.2.20)

02-177 ANDRUS :  JI
PAGE 6

## DUE PROCESS RIGHT UNDER THE FOURTEENTH AMENDMENT

The Fourteenth Amendment of the United States Constitution provides that an individual will not be deprived of a property or liberty interest without due process of law. Plaintiffs contend that defendants violated their Due Process rights under the Fourteenth Amendment. The plaintiffs claim that they have a property interest in entering onto BISD campuses for the purpose of selling their products. Plaintiffs claim that when defendants temporarily denied them entry onto BISD campuses without giving them a hearing, the defendants deprived them of a property right without due process under the Fourteenth Amendment of the Constitution.

In order to proceed on a claim for violation of due process of the Fourteenth Amendment of the United States Constitution, Plaintiffs must first show they are entitled to a property right. The existence of a property right is a matter of law for the court to decide. The adequacy of the procedures afforded to a Plaintiff are also a matter of law. However, whether those procedures were followed correctly is a matter for the jury.



## EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT

The Fourteenth Amendment of the United States Constitution provides that an individual will not be deprived of equal protection of the law. Plaintiffs contend that their Equal Protection rights under the Fourteenth Amendment were violated. The plaintiffs claim that when the defendants temporarily banned all annuity salesmen from entering onto BISD campuses to sell their products, they were denied equal protection.

In order to prove an Equal Protection claim the plaintiff must show three elements: a classification, the purpose of the classification; and the fit between the classification and purpose. The equal protection clause requires that all persons similarly situated be treated alike. The equal protection clause is applicable only if there is dissimilar treatment among similar people. In order to make out an equal protection claim, the plaintiffs must prove the existence of purposeful discrimination motivating the alleged state action.

In other words, a violation of the Equal Protection Clause occurs only when the governmental action, in this case the temporary ban on visiting school teachers' lounges, classifies the tax-deferred annuity salespersons into two groups, and that this classification was done with the intent to discriminate between the groups. In order to prevail, the Plaintiff must show that the classifications totally unrelated to the BISD's goal, and there are no grounds on which Dr. Sauceda or Mr. Errisuriz can conceivably justify their actions.

If the regulation, law or statute does not classify the similarly situated people into two groups, then you must find for the Defendant. If the law classifies, but was not done with the intent to discriminate, you must find for the Defendant. If the classification are related the pursuit of the Sauceda and Errisuriz's goals, and if there are conceivable grounds to justify the decision, you must find for Defendants.



## EXERCISE OF FIRST AMENDMENT RIGHTS

The First Amendment of the United States Constitution provides that an individual's freedom of speech shall not be abridged. Plaintiffs claim that the Defendants retaliated against them for exercising their rights to free speech. The plaintiffs claim that when the defendants temporarily banned the tax-deferred annuity salespersons from entering onto BISD campuses to sell their products, it was in retaliation for Mr. Andrus' exercise of the right of free speech.

In determining whether a violation of the First Amendment has occurred you must balance the interests of the school district as to its duties and responsibilities as a school district with the plaintiffs' right to enter onto BISD campuses to sell their products. Thus, the plaintiffs must prove by a preponderance of the evidence each of the following:

1.  That the letter of August 10, 2001 was protected speech, in other words it was public speech concerned with issues of public concern.

2.  That Andrus' letter was a substantial or motivating factor in the decision to ban tax-deferred annuity salespersons from entry onto BISD campuses; and

3.  That the defendants acts were the proximate or legal cause of the plaintiffs damages.

In order to find for the Plaintiffs, you must find they acted intentionally or with deliberate indifference. Plaintiffs must prove deliberate indifference to plaintiffs' rights by showing that the Sauceda and Errisuriz, Jr. deliberately or consciously chose deprive them of access to the BISD teachers' lounges so they could their products, despite knowing such an act would be a violation of their constitutional rights.

To prove that their speech activities were a substantial or motivating factor in the defendants'

02-177 ANDRUS :   JI
PAGE 9

decision, the plaintiffs do not have to prove that those speech activities were the only reason the defendants made the decision. The plaintiffs need only prove that the speech activities were a substantial consideration that made a difference in or influenced the defendants' decision.

The plaintiffs must also prove by a preponderance of the evidence that the act or failure to act by the defendants was a cause-in-fact of the damage plaintiffs suffered. An act or a failure to act is a cause-in-fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. The plaintiffs must also prove by a preponderance of the evidence that the act or failure to act by the defendants was a proximate cause of the damage plaintiffs suffered. An act or omission is a proximate cause of the plaintiffs' injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.[1]

If you find that the plaintiffs have established each element of their claims, you must then decide whether the defendant(s) have shown by a preponderance of the evidence that they would have made the same decision in temporarily banning all tax-deferred salespersons from entering onto teachers' lounges to sell their products, even without Andrus' August 10, 2001. If you find Sauceda and Errisuriz, Jr. would have decided to temporarily ban all tax-deferred annuity salespersons from entering onto BISD campuses despite Andrus' letter, then your verdict should be for the defendants.

If you find that the plaintiffs have proven their claims, you must then consider the Sauceda's

---

[1]See Anderson v. Nosser, 456 F.2d 835 (5th Cir.1972), *affirmed sub nom.* Nosser v. Bradley, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972); Reimer v. Smith, 663 F.2d 1316 (5th Cir.1981). See also S. Nahmod, Civil Rights and Civil Liberties Litigation—The Law of Section 1983, sections 3.17 and 3.18 (second edition 1986).

and Errisuriz' individual defenses. If you find that their conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident, they are not liable.

If after considering all of the surrounding circumstances of the case, you find that the defendants had a reasonable belief that their actions did not violate the constitutional rights of the plaintiffs, then you cannot find them liable even if the plaintiffs' rights were in fact violated as a result of the defendants' objectively reasonable action.

If you find for the plaintiffs and against the defendants on their defense, you must then decide the issue of the plaintiffs' damages.

## DAMAGES

I will now instruct you on the law governing damages. However, the fact that I instruct you on the issue of damages should not be interpreted in any way as an indication that I believe the Plaintiff should, or should not, prevail in this case.

## COMPENSATORY DAMAGES

If you find that the Defendant is liable to the Plaintiff, then you must determine an amount that is fair compensation for all of the Plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the Plaintiff whole--that is, to compensate the Plaintiff for the damage that the Plaintiff has suffered, if any, from the injuries he sustained as a result of the Defendant's acts or omissions.

You may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by the Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the Plaintiff's damages, no more and no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a

02-177 ANDRUS :  JI
PAGE 11

defendant.  You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiff has actually suffered.

If you decide to award compensatory damages, you should be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require that the Plaintiff prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You are specifically instructed that a person's constitutional rights have no intrinsic value. Thus, a plaintiff must prove more than that his constitutional rights were violated to prove that he or she suffered damages.

You will now return to decide the case.  In order to prevail, the Plaintiff must sustain his burden of proof as I have explained to you with respect to each element of their complaint.  If you find that the Plaintiff succeeded, you should return a verdict in his favor on that claim.  If you find that the Plaintiff failed to sustain his burden on any element of their claim or if you find that Defendants are entitled to qualified /sovereign immunity, you should return a verdict against the Plaintiff.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for himself, but you should do so only after a consideration of the case for himself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a

02-177 ANDRUS :  JI
PAGE 12

verdict or solely because of the opinion of other jurors. Discuss and weigh you respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his conscientious beliefs solely for the purpose of returning a unanimous verdict.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, FERNANDO | § | |
| DE PEÑA, VALENTIN PAZ AND | § | |
| ANDRUS & PAZ, A PARTNERSHIP | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.  B-02-143 |
| | § | JURY REQUESTED |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA | § | |
| AND EDDIE ERRISURIZ, JR. | § | |

## DEFENDANTS' PROPOSED JURY ISSUES

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Now Comes, Defendants Noe Sauceda and Eddie Errisuriz, Jr.herein, and requests that the Court submit to the jury the issues attached hereto.

**Question No. 1**

Was Stephen M. Andrus' letter of August 10, 2001 a substantial or motivating factor in Noe Sauceda and Eddie Errisuriz, Jr.'s decision to  impose the temporary ban depriving all annuity salespersons from entering BISD campuses to sell their products which was the proximate cause of damages to Plaintiffs?

Answer_____

02-177 ANDRUS :  JI
PAGE 14

**Question No. 2**

Would Noe Sauceda and Eddie Errisuriz, Jr. have imposed the temporary ban depriving all annuity salespersons from entering BISD campuses to sell their products, even in the absence of Mr. Andrus' letter of August 10, 2001?   If the answer is yes, do not answer question 7.


Answer_____


**Question No. 3**

Do you find by a preponderance of the evidence that Defendants Sauceda and Errisuriz deprived Plaintiffs of a property interest in entering onto BISD campuses to sit in teachers' lounges to sell their products without giving them notice and an opportunity to be heard?


Answer_____


**Question No. 4**

Do you find by a preponderance of the evidence that the decision to temporarily ban all tax-deferred annuity salespersons was intentionally done for the purpose of creating a class which would discriminate against Plaintiffs, and which was not related in any manner to any of Sauceda's or Errisuriz's goals, and for which there is no conceivable reason for having made the decision?


Answer_____


02-177 ANDRUS :  JI
PAGE 15

**Question No. 5**

Were Plaintiffs a member of a class, and as a member of this class were treated differently than others in this same class by Noe Sauceda and Eddie Errisuriz, Jr. in being denied access onto BISD property to go into the teachers' lounges to sit in order to sell their products?

Answer_____

## WRONGFUL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIP

**Question No. 6**

Did Noe Sauceda and Eddie Errisuriz, Jr. interfere with Plaintiffs' prospective business relationship?

Wrongful interference occurs if–

a.    There was a reasonable probability that Plaintiffs would have entered into a business relationship with a third person;

b.    Noe Sauceda and Eddie Errisuriz, Jr. intentionally prevented the contractual relations from occurring with the purpose of harming Plaintiffs;

c.    Noe Sauceda and Eddie Errisuriz, Jr.'s conduct was independently tortious or unlawful.

Answer_____

Source of Instruction: *Wal-Mart Stores v. Sturges*, 52 S.W.3d 711, 726 (Tex.2001).

02-177 ANDRUS :  JI
PAGE 17

## FRAUD

**Question No. 7**

Did Noe Sauceda and Eddie Errisuruz, Jr. commit fraud against Plaintiffs?

Fraud occurs when

      d.      A party makes a material misrepresentation,

      e.      The misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

      f.      The misrepresentation is made with the intention that it should be acted on by the other party, and

      g.      The other party relies on the misrepresentation and thereby suffers injury.

      Misrepresentation is a false statement of fact.

Answer_____

Source of Instruction:  Texas Pattern Jury Charge 105.1, 105.2, 105.3.

02-177 ANDRUS :  JI
PAGE 18

## <u>CONSPIRACY</u>

**Question No. 8**

      Did Noe Sauceda and Eddie Errisuriz, Jr. agree to and intend to commit fraud against Plaintiffs,

and did Noe Sauceda and Eddie Errisuriz, Jr. perform some act and acts to further the conspiracy?


Answer_____


**Question No. 9**


      What sum of money, if any, would reasonably and fairly compensate Plaintiffs for:

    (a)    lost wages and income            $ _____

    (c)    mental anguish, pain, and suffering    $_____

## MITIGATION OF DAMAGES

If you find that Plaintiff was injured as a natural consequence of conduct by the Defendants, you must determine whether Plaintiff would thereafter have done something to lessen the harm that he suffered. If Defendants convince you that the Plaintiff could have reduced the harm done to him but failed to do so, the Plaintiff is entitled only to damages sufficient to compensate her for the injury that he would have suffered if he had taken appropriate action to reduce the harm done to him.

02-177 ANDRUS :  JI
PAGE 20

## RULE AGAINST DOUBLE RECOVERY

You should not award damages more than once for the same injury. For example, if a plaintiff were to prevail on two claims and establish damages for the same injury under both claims, you could not award her damages on both of those claims. The plaintiff is entitled to be made whole, but is not entitled to recover more than she lost. Of course, if different injuries are attributed to the separate claims, then you must compensate her fully for all of her injuries.

## BURDEN OF PROOF

Plaintiff must prove by a preponderance of the evidence that the act or failure to act by Defendants was a cause in fact of the damage Plaintiff suffered.  An act or a failure to act is a cause in fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages.  The Plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the Defendant was a proximate cause of the damage Plaintiff suffered.  An act or omission is a proximate cause of the Plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.

After you have retired to consider your verdict, no one has any authority to communicate with you except the bailiff of the Court. You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all of the questions which you are required to answer under the instructions of the judge, and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will advise the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

 

 

_____

JUDGE PRESIDING

## CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicted, and herewith return same into court as our verdict.

(To be signed by the presiding juror if unanimous.)

_____

PRESIDING JUROR
(To be signed by those rendering the verdict if not unanimous.)

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Ste. 460
3505 Boca Chica Blvd.
Brownsville, Texas 78521
Telephone: (956) 541-1846
Facsimile: (956) 541-1893

By: _Eileen Leeds w/p bcc_
Eileen M. Leeds
State Bar No. 00791093
USDC No. 16799

**Attorneys for Defendant**

# EXHIBIT P-D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, FERNANDO | § | |
| DE PEÑA, VALENTIN PAZ and | § | |
| ANDRUS & PAZ, *a partnership* | § | |
| | § | **CIVIL ACTION NO.** |
| VS. | § | |
| | § | **B - 02 - 143** |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA | § | |
| and EDDIE ERRISURIZ, JR. | § | |

---

## EXHIBIT P - D
### PLAINTIFFS' PROPOSED JURY CHARGE, INSTRUCTIONS
### AND SPECIAL INTERROGATORIES

---

### GENERAL INSTRUCTIONS FOR CHARGE

**MEMBERS OF THE JURY:**

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

v:\fp\pretrial\263-02 Jury Charge, Instructions & Interrogatories                    PAGE 1

Answer each question from the facts as you find them. Your answers and your verdict must be unanimous.

The Plaintiffs, STEPHEN M. ANDRUS, FERNANDO DE PENA, VALENTIN PAZ and ANDRUS & PAZ, *a partnership*, have the burden of proving their case by a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. This means the Plaintiffs, STEPHEN M. ANDRUS, FERNANDO DE PENA, VALENTIN PAZ and ANDRUS & PAZ, *a partnership*, have the burden of proving by the greater weight of evidence their causes of action. In the event the Plaintiffs prove their case to you, the Defendants may have to prove by a preponderance of the evidence certain affirmative defenses. However, the burden of proving his case by a preponderance of the evidence will rest on the Plaintiffs at all times as to their claims. In determining whether any fact has been proven by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted.

In determining the weight to give to the testimony of a witness, you may consider whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness

gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The fact that a witness has previously been convicted of a felony, or a crime involving dishonesty or false statement, is also a factor you may consider in weighing the credibility of that witness.  Such a conviction does not necessarily destroy the witness' credibility, but it is one of the circumstances you may take into account in determining the weight to give to his testimony.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence - such as testimony of an eyewitness.  The other is indirect or circumstantial evidence - the proof of a chain of circumstances that indicates the

existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field - he is called an expert witness - is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as a expert witness and has income from such testimony which represents a significant portion of his income.

Certain testimony has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

Any notes that you have taken during this trial are only aids to memory. If your memory

should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

---

Adopted from U.S. 5th Circuit District Judges Association, Pattern Instructions, Inst. Nos. 3.1 and 2.23.

## STIPULATIONS OF FACT

The parties have agreed, or stipulated, that the following facts are true.  This means that both sides agree that this is fact.  You must therefore treat these facts as having been proved.

(1)  Plaintiffs, Stephen M. Andrus and Fernando de Pena were independent agents with various insurance annuity companies.  Neither of these men worked for BISD at the time of the incidents the subject of this lawsuit.

(2)  Plaintiff Valentin Paz was a Brownsville Independent School District teacher employed under a term contract and also an independent agent with various insurance annuity companies during the time period the subject of this lawsuit.

(3)  None of the four Plaintiffs had any type of contract with Brownsville Independent School District to sell insurance to Brownsville Independent School District employees.

(4)  On November 14, 2001, Defendant Sauceda notified all principals and administrators that "[i]nsurance and/or tax deferred annuity information made available to [them] by vendors, etc., is not to be disseminated to anyone without your securing prior approval from either Mr. Eddie Errisuriz, Assistant Superintendent for Human Resources or [himself]."

(5)  Plaintiffs were aware prior to October 18, 2001 that annuity vendors had been suspended from visiting school district campuses.

v:\fp\pretrial\263-02 Jury Charge, Instructions & Interrogatories          PAGE 6



(6)     In February 2002 Plaintiffs received correspondence dated February 19, 2002 from Eddie Errisuriz, Jr. advising them that agents with the Teacher's Agency were once again permitted to request access to Brownsville Independent School District employees through campus administration.

(7)     On November 13, 2003, Stephen Andrus spoke to a public audience at a regularly scheduled Brownsville Independent School District Board of Trustees meeting.

(8)     Stephen Andrus wrote three letters that he claims were sent to persons at Brownsville Independent School District concerning his claims involved in this lawsuit. The first was dated August 10, 2001 and sent to unspecified persons at BISD and addressed "To All it may Concern". The second was dated October 18, 2001 and sent to Mr. Joe Colunga. The third was dated November 7, 2001 and sent to Dr. Leonel Lopez.

(9)     The correspondence dated August 10, 2001, addressed the Request for Qualifications that had been generated in August. The Request for Qualifications for TPA's for §125 and §403(b) products was revised two additional times finally making the Request for a TPA for §403b products optional. The language was revised on August 15, 2001 to state "Request for Qualifications (RFQ's) for TPA to administer Brownsville Independent School District's Cafeteria Plan (Section 125) and/or Tax Deferred Annuities and all other alternatives will be considered."

(10)    Neither Mr. de Pena nor Mr. Paz wrote anyone affiliated with Brownsville

Independent School District or gave any public speeches relating to the issues raised in this lawsuit

(11)  Dr. Sauceda and Mr. Errisuriz began working at BISD in the summer of 2001.

(12)  Dr. Sauceda was the Superintendent of the BISD at all times relevant to this lawsuit.

(13)  After the ban was lifted, authorization letters, as they had in the past, merely grant the salesperson access to request visitation rights from the campus principal. They do not insure access to the lounges.

## PARTIES' CLAIMS

Plaintiffs are suing the BISD, Dr. Noe Sauceda and Eddie Errisuriz under 42 U.S.C. §1983 claiming violations of their First and Fourteenth Amendment rights. Plaintiffs claim that their rights to free speech and association were violated when Defendants responded to a letter written by Mr. Andrus dated August 10, 2001, by barring all tax deferred annuity salespersons from entering onto BISD campuses. Plaintiffs further claim that their rights to due process, liberty, property and equal protection of the laws were violated when Defendants allowed only a single agent named David Soliz to make presentations to BISD employees, while not making similar allowances for Plaintiffs and not allowing Plaintiffs to make presentations such as those being made by Mr. Soliz. Plaintiffs also complain that Defendants Sauceda and Errisurriz tortiously interfered with their prospective business relationships and that their actions constituted fraud and malice. Defendants deny that Mr. Andrus engaged in protected speech by his letter of August 10, 2001. Defendants deny that the ban was issued in retaliation of said letter. Defendants deny that Plaintiffs made a request to make the same type of presentations to BISD employees, as those made by Mr. Soliz. Defendants also deny Plaintiffs have a property interest in entering onto BISD property to sell insurance products, and that, therefore, Plaintiffs were not entitled to any due process.



## PLAINTIFFS' REQUESTED SPECIAL INSTRUCTION NO. 1

Plaintiffs in this action claim that Defendants Brownsville Independent School District (BISD), Noe Sauceda and Eddie Errisuriz, Jr. violated Plaintiffs Stephen M. Andrus, Fernando De Peña, Valentin Paz and Andrus & Paz, *a partnership's*, constitutional rights by retaliating against them after Mr. Andrus spoke out on matters of public interest. Plaintiffs also claim that the Defendants violated their rights to due process, property, liberty and equal protection of the laws when they allowed only a single agent, David Soliz, to make mandatory presentations to BISD employees, while prohibiting Plaintiffs from making similar presentations. As a result of Defendants' actions, the Plaintiffs claim that they suffered injuries for which they seek damages.

The Plaintiffs claim that Defendants were acting under color of authority of the State of Texas and the Brownsville Independent School District when they intentionally violated Plaintiffs' constitutional rights. The Plaintiffs claim that the Defendants retaliated against Plaintiffs by summarily withdrawing their authorizations to solicit tax sheltered annuity sales because Plaintiff Andrus complained of their apparently illegal and financially unreasonable proposal to retain a Third Party Administrator for the Tax Sheltered Annuity Program, a violation of Plaintiffs' exercise of their rights of free speech and association, and the Defendants thereby deprived them of their rights under the First Amendment of the Constitution. The First Amendment of the Constitution of the United States gives every citizen the right to freedom of speech, which includes the right to speak out on matters of public concern without retaliation.

Plaintiffs also complain that Defendants deprived them of their rights to due process, property, liberty and equal protection of the laws when they summarily withdrew Plaintiffs' authorizations to solicit their products, in violation of BISD's Vendor Rules and Regulations and certain IRS Guidelines, and when they thereafter allowed Mr. Soliz to make mandatory presentations to BISD employees, but did not allow similar presentations by Plaintiffs, a violation of their rights under the Fourteenth Amendment to the U.S. Constitution.

As a separate matter, Plaintiffs complain that Defendants Sauceda and Errisuriz tortiously interfered with their prospective business relations with BISD employees and annuity companies by interfering with their ability to meet with and subsequently enter into contracts with BISD employees and those companies. Plaintiffs claim that interference was in such a manner that was not allowed by BISD rules and regulations and was in violation of IRS Guidelines. Plaintiffs further claim that those actions constituted a fraud on the Plaintiffs.

A person may sue for an award of money damages against anyone who, "under color" of any State law or custom, intentionally violate the Plaintiffs' rights under the Constitution of the United States.

Thus, the Plaintiffs must prove by a preponderance of the evidence each of the following:

(1)     That the actions of Defendants were "under color" of authority of the Brownsville Independent School District;

(2)     That the Plaintiffs' speech activities were Constitutionally "protected" under the First Amendment;

(3)     That the Plaintiffs' exercise of protected First Amendment rights was a substantial or motivating factor in the Defendants' decision to terminate him from his position as Third Party Administrator for the BISD Cafeteria Plan, reject his proposal for the renewal of his TPA contract, prohibit him from contacting school personnel during school business hours, prohibit him being present on school



district property, and contact his supervisors at AFLAC, both in writing and verbally, to prevent him from continuing to work at BISD;

(4)    That the Defendants' acts were the proximate or legal cause of the Plaintiff's damages.

State or local officials act "under color" of the authority of the State when they act within the limits of their lawful authority. However, they also act "under color" of the authority of the State when they act without lawful authority or beyond the bounds of their lawful authority if their acts are done while the officials are purporting or pretending to act in the performance of their official duties. An official acts "under color" of the state authority if he abuses or misuses a power that he possesses only because he is an official.

The plaintiff claims that the Brownsville Independent School District is liable for the alleged constitutional deprivations. A school district is liable for the deprivation of a constitutional right if the deprivation was pursuant to governmental custom, policy, ordinance, regulation or decision. Therefore, if you find that the plaintiff was injured as the proximate or legal result of the Brownsville Independent School District's policy, custom, ordinance, regulation or decision, whether made by its lawmakers or by those officials whose edicts or acts may fairly be said to represent official policy, the district itself will be responsible.

The Superinendent, Noe Sauceda, is an official whose acts constitute final official policy of the Brownsville Independent School District. Therefore, if you find that the acts of the Superintendent deprived the plaintiff of constitutional rights, the Brownsville Independent School District is liable for such deprivations.

To prove that his speech activities were a substantial or motivating factor in the Defendants' decision, the Plaintiff does not have to prove that those speech activities were the

only reason the Defendants made the decision.  The Plaintiff need only prove that the speech activities were a substantial consideration that made a difference in or influenced the Defendants' decision.

The Plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the Defendants were a cause-in-fact of the damage Plaintiff suffered.  An act or a failure to act is a cause-in-fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. The Plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the Defendants was a proximate cause of the damage Plaintiff suffered.  An act or omission is a proximate cause of the plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.[1]

If you find that the Plaintiff has established each element of his claim, you must then decide whether the Defendants have shown by a preponderance of the evidence that they would have taken the same actions for other reasons, even if Plaintiff had not exercised his protected speech activity.  If you find that the Defendants would have taken the same actions for reasons apart from the speech activity, then your verdict should be for the Defendants.

If you find for the Plaintiff and against the Defendants or their defenses, you must then decide the issue of the Plaintiff's damages.

---

[1]    *See Anderson v. Nosser*, 456 F.2d 835 (5th Cir. 1972), *affirmed sub nom. Nosser v. Bradley*, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972); *Reimer v. Smith*, 663 F.2d 1316 (5th Cir. 1981).  *See also* S. Nahmod, Civil Rights and Civil Liberties Litigation – The Law of Section 1983, sections 3.17 and 3.18 (second edition 1986); Source:  Modern Federal Jury Instructions - Civil (Matthew Bender 1993).

## PLAINTIFFS' REQUESTED SPECIAL INSTRUCTION NO. 2

An act is intentional if it is done knowingly, that is if it is done voluntarily and deliberately and not because of mistake, accident, negligence or other innocent reason. In determining whether the Defendants acted with the requisite knowledge, you should remember that while witnesses may see and hear and so be able to give direct evidence of what a person does or fails to do, there is no way of looking into a person's mind. Therefore, you have to depend on what was done and what the people involved said was in their minds and your belief or disbelief with respect to those acts.

## PLAINTIFFS' REQUESTED SPECIAL INSTRUCTION NO. 3

The Plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the Defendants were a cause-in-fact of the damage the Plaintiff suffered. An act or a failure to act is a cause-in-fact of any injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. The Plaintiffs must also prove by a preponderance of the evidence that the act or failure to act by the Defendants was a proximate cause of the Plaintiffs' injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.

## PLAINTIFFS' REQUESTED SPECIAL INSTRUCTION NO. 4

I, the judge, have decided that the acts of the Brownsville Independent School District (BISD) constituted official policy of the District, and the acts of the Superintendent Noe Sauceda constituted policy for the District for purposes of decisions relating to the administration of BISD's Tax Sheltered Annuities Program and the authorization for mandatory annuities presentations.

## PLAINTIFFS' REQUESTED SPECIAL INSTRUCTION NO. 5

The Plaintiffs allege that the Defendants Brownsville Independent School District, Noe Sauceda and Eddie Errisuriz, Jr. deprived them of their rights to freedom of speech under the First Amendment to the Constitution of the United States. Specifically, the Plaintiffs allege that, while they were public citizens, they engaged in one or more specific acts of speech (or expression) protected by the Free Speech Clause of the First Amendment, that the Defendants then took specific action against the Plaintiffs, and that Plaintiffs' acts of speech were the substantial or motivating factor in the Defendants' decision to take such action.

---

### Authority

United States Supreme Court: *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

v:\fp\pretrial\263-02 Jury Charge, Instructions & Interrogatories          PAGE 17

## PLAINTIFFS' REQUESTED SPECIAL INSTRUCTION NO. 6

In order to prove his allegation against the Defendants, Plaintiffs must establish each of the following two elements of their claims; first, that the Plaintiffs' acts of speech (or expression) were protected by the Free Speech Clause of the First Amendment; and, second, that these acts of speech were a substantial or motivating factor in the Defendants' decision to take action against the Plaintiffs.

---

## Authority

United States Supreme Court: *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 47 (1977), *Accord Givhan v. Western Line Consolidated School Dist.*, 439 U.S. 410, 99 S.Ct. 693, 50 L.Ed.2d 619 (1979).

Fifth Circuit: *Brown v. Texas A & M University*, 804 F.2d 327 (5th Cir. 1986); *Bueno v. City of Donna*, 714 F.2d 484 (5th Cir. 1983).

v:\fp\pretrial\263-02 Jury Charge, Instructions & Interrogatories                    PAGE 18

## PLAINTIFFS' REQUESTS SPECIAL INSTRUCTION NO. 7

I, the judge, have decided that the Free Speech Clause of the First Amendment protects the following speech in which the Plaintiffs engaged:

Reporting or commenting on financially irresponsible decisions to be made by defendants

or

Reporting or commenting on the potentially illegal appointment of a third party administrator to oversee BISD's Tax Sheltered Annuities Program.

## PLAINTIFF'S REQUESTS SPECIAL INSTRUCTION NO. 8

The second element of the Plaintiff's claim is that his protected speech (or act of expression), was a substantial or motivating factor in the Defendants' decision to take action against him.

The Plaintiff's protected speech was a substantial or motivating factor in the Defendants' decision to take action against him if it played a substantial part in the actual decision to take action against the Plaintiff.

The Defendants may have taken action for no reason whatsoever. If so, then the Plaintiff's protected speech (or expression) was not a substantial or motivating factor in Defendants' decision.

The Defendants may have taken action for one sole reason. If that one sole reason was because the Plaintiff reported or commented on alleged financially irresponsible decisions to be made by defendants or on the potentially illegal appointment of a third party administrator to oversee BISD's Tax Sheltered Annuities Program, they you must find that the Plaintiff's protected speech was a substantial or motivating factor in the Defendants' decision.

The Defendants may have taken action for many different reasons. If so, then you must determine whether one of those reasons was that the Plaintiff reported or commented on financially irresponsible decisions to be made by defendants or on the potentially illegal appointment of an "agent of record." If it was one of those reasons, then you must determine whether it played a substantial part in the actual decision to take action against the Plaintiff. If it did play a substantial part, then you must find that the Plaintiff's protected speech was a substantial or motivating factor in the Defendants' decision.

v:\fp\pretrial\263-02 Jury Charge, Instructions & Interrogatories                    PAGE 20

## Authority

United States Supreme Court: *Mt. Healthy City Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Accord Givhan v. Western Line Consolidated School Dist.* 439 U.S. 410, 99 S.Ct. 693, 50 L.Ed.2d 619 (1979).

## PLAINTIFFS' REQUESTED SPECIAL INSTRUCTION NO. 9

If you find that the Plaintiffs' protected speech (or act of expression) was a substantial or motivating factor in the Defendants' decision to take action against the Plaintiffs, you must consider whether the Defendants have presented an adequate defense to the Plaintiffs' case.

The Defendants present an adequate defense of the Plaintiffs' case if the Defendants can show, by a preponderance of the evidence, that it would have reached the same decision to take action against the Plaintiffs even in the absence of the Plaintiffs' protected speech. In other words, the Defendants must show by a preponderance of the evidence that it would have made the same decision without considering the Plaintiffs' protected speech.

If the Defendants show by a preponderance of the evidence that they would have reached the same decision without considering the Plaintiff's protected speech, then you must find in favor of the Defendants.

It is important for you to realize that the Defendants have not presented an adequate defense if it shows merely that it had other, valid reasons for taking action against the Plaintiff. It is a defense only if the Defendants would have acted on those other reasons in the absence of the Plaintiff's protected speech. Therefore, if the Defendants offer other, valid reasons for taking action against the Plaintiff, the Defendants must further show that they would have acted on those reasons. Otherwise, it has not presented an adequate defense.

---

### Authority

United States Supreme Court: *Mt. Healthy City School Dist. Board of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50

v:\fp\pretrial\263-02 Jury Charge, Instructions & Interrogatories                    PAGE 22

L.Ed.2d 471 (1977).  *Accord Givhan v. Western Line Consolidated School Dist.* 439 U.S. 410, 99 S.Ct. 693, 50 L.Ed.2d 619 (1979).

## PLAINTIFFS' REQUESTED SPECIAL INSTRUCTION NO. 10

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The Plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you along, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw -- but not required to draw -- from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

_____

### Authority

United States Supreme Court: *Schulz v. Pennsylvania R. Co.*, 350 U.S. 372, 76 S.Ct. 608, 100 L.Ed. 668 (1956); *Lavender v. Kurn*, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 926 (1946).

v:\fp\pretrial\263-02 Jury Charge, Instructions & Interrogatories          PAGE 24

## PLAINTIFFS' REQUESTED SPECIAL INSTRUCTION NO. 11

If the Plaintiff has proven his claim against the Defendants by a preponderance of the evidence, you must determine the damages to which the Plaintiff is entitled. You should not interpret the fact that I have given instructions about the Plaintiff's damages as an indication in any way that I believe that the Plaintiff should, or should not, win this case. It is your task first to decide whether the Defendants are liable. I am instructing you on damages only so that you will have guidance in the event you decide that the Defendants are liable and that the Plaintiff is entitled to recover money from the Defendants.



## PLAINTIFFS' REQUESTED SPECIAL INSTRUCTION NO. 12

If you find that the Defendants are liable to the Plaintiff, then you must determine an amount that is fair compensation for all of the Plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the Plaintiff whole -- that is, to compensate the Plaintiff for the damage that the Plaintiff has suffered.

You may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by the Defendants' allegedly wrongful conduct. The damages that you award must be fair compensation for all of the Plaintiff's damages, no more and no less. Damages are not allowed as a punishment and can not be imposed or increased to penalize the Defendants. You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiff has actually suffered or that the Plaintiff is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence.

The Plaintiffs STEPHEN M. ANDRUS'S, FERNANDO DE PENA'S, VALENTIN PAZ'S and ANDRUS & PAZ'S physical and mental pain and suffering, and any earnings lost in the past and any such loss in the future, resulting from the deprivation of his Constitutional rights to free speech.  In determining the duration of this physical and mental pain and suffering and loss of earnings, you must consider the life expectancy of the Plaintiff.

**A.  Damages Accrued**

If you find for the Plaintiff, he is entitled to recover an amount that will fairly compensate him for any damages he has suffered to date.

**B.      Calculation of Future Damages**

If you find that the Plaintiff is reasonably certain to suffer damages in the future for his injuries, then you should award him the amount you believe would fairly compensate him for such future damages.  In calculating future damages, you should consider the standard table of mortality as compiled by the United States Bureau of the Census, or other recognized mortality table.

**C.      Reduction of Future Damages to Present Value**

An award of future damages necessarily requires that payment be made now for a loss that Plaintiff will not actually suffer until some future date.  If you should find that the Plaintiff is entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages.

If you award damages for loss of future earnings, you must consider two particular

factors:

(1) You should reduce any award by the amount of the expenses that the Plaintiff would have incurred in making those earnings.

(2) If you make an award for future loss of earnings, you must reduce it to present value by considering the interest that the Plaintiff could earn on the amount of the award if he made a relatively risk-free investment. The reason why you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to the Plaintiff if he receives it today than if he received it in the future, when he would otherwise have earned it. It is more valuable because the Plaintiff can earn interest on it for the period of time between the date of the award and the date he would have earned the money. Thus you should adjust the amount of any award for future loss of earnings by the amount of interest that the Plaintiff can earn that amount in the future.

However, you must not make any adjustment to present value for any damages you may

award for future pain and suffering or future mental anguish.

---

Source: Modern Federal Jury Instructions - Civil (Matthew Bender 1993).

## PLAINTIFFS' REQUESTED SPECIAL INSTRUCTION NO. 13

If you find that the Defendants are liable for the Plaintiff's injuries, you must award the Plaintiff the compensatory damages that he has proven. You also may award punitive damages, if the Plaintiff has proved that the Defendants acted with malice or willfulness or with callous and reckless indifference to the safety or rights of others. One acts willfully or with reckless indifference to the rights of others when he acts in disregard of a high and excessive degree of danger about which he knows or which would be apparent to a reasonable person in his condition.

If you determine that the Defendants' conduct was so shocking and offensive as to justify an award of punitive damages, you may exercise your discretion to award those damages. In making any award of punitive damages, you should consider that the purpose of punitive damages is to punish a Defendant for shocking conduct, and to deter the Defendant and others from engaging in similar conduct in the future. The law does not require you to award punitive damages, however, if you decided to award punitive damages, you must use sound reason in setting the amount of the damages. The amount of an award of punitive damages must not reflect bias, prejudice, or sympathy toward any party. However, the amount can be as large as you believe necessary to fulfill the purposes of punitive damages. You may consider the financial resources of the Defendants in fixing the amount of punitive damages, and you may impose punitive damages against one or more of the Defendants, and not others, or against more than one Defendant in different amounts.[2]

---

[2] On the general subject of punitive damages and the guidelines to be considered in fashioning jury charges, *see Pacific Mutual Life Insurance Company v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2 1 (1991).

v:\fp\pretrial\263-02 Jury Charge, Instructions & Interrogatories          PAGE 29

## SPECIAL INTERROGATORIES

You will answer Special Interrogatories or questions in order to reach a verdict in this case. I will read these interrogatories to you now:

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, | § | |
| FERNANDO DE PENA, | § | |
| VALENTIN PAZ and | § | |
| ANDRUS & PAZ, a Partnership | § | **CIVIL ACTION NO.** |
| | § | |
| vs. | § | **B – 02 - 143** |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | |
| and EDDIE ERRISURIZ, JR. | § | |
| | § | |

---

## SPECIAL INTERROGATORIES

---

**THE JURY MUST UNANIMOUSLY AGREE ON THE ANSWERS TO ALL OF THE QUESTIONS.**

## QUESTION NO. 1:

Do you find, based on a preponderance of the evidence, that Plaintiff Stephen Andrus's protected speech was a substantial or motivating factor in Defendants Noe Sauceda's or BISD's decision to withdraw Plaintiffs' authorizations to solicit Tax Sheltered Annuity products

Answer "YES" or "NO" to each:

BISD          _____

SAUCEDA       _____

ERRISURIZ     _____

v:\fp\pretrial\263-02 Jury Charge, Instructions & Interrogatories          PAGE 31

## QUESTION NO. 2:

Do you find, based on a preponderance of the evidence, that Plaintiffs Fernando de Pena's, Valentin Paz's and Andrus & Paz's protected right of association was a substantial or motivating factor in Defendants Noe Sauceda's or BISD's decision to withdraw Plaintiffs' authorizations to solicit Tax Sheltered Annuity products

Answer "YES" or "NO" to each:

BISD                _____

SAUCEDA       _____

ERRISURIZ     _____

## QUESTION NO. 3:

Do you find, based on a preponderance of the evidence, that Defendants withdrew Plaintiffs' authorizations to solicit tax sheltered annuity products in violation of a formalized plan or in violation of IRS Guidelines?

Answer "YES" or "NO" to each:

BISD                _____

SAUCEDA       _____

ERRISURIZ     _____

## QUESTION NO. 4:

Do you find, based on a preponderance of the evidence, that Defendants allowed Mr. Soliz to make mandatory presentations while excluding Plaintiffs from doing the same?

Answer "YES" or "NO" to each:

BISD          _____

SAUCEDA      _____

ERRISURIZ    _____

## QUESTION NO. 5:

· Did Defendants Noe Sauceda or Eddie Errisuriz, Jr. wrongfully interfere with Plaintiffs' ability to enter into contractual relations with BISD employees or tax sheltered annuity companies?

Wrongful interference occurred if —

      a.  there was a reasonable probability that Plaintiffs would have entered into the contractual relations and

      b.  Noe Sauceda or Eddie Errisuriz, Jr. intentionally prevented the contractual relations from occurring with the purpose of harming Plaintiffs.

Answer "YES" or "NO" to each:

SAUCEDA      _____

ERRISURIZ    _____

## QUESTION NO. 6:

Did Defendant Noe Sauceda or Eddie Errisuriz, Jr. commit fraud against Plaintiffs?

Fraud occurs when ---

      a.  a party makes a material misrepresentation,

      b.  the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

      c.  the misrepresentation is made with the intention that it should be acted on by the other party, and

      d.  the other party relies on the misrepresentation and thereby suffers injury.

Misrepresentation means –

A statement of opinion that the maker knows to be false, or an expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter of the opinion.  "Special knowledge" means knowledge or information superior to that possessed by the other party and to which the other party did not have equal access.

Answer "YES" or "NO" to each:

SAUCEDA    _____

ERRISURIZ    _____

## QUESTION NO. 7:

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate **STEP[HEN M. ANDRUS** for his injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

| | | |
|---|---|---|
| (a) | Physical pain and mental anguish in the past | $_____ |
| (b) | Physical pain and mental anguish which, in reasonable probability, he will suffer in the future | $_____ |
| (c) | Loss of earnings sustained in the past | $_____ |
| (d) | Loss of earnings that, in reasonable probability, he will sustain in the future | $_____ |

ANSWER: _____

## QUESTION NO. 8:

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate **FERNANDO DE PENA** for his injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

| | | |
|---|---|---|
| (a) | Physical pain and mental anguish in the past | $_____ |
| (b) | Physical pain and mental anguish which, in reasonable probability, he will suffer in the future | $_____ |
| (c) | Loss of earnings sustained in the past | $_____ |
| (d) | Loss of earnings that, in reasonable probability, he will sustain in the future | $_____ |

ANSWER: _____

## QUESTION NO. 9:

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate **VALENTIN PAZ** for his injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

| | | |
|---|---|---|
| (a) | Physical pain and mental anguish in the past | $_____ |
| (b) | Physical pain and mental anguish which, in reasonable probability, he will suffer in the future | $_____ |
| (c) | Loss of earnings sustained in the past | $_____ |
| (d) | Loss of earnings that, in reasonable probability, he will sustain in the future | $_____ |

ANSWER:    _____

## QUESTION NO. 10:

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate **ANDRUS & PAZ,** *a partnership* for their injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

(a)     Loss of earnings sustained in the past          $_____

(b)     Loss of earnings that, in reasonable probability, will
        be sustained in the future                       $_____


**ANSWER:**     _____

## QUESTION 11:

Do you find by clear and convincing evidence that the harm to Plaintiffs STEPHEN M. ANDRUS, FERNANDO DE PENA, VALENTIN PAZ and ANDRUS & PAZ, *a partnership*, resulted from malice or fraud?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means:

    a. a specific intent by Defendants Noe Sauceda or Eddie Errisuriz, Jr. to cause substantial injury to Plaintiffs; or

    b. an act or omission by Defendants Noe Sauceda or Eddie Errisuriz, Jr.,

        (i) which, when viewed objectively from the standpoint of Defendants Noe Sauceda or Eddie Errisuriz, Jr., at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

        (ii) of which Defendants Noe Sauceda or Eddie Errisuriz, Jr., had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

"Fraud" occurs when
    a. a party makes a material misrepresentation,
    b. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,
    c. the misrepresentation is made with the intention that it should be acted on by the other party, and
    d. the other party relies on the misrepresentation and thereby suffers injury.

Answer "YES" or "NO" to each:

SAUCEDA     _____

ERRISURIZ     _____

## QUESTION NO. 12:

What sum of money, if any, if paid now in cash, should be assessed against Defendants Noe Sauceda or Eddie Errisuriz, Jr. and awarded to Plaintiffs STEPHEN M. ANDRUS, FERNANDO DE PENA, VALENTIN PAZ and ANDRUS & PAZ, *a partnership*, as exemplary damages, if any, for the conduct found to Question No. 12?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are ---
   a. The nature of the wrong.
   b. The character of the conduct involved.
   c. The degree of culpability of Defendants Noe Sauceda or Eddie Errisuriz, Jr..
   d. The situation and sensibilities of the parties concerned.
   e. The extent to which such conduct offends a public sense of justice and propriety.
   f. The net worth of Defendants Noe Sauceda or Eddie Errisuriz, Jr..


Answer in dollars and cents, if any, as to each:

NOE SAUCEDA             $_____

EDDIE ERRISURIZ, JR.    $_____

# EXHIBIT D1-D



IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, | § | |
| FERNANDO DE PENA, | § | |
| VALENTIN PAZ and | § | |
| ANDRUS & PAZ, a Partnership | § | |
| | § | |
| vs. | § | B-02-143 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | |
| and EDDIE ERRISURIZ, JR. | § | |
| | § | |

## DEFENDANT'S PROPOSED JURY INSTRUCTIONS AND QUESTIONS

Now Comes Defendant Brownsville Independent School District and requests that the Court

submit to the jury the instructions attached hereto.

**GENERAL INSTRUCTIONS:**

**Members of the Jury:**

Now that you have heard the evidence, my duty is to give you the instructions of the Court

on the law you should apply to this case.  Your duty as jurors is to follow the law as stated in these

instructions and to apply these rules of law to the facts you find from the evidence in the case.  You

are not to single out on instruction alone as stating the law; rather, you must consider the instructions

as a whole.

Regardless of any opinion you may have as to what the law should be, you would violate your

sworn duty if you based a verdict upon any view of the law other than that given in the instructions



stated by the Court. Similarly, you would violate your sworn duty as judges of the facts if you based your verdict upon anything but the evidence in this case. You, the Jury, are the sole and exclusive judges of the facts.

You are to perform this duty without bias or prejudice as to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. Both the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences.

You should consider and decide this case as an action between persons of equal standing in the community, of equal worth, and holding the same or similar situations in life.

You must consider only evidence properly admitted in the case. Unless you are otherwise instructed, the evidence in the case always consists of the sworn testimony of the witnesses, regardless of who may have called them; any deposition testimony of witnesses that was admitted into evidence; all exhibits received in evidence, regardless of who may have produced them; and all facts that have been admitted or stipulated. You must entirely disregard any evidence that a party objected to if I sustained that objection and any evidence that was ordered stricken by the Court.

Statements and arguments of counsel are not evidence; rather they are intended only to assist you in understanding the evidence and the contentions of the parties. During the course of the trial, it often becomes the duty of counsel to make objections and for the Court to rule on them in accordance with the law. You should not consider or be influenced by the fact that such objections have been made, whether they are sustained or overruled.

Similarly, you should not allow your attitude toward either party or the evidence to be affected by how you regard the general conduct or attitude of the attorneys. Each attorney has a

solemn duty to defend the client vigorously and with dedication and thus may not please everyone all the time. Your decision on the facts of this case should therefore not be affected by your opinion of the attorneys.

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

You, as jurors, are the sole judges of the credibility of the witnesses and weight their testimony deserves. You should carefully scrutinize all the testimony given and, in weighing the testimony of each witness, consider the relationship between the witness and the parties in the case, his or her interest in the outcome of the case, the witness's manner of testifying, candor, fairness, and intelligence, and the extent to which the witness's testimony has been confirmed or contradicted, if at all, by other credible evidence.

You will rely upon your own good judgment, your own common sense, and the experience you have gained as you have gone about your everyday affairs in weighing the evidence and determining the weight to be given to it. You are permitted to accept as true and worthy of belief everything that a particular witness may have said, or you are permitted to reject everything that a particular witness may have said. Of course, you may also accept as true part of what a witness tells you and reject other portions of that witness' testimony.

## WITNESSES

A witness may be discredited or "impeached" by contradictory evidence or by evidence that the witness has at other times made statements that are inconsistent with the witness' present testimony. The earlier contradictory statements are admissible only to impeach the credibility of the witness and not to conclusively establish the truth of the earlier statements. If you believe any witness has been impeached and thus discredited, you are free to give the testimony of that witness such credibility, if any, as you may think it deserves.

## EVIDENCE

You may, in your determination of the facts of this case, consider both direct and circumstantial evidence. Direct evidence is the testimony of a witness who actually saw an event occur. Circumstantial evidence is proof of a chain of circumstances pointing to the occurrence of a fact or the existence of a fact. Direct evidence includes a witness' testimony as to facts within that person's own personal knowledge, matters that the witness saw and heard, and matters that came to the witness out of that person's own senses or observations. Circumstantial evidence, rather than or in addition to direct evidence, can be used to establish a fact if that fact may be fairly and reasonably inferred from all other facts and circumstances proved in the case. In order to establish a fact or conclusion by circumstantial evidence, the facts that were directly proven in the case must be such as to make the fact or conclusion sought to be shown by circumstantial evidence more reasonably probable to be true than alternative facts or conclusions. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with a preponderance of all the evidence in the case, both direct and circumstantial.

## PREPONDERANCE OF THE EVIDENCE

In this case, the Plaintiffs must prove every essential part of their claim by a preponderance of the evidence. A preponderance of the evidence simply means evidence that persuades you that the Plaintiffs' claim is more likely true than not true. In deciding whether any fact has been proven by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses regardless of who may have called them and all exhibits received in evidence regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiffs' claims, by a preponderance of the evidence, you should find for the Defendant as to that claim.

Modern Federal Jury Instructions 73-2 (5th Pattern Civil Jury Inst. 2.20)

## CIVIL RIGHTS

The Plaintiffs claim that Brownsville Independent School District, herein School District, is liable for the alleged constitutional deprivations. A School District is liable for the deprivation of a constitutional right if the deprivation was pursuant to governmental custom or policy. Therefore, if you find that the Plaintiffs were injured as the proximate or legal result of Brownsville Independent School District's policy or custom, whether made by its lawmakers or by those officials whose edicts or acts may fairly be said to represent official policy, Brownsville Independent School District itself will be responsible.

Only the Board of Trustees, by majority vote at a legally called open meeting, may promulgate policy for the Brownsville Independent School District. A formal policy is a statement, ordinance, regulation or decision that is officially adopted and promulgated by the Brownsville Independent School District Board of Trustees.

For an action to be considered a custom , Plaintiffs must show a persistent, wide spread practice of school district officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents school district policy.

The Plaintiffs claim that Defendant, while acting "under color of state law," intentionally deprived the Plaintiffs of rights under the Constitution of the United States.

The Plaintiffs claim that while Defendant was acting under color of authority of the State of Texas it intentionally violated the Plaintiffs' constitutional rights. The Plaintiffs claim that when Defendant Brownsville Independent school District precluded Plaintiffs from access to BISD campuses for the purpose of attempting to sell annuities, because of the Plaintiffs' exercise of the

right of free speech, this Defendant deprived them of their rights under the First Amendment of the Constitution.

State or local officials act "under color" of the authority of the State when they act within the limits of their lawful authority. However, they also act "under color" of the authority of the State when they act without lawful authority or beyond the bounds of their lawful authority if their acts are done while the officials are purporting or pretending to act in the performance of their official duties. An official acts "under color" of the state authority if he abuses or misuses a power that he possesses only because he is an official.

*United States Court of Appeals, Fifth Judicial Circuit*

*Pattern Jury Instructions 103.3 - 103.4*

## EXERCISE OF FIRST AMENDMENT RIGHTS

The Plaintiffs claim that the individual Defendants, while acting "under color of state law," intentionally deprived them of their rights under the Constitution of the United States.

The Plaintiffs claim that while the individual Defendants were acting under color of authority of the State of Texas they intentionally violated the Plaintiff's constitutional rights. The Plaintiffs claim that when Defendants deprived them of access to BISD campuses for the purpose of attempting to sell annuities, because of the Plaintiff's exercise of the right of free speech, Defendants deprived them of their rights under the First Amendment of the Constitution.

In determining whether a violation of the First Amendment has occurred you must balance the interests of the school district as to its duties and responsibilities with the plaintiff's right to participate in an open bidding process.

A person may sue for an award of money damages against anyone who, "under color" of any State law or custom, intentionally violates the plaintiff's rights under the Constitution of the United States.

Thus, the plaintiffs must prove by a preponderance of the evidence each of the following:

1. That the actions of the defendant(s) were "under color" of the authority of the State of Texas;

2. That the plaintiffs' speech activities were Constitutionally "protected" under the First Amendment;

3. That the plaintiffs' exercise of protected First Amendment rights was a substantial or motivating factor in the defendant's decision to deprive them of the opportunity to participate in an open bidding process;

4.     That the defendant's acts were the proximate or legal cause of the plaintiffs' damages.

In determining whether Defendant intentionally or with deliberate indifference violated the Plaintiffs' First Amendment rights, you must remember that the Plaintiffs have a right to practice freedom of speech only to the extent that it does not unduly interfere with the duties and responsibilities of the school district. In determining whether the plaintiffs' speech activities in this case were protected activities under the First Amendment, you must balance the plaintiffs' First Amendment interests against the defendant's interests in promoting the efficiency of the public service it performs through its employees. Therefore, if you find under all the circumstances presented that a reasonable public employer could not have concluded that the plaintiffs' speech activities unduly interfered with the duties and responsibilities of the school district, you must find that the speech was protected First Amendment expression.

Plaintiffs must prove deliberate indifference to plaintiffs' rights by showing that the Defendant BISD deliberately or consciously chose deprive them of access to BISD campuses for the purpose of attempting to sell annuities, despite knowing such an act would be a violation of Plaintiffs' constitutional rights.

To prove that their speech activities were a substantial or motivating factor in Defendant's decision, the Plaintiffs do not have to prove that those speech activities were the only reason the Defendant made the decision. The Plaintiffs need only prove that the speech activities were a substantial consideration that made a difference in or influenced the Defendant's decision.

The plaintiffs must also prove by a preponderance of the evidence that the act or failure to act by defendant was a cause-in-fact of the damage plaintiffs suffered. An act or a failure to act is a cause-in-fact of an injury or damages if it appears from the evidence that the act or omission played

a substantial part in bringing about or actually causing the injury or damages. The plaintiffs must also prove by a preponderance of the evidence that the act or failure to act by the defendant was a proximate cause of the damage plaintiff suffered. An act or omission is a proximate cause of the plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.[1]

If you find that the plaintiffs have established each element of his claim, you must then decide whether the defendant(s) have shown by a preponderance of the evidence that they would have deprived the plaintiffs of access to BISD campuses for the purpose of attempting to sell annuities for other reasons even if plaintiffs had not exercised their protected speech activity. If you find that defendant would have deprived the plaintiffs of such access for reasons apart from the speech activity, then your verdict should be for the defendant.

If you find that the plaintiffs have proven their claim, you must then consider the defendant's defense that its conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident in issue and that the defendant is therefore not liable.

If after considering all of the surrounding circumstances of the case as they would have reasonably appeared at the time the plaintiffs were deprived of access to BISD campuses for the purpose of attempting to sell annuities, you find from a preponderance of the evidence that plaintiffs have proven Defendant knowingly violated the law regarding the plaintiffs' constitutional rights, you must find for the plaintiffs. If, however, you find that defendant had a reasonable belief that its

---

[1]See Anderson v. Nosser, 456 F.2d 835 (5th Cir.1972), *affirmed sub nom.* Nosser v. Bradley, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972); Reimer v. Smith, 663 F.2d 1316 (5th Cir.1981). See also S. Nahmod, Civil Rights and Civil Liberties Litigation—The Law of Section 1983, sections 3.17 and 3.18 (second edition 1986).

actions did not violate the constitutional rights of the plaintiffs, then you cannot find it liable even if the plaintiffs' rights were in fact violated as a result of the defendant's objectively reasonable action.

If you find for the Plaintiffs and against the Defendant on its defense, you must then decide the issue of the Plaintiffs' damages.

## COMPENSATORY DAMAGES

If you find that the Defendant is liable to the Plaintiffs, then you must determine an amount that is fair compensation for all of the Plaintiffs' damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the Plaintiff whole--that is, to compensate the Plaintiffs for the damage that the Plaintiffs have suffered, if any, from the injuries they sustained as a result of the Defendant's acts or omissions.

You may award compensatory damages only for injuries that the Plaintiffs prove were proximately caused by the Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the Plaintiffs' damages, no more and no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiffs have actually suffered.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Plaintiffs prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You are specifically instructed that a person's constitutional rights have no intrinsic value. Thus, a plaintiff must prove more than that his constitutional rights were violated to prove that he or she suffered damages.

You will now return to decide the case. In order to prevail, the Plaintiffs must sustain their burden of proof as I have explained to you with respect to each element of their complaint. If you

find that the Plaintiffs succeeded, you should return a verdict in their favor on that claim. If you find that the Plaintiffs failed to sustain their burden on any element of his claim or if you find that Defendant is entitled to qualified /sovereign immunity, you should return a verdict against the Plaintiffs.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself, but you should do so only after a consideration of the case for himself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh you respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his conscientious beliefs solely for the purpose of returning a unanimous verdict.

IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, | § | |
| FERNANDO DE PENA, | § | |
| VALENTIN PAZ and | § | |
| ANDRUS & PAZ, a Partnership | § | |
| | § | |
| vs. | § | B-02-143 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | |
| and EDDIE ERRISURIZ, JR. | § | |

## PROPOSED JURY ISSUES
## OF DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Now Comes, Defendant Brownsville Independent School District  herein, and requests that

the Court submit to the jury the issues attached hereto.

**Question No. 1**

Did the Plaintiffs engage in constitutionally protected speech on a matter of public concern?

Speech touches on a matter of public concern when it can be fairly considered as relating to
any matter of political, social or other concern to the community.

Although the subject matter of the communication may generally be of public interest, the
focus of the public concern inquiry is upon what is actually said or expressed.

ANSWER:

| | | |
|---|---|---|
| STEPHEN M. ANDRUS: | YES:_____ | NO: _____ |
| FERNANDO DE PENA: | YES:_____ | NO: _____ |
| VALENTIN PAZ: | YES:_____ | NO: _____ |

**Question No. 2**

Was Plaintiff's protected speech activity a substantial or motivating factor in Defendant Sauceda's decision to deny Plaintiffs access to BISD school campuses for the purpose of attempting to sell annuities?

ANSWER:

| | | |
|---|---|---|
| STEPHEN M. ANDRUS: | YES:_____ | NO: _____ |
| FERNANDO DE PENA: | YES:_____ | NO: _____ |
| VALENTIN PAZ: | YES:_____ | NO: _____ |

**Question No. 3**

Was Plaintiff's protected speech activity a substantial or motivating factor in Defendant Eddie Errisuriz, Jr.'s decision to deny Plaintiffs access to BISD school campuses for the purpose of attempting to sell annuities?

ANSWER:

| | | |
|---|---|---|
| STEPHEN M. ANDRUS: | YES:_____ | NO: _____ |
| FERNANDO DE PENA: | YES:_____ | NO: _____ |
| VALENTIN PAZ: | YES:_____ | NO: _____ |

**Question No. 4**

Would Defendant Sauceda have precluded Plaintiffs from access to BISD campuses for the purpose of attempting to sell annuities even in the absence of the Plaintiff's protected speech activity?

ANSWER:

| | | |
|---|---|---|
| Plaintiff Andrus: | YES:_____ | NO: _____ |
| Plaintiff de Pena: | YES:_____ | NO: _____ |
| Plaintiff Paz: | YES:_____ | NO: _____ |

**Question No. 5**

Would Defendant Eddie Errisuriz, Jr. been precluded Plaintiffs from access to BISD campuses for the purpose of attempting to sell annuities even in the absence of the Plaintiff's protected speech activity?

ANSWER:

| | | |
|---|---|---|
| Plaintiff Andrus: | YES:_____ | NO: _____ |
| Plaintiff de Pena: | YES:_____ | NO: _____ |
| Plaintiff Paz: | YES:_____ | NO: _____ |

**Question No. 6**

In making his decision to deny Plaintiffs access to BISD school campuses for the purpose of attempting to sell annuities, was Defendant Sauceda implementing a Brownsville Independent School District policy or custom?

ANSWER:

YES:_____    NO:_____

**Question No. 7**

In making his decision to deny Plaintiffs access to BISD school campuses for the purpose of attempting to sell annuities, was Defendant Eddie Errisuriz, Jr., implementing a Brownsville Independent School District policy or custom?

ANSWER:

YES:_____    NO._____

**Question No. 8**

Were Defendant's acts the proximate or legal cause of damages sustained by the Plaintiffs?

ANSWER:

| | | |
|---|---|---|
| Defendant Sauceda: | YES:_____ | NO: _____ |
| Defendant Errisuriz: | YES:_____ | NO: _____ |
| Defendant BISD: | YES:_____ | NO: _____ |

## Question No. 9

What percentage of responsibility of those found by you in response to Question No. 5 to be responsible for Plaintiff's damages is attributable to each Defendant? Your answer must total 100%.

ANSWER:

      Defendant Sauceda:     _____

      Defendant Errisuriz:    _____

      Defendant BISD:       _____

          Total:     100%

## Question No. 10

What sum of money, if any, would reasonably and fairly compensate Plaintiff ANDRUS for:

    (a)     lost wages and income (past and future)    $_____

    (b)     mental anguish, pain, and suffering     $_____

## Question No. 11

What sum of money, if any, would reasonably and fairly compensate Plaintiff PAZ for:

    (a)     lost wages and income (past and future)    $_____

    (b)     mental anguish, pain, and suffering     $_____

## Question No. 12

What sum of money, if any, would reasonably and fairly compensate Plaintiff de PENA for:

    (a)     lost wages and income (past and future)    $_____

    (b)     mental anguish, pain, and suffering     $_____



## MITIGATION OF DAMAGES

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate – to avoid or minimize those damages.

If you find the defendant is liable and the plaintiffs has suffered damages, the plaintiff may not recover from any item of damage which they could have avoided through reasonable effort. If you find by a preponderous of the evidence, the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny them recovery for those damages which he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing their damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant has the burden of proving the damages which the plaintiff could have mitigated. In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

*United States Court of Appeals Fifth Judicial Circuit Pattern Jury's Instructions 1999 (Civil Cases) 15.15*

## RULE AGAINST DOUBLE RECOVERY

You should not award damages more than once for the same injury. For example, if a plaintiff were to prevail on two claims and establish damages for the same injury under both claims, you could not award her damages on both of those claims. The plaintiff is entitled to be made whole, but is not entitled to recover more than she lost. Of course, if different injuries are attributed to the separate claims, then you must compensate her fully for all of her injuries.

## BURDEN OF PROOF

Plaintiff must prove by a preponderance of the evidence that the act or failure to act by Defendant was a cause in fact of the damage Plaintiff suffered. An act or a failure to act is a cause in fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. The Plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the Defendant was a proximate cause of the damage Plaintiff suffered. An act or omission is a proximate cause of the Plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.

After you have retired to consider your verdict, no one has any authority to communicate with you except the bailiff of the Court. You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all of the questions which you are required to answer under the instructions of the judge, and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will advise the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.


_____
JUDGE PRESIDING

## CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicted, and

herewith return same into court as our verdict.

(To be signed by the presiding juror if unanimous.)

_____
PRESIDING JUROR

(To be signed by those rendering the verdict if not unanimous.)

SIGNED on this _____ day of _____, 2004.

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER, L.L.P.**
855 West Price Road, Suite 9
Brownsville, Texas 78520
(956) 542-5666
(956) 542-0016 Facsimile

Attorneys for Defendant Brownsville Independent
School District

By: _____
Elizabeth G. Neally
State Bar No. 13840400
Fed. ID # 8044
Ricardo Morado
State Bar #14417250
Fed. ID #1213

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing **DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT'S PROPOSED JURY ISSUES** has been served to counsel of record, to wit:

J. Arnold Aguilar
**Law Offices of J. Arnold Aguilar**
Artemis Square, Suite H-2,
1200 Central Boulevard
Brownsville, Texas 78520

Eileen Leeds
**Willette & Guerra**
3505 Boca Chica Boulevard, Suite 460
Brownsville, Texas 78521

on this ____ day of _____, 2004.

_____
Elizabeth G. Neally

# EXHIBIT D2-D

# EXHIBIT P-E

NOT PROVIDED BY PLAINTIFFS AS OF February 17, 2004.
ASSUMED WILL BE SUPPLEMENTED.

# EXHIBIT D-E

IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, | § | |
| FERNANDO DE PENA, | § | |
| VALENTIN PAZ and | § | |
| ANDRUS & PAZ, a Partnership | § | |
| | § | |
| vs. | § | B-02-143 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | |
| and EDDIE ERRISURIZ, JR. | § | |

## JOINT PROPOSED VOIR DIRE QUESTIONNAIRE
## OF DEFENDANTS BROWNSVILLE INDEPENDENT SCHOOL DISTRICT,
## NOE SAUCEDA AND EDDIE ERRISURIZ, JR.

TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COME,** The Brownsville Independent School District (BISD), NOE SAUCEDA

AND EDDIE ERRISURIZ, JR., Defendants herein, and  pursuant to the Court's Scheduling

Conference hereby submit their Joint Proposed Voir Dire Questionnaire to the Court for review and

consideration.

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER, L.L.P.**
855 West Price Road, Suite 9
Brownsville, Texas 78520
(956) 542-5666
(956) 542-0016 Facsimile

Attorneys for Defendant Brownsville Independent
  School District

By: _____
          Elizabeth G. Neally

State Bar No. 13840400
Fed. ID # 8044
Ricardo Morado
State Bar #14417250
Fed. ID #1213


**WILLETTE & GUERRA, L.L.P.**
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, Texas 78521
(956) 541-1846
(956) 541-1893 Facsimile

Attorneys for Defendant Noe Sauceda & Eddie Errisuriz, Jr.

By: _Eileen Leeds w/permission EME_

Eileen M. Leeds
State Bar No. 00791093
USDC Adm. No. 16799
Charles Willette, Jr.
State Bar No. 21509700
USDC Adm. No. 1937

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing **DEFENDANTS BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, NOE SAUCEDA AND EDDIE ERRISURIZ, JR.'S JOINT PROPOSED VOIR DIRE QUESTIONNAIRE** has been served to counsel of record, to wit:

J. Arnold Aguilar
**Law Offices of J. Arnold Aguilar**
Artemis Square, Suite H-2,
1200 Central Boulevard
Brownsville, Texas 78520

Eileen Leeds
**Willette & Guerra**
3505 Boca Chica Boulevard, Suite 460
Brownsville, Texas 78521

on this _1 7_ day of February, 2004.

_____
Elizabeth G. Neally



## TO PROSPECTIVE JURORS

This questionnaire is designed to obtain information from you with respect to your qualifications to sit as a juror in this case. By the use of the questionnaire, the process of jury election will be shortened. Please respond to the following questions as completely as possible. The information contained within the questionnaire will become part of the Court's permanent record, but it will not be distributed to anyone except the attorneys in the case and the judge. After you have completed this questionnaire, the judge may have additional questions. During this questioning, you will be given an opportunity to explain or expand any answers, if necessary. If for any reason you do not want to answer any of the questions asked, please write the word **"PRIVATE"** next to the question and we will take this matter up with you in private.

Because this questionnaire is part of the jury selection process, the questions must be answered by you under penalty of perjury and you should fill out this questionnaire by yourself without consulting any other person.

If you wish to make further comments regarding any of your answers, please use the back of the last page, and please remember to indicate the corresponding question number.

If you do not understand a question, please write "**I DO NOT UNDERSTAND"** and the question will be explained to you in Court.

**PLEASE REALIZE THERE ARE NO RIGHT OR WRONG ANSWERS - - JUST HONEST ONES.**

## CONFIDENTIAL JURY QUESTIONNAIRE

1.  Name (Maiden name if applicable):_____
    First                  Middle                       Last

2.  Age_____  (Check one) Male_____      Female____

3.  EMPLOYMENT STATUS

    _____ Employed                    _____Employed, but Laid Off

    _____ Employed, more than one job      _____Unemployed

    _____ Employed, part time

    _____ Disabled      _____ Full-time Student

4.  Name and location of current employer: _____

5.  Job title and duties:_____

6.  Length of present employment: _____

7.  Do you supervise people where you work?  Yes____ No____

    If "Yes", how many? _____

8.  Marital Status (check most appropriate category)

    Single _____    Separated_____      Divorced_____      Married_____

9.  Spouse Deceased _____     Divorced and Remarried _____

10. Name of Spouse _____

    Age of Spouse _____

11. Have you, a family member, or any close friend or co-worker ever worked for Brownsville
    Independent School District?

    ____ Yes _____ No

(a)    If yes, please identify the name and relationship to you of each person who has ever worked for Brownsville Independent School District and what their position was in Brownsville Independent School District:

_____

_____

12.    Occupation of spouse, job title, job duties, place of employment, and length of time employed.

_____

_____

_____

13.    How many children do you have? _____

14.    How far did you go in school?_____

       If College, which one?_____

       What was your major?_____

15.    Have you or a family member or a close friend ever been terminated or laid off from your employment?

       _____Yes ____No

       If yes, name all employers, when it happened and why you were terminated or laid off?

_____

_____

_____

16.    What is your impression of Brownsville Independent School District?

_____

_____

_____

17.    What do you understand an annuity to be?

_____

_____

_____

18.    What is your impression of annuity salespersons?

_____

_____

_____

19.    Have you ever been approached by annuity salesperson?

_____ Yes _____ No

If yes, please explain the circumstances under which you were approached and whether this was a favorable impression?

_____

_____

_____

20.    Do you have a retirement plan?

If yes, what kind of plan is it?

_____

_____

_____

21.   Do you have any supplemental insurance or other means of retirement savings?

_____

_____

_____

If yes, please explain.

_____

_____

_____

22.   Have you ever spoken at a public audience, a portion of a public audience meeting for a
      school district or governmental meeting?  If yes, what was your topic that you spoke on and
      when did you speak?

_____

_____

_____

23.   Do you ever attend public meetings for cities, schools, or governmental entities?

      If yes, what is your impression of persons who speak during public audience portions of
      those meetings?

_____

_____

_____

24.    Please complete the following sentence:

       *The thing that concerns me most about the legal profession is* _____
       _____
       _____ .

25.    Please list any civic, social, professional or religious organizations to which you now belong,
       or have belonged to in the past:

       _____

       _____

       _____

26.    What newspapers or magazines do you subscribe to or regularly read?

       _____

       _____

       _____

27.    Would you characterize yourself as a:        _____ Leader _____ Follower

28.    Are you: ¨ Very Conservative ¨ Conservative ¨ Moderate ¨ Liberal ¨ Very Liberal

29.    What are your hobbies or interests outside of work and family?_____
       _____

30.    Please explain your personal beliefs regarding each of the following statements:

       (a)    To win a civil case, the party bringing the suit must present a little more evidence
              than the other side.

       ___ Agree strongly    ___ Disagree strongly        ___ No Opinion

       ___ Agree             ___ Disagree                 ___ Don¡t know

       Please explain your answer: _____
       _____
       _____

(b)    If a person goes to the trouble of bringing a lawsuit to trial, the case must be valid.

___ Agree strongly    ___ Disagree strongly    ___ No Opinion

___ Agree    ___ Disagree    ___ Don¡|t know

Please explain your answer: _____
_____    _____

31.    Have you or a family member or close friend ever been involved in a lawsuit?

_____ Yes _____ No

If yes: (a)    Who filed the lawsuit?_____

(b)    What was the suit about?_____

(c)    How was it resolved?_____

(d)    What were your feelings about the process at the conclusion of the case?
_____

32.    Have you ever testified in a trial or given a deposition? ____ Yes ____ No

33.    Have you ever served on a jury? ____ Yes ____ No

If yes:    ___ Criminal ___ Civil

How was the case resolved? _____

Did you serve as a foreperson? ____ Yes ____ No

34.    The following is a list of the parties and attorneys in this case. If you know or have heard of any of the following parties or attorneys, please check the appropriate box(es).

| NAME | KNOW | HEARD OF |
|------|------|----------|
| Stephen M. Andrus | _____ | _____ |
| Fernando de Pena | _____ | _____ |
| Valentin Paz | _____ | _____ |

| | | |
|---|---|---|
| Andrus & Paz | _____ | _____ |
| Hugh Emerson | _____ | _____ |
| Pat Lehman | _____ | _____ |
| Marilyn del Bosque | _____ | _____ |
| Linda Salazar | _____ | _____ |
| Joe Colunga | _____ | _____ |
| Randy Dunn | _____ | _____ |
| J. Arnold Aguilar | _____ | _____ |
| Ms. Eileen M. Leeds | _____ | _____ |
| Mr. Charles Willette, Jr. | _____ | _____ |
| Elizabeth G. Neally | _____ | _____ |
| Ricardo Morado | _____ | _____ |
| John Jordan | _____ | _____ |

35.  Did you read or hear about the suspension or termination of Dr. Noe Sauceda from Brownsville Independent School District during the Summer of 2002 and Spring of 2003?

   _____ Yes _____ No

   If yes, please explain: _____

   _____

   _____

36.  From what you have read in this questionnaire do you believe you may have personal knowledge or familiarity with the people or facts of this case?    _____ Yes _____ No

   If no, please explain: _____

   _____

   _____

37.    Do you think that you can listen to all of the evidence presented during the trial and then decide this case based only on the facts presented? _____ Yes _____ No

If no, please explain:_____

_____

_____

38.    Do you think that you can wait until the defendant has had an opportunity to present evidence in this case before making a decision? _____ Yes _____ No

If no, please explain: _____

_____

_____

39.    Do you think that you will be able to listen to the judge's explanation of the law and apply it to the facts of this case as he instructs? _____ Yes _____ No

If no, please explain: _____

_____

_____

40.    Can you think of anything that might affect your ability to fairly and impartially decide the issues in this case? _____ Yes _____ No

If no, please explain: _____

_____

_____

## JUROR OATH

I HEREBY STATE THAT ALL THE ANSWERS GIVEN IN THIS JUROR QUESTIONNAIRE ARE TRUE, CORRECT, AND COMPLETE TO THE BEST OF MY KNOWLEDGE.

_____     _____
**Signature**                                                    **Date**


**Thank you for your time and cooperation.**