United States District Court
Southern District of Texas
FILED

MAR 1 5 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEPHEN M. ANDRUS, FERNANDO DE PEÑA, VALENTIN PAZ and ANDRUS & PAZ, *a partnership* | § § § § § § § § § | CIVIL ACTION NO. B - 02 - 143 |
| VS. | | |
| BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, NOE SAUCEDA and EDDIE ERRISURIZ, JR. | | |

## PLAINTIFFS' SUMMARY OF RESPONSES TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

TO THE HONORABLE U.S. DISTRICT COURT:

COMES NOW Plaintiffs **STEPHEN M. ANDRUS, FERNANDO DE PEÑA, VALENTIN PAZ** and **ANDRUS & PAZ**, *a partnership,* and file this their Summary of Responses to Defendants' Motions for Summary Judgment, as requested by the Court in the hearing on March 1, 2004, and for such summary would respectfully show the Court the following:

### INTRODUCTION

Plaintiffs have filed extensive responses to Defendants Brownsville Independent School District, Noe Sauceda and Eddie Errisuriz's Motions for Summary Judgment, establishing why Defendants are not entitled to summary judgment herein. In an attempt to streamline the Court's understanding and evaluation of these claims, however, Plaintiffs now submit this summary of those arguments. This document is not intended to supplant the actual responses filed by

Plaintiffs, but rather only to assist the Court in summarizing this complex case. References to exhibits are to the documents included as exhibits to Plaintiffs' Response to Defendants' (Sauceda & Errisuriz) Motion for Summary Judgment.

A. **First Amendment Freedom of Speech and Association**

On or about August 10, 2001, Plaintiff Andrus, and derivatively his partnership Andrus & Paz, submitted a letter addressed "To all it may Concern," complaining that BISD's Request for Qualifications (RFQ) for a Third Party Administrator (TPA) to administer the §125 Cafeteria Plan and §403b Tax Sheltered Annuity Program was illegal, unnecessary, costly and impractical. *See* **Exhibit-8**, Andrus Letter of 8/10/01. This letter was submitted to at least one BISD Board Trustee and to Defendant Sauceda. **Exhibit-1**, Andrus Affidavit, p.2, No. 4. Defendants Sauceda and Errisuriz were in charge of the BISD §403(b) program. **Exhibit-10**, Deposition of Dr. Leonel Lopez (Lopez I), p.103, 1.20 - p.104, 1.21. BISD Insurance Administrator Dr. Leonel Lopez explained that the person making the decisions on who would be granted letters authorizing them to solicit their products and what rules would govern the sales of those products was Defendant Errisuriz and the person above him. *Id.*; **Exhibit-19**, Deposition of Dr. Leonel Lopez (Lopez II), p.8, 11.15-18. That letter specifically identified the reference to the Internal Revenue Code Handbook sections that identify the violation, and explaining in detail why the TPA for the §403b program is not necessary. Under the Internal Revenue Code, school districts could elect to have their employees receive the benefits of tax deferred purchases of annuity contracts either through the form of an "arrangement" or through a formalized "summary plan description," (SPD). *See* **Exhibit-36**, IRS Handbook No. 7.7.1, §13.1.1.1.

Therefore, if the District were to allow its employees to purchase annuities with pre-tax dollars, it could do so either through a documented SPD, or its involvement would be strictly limited to providing a list of insurance carriers and executing salary reduction agreements (SRA's). *Id.*, §13.1.1.1(2). Defendants wanted to appoint a TPA to oversee the §403b program so that that person could determine who would be allowed to solicit §403b products at BISD. Such a proposal is not allowed by IRC regulations. Once Defendants received Plaintiffs' letter pointing out that they could not do this, they determined they had to find another means to effect their ends.

By September 2001, Defendants withdrew all the previously granted Authorization Letters, which had entitled each agent to solicit their products at BISD. *See* **Exhibit-3**, Andrus Authorization; **Exhibit-4**, De Peña Authorization; Exhibits 5 & 6, Sauceda Authorization; & Exhibit 7, Petrarca, Viada & Gilley Authorizations. Defendants retaliated against Plaintiffs Andrus and Andrus & Paz by summarily withdrawing the letters authorizing them to solicit their products at BISD. **Exhibit 1**, Andrus Affidavit, #6. Defendants similarly retaliated against Plaintiffs De Peña and Paz because of their association with Mr. Andrus by summarily withdrawing their authorization letters as well. *Id.* Essentially, Defendants retaliated against everyone other than Mr. Soliz, who was allowed to continue to make sales presentations at BISD.

The First Amendment protects speech from "adverse government actions against individual[s] because of [their] speech," including the denial of public benefits to Plaintiffs or punishing them because of their speech. *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999). BISD "may not deny a benefit to a person on a basis that infringes his constitutionally

protected interests -- especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited." *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). "[T]he First Amendment is violated by state action whose purpose is either to intimidate public employees from joining a union or taking an active part in its affairs or to retaliate against those who do." *Hitt v. Connell*, 301 F.3rd 240, 245 (5th Cir. 2002).

Because Plaintiffs were not public employees, the *Pickering* balancing test should not apply in this case. The *Pickering* balancing test applies only to public employees and would not apply "were [Plaintiff] a member of the general public...." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The First Amendment analysis applicable to an independent contractor such as the Plaintiffs herein is the more generalized question of whether Defendants acted or denied a benefit to Plaintiffs because of their "constitutionally protected speech or associations...." *Id.*, 408 U.S. at 597, 92 S.Ct. at 2697. As the Fifth Circuit has explained, in a non-employment setting involving members of the general public such as Plaintiffs, the *Perry* standard of whether Defendants acted or denied a benefit to Plaintiffs because of their "constitutionally protected speech or associations" should apply, rather than the *Pickering* and *Connick* balancing test. *Blackburn v. City of Marshall*, 42 F.3d 925, 933 (5th Cir. 1995). As the Supreme Court has held in a case involving the removal of a tow truck operator from a City's rotation list in retaliating for the operator's support of the mayor's opponent, "the raw test of political affiliation sufficed to show a constitutional violation, without the necessity of an inquiry more detailed than asking whether

the requirement was appropriate for the employment in question ... for one's beliefs and allegiances ought not to be subject to probing or testing by the government." *O'Hare Truck Service, Inc. v. City of North Lake*, 518 U.S. 712, 719, 116 S.Ct. 2353, 2358, 135 L.Ed.2d 874 (1996).

**B.     Fourteenth Amendment Due Process**

"Property interests...are created and their dimensions are defined by existing rules or understandings that stem from an independent source *such as* state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (emphasis added). Internal Revenue Code §403(b) provides certain deferred taxed benefits for purchases of annuities under certain conditions. **Exhibit-36**, Plan Examination Guidelines Handbook No. 7.7.1, §13.1.1.1(1). The two forms through which a §403(b) program may be employed is either through the establishment of a Summary Plan Description (SPD), or the "[e]mployer's involvement in the Plan is strictly limited to providing a list of insurance carriers to employees and executing salary reduction agreements." *Id.*, §13.1.1.1(2). Therefore, the Internal Revenue Code, "an independent source *such as* state law -- [was a set of] rules or understandings that secure[d] certain benefits and that support[ed] claims of entitlement to those benefits," and thus established Plaintiffs' property and liberty interests. *See Board of Regents of State Colleges v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709 (emphasis added).

Those rights and interests were further established either through BISD's Vendor Rules & Regulations for the Tax-Sheltered Annuity Program (**Exhibit-2**) or through BISD's established practices in being restricted by IRS regulations to doing no more than "providing a list of insurance carriers to employees and executing salary reduction agreements." (**Exhibit-36**, §13.1.1.1(2)). The BISD Vendor Rules require 90 days notice of termination of a vendor's participation in the TSA program, however. **Exhibit-2**, p.6, §IV(I)(1). No such notice was provided to Plaintiffs.

In spite of these restrictions and established procedures, Defendants summarily revoked Plaintiffs' authorization letters and did not allow them make presentations on campus, without notice or a hearing. **Exhibit-9**, Deposition of Stephen M. Andrus (Andrus I), p.246, ll.7-17. At the same time, however, a single agent, David Soliz, was allowed to make mandatory sales presentations to BISD employees, at which he talked about the §403(b) tax provision and annuities. **Exhibit-17**, deposition of David Soliz, p.57, l.14 - p.58, l.6; p.59, ll.6-25. Mr. Soliz agreed that the purpose of these mandatory meetings and promoting knowledge of annuities was so the people in the meetings would ultimately purchase an annuity from him or one of his agents. *Id.*, p.153, ll.5-20. Mr. Soliz's supervisor agreed with this assessment. **Exhibit-11**, Deposition of Tom Miller, p.58, l.14 - p.59, l.4. At least one attendee, Area Superintendent Rachel Ayala, clearly understood that Mr. Soliz was promoting his own products for sale, and she ultimately purchased one from him. **Exhibit-14**, Deposition of Rachel Ayala, p.39, l.18 - p.40, l.13. Defendant Sauceda also instructed each of the area superintendents to set up similar mandatory meetings with each of their principals. *Id.*, p.33, ll.5-18. Defendants Sauceda and Errisuriz also allowed Mr. Soliz to distribute his company's flyers by either placing them in the

teachers' mailboxes or asking a receptionist to do so, and faxing them to the schools' administrative offices. **Exhibit-15**, Deposition of Eduardo Errisuriz, Jr., p.94, l.13 - p.95, l.25; **Exhibit-17**, Deposition of David Soliz, p.27, l.18 - p.28, l.21. These actions emphasize that Defendants were giving special access to one agent, David Soliz, while removing Plaintiffs' right to access entirely, without notice or a hearing, and not allowing Plaintiffs gain access thereafter.

On or about October 18, 2001, Plaintiff Andrus submitted a letter to Defendants, including all BISD Trustees, requesting permission to provide mandatory presentations similar to those Mr. Soliz was providing. **Exhibit-18**, Andrus letter of 10/18/01. He made a similar factious request during the Public Audience section of a BISD meeting on November 13, 2001. **Exhibit-26**, Public Audience Excerpts, p.24. No response was received from Defendants to any of these requests, however; as a result, Defendant BISD thereby adopted or acknowledged that the actions of Defendant Sauceda and Errisuriz reflected the policy of BISD.

"At a minimum, notice and a hearing are required before an individual may be deprived of his property or liberty interest." *Systems Contractors Corp. v. Orleans Parish School Board*, 148 F.3d 571, 575 (5th Cir. 1998), citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). No such notice or opportunity to be heard was provided to Plaintiffs before their authorizations to solicit tax sheltered annuity products were taken from them. Nor were Plaintiffs allowed to participate in "mandatory presentations" such as those being conducted by Mr. Soliz, though Plaintiffs questioned the legality of any one being allowed to make such presentations.

Plaintiffs' "property interest in [their] business is essentially [their] interest in the lost profits, which are sought merely as the measure of damages in this action. [Plaintiffs'] property interest in the profits of [their] business and [their] liberty interests in operating [their] business do rise to the level of protectible interests." *San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697, 704 (5th Cir. 1991). Plaintiffs' authorization letters, together with BISD's Vendor Rules & Regulations and Applicable IRC regulations established a property right to continue to do business as they had before, consistent with those regulations. Plaintiffs do not need a formalized contract or statutory guarantee that they are entitled to continued employment in order to establish the existence of a property interest. *Henderson v. Sotelo*, 761 F.2d 1093, 1096 (5th Cir. 1995). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. at 601, 92 S.Ct. at 2699.

Plaintiffs are so invoking those rules and understandings at the hearing presently before this Court. "It has been stated that an individual's right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes with the 'liberty' and 'property' concepts of the Fifth Amendment." *Vander Zee v. Reno*, 73 F.3d 1365, 1370 (5th Cir. 1996). "Without doubt, ['liberty' in the Fourteenth Amendment] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life...." *Meyer v. Nebraska*, 262 U.S. 390, 399 (43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). By restricting Plaintiffs from participating in BISD's §403(b) program, while allowing Mr. Soliz the sole opportunity to do so, deprived Plaintiffs of their

property and liberty rights, without due process. Such actions also deprived Plaintiffs of their rights to equal protection, because they were treated differently from Mr. Soliz, and there was no rational relationship to any legitimate state interest in doing so.

## C. Responsibility of BISD

Defendant BISD is liable for the actions of Noe Sauceda as its CEO/Superintendent of Schools and its policymaker in the area of approval of insurance and/or tax deferred annuity vendors, and the standard for approval of such vendors. As Defendant Sauceda explained, it was within his authority to "control which ever agents [he] chose could come on to BISD campuses to solicit tax-sheltered annuities products." **Exhibit-16**, Deposition of Noe Sauceda, p.176, ll.15-22. As the Supreme Court has explained, "proof that [an entity's] legislative body or authorized decision maker had intentionally deprived a Plaintiff of a federally protected right necessarily establishes that the [entity] acted culpably. Similarly, the conclusion that the action taken or directed by the [entity] or its authorized decision maker itself violates federal law will also determine that the [entity's] action was the moving force behind the injury of which the Plaintiff complains." *Board of County of Commissioners of Bryan County v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 1389, 137 L.Ed.2d 626 (1997).

Alternatively, Plaintiff Andrus specifically pointed out the actions of Defendants Sauceda and Errisuriz about which he was complaining. *See* **Exhibit-8**, Andrus letter of 8/10/01; **Exhibit-18**, Andrus Letter of 10/18/01; **Exhibit-26**, Public Audience Excerpts from BISD Board Meeting of 11/13/01, pp.23-24. By refusing to take action once it had been notified of Defendants Sauceda's and Errisuriz's actions, Defendant BISD adopted or acknowledged each

of these actions as its own customs, policies and practices. Had BISD's customs, policies and practices been otherwise, its Board would have taken action to correct any actions it believed were contrary to those customs, policies or practices. Instead, the Board took no action. The Board's "continued adherence to an approach they know or should know has failed to prevent tortious conduct by employees may establish conscious disregard for the consequences of their action -- the 'deliberate indifference' -- necessary to trigger municipal liability." ***Board of County Commissioners of Bryan County v. Brown***, 520 U.S. at 407, 117 S.Ct. at 1390. *See also*, ***Grandstaff v. City of Borger***, 767 F.2d 161, 171-72 (5th Cir. 1985, *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). As a result, Defendant BISD is responsible for the actions complained of by Plaintiffs.

D.  **Responsibility of Defendants Sauceda and Errisuriz**

The actions that were taken by Defendants Sauceda and Errisuriz about which Plaintiffs complained are described above. Administrator for Insurance Dr. Leonel Lopez explained that Defendants Sauceda and Errisuriz were making all the decisions on the §403(b) program. **Exhibit-10**, Deposition of Dr. Leonel Lopez, p.103, 1.20 - p.104, 1.21. Each of the First and Fourteenth Amendment arguments described above would therefore apply directly to both Defendants Sauceda and Errisuriz. They are not entitled to immunity under federal law because their actions violated clearly established constitutional rights of which a reasonable person would have known.

E.    **State Law Claims Against Defendants Sauceda and Errisuriz**

Plaintiffs have alleged state law causes of action against Defendants Sauceda and Errisuriz for tortious interference with their prospective business relationships and for fraud. Plaintiffs also seek punitive or exemplary damages from these Defendants for fraud and malice. These Defendants' Motion for Summary Judgment asserts immunity from Plaintiffs' state law claims only pursuant to Texas Civil Practice & Remedies Code §101.056 and Texas Education Code §22.051. Section 101.056 only applies to governmental entities, however, and not to individual Defendants. Section 22.051 allows for professional immunity only to the extent that the complained of action involved the exercise of judgment or discretion on the part of these Defendants. As set out above, these Defendants did not have authority or discretion to take the actions they did, because doing so was a direct violation of applicable Internal Revenue Code provisions regarding what actions can be taken in administering a tax-sheltered annuity program at a school district. *See* **Exhibit-36**, IRS Handbook No. 7.7.1, §13.1.1.1(2). Because they did not have discretion to take the actions they did, they are not entitled to immunity herein.

Because Defendants did not challenge the merits of Plaintiffs' claims of tortious interference with prospective business relations, fraud, or malice, Plaintiffs did not brief the merits of those claims directly. In order to establish a claim of tortious interference with prospective business relations, however, Plaintiffs can establish that there was a reasonable probability that they would have entered into contractual relations and that Defendants intentionally prevented the contractual relations from occurring with the purpose of harming Plaintiffs. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001). Plaintiffs can establish Defendants' fraud through evidence that they made at least one material

misrepresentation, with knowledge of its falsity or recklessly without any knowledge of the truth and as a positive assertion, with the intention that the misrepresentation should be act upon by another party and the other party relied on the misrepresentation and thereby suffered injury. *See Custom Leasing, Inc. v. Texas Bank & Trust Co.*, 516 S.W.2d 138, 142 (Tex. 1974). Because fact issues remain on each of these causes of action, summary judgment is not proper at this time.

The actions of these Defendants described above in withdrawing the authorizations to solicit tax-sheltered annuities prevented Plaintiffs from being able to enter into contractual relations with BISD employees, and there is a reasonable probability that Plaintiffs would have done so as part of their regular business, had that restriction not been placed on Plaintiffs. The specific purpose of allowing agent David Soliz to make mandatory presentations to BISD employees was to direct all business to him, to prevent Plaintiffs from making any contracts, and thereby harm Plaintiffs. Such evidence would establish the tortious interference with prospective business relations claim.

Similarly, the only reason agent Soliz was allowed to make mandatory presentations was because Defendants were attempting to direct all business to him while inducing or directing Plaintiffs not to take particular action (i.e., attempt sales of annuities to BISD employees). Those actions resulted in the injuries described above to Plaintiffs. Such evidence would be sufficient to establish a claim of common law fraud.

Fraud and malice would both be sufficient grounds for recovery of exemplary damages. Malice could be established through evidence of an act or omission, which when viewed objectively from the standpoint of Defendants, involved an extreme degree of risk, considering

the probability and magnitude of the potential harm to others, and of which Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to Plaintiffs' rights, safety or welfare. *See* TEX.CIV.PRAC. & REM. CODE §41.001(7)(B) & §41.003(a)(2). Defendants' actions in withdrawing Plaintiffs' authorization to solicit tax-sheltered annuity sales, the only business in which they were involved, with no indication as to whether such proposal would be temporary or permanent, involved an extreme degree of financial risk to Plaintiffs of which Defendants were aware, but nevertheless proceeded with conscious indifference to Plaintiffs' rights. Such elements are sufficient to establish Plaintiffs' entitlement to punitive damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs **STEPHEN M. ANDRUS, FERNANDO DE PEÑA, VALENTIN PAZ** and **ANDRUS & PAZ**, *a partnership*, would respectfully request that upon consideration of Defendants BISD's Motion for Summary Judgment and Defendants Sauceda's and Errisuriz's Motion for Summary Judgment that such motions be denied in their entirety and that Plaintiffs be allowed to proceed to trial accordingly, and that Plaintiffs be granted such other and further relief to which they may show themselves to be justly entitled, whether general or special, at law and in equity.

Signed on this the 15th day of March, 2004.

                     Respectfully submitted,

                     **LAW OFFICE**
                     **J. ARNOLD AGUILAR**
                     Artemis Square, Suite H-2
                     1200 Central Boulevard
                     Brownsville, Texas  78520
                     Telephone    :  (956) 504-1100
                     Facsimile    :  (956) 504-1408

By: _____
       J. Arnold Aguilar
       State Bar No. 00936270
       Federal Adm. No. 6822

Attorney for Plaintiffs,
STEPHEN M. ANDRUS, FERNANDO DE PEÑA,
VALENTIN PAZ and ANDRUS & PAZ,
*a partnership*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **PLAINTIFFS' SUMMARY OF RESPONSES TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** has on this the 15th day of March, 2004, been forwarded via certified mail, return receipt requested to:

Ms. Elizabeth G. Neally
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Rd., Suite 9
Brownsville, TX 78520

Ms. Eileen M. Leeds
WILLETTE & GUERRA, L.L.P.
1534 E. 6th Street, Suite 200
Brownsville, TX 78520

_____
J. Arnold Aguilar